ORIGINAL

UNITED STATE DISTRICT COURT
**Southern District of New York**
============================X



- Edward Morales, *Pro-see.*

*Plaintiff.*

*Vs.*

- Purchase College.

- Westchester County D A's office.

- Westchester County, NY

  (The Westchester County)

- The Town of Harrison, NY.

- Melissa Jones.

- Sheryl Secor.

- Ernie Palmeiri.

- Qui-Qui Balascio

- Lois Wald

- Danielle DaGosto.

- Davis Mobley.

- John Doe (Police Officer)

- Anne MacCall.

- Sandee Maung.

- Kyle Saud.

- Louise Yelin.

- Walter Butler.

*Defendants.*

==========================X

Case No 14 CIV. 8193

# **COMPLAINT.**

**Seven New And Seven Recommenced Complaints Or (13 Causes of Actions).**

Plaintiff's Request Is For a Jury Trial For Compensatory Damages Based On, Personal Permanent Injuries, (Not Claimed In The Assoc. Compl.) In Excess Of $180 Million For All Defendants.

**Associated Federal Complaint:**
**Case: 13-CV-2586 (NSR)**

**Associated New York State Complaint:**
**Town of Harrison District Court: Case: 13070584**

# Table of Content

I  Preliminary Statements...........................................................................................P. 2

II Procedural History.................................................................................................P. 3

III Jurisdiction...........................................................................................................P. 4

IV Parties..................................................................................................................P. 4

V  Complaints

(13 Complaints or Causes of Actions [COA]).........................................................P. 8

Foreword.................................................................................................................P. 8

Cause of Action, #1 (Recommenced with New facts)...........................................P. 12

        Damages & Legal Theory.............................................................................P. 15

Cause of Action, #2 (Recommenced with New facts)...........................................P. 29

        Damages & Legal Theory.............................................................................P. 31 & 32

Cause of Action, #3 (Recommenced with New facts)...........................................P. 36

        Damages & Legal Theory.............................................................................P. 41 & 42

Cause of Action, #4 (Recommenced with New facts)...........................................P. 54

        Damages & Legal Theory.............................................................................P. 58 & 59

Cause of Action, #5 (New Compl.)........................................................................P. 71

        Damages & Legal Theory.............................................................................P. 73

Cause of Action, #6 (New Compl.)........................................................................P. 82

        Damages & Legal Theory.............................................................................P. 83

Cause of Action, #7 (New Compl.)........................................................................P. 84

        Damages & Legal Theory.............................................................................P. 91 & 92

Cause of Action, #8 (Recommenced with New facts)...........................................P. 95

        Damages & Legal Theory.............................................................................P. 100 & 101

Cause of Action, #9 (Recommenced with New facts)...........................................P. 102

        Damages & Legal Theory.............................................................................P. 104 & 105

Cause of Action, #10 (New Compl.)......................................................................P. 112

        Damages & Legal Theory.............................................................................P. 117 & 118

Cause of Action, #11 (New Compl.)......................................................................P. 132

Damages & Legal Theory..............................................................................................................P. 143 & 144

Cause of Action, #12 (New Compl.)...............................................................................................................P. 161

Damages & Legal Theory..............................................................................................................P. 167 & 168

Cause of Action, #13 (New Compl.)...............................................................................................................P. 173

Damages & Legal Theory..............................................................................................................P. 179 & 180

VI Summary...............................................................................................................................................P. 192

VII-Demand for Compensatory Relief Case Law........................................................................................P. 193

VIII  Certification.......................................................................................................................................P. 202

## I  Preliminary Statements

1) This case is brought against The State University School Officials (and others) on numerous violations of civil right, and of violating federal and State, civil and criminal laws rules and ordinance, against plaintiff. In summation, this complaint, as it is, is NOT only intended as a lawsuit against all defendants on the eyes of the jurisprudence, only intended as TRUS STORY. Therefore thus for all readers that may be interested in understanding; as to how school officials inflict injuries to students, the way they hide their wrongdoing, though the ability is available to them, immunity and others; furthermore, how these actions that can lead to tragedies; thus, the intent of the plaintiff, and his professionals, supporters are to create awareness though the insertion of this complaint, regardless of its effect.

2) These wrongdoings were/are against plaintiff through the period of over three to four years; where each suit of action (COA) have contributed/causing plaintiff's permanent life threatening personal injuries, (See Exhibit A).

   a. Please note, that these intentional and organized harms (resulting in lifelong injuries), asserted in this complaint, were committed by all defendants herein, as custom, against plaintiff; furthermore, these wrongdoings have been considered by experts (See Exhibit A); as "*possible bullying*" from the part of SUNY school officials; that may lead to "*school violence*". Nevertheless, the same experts are discounting plaintiff as being a "menace to others", (please note, plaintiff is expecting a new more complete report from St Vincent Hospital Doctors, after this complaint [and its supporting evidence] final version is facilitated to them).

   b. Moreover; these same experts have stated that, "based on their experiences, in dealing with student, (as the plaintiff's case herein), where..."in positions like this, where a scholar has been exposed to severe abused by school officials, and for thus long...'in nine out of ten cases, a violent action (possible school violence) would accept been taken place".

3) Plaintiff brings this recommenced and new complaints, [where it is directly interrelated to the Assoc. Compl. Case #13-CV-2586, (See section II Procedural History)] against ALL defendants acting under the color of the state law, in their individual capacity; where ALL defendants and non-defendants (*parr.* #50 is adopted) have engaged in invidious, discrimination, retaliation, persecution, bullying, premeditated harassment and held back (See COA #11 &12) against plaintiff, depriving plaintiff of his civil rights, guaranteed by the US Constitution. Where, Defendants' intentional illegal actions have caused plaintiff's permanent academic harm, severe exacerbation of his disabling spinal injuries, and permanent disabling

mental illness, THESE ARE IRREFUTABLE FACTS, (See Exhibit A).

4) Plaintiff is 54 years old, Hispanic male, a qualified "*partially-permanent disabled*" person, under the Social Security Disability Administration (SSDA), as defined by 42 U.S.C. Sec. 12131 (2), and Section 504 of the Rehabilitation Act of 1973 29 USC Sec (701-796); furthermore, under NYS workers' compensation law. (See Exhibit B). Hence, plaintiff is a member of a "*Protected Group or Class*" of persons.

5) Plaintiff's injuries are of mobility (locomotion) spinal nature, (cervical and lumbar), "neck injuries [which] prevent him from using his hands and arms normally (injuries that produce chronic pain and routinely spasms, life threatening)". His lumbar injuries prevented him for being in one position for more than 10 to 20 minutes at the time. These lumbar injuries are too painful and disabling, but not life threatening, as his cervical injuries are. For reasons stated below in this complaint, plaintiff has suffered severe aggravation of said spinal injuries, in addition, his new mental disability, Post-Traumatic-Stress-Disorder (PTSD). PTSD, is a disabling injury/illness, as determined by the Social Security Disability Administration, and a qualify illness for disability benefits. The plaintiff's temporary address is: 110 N 3rd Ave, apt 2M Mount Vernon, NY 10550. Plaintiff was born in Santiago-Chile in 1959. He the first immigrant of the Morales' family. His sole nationality is a US citizen today. In summation...

> Please short letter, a COA, for the use of this new and recommenced complaint, is an actual single complaint; with its own Facts, Demand and Legal Theory, (where some legal theories are taken to other COA).

6) The plaintiff's injuries are the <u>direct</u> result of the damage inflicted by each defendant and other state actors; as stated in each cause of action (COA). The plaintiff's injuries, (at the hand of the defendants undue grossly negligent actions, whether by direct activity or by contribution of ALL defendants)... have accrued after the Amend. Assoc. Compl. (See Exhibit A). Nevertheless, as Doctors have stated, "the onset or origin of the injuries have taken home with first discriminatory event," (at COA #1).

7) Plaintiff's injuries are life threatening health problems that were NOT stated in the Assoc. Compl. Since they were not accrued. Furthermore, plaintiff and other supporters of plaintiff's causes, have encountered new facts, based on new-prior documentation that was not available for/in Assoc. Compl... Adding plausibility to his claims.

8) As said above, ALL COA are directly related to the Assoc. Compl. 13-CV-2586); however... Plaintiff herein, asserts personal injuries; of aggravation of his partial-permanent-disabling spinal injuries (due to the stress plaintiff has been put upon though the years of abuse by the defendants) and Post-Traumatic

Stress Disorder or PTSD, (PTSD, is a disabling illness under Social Security Disability). That is, plaintiff now can be classified by US Social Security Disability Office as PARTIALY-PERMANENT-MENTALY-DIASABLED (by defendants' intentional wrong-doing); In addition to his irreparable physically partially-permanent-disabled.

9) Complainant has sought "EXPERT OPINION". these opinions, are statements of processionals, with expertise in the fields of Medicine (Medical doctors and Psychiatrist), Social Worker (licensed therapist), Legal Organizations, (The *Legal* Aid Society, Westchester Coalition-*Legal*, Latino for Justice and the National Civil Liberty Union of NYC). Attorneys, School Staff, Professors and Members of the Church.

10) Because of the so obvious and disturbing of these defendants' wrongdoing, (discrimination, retaliation, bullying, harassment, persecution and history of abusive conduct and misuse of power) of all defendants against plaintiff and other students… St. Vincent Hospital has determined to intervene on behalf of the plaintiff, in addition to the history of abuse of Purchase College officials has with said Hospital.

11) The conclusions of the St. Vincent Hospital and other "Expert Opinion", (including, but limited to plaintiff personal Doctor) to interfere in this instance, is to assert plaintiff's medical harm; however, primarily to get others aware that the behavior, as these school officials have enacted as personal policy, can bring tragic outcomes, such as "school tragedies" and even "school violence," (See Exhibit A). For this reason, plaintiff respectfully asks this court to involve special consideration to the medical condition of the complainant, to further expedite a resolution to plaintiff's plea.

Expert Opinion: "a patient suffering from any disabling live injury (causing chronic pain), is by itself the source for depression; however, if this already disabled person is intentionally inflicted with so much emotional pain, that leads to Post Traumatic Stress (permanent emotional pain)… the patient very existent may become a burden for him, thus the ideation of non-existent is a possibility".

## II Procedural History

12) During the summer of 2011, plaintiff requested readmission as a student at SUNY Purchase College, (See COA #1).

13) In between the year 2011 and 2013, plaintiff was exposed to severe deprivation of his civil rights by Purchase College school officials, in invidious, discrimination, retaliation, persecution, premeditated

harassment and bullying (all COA). Plaintiff filed numerous complaints, during those years, with the US Dept. of Education for violations of his Civil Right, (OCR). Plaintiff also helped many other students from the same school (especially, Hispanics and African Americans to file OCR complaints). Complainant was also premeditated, unconstitutionally, falsely criminally charged and checked (See COA #11 &12).

14) During that time, plaintiff also filed with Purchase College and SUNY several (at least three) notices of claim, including all defendant herein and in the Original and Amend. Compl.

15) In April of 2013, plaintiff was suspended from said college, just two weeks from his last on-campus semester before graduation, (See COA # 9). Please short letter, the plaintiff was expected to attend Law School in September of the same year.

16) On April 18, 2013, plaintiff a request for injunctive relief *"**in forma pauperis status**"* (court's fees waived due to low income) with this Court. With this, plaintiff filed his complaint naming; Defendants; Melissa Jones, Ernie Palmeiri, Thomas Schwarz, Purchase College, and The State of NY.

Please note that with plaintiff's Compl. Plaintiff filed more than 30 exhibits, is support of discrimination, retaliation, persecution and other.

17) The same day this court issue a restraining order against Def. **Melissa Jones, and plaintiff were permitted to attend classes.** The court also ordered the Purchase College to show cause, scheduling a hearing for April 4th.

18) The same day, the Court clerk issue two subpoena, for Def. **Danielle DaGosto, and plaintiff's academic adviser, Mrs. Kathleen Ceng to appear at the auditory modality.**

19) On April 22, 2013, The State attorney Office, filed notices of appearance, by Ass. Attorney. Gel. **Katherine Bradley Dirks**.; filing a motion to dissolve the TRO.

20) On April, 24, 2013, State Attorney, Mr. **Michael Klekman,** file several depositions from several school officials in support of the State.

Please note, that most statements in said depositions were false and misleading, and now part of this lawsuit.

21) Around the same time, State Attorney, Mr. Michael Klekman, and State Attorney. Gel. **Katherine Bradley Dirks**, prevented def. **Danielle DaGosto, and plaintiff's academic adviser, Mrs. Kathleen Ceng to**

**appear at the auditory modality.** But requested Melissa Jones to appear in courtroom. This is later discussed in this complaint.

22) Plaintiff's injunctive relief was denied, and the TRO was dissolved, despite of the overpowering evidence of wrongdoing from the portion of the defendants; a clear bench pro-see bias action from the Court.

23) In August, 2013, plaintiff filed his amended complaint (not well plead) adding several additional defendants.

24) In October, 03, 2013, Ass. Attorney. Gel. Mrs. Michael Klekman was granted leave to lodge a motion to dismiss on behalf of the defendants cited in the Amend. Compl. With the verbal understanding that, "the state was Not contesting ALL of plaintiff complaints" and that "the nation was working to compensate for the damages"; as submitted on the record by Judge, Roman.

25) On January 11, 2014, Def. **Melissa Jones** issued 29 pages false report, and sent to at least eight SUNY and other Universities. All denied admission, (See COA #13).

26) In April, 17, 2014, Ass. Attorney. Gel. Supervisor; Mrs. Monica Connell, relieved Ass. Attorney. Gel. Mrs. **Michael Klekman** and filed a motion to dismiss plaintiff's entire Amed. Compl, requesting immunity for All defendants, Thus, changing the state earlier position, see *parr*, #49. (It is unclear why the Court allied that unprofessional, bias and disgusting move).

27) On May 22, 2014, the plaintiff' complaint was ignored; however, allowing room to charge a new recommenced complaint.

28) In the same judgment, the court also precluded plaintiff from filing an appeal, stating:

"*The Court certifies pursuant to* 28 U.S.C. § 1915(a), (3) *that any appeal from this Opinion and Order would not be taken in good faith and, therefore,* **in forma pauperis status** (court's fee are waived) *is denied for purpose of an appeal*".

29) On June 30, 214, plaintiff's request for a pre-motion conference for second amend. Compl. Was denied; however, the court re-direct plaintiff to file a new complaint, as remedy. Please note, that during ALL legal procedures associated to this Assoc. Case, not all requests for motion, injunctions were denied to the plaintiff (not including pre-motion conferences).

Please note, that during the time plaintiff file his amended. Compl. And the court's dismissal of the case,

the plaintiff suffered several additional discrimination, retaliation, defamation, arrest, and the permanent onset of his injuries

### III Jurisdiction.

30) This Court has jurisdiction over this action under 42 U.S.C. § 12188 (b) (1) (Band 28 U.S.C. § 1331 and 1345. This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. § 2201-2202 and authority to grant equitable, monetary damages, and civil penalties under 42 U.S.C. § 12188 (b).

31) The jurisdiction of this court arises 1) under 15 U.S.C. § 1681p and 1692k (d) And 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. § 2201. 2) Under the laws of the United States of America, Civil Rights Act of 1991, 42 U.S.C. § 1981a; 3) The Privacy Act. Of 1974 5 U.S.C. § 552a. 4) In compliance with FROCP & 42 U.S.C. § 6104 (e). (5) Pursuant to the provisions of Title VII, 42 U.S.C. § 2000e-5 and § 2000e-16 (c), and (6) the general Civil Rights jurisdictional provisions of 28 U.S.C. § 1343 (a) (4).

32) This Court Supplemental jurisdiction, pursuant to 28 U.S.C. §1367. Over the State Law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

33) Defendants and Defendants' employees are a component of a scheme of public institutions, Higher education, SUNY, receiving Federal financial aid funds, therefore the Court accepts jurisdiction over a State title.

34) **Venue is proper**; all the relevant events occurred [ing] within the State of New York, Westchester County. The County, Westchester is located within this US Court, New York Southern District Court. Plaintiff's Federal and State Law claim against the Defendants derive from the constitutional issue, Federal Laws, facts, and are of such character that Plaintiff would ordinarily be expected to try them in one separate judicial proceeding pending Federal civil action pursuant to 42 U.S.C. § 6104 (e) (1).

### IV Parties

35) When a public official is sued in an official capacity, generally the place where the officer performs his official duties is regarded as his residence for purposes of venue. See, 15 C. *Wright, A. Miller, and E. Cooper,* Federal Practice and Procedure, § 3805 (West 1999). *Parr.* #50, is hereby adopted.

36) Defendants: Kyle Saud, Louise Yelin, Ernie Palmeiri and Lois Wald… All are Employees of SUNY Purchase College; with address at 735 Anderson Hill Rd Purchase, NY 10577, with general telephone: (914) 251-6000.

37) Defendant, Purchase Colleges, is a part of a system of public institutions of higher Education at State University of New York (SUNY) a public school and a FEDERALLY ASSISTED PROGRAM INSTITUTION. With address at 735 Anderson Hill Rd Purchase, NY 10577 with general telephone: (914)

251-6000. Purchase College is an integral division of SUNY, thus, of the State of New York.

38) Defendant Westchester County D A's office (Purchase, branch). The District Attorneys are public (persons) official elected by the residents of Westchester county to investigate and prosecute offenses committed within that county. The District Attorney, who is the chief prosecutor, has a four-year term of office. Assistant district attorneys are lawyers who have been nominated by the District Attorney to investigate and prosecute crimes. Such a person is a public officer as determined by New York State law and must be both a citizen of the United States and a resident of New York State.

39) Defendant Westchester County, NY. Is one of 29 counties in four lands that establish up the New York City Metropolitan Area. The county holds a legal destination for legal operations of: Attn. Carol Arcuri, Assistant Chief Deputy County Attorney, Westchester County Attorney's Office, 148 Martine Avenue, White Plains, NY. 10601. (914) 995-2660.

40) Defendant, the Town of Harrison, NY. Is governing body of the Town of Harrison, local or district court. The court has preliminary jurisdiction over all offenses and tribal jurisdiction for violations and petty crimes. The Town of Harrison Justice Court Judges is town elections official.

41) Defendant Danielle DaGosto, is Executive Director of Academic Programs at SUNY Purchase Colleges. The College is part of a scheme of public institutions of higher Education at State University of New York (SUNY) a public school and a FEDERALLY ASSISTED PROGRAM INSTITUTION. With address at 735 Anderson Hill Rd Purchase, NY 10577, with general telephone: (914) 251-6000.

42) Defendant Davis Mobley, is or was a police officer / investigator for the university police at SUNY Purchase Colleges. The College is part of a scheme of public institutions of higher Education at State University of New York (SUNY) a public school and a FEDERALLY ASSISTED PROGRAM INSTITUTION. With address at 735 Anderson Hill Rd Purchase, NY 10577 with general telephone: (914) 251-6000.

43) The defendant, John Doe, is or was a police officer/investigator for the university police at SUNY Purchase Colleges. The College is part of a scheme of public institutions of higher Education at State University of New York (SUNY) a public school and a FEDERALLY ASSISTED PROGRAM INSTITUTION. With address at 735 Anderson Hill Rd Purchase, NY 10577 with general telephone: (914) 251-6000. Please note this officer acted in conjunction with officer and defendant David Mobley.

44) Defendant Melissa Jones, (the MAIN tortfeasor); is or was a Director of Community Standards for Purchase College, State University of New York (SUNY); located at 735 Anderson Hill Rd Purchase, NY

10577, (914) 251-6000. DEFENDANT IS THE MAIN STATE ACTOR IN THIS COMPLAINT.

45) Defendant, Sheryl Secor, is or was the director of t registrar office at SUNY Purchase College, located at 735 Anderson Hill Rd Purchase, NY 10577, (914) 251-6000.

46) Defendant Sandee Maung, was an Assistant Director of Community Standards at SUNY Purchase Colleges. The College is part of a system of public institutions of higher Education at State University of New York (SUNY) a public school and a FEDERALLY ASSISTED PROGRAM INSTITUTION. The College is sited at 735 Anderson Hill Rd Purchase, NY 10577 with general telephone: (914) 251-6000. Defendant now is engaged at the university community standards, at SUNY Stony Brook, Stony Brook, NY. Room 347, Students Affairs Build. Telephone (631) 632-6705.

47) Defendant Anne MacCall. The defendant is the dean of Arts and Sciences of "*Harpur College*" at Binghamton University (SUNY). **Mailing address:** Harpur Dean's Office, Binghamton University (SUNY), Binghamton, NY 13902-6000 Phone: (607) 777-2145.

47a) Defendant, Qui-Qui Balascio, is Assistant Dean of Student Affairs Purchase College, State University of New York (SUNY); located at 735 Anderson Hill Rd Purchase, NY 10577, (914) 251-6000. DEFENDANT IS ONE OF THE MAIN STATE ACTOR IN THIS COMPLAINT.

47b) Defendant, Mr. Walter Butler, is a supervisor (chief) of Purchase College University Policy. His address is SUNY Purchase College, settled at 735 Anderson Hill Rd Purchase, NY 10577, (914) 251-6000.

## V   Complaints
## (13 Causes of Actions)

**Foreword:**

48) Conclusory statements asserted in this document, are the statements congregated form "EXPERTS". These statements MUST (respectfully) be considered VALID on its expression. Furthermore, some of these statements are herein attached as "Exhibits". In summation, these assertions are required to be rehearsed by "The Experts" in a trial by jury, if required. Moreover, the plaintiff is the first immigrant of his household in the USA since he was only 17 yr old; he is too honorable, spiritual, educated and intelligent (despite of his injuries) thus, the Court MUST (respectfully), analyze his opinion, as the thought of an adult with enormous social constructive life experience. Furthermore, plaintiff, first hand, endured and

saw the suffering of other  students at the SUNY schools, and the abused these school officials named herein, as conductor the custom of retaliatory bullying, outside their institutional responsibilities; as experts have said, have inflicted to them; as it passed to the plaintiff. Therefore, this court MUST not attempt to help, cover or manipulate situations, with the only aim to protect a "tradition", that inevitably (unintentionally) may contribute to the protection of criminal activity (such as "school violence [see exhibit A]).

49) Plaintiff is NOT suing any of these defendants for injunctive or prospective relief; since first and most; Plaintiff cannot seek education, due to his medical condition, (see Exhibit A); that is, plaintiff's aggravated medical condition, (injuries) will preclude him from ever/never going back to school. Hence, the plaintiff sues ALL defendant, and non-defendants, parties (*parr*, #50 is adopted) acting under the color of the state law in their individual capacity, for monetary damages where, mainly for discrimination, and organized-retaliatory-bullying; intentionally inflicted upon plaintiff, as "*sheer indifference*" to plaintiff's disability and/or "*deliberate indifference*" to plaintiff's serious medical needs. See, <u>Fourth Circuit Law</u>: In ***Cooper v. Dyke,*** 814 F.2d 941 (4th Cir. 1987).

   a. Furthermore, these defendants and non-defendants (*parr*, #50 is adopted) named herein, are/were professional, many with PhD's; that is, these defendants and non-defendants, are/were above the rational of an ordinary-common person, their rational is expected to be of a higher standard.

   b. Where the deprivations of plaintiff's right and privilege, and where their violations of the law were notified to them and/or their supervisors the law was clearly established at the time that the deprivations took place; in summation, since these state workers were/are "reasonably competent public well-trained official", they should [have] known [n] the law governing his conduct." See, David v. ***Mosley,*** 915 F. Supp. 776 (E.D. Va. 1996) (**citing *Harlow,*** 457 U.S. at 818-19), *aff'd,* 103 F.3d 117, 1996 WL 680723 (4th Cir. 1996).

   c. Hence, these defendants and non-defendants (*parr*, #50 is adopted) named herein, deprivations of rights and privileges to plaintiff were "*plainly incompetent*" or they "*knowingly violating the law,*" See, ***Malley v. Briggs***, 475 U.S. 335, 341 (1986).

   d. In accession, where, "the identical actions of this estate actors (acting in their individual capacity) in question has previously been viewed as unlawful, but it is to say that in the light of pre-existing law, the unlawfulness was apparent," as facts asserted by plaintiff, and his supporting evidence is so eloquent and per-se. See, ***Anderson v. Creighton,*** 483 U.S. 635.

e. Hence, when there is NOT a logical doubt as to whether the official's conduct constituted a constitutional violation, and injuries to plaintiff; See, Harlow v. *Fitzgerald,* 457 U.S. 800 (1982); *Wiley v. Doory,* 14 F.3d 993 (4th Cir. 1994).

f. In summation, these defendants and non-defendants' (*parr,* #50 is adopted) named in this complaint, are/were well-trained public official, who performed wrongful acts, "clearly established to be beyond the reach of his discretionary authority," In re Allen, 106 F.3d 582 (4th Cir. 1997).

g. Furthermore, these reasonably well-trained (above the rationality of an ordinary common person) "school officials would did know that their actions violated plaintiff's right" and privileges and the injury to plaintiff would have been imminent. See, **Gordon v. Kidd**, 971 F.2d 1087, 1093 (4th Cir. 1992); *Collinson v. Gott,* 895 F.2d 994, 998 (4th Cir. 1990).

h. In addition, these defendants and non-defendants (*parr,* #50 is adopted) did know by facts that plaintiff was member of a protected class, hence, the *"evidence (per-se) of improper motive is an essential element of the plaintiff's affirmative case where the primary focus is in fact, was animus directed"* at the plaintiff; also *"an intent to disadvantage all members of a class"*, that includes plaintiff, or *"to deter public comment on a specific issue of public importance"*. See, **Id.**; *Washington v. Davis,* 426 U.S. 229 (1976).

i. Additional "case-law" concerning damages and the application of such... please see part VI of this ailment.

50) Complainant in this initial recommenced Compl, and in good faith, does not name or rename some defendants named in the Assoc. Amd. Compl. 13-CV-2586; however, they are a part of this Complaint as non-defendants to invoke their wrongful actions, to add plausibility to plaintiff's claims; where their wrong doings are subject to the compensatory damages, light that... under NY State law, the State must compensate for the damages of its state actors or school officials, even when said actors acted in their under the color of the state laws, in their individual capacity. Nonetheless, plaintiff reserves the right to rename these school officials -on a matter of legal philosophy- as defendants in a subsequent Amd. Compl, if necessary.

51) Defendants named herein, this recommenced new complaint are named for wrong doing again plaintiff occurred after August 26, 2013 (Filing date of the Assoc. Amd. Compl. 13-CV-2586), thus, are new claims, or properly restated claims. In other words, Plaintiff is asking the state to allow it, to be suit on

behalf of its state actors; whether their wrongful acts were perpetrated on an official capacity and/or individual capacity, prior or new claims. Furthermore, the plaintiff is in possession of new facts, that shall add light at "personal engagement"; this shall be hashed out in each recommenced and new activities.

52) If this new and recommenced complaint is first read by Judge Roman, plaintiff strongly recommends him to read new COA #13, that shall, per-se, add plausibility to the "personal engagement". For all other readers… especial attention MUST be set to the new Cause of Action #13; where FALSE statements [per-see] were made by Defs. Ms. **Melissa Jones**, Mr. **Ernie Palmeiri** and Ms. **Sandee Maung**, with the supervision of def. **Qui-Qui Balascio** and **SUNY** Attorney, Mrs. **Wendy Ravitz (Kowalski);** in against plaintiff in 29 page fax sent to at least eight SUNY Universities).

   a. <u>Please note</u>, as experts have stated, these school officials (Defs. Ms. **Melissa Jones**, Mr. **Ernie Palmeiri** and Ms. **Sandee Maung**, with the supervision of def. **Qui-Qui Balascio** and **SUNY** Attorney, Mrs. **Wendy Ravitz)** involved in the intentional dissemination of FALSE documents, attest to the St. Vincent Hospital theory, that ALL hardship inflicted, was the product of discriminatory personalities (personal thinking) an <u>organized retaliatory bullying</u>, and most provably as part of a Custom.

   b. <u>In summation,</u> this court MUST allow some written emotions, (use of words or phrases that make look "offensive", nonetheless, they are nil but the truth) as part of the complaint, from the character of the plaintiff---for obvious causes.

   c. This court MUST (respectfully) realize that plaintiff is 55 years of age (in October), intelligent, with remarkable life experience; furthermore, first immigrant, and even-more, due to plaintiff's, now double disability, his very life is at stake here in this example. Hence, plaintiff hereby, respectfully, request this court to treat plaintiff with respect, by applying equal rights to due process of the law, in his pursuit for justice. Furthermore…

   d. As applies to ALL COA; intentional wrongful acts that make a life threatening injuries, are, on-its-face, GROSS NEGLIGIENT. In addition…

   e. To avoid excessive repetitive readings of same rational use in different COA; hence, the plaintiff incorporates ALL legal theory where an equally effective rational as COA #4, is used as a model; However, plaintiff does repeat some rational, so the reader does not lose track of what the reader is reading. In addition…

f.  This is comprised of 13 causes of action (COA); equal to 13 individual lawsuits. Hence the plaintiff asserts approx. 13 page per complaint. This is more than reasonable under Rule 8. In addition, a Pro-see, plaintiff; where a "heighten standard" of pleading is needed for plausible issues, and furthermore, to reduces "bench Pro-see bias"; which has been so evident in this case.

52a) plaintiff here in ALL COA has heightened his pleading standards, even though litigants operate under notice pleading rules in federal tribunal, "there still must be sufficient facts pleaded to allow the court and the defendants to understand the gravamen of the plaintiff's complaint." Doherty v. *City of Chicago,* 75 F.3d 318, 325 (7th Cir.1996). See *Brazdo v. Illinois Dept. of Professional Regulation,* No. 94 C 134, 1997 WL 403500 (N.D. Ill. July 15, 1997).

**Cause of Action, #1** (Recommenced with new facts):

Facts:

53)The statements in *Parr.* 3, 5, 9, 48, 51, 52 & 52a) are adopted herein…

54)This COA plaintiff asserts civil right violations against plaintiff, by conducting an unrequested, bias psychological evaluation, as a prerequisite for access to SUNY Purchase College; and further issuing a medical report for other school officials to scrutinize. Plaintiff sues; defendants: **Purchase College,** Mrs. **Qui-qui Balascio** and **Mrs. Lois Wald'** (a Psychologist).

55)Approx. During the 1999, plaintiff attended SUNY Purchase College, for one summer and withdraws the next for personal reasons; plaintiff was going through a bitter divorce.

56)On or about May 2011 (school summer school term), Plaintiff requested readmission to register office at the SUNY Purchase college for the summer 2011 session. Plaintiff was direct from Mr. John Taylor to the school clinic to realize a "Flag"., where the flag originated. Complainant did not know why the said flag was initiated.

57)During the same week, plaintiff went to the clinic to request to clear flag; however, the plaintiff was redirected to the counselling center at SUNY Purchase College.

Please note, the clinic (for medical causes) has links to the counseling center (for mental causes) at Purchase College. The flag preventing plaintiff from registering for classes, was for medical reason at the clinic. The clinic was responsible for the removal of said flag.

58) <u>On the same day,</u> plaintiff went to the counseling center; he was to make an appointment to have Psychological evaluation, as prerequisites for readmission. Plaintiff complained to the attendant, why he was being required for an evaluation.

59) <u>On or around the same week Plaintiff briefly met Chief psychologist (no name on file) and no longer working at Purchase College.</u> At this meeting, Plaintiff asked why he (Plaintiff) was being arbitrarily (differently; treated differently that other students situated in the same situation) interviewed.

60) The Chief Psychologist (no name on file, and no longer an employee of Purchase College) put forward, "all returning students must be psychologically evaluated, especially older (age discrimination) persons since they (assuming the school) want to know if the returning student had a mental disorder, such as bipolar disorder". Complainant indicated that…"he was being singled out, and that was illegal" and that he should not conduct the evaluation, in summation, the flag was at the clinic and the counseling center has zero to do with it.

<u>Please note:</u> that such evaluations are neither the written policy of Purchase College, nor the policy of the State University of New York (SUNY).

61) <u>On or around the same week Plaintiff was sent to have a Psychological evaluation with Defendant, School Psychologist Mrs. Lois Wald, (a Defendant in the associated case 13-CV-2586.</u> Not a Defendant in this action).

62) This evaluation was against Plaintiff's consent. **Mrs. Lois Wald conducted a 20 minute interview (or an unconsecrated evaluation), in which Plaintiff expressed his discontentment for the valuation, by repeatedly stating to Mrs. Lois Wald, that "he considered the valuation to be bias and discrimination".**

63) He, further, stated to Mrs. Wald, that he was in the paint due to the strain induced by the discriminatory action, since he was disabled to his spinal injuries.

64) That week, Mrs. **Lois Wald (**a Psychologist and not a defendants herein) issued an unauthorized and misleading report about the plaintiff to def. Mrs. **Qui-qui Balascio** and in term to other school officials.

65) <u>On or about the same week,</u> after the "evaluation", Mrs. **Qui-Qui Balascio** from student affairs, read the report issues by Lois Wald, with-out plaintiff's consent.

    a.  <u>Please short letter,</u> the plaintiff has strong reasons to believe, Mrs. Lois Wald may have mistakenly

confused plaintiff's discomfort (Unger) for being discriminated, his chronic spinal pain (also created by the stress caused by the discrimination), and plaintiff's different social construction... as plaintiff having bipolar disorder. This commonly an issue caused by poor life experience in different cultures and also social paranoia. This is the reason that Psychology is not a recognized as a science (subjective). Ignorance may also call for an unprofessional action like this.

b. <u>Please also note</u>, that St Vincent Hospital and current Psychiatrist and Therapist, have definitely ruled-out (R/O), plaintiff bipolar diagnosis.

c. <u>Please also note,</u> that schools commonly look for excuses to classify student that "*do not fit the student profile*" (see COA #3), or are not like them; thus, commonly mistaking different social constructions (races or social groups) personalities, as psychologically unfit; hence, labeling them, with unqualified diagnose, that cause irreparable stigma and subsequent persecution and/or discrimination against those the student. Expert Opinion.

66) Def. Qui-Qui Balascio pronounced "she read the report (evaluation)", and that ALL returning students must pass a psychological evaluation (policy).

a. <u>Pease note that,</u> such policy does not exist at Purchase College and/or any other SUNY College, therefore rendering this unwritten policy, a "personal preference" of the defendants herein. Furthermore...

b. <u>Please note that,</u> plaintiff has received strong signals from other school official that opposes these discriminatory actions; since plaintiff is from the Hispanic nature, may have played a role for his signalized or targeting for a bias evaluation; RACIALY MOTIVATED.

67) <u>On or about September of the same year, Plaintiff filed a charge with the school's affirmative action officer, Mrs. Michelle Baptiste (Attorney, grievance and affirmative action officer) for proper investigation of discrimination.</u> Mrs. Baptiste, upon several requests from Plaintiff, never provided Plaintiff with the outcomes of the probe. Complainant had filed several violations of civil rights with the US dept. of Education civil rights unit (OCR), (see exhibit C), where no findings and ALL administrative actions has been depleted.

<u>Please note</u> that plaintiff, by filing a complaint with Mrs. **Michelle Baptiste** (Attorney, grievance and affirmative action officer), the plaintiff may not file a complaint with any state or federal agency.

Damages: (May Look Repetitive In Other COA):

68) *Parr.* #2, & 4 through 11, are hereby adopted…

69) As a result, defendants;, Mrs. **Qui-qui Balascio** and Mrs. **Lois Wald** (a Psychologist and not a defendants herein), on behalf of Purchase College, University defendants; and all other individuals situated in the similar situation… personal involvement (bias and paranoid, against a member of a protected group [54 years old & disabled] due to their personal view)…

70) Plaintiff was treated differently than other students situated in a similar position.

71) These Purchase College officials knowingly in the practices discriminatory, personal policies Plaintiff was humiliated, suffered mental torture, emotional pain, and feeling of worthlessness (diminished), being persecuted, and stress contributing to physical pain.

72) Because of these discriminatory actions, (and other COA) under the advice of Plaintiff's academic advisers, Mrs. **Kathleen Chang**… Plaintiff on the fall semester of 2014 (2013) solicited counseling for depression and PTSD and depression in the counseling center of Purchase College.

73) This treatment was interrupted and terminated with the Plaintiff's illegal suspension in April 2013. Furthermore, these personnel policies and wrong full action enacted by def. **Purchase College** official, Mrs. **Qui-qui Balascio** and **Mrs. Lois Wald' (a Psychologist)**, have led and resulted in Plaintiff's current permanent personal injuries (see exhibit A).

Legal Theory:

74) As applies to defendants and non-defendants, parties herein, and where Def. **Purchase College** is incorporated… *Parr.* #48 through 52a, are hereby adopted.

75) For all uses of this COA (and ALL other COA, in this complaint), defendants deprivations of rights against plaintiff, as expressed herein; per-se, contributed to plaintiff permanent physical and mental wounds.

76) After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby states, "by the fact that all administrative and time limitations have been consumed and/or no administrative remedies—in good faith and no findings…

77) Plaintiff asserts that defendants: **Purchase College**, Mrs. **Qui-qui Balascio** and **Mrs. Lois Wald'** (a Psychologist), and all other individuals situated in the similar situation… "*Persons*", acting in their under the color of the law, in their individuality… violated and deprived plaintiff of his civil rights, and…

78)Furthermore, ALL parties invoked here in this COA, state actors, acting out-side their stand of duty towards the student-plaintiff.

79)Where, ALL parties invoked here in this COA, and their illegal actions, plaintiff asserts, were out-side their fiduciary duties, and against SUNY or the State of New York law and their public officers policies.

80)Furthermore, ALL parties invoked here in this COA, and their illegal actions, plaintiff asserts, were in direct infringement to their stand of duty owed to student-plaintiff, resulting in gross-negligence; in the intentional creation of disparate treatment and a hostile environment, with no substantial government interest, with the sole intent to discriminate against plaintiff. Furthermore…

81)ALL parties invoked here in this COA, have knowledge, plaintiff was/is part of a "protected class "receiving disability accommodation, and moreover…

82)Plaintiff asserts, that ALL parties invoked here in this COA, have a higher than the ordinary general person's education, thus, a higher intellectual, rational and a heightened (easy) valuation of wrongdoing is expected, knowingly depriving the plaintiff's civil rights, causing several mental anguish, humiliation and emotional pain. That in term added to his already health problems. Furthermore…

83)Plaintiff was treated differently than other students situated in the same situation, as to age, gender, sex, and sexual orientation concerns.

84)Nondiscrimination Policy of Purchase College…

*"Purchase College is committed to fostering a diverse community of outstanding faculty, staff and students, as well as ensuring equal educational opportunity, employment, and access to service, programs, and activities, without regard to an individual's race, color, national origin, religion, creed, **age**, disability, sex, **gender** identity, sexual orientation, familial status, pregnancy, predisposing genetic characteristics, military status, domestic violence victim status, or criminal conviction. Employees, **students**, applicants or other members of the Purchase community (including but not limited to vendors, visitors, and guests) may not be subjected to harassment that is prohibited by law or treated adversely or retaliated against based upon a protected characteristic"*:…... *"Purchase complies with all applicable federal and state laws and regulations prohibiting discrimination and harassment. These laws include the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973, Title IX of the Education Amendments of 1972, Title VII of the Civil Rights Act of 1964 as Amended by the Equal Employment Opportunity Act of 1972, and the New York State Human Rights Law. These laws prohibit discrimination*

*and harassment, including sexual harassment and sexual violence."*

Please see:

http://home.purchase.edu/Departments/humanresources/affirmativeaction.asp

Count I, (42 U.S. Code, Sec. 1983):

(General)

85) Plaintiff brings this action under; where defendants: **Purchase College**, Mrs. **Qui-qui Balascio** and **Mrs. Lois Wald'** (a Psychologist), and all other individuals situated in the similar situation... *"Persons"*, acting in their under the color of the law, in their individual...

86) Where their *personal and emotional belief (social paranoia), have created a personal involvement custom*, against a protected class (54 years old, disabled) to accommodate <u>personal discriminatory</u> belief of unjustifiable (not real) social paranoia, and...

87) In direct violation of SUNY anti-discriminatory policies and/or the State of New York "public officer" standard of duty, procedures and state and federal laws.

<u>Please note,</u> that the fact that plaintiff is from the Hispanic nature, may have played a role for his signalized or targeting for a racially motivated bias evaluation.

88) Plaintiff hereby, <u>respectfully,</u> rejects ALL 42 U.S. Code, Sec. 1983 rationale asserted by the presiding Judge Roman, opinion entered on May 22, 2014. (See Assoc. Case Doc 41, pp. 12 to 17); since the plaintiffs Amend. Compl, was not based under Sec. 1983, and "under the color of the law".

   a. <u>Furthermore,</u> plaintiff did not claim personal injuries in his Amend. Compl, (the injuries have not accrued by then); thus, not properly written as such. Hence, a proper ruling was not appropriate.

   b. <u>Additionally,</u> Judge Roman's construction of these constitutional claims were in the absence of plaintiff's personal injuries (gross negligence); thus, the facts and requirements as a proper Sec. 1983 claim would have required were insufficient to the Judge.

   c. <u>Moreover,</u> plaintiff contends that, if an unbiased ruling is sought, the judge should have a well plead complaint; hence, in the absence of such well plead complaint, no valid opinion should have had been constructed.

<u>Expert Opinion</u> has also stated that... "*Plaintiff is not a member of any superfluous, class or race, where others are better suited for better justice*"... <u>respectfully</u>.

<u>Count II, (42 U.S. Code, Sec. 1983):</u>

<u>(Title 18, U.S.C., Section 242)</u>

<u>(Deprivation of Rights under Color of Law).</u>

89) As applies to all state actors, (two or more) named herein this COA; *Parr*. #50, and all allegations in all Counts in this COA, are hereby adopted.

90) Plaintiff asserts that either by regulation, or custom the "*persons*" named herein in this COA, willfully deprive or cause to be deprived plaintiff of his rights, privileges, secured or protected by the Constitution and laws of the U.S. Furthermore...

91) Plaintiff contends that, either by regulation, or custom the "*persons*" named herein in this COA, willfully subjected or cause to be subjected plaintiff to different punishments, <u>pains</u>, or penalties.

92) The "*persons*", (two or more) named herein in this COA, acting under "*color of any law*" acted outside the boundaries or limits of their lawful authority; where their invidious and unlawful acts were committed while these school officials were contending or pretending to act in the performance of their official duties; where these "*persons*" who are bound by laws, oath, statutes ordinances, and/or customs.

<u>Count III, (42 U.S. Code, Sec. 1983):</u>

<u>(Title 18, U.S.C., Section 241).</u>

<u>(Conspiracy against Right).</u>

93) As applies to all state actors named here in this COA; *Parr*. #50, and all allegations in all Counts in this COA, are hereby adopted.

94) The "*persons*" (two or more), named herein in this COA, acting under "*color of any law*" conspired to injure (making ill) and persecute the plaintiff infringing in his free exercise or enjoyment of his right (all Counts herein, is adopted) or privilege secured to the plaintiff, by the Constitution or the laws of the United States.

<u>Count IV, (42 U.S. Code, Sec. 1983):</u>

(Title 18, U.S.C., Section 245)

(Federally Protected Activities).

95) As applies to all state actors named here in this COA; Parr. #50, and all allegations in all Counts in this COA, are hereby adopted.

96) The state actors named here in this COA, have a willful and knowingly caused and injury plaintiff or interfere or attempt to do so; where plaintiff an applicant for admission to Purchase College—a public school and public college, and participant in a program and/or activity receiving Federal financial assistance.

Count V, (42 U.S. Code, Sec. 1983):

(Civil Rights Actions (Matthew Bender), ch 16, Discrimination in Public Education [Civil Rights Act of 1964, Title IV,42 U.S.C. §§ 2000c through 2000c-9; as applies to this COA]); and;
(Equal Educational Opportunities Act of 1974, Title II, 20 U.S.C. §§ 1701-1758; as applies to this COA] PP 16.12, 16.19.)

(Age, Sex [gender] discrimination):

97) As applies to all state actors named here in this COA; *Parr.* #50, and all allegations in all Counts in this COA, are hereby adopted.

98) Please note that age discrimination at Purchase College has been always been intended to "*males'* only; as witness shall testify. That is, older and/or members of a protected female class are considered targets for social paranoia based adverse action/ and/or are considered "*they do fit the student profile*", (See next COA, for the "*do not fit the student profile*" is, as stated by Chief of Purchase College University Police, Mr. Walter Butler, and several other UP officers).

99) Plaintiff was exposed to an unconsented Psychological evaluation as a condition for readmission to Purchase College, solely for his age and sex (gender), *parr*, 60 & 94 are adopted.

100) Plaintiff hereby asserts violations of: "Section 6102 of the Age Discrimination Act of 1975, which prohibits discrimination on the basis of age under any program or activity that receives federal financial assistance. 42 U.S.C. § 6102, pursuant to the regulation at 34 C.F.R. § 110.39; 34 C.F.R. Part 110; and 45 C.F.R. Part 90.1., and 45 CFR Part 617, and its implementing regulations (45 CFR Part 90) which applies to public and private institutions that receive federal funds.

101) Furthermore, 34 C.F.R. § 110.2 (i) Provides any benefits or assistance to persons based on age; where,

(ii) Establishes criteria for participation in age-related terms; or where, (iii) Describes intended beneficiaries or target groups in age-related terms.

(Title IX of the Education Amendments of 1972)

102) *Parr.* #98, is incorporated.

103) As applies to all state actors named here in this COA; *Parr.* #50, and all allegations in all Counts in this COA, are hereby adopted.

104) Title IX of the Education Amendments of 1972 prohibits gender (*Parr.* #98, is adopted) discrimination in education and in higher educational programs and activities receiving federal funds. 20 U.S.C. §§ 1681-16 § 106.15

(Admissions to Educational).

105) Plaintiff asserts violations of 34 C.F.R. §§106. 16 and 106.17, and subpart C, each administratively separate unit shall be deemed to be an educational institution.

106) A recipient to which subpart C applies (Purchase College), shall not discriminate on the basis of sex (gender, *Parr* #98 is adopted) in admission or recruitment in violation of that subpart. 88 (2000)... Defendant herein, by placing a condition (a psychological evaluation) to the plaintiff, conspires to deprive plaintiff of equal right to admission to Purchase College, by placing an undue burden to the prospective student; as a direct result, plaintiff suffered damages.

107) The deprivation, as policy, regardless of whether plaintiff was later allowed to pursue an education at Purchase College DOES NOT emulate the defendant's discriminatory actions.

108) The deprivation, as way of conduct and custom, existed by putting a condition to plaintiff for admission to Purchase College; due to that deprivation, plaintiff was unconnectedly psychologically evaluated.

109) If the deprivation would not have existed, then plaintiff emotional distress-damages would not have existed for this COA.

110) Plaintiff asks the Court to construct a legal theory that most suits this rational, in light plaintiff is representing himself *(Pro-See),* as to/in the best interest of the injured party.

Count VI. (42 U.S. Code, Sec. 1983):

(Fourteenth Amendment).

   (Equal Protection)

111)As applies to all state actors named here in this COA; *Parr. #50*, and all allegations in all Counts in this COA, are hereby adopted.

112)The Fourteenth Amendment is violated when state officials acting in the power of the state law and act in contrary to such law—have treated differently a member of protected class—of non-discriminatory practices are allowed

113)Defendants: **Purchase College**, Mrs. **Qui-qui Balascio** and **Mrs. Lois Wald'** (a Psychologist), and all other individuals situated in the similar situation… "*Persons*", acting in their under the color of the law, in their individual… "*persons*", acting in their under the color of the law, in their individual and official capacity conspire to deprive plaintiff of his Fourteenth Amendment to the U.S. Constitution, adopted in 1868, declares that no state may deny any person the "*equal protection*" of the laws, where: these state actors have no "*appropriate governmental interest suitably furthered by the differential treatment,*" and "*When an important personal right,  such as public education  and property interest is affected; the government entity must show not only that there is, and, but also that there is "a real and substantial relationship between the classification and the governmental purpose which it purportedly serves.*"

114)Recent case law supports the plaintiff claim herein that, the principle that some type of class-based discrimination must be alleged in order to state an equal protection claim under 42 U.S.C. § 1983. *See Herro v. City of Milwaukee,* 44 F.3d 550, 552 (7th Cir. 1995*); Albright v. Oliver*, 975 F.2d 343, 348 (7th Cir. 1992*); New Burnham Prairie Homes v. Village of Burnham,* 910 F.2d 1474, 1481 (7th Cir. 1990). Plaintiff was placed upon an unconsented psychological evaluation, just because of his sex and age, (parr. #98 is adopted). In addition…

115)An emerging body of case law starting with *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995), and reaffirmed recently in *Olech v. Village of Willowbrook,* No. 98-2235, Slip Op. (7th Cir. 11/12/98), recognizing an admittedly uncommon and unusual kind of equal protection claim "when disparate treatment is based upon sheer maliciousness, animosity or spite toward a single entity or individual unrelated to any legitimate state interest. Under these circumstances, a "class of one" may bring a section 1983 equal protection claim.

116)In an opinion written by Judge Posner, the *Esmail v. Macrane*, the court stated that "If the power of government is brought to bear on a harmless individual merely because a powerful state or local official

21

harbors a malignant, animosity toward him, the individual ought to have a remedy in federal court." *Id.* Although this kind of abuse, furthered with the application of age and sex discrimination against plaintiff "is <u>not</u> remote from the primary concern of the framers of the equal protection clause, neither in terms, nor in interpretation is the clause limited to protecting members of identifiable groups." *Id.* at 180.

117) Following ***Esmail's*** lead, the court in ***Olech v. Village of Willowbrook,*** (again Judge Posner) similarly recognized an equal protection claim based on individual, in addition to class-based discrimination, can be observed.

118) More so the Seventh Circuit reversed, holding that ***Esmail*** did not (or in addition to) require an orchestrated campaign of harassment nor did it draw a distinction between "*sheer malice*" and "*substantial ill will.*" *Id.* While these labels were important in ***Esmail***, the court in ***Olech*** stated that they were not prerequisites to stating an equal protection claim. Id.

119) Plaintiff has demonstrated (by facts, inferences and shall demonstrate by witness testimony) that the defendants: **Purchase College**, Mrs. **Qui-qui Balascio** and **Mrs. Lois Wald'** (a Psychologist), and all other individuals situated in the similar situation... "*Persons*", have orchestrated campaign, policy or custom of harassment, against members of a protected class of prospective students (not just plaintiff but many other prospective students as plaintiff) purely motivated by sheer animosity and discriminatory acts as personal, and social paranoia, seemingly required under ***Esmail***. Slip Op. at 2. In addition, Mrs. **Qui-Qui Balascio** and Mrs. **Lois Wald,** having special training (especially Mrs. **Wald**, as Psychologist), knowingly that discrimination of any kind, will cause mental hardship, regardless whether plaintiff was finally admitted to Purchase College, acted out "*sheer animosity*" and "*substantial ill will.*" and towards a protected class, age and sex (*parr*, #98 is adopted)

120) Defendant, Mrs. **Lois Wald** by imposing a condition for admission to school; immediately and intentionally inflicted emotional pain upon plaintiff. In addition, Def. **Lois Wald** (a Psychologist), being a professional train to treat emotional suffering, and to avoid labeling the person[s] (plaintiff), soly because of his age and gender, whether she was mandated by his supervisor, or not (*parr*, #60 & 50 are adopted) her action does not warrant a course of action that can emulate the factual harm caused to plaintiff.

121) In addition, the court must first evaluate the material or significant part of a grievance or complaint (the Injuries), to assess the proper and fair construction of constitutional claim.

<u>Please note</u>, Expert Medical Opinion has stated that "*a discriminatory act is equivalent to day raping of*

*the soul*"; thus having a long-lasting and/or permanent trauma".

(Due Process, [*Procedural & Substantive*])

122) As applies to all state actors named here in this COA; *Parr.* #50, and all allegations in all Counts in this COA, are hereby adopted.

123) Defendants: **Purchase College**, Mrs. **Qui-qui Balascio** and **Mrs. Lois Wald'** (a Psychologist), and all other individuals situated in the similar situation... "*Persons*", acting in their under the color of the law, in their individual capacity, conspire to deprive plaintiff of "*due process*" of the law.

124) Plaintiff, by the actions of these defendants, herein in this COA, asserts a deprivation of "*pursuit of happiness*" of life, (*post deprivation* of the life span; seeking damages) and the "*right to bodily integrity*"; which were *foreseeable* to the professional defendants... and the plaintiff's right to private interest... All affected by the officials' bias discriminatory action; regardless of the fair outcome, of been admitted to school.

125) Furthermore, a discriminatory act, that has caused mental anguish leading to mental disability as PTSD and severe depression, certainly was the lack of *procedural safeguard* built into the process of <u>conduct or custom</u> and *facial adequacy* of the unofficial personal policy (forcing plaintiff, a person member of a protected class, to undergo a psychological evaluation, as a policy for admission to high education) that serve no governmental purpose.

126) Students or a prospective student, a person (adopted, *Id.*)" *have a liberty interest in their bodily integrity that is protected by the due process clause against deprivation by the state.* **Ingraham v. Wright**, *430 U.S. 651, 673–74 (1977).*"

127) Therefore, plaintiff's injury—PTDS (adopted, *Id.*) —resulted from the <u>conduct or custom</u> of a state employee's lack of "*duty to protect*" the prospective-student as state official; even when acting as a private actor.

128) Furthermore, the said "*arbitrary action*" was a violation of "*substantive due process*"; a component of the Fourteenth Amendment that protects against such; See, **County of Sacramento v. Lewis**, 523 U.S. 118 S. CT. 1708, 1716 (1998); *see also* **Collins v. City of Harker Heights,** 503 U.S. 115, 130 (1992).

129) The "*arbitrary action*" action of age and gender (males only) discriminatory action to be arbitrary which "*shock the conscience*"... with clear indifference to the person's disability.

Please note that "age discrimination," in all forms at SUNY Purchase (and all SUNY schools), is solely practice, as a custom or conduct to MALE student or prospective students ONLY, (*Parr.* 98 is adopted).

130) Please note that, any ordinary, common and reasonable person, would know that an emotional hardship (such discrimination and retaliation [as plaintiff asserts as facts in several COA]), CAN cause severe and irreparable mental anguish-suffering; moreover to a disabled person; more than a non-disabled person. This applies to ALL causes of action in this new recommenced complaint; since ALL defendants herein are—by education--intellectually above an ordinary, common and reasonable person (above the education of the average citizen).

Count VII, (42 U.S. Code, Sec. 1983):

(Failure to Implement Appropriate Policies, Customs and Practices, Failure to Implement Proper Procedural Safeguards. Fourteen Amendment):

131) Plaintiffs incorporate herein by reference the allegations set forth in this COA

132) Defendants: **Purchase College,** Mrs. **Qui-qui Balascio** and Mrs. **Lois Wald'** (a Psychologist), and all other individuals situated in the similar situation... "*Persons*"; acting under the color of the law, in their individual capacity, implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, (this rational is asserted in all Counts in this COA, are adopted) that includes allowing employees of Purchase College Student Affairs, the Clinic and the Consulting Center; to the execution (as a policy) of age and sex (gender) discrimination and invasion privacy. However, these officials, them-self medical staff, thus, above the rational expected of an ordinary *person*s, did known, (not by mistake) that severe mental hardship to plaintiff (gross-negligence), was the outcome; furthermore, against a member of a protected class, without lawful justification, outside their fiduciary duties, state laws, and SUNY policies.

133) Def. **Qui-Qui Balascio,** acting out-side her official capacity (she was not to be involved in the flag originating at the clinic), her as supervisor, has orchestrated procedures to condition of admission of a protected class, and other class of persons. Her discriminatory actions, and orchestration of discriminatory procedures, were systematically supervised by her

Please note that Def. **Qui-Qui Balascio,** personally stated to plaintiff that "ALL RETURNING STUDENTS MUST GO A PSYCHOLOGICAL EVALUATION", which is NOT true. This Court CANNOT confuse, a "*valid governmental interest*", with a "*personal bias discriminatory policy or action*", and/or further, look for an excused to validate these personal involvements of personal bias and discriminatory personalities, (which originate from their private lives) which in-term are expressed in their

wrongful actions at their place of work.

134)The failure of def. SUNY **Purchase College**, to adequately train and supervise the Defendants herein, and in ALL other COA, just amounts to deliberate indifference to the rights of the plaintiff to be free from excessive, unjustifiable, unreasonable of forcing plaintiff, a person member of a protected class, to undergo a psychological evaluation, as a policy for admission to high education; violations that can be asserted as a form of seizures under the Fourth, and Fourteenth Amendments (Equal Protection and Due Process) to the Constitution of the United States.

135)As a result of this deliberate indifference, defendants herein have directly contributed to the plaintiff's rights, the plaintiff suffered permanent personal injuries, the may lead to his very life been threatening, thus, and <u>without excuses,</u> is entitled to relief under 42 U.S.C. §1983.

<u>Count VIII, (42 U.S. Code, Sec. 1983):</u>

<u>(Privacy or Invasion of Privacy [Tort], and/or Fourth Amendment)</u>

136)As applies to all state actors named here in this COA; *Parr.* #50, and all allegations in all Counts in this COA, are hereby adopted.

137)Mrs. **Lois Wald** (a Psychologist) produced an unauthorized and misleading (unqualified [no knowing plaintiff medical history]) report about the plaintiff to def. Mrs. **Qui-qui Balascio** and in term to other school officials.

138)Section 3 of the Privacy Act of 1974; 5 U.S. Code § 552a – States that, records maintained on individuals; disclosure of medical and/or private information, with no public justified interest.

139)20 U.S. Code § 1232g Family educational and privacy rights, as applied to plaintiff (no parents), provides that plaintiff has a right to access any records (as implied) in his filed). Plaintiff was denied access to the said "*evaluation*"; Furthering, asserting wrong doing from the part of the defendants herein. See also 34 CFR 5b.5; notification of or access to records.

140)34 CFR 5b.9 (b). This section authorizes disclosures of records without consent, which states: "no disclosure of a record will be made without the consent of the subject individual". Defendant, Mr Lois Wald disclosed plaintiff's record, with his consent.

141)Furthermore, Section (1) 34 CFR allows the dissemination of said record... "*in need*"; there was no legitimate need of said record/report (evaluation) by the school is prohibited is applicable since no need

to conduct an evaluation of plaintiff with NO probable cause of an obvious Psychiatric disorder]. Furthermore, any governmental interest is voided when a discriminatory act is involved to obtain said record.

Please note, "that the actions suggest a policy or custom, of psychologically evaluating certain class of prospective students; furthermore, in absent of formal policy of SUNY, in general, this also suggests personal involvement," Expert Opinion.

Count IX, (42 U.S. Code, Sec. 1983); Under Supplementary Jurisdiction):

(Violation of New York Constitution, Torts, Federal and State Law):

142) As applies to all state actors named here in this COA; *Parr.* #16, and all allegations in all Counts in this COA, are hereby adopted.

143) A civil wrong, which can be redressed by awarding damages. See, e.g., Smith *v. United States*, 507 U.S. 197 (1993).

144) Supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

145) For ALL purposes of this section jurisdictions, a tort suit against a state college or university is governed by the state tort claims act; see, *Tobin v. University of Maine System,* 59 F. Supp. 2d 87, 138 Ed. Law Rep. 267 (D. Me. 1999); *Orem v. Ivy Tech State College*, 711 N.E.2d 864, 135 Ed. Law Rep. 628 (Ind. Ct. App. 1999); Wilson v. Kansas State University, 273 Kan. 584, 44 P.3d 454, 164 Ed. Law Rep. 446 (2002); *Mittra v. University of Medicine and Dentistry of New Jersey,* 316 N.J. Super. 83, 719 A.2d 693, 130 Ed. Law Rep. 823 (App. Div. 1998); *Hardy v. Bezdicek,* 1999 OK CIV APP 77, 987 P.2d 426 (Div. 1 1999); *Halberstam v. Com.,* 251 Va. 248, 467 S.E.2d 783, 107 Ed. Law Rep. 1043 (1996).

146) Furthermore, defendants and state actors' negligence or fault on its part, proximate causing the plaintiff's injuries, is established; *Morrison v. Kappa Alpha Psi Fraternity*, 738 So. 2d 1105, 143 Ed. Law Rep. 1115 (La. Ct. App. 2d Cir. 1999), writ denied, 749 So. 2d 634 (La. 1999) and writ denied, 749 So. 2d 635 (La. 1999) and writ denied, 747 So. 2d 1120 (La. 1999); *Heminway v. State University of New York*, 244 A.D.2d 979, 665 N.Y.S.2d 493, 122 Ed. Law Rep. 1050 (4th Dep't 1997); *McDonald v. University of West Virginia Bd. of Trustees,* 191 W. Va. 179, 444 S.E.2d 57, 91 Ed. Law Rep. 707 (1994).

147) Furthermore, injuries caused to plaintiff are resulting from the wrongful and/or lack, insufficiency of

supervision by the state and the state actors, acting under the color of the state laws, in their individual c capacity, where HIGH SUNY ranked positions and/or supervising duties; see, ***Durham v. Com.,*** 406 S.W.2d 858 (Ky. 1966); ***Graham v. Montana State University,*** 235 Mont. 284, 767 P.2d 301, 51 Ed. Law Rep. 628 (1988); ***Amon v. State***, 68 A.D.2d 941, 414 N.Y.S.2d 68 (3d Dep't 1979); ***McDonald v. University of West Virginia Bd. of Trustees***, 191 W. Va. 179, 444 S.E.2d 57, 91 Ed. Law Rep. 707 (1994).

148) Furthermore, defendants and the state actors have particularly acted with disregard to plaintiff's injuries as a result of "*fraternity hazing*, "See, ***Furek v. University of Delaware,*** 594 A.2d 506, 69 Ed. Law Rep. 441 (Del. 1991); ***Morrison v. Kappa Alpha Psi Fraternity***, 738 So. 2d 1105, 143 Ed. Law Rep. 1115 (La. Ct. App. 2d Cir. 1999). Furthermore…

149) These defendants and its state actors may be held liable for monetary damages in cases where action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, which plaintiff has asserted on its-face or shall state by deposition or testimony of witnesses; See, ***Ciampi v. City of Palo Alto***, 2011 WL 1793349 (N.D. Cal. 2011).

150) Torts are civil wrong doings of Defendants;, Mrs. **Qui-qui Balascio** and Mrs. **Lois Wald** (a Psychologist and not a defendants herein), on behalf of Purchase College, and all other individuals situated in the similar situation "*persons*", acting in their under the color of the law, in their individual and official capacity are recognized by law as grounds for a lawsuit.

151) These wrong doings of being Mrs. **Lois Wald** (a Psychologist and not a defendants herein) produced an unauthorized and misleading report about the plaintiff to def. Mrs. **Qui-qui Balascio** and in term to other school officials, where ALL elements of NY State Tort Law are met as follow:

1) Have a duty to protect the student or prospective student

2) Bridged reasonable standard of care to be applied under the circumstances, out-side SUNY policies and NY State and Federals Laws; thus the school applies that a reasonable standard of care, by not applying the proper training and/or supervision of these state actors.

3) The breach was not of a reasonable standard, (based on discrimination, by personal views); in addition, the bridge was a significant factor in causing a plaintiff's injuries.

4) Plaintiff never contributed to his own injuries, by way of his or her own negligence.

5) Plaintiff's injuries are *per-se.*

152) Defendants; Mrs. **Qui-qui Balascio** and Mrs. **Lois Wald** (a Psychologist and not a defendants herein), on behalf of Def. **Purchase College,** has intentionally acted against their "*standard of duty*" they owed to plaintiff (gross-negligence); which have led to plaintiff permanent-personal-injuries.

153) Defendants;, Mrs. **Qui-qui Balascio** and Mrs. **Lois Wald** (a Psychologist and not a defendants herein), on behalf of Def. **Purchase College,** knowing have caused (and continue to cause, as asserted by facts, in several others COA) and contributed to plaintiff's permanent harm and injuries, "*bodily injuries*" by "*reckless indifference to the rights of plaintiff*" and "*willful misconduct,*" as stated in the damages section of this COA, "*Gross Negligence*".

154) Tort Law: Defendants;, Mrs. **Qui-qui Balascio** and Mrs. **Lois Wald** (a Psychologist and not a defendants herein), on behalf of Def. **Purchase College,** have knowingly, by "*Willful Misconduct*" (and, *Parr.* #153 is adopted) caused a "*Breach of Confidentiality and Invasion of Privacy*" that also contributed to plaintiff's permanent harm, and humiliation; in addition, by reporting to other school officials, an unwanted, but personal record (psychological evaluation) it, as witnesses shall testify.

155) Defendants; Mrs. **Qui-qui Balascio** and Mrs. **Lois Wald** (a Psychologist and not a defendants herein), on behalf of Def. **Purchase College,** have knowingly, by "*Willful Misconduct*" (and, *Parr.* #153 is adopted) contributed and caused plaintiff's permanent harm, by, refusing to provide (*proper*) services (*Bridge of Contract*).

156) Furthermore, def. Mrs. **Lois Wald,** (a psychologist) on behalf of Def. **Purchase College,** have knowingly, by "*Willful Misconduct*" (and, *Parr.* #153 is adopted) MUST have known/foreseen that her bias, discriminatory and undue actions, by conduct or custom, most likely would have resulted in, but not limited to, emotional harm to plaintiff; in addition, her undue burden inflicted to plaintiff, fail to/the professional precision assigned to her, which in term, heightening the risk of harm to plaintiff to the extent that this complaint asserts (See Exhibit A); see, Restatement (third) of Tort law; "*liability for Physical harm*" Sec. 3 of the P.F.D. #1, 2005.

157) NY State Laws, but limited to, violations of :

158) State Education Law under NNYS Education Law;

159) Title 1 Article 2 § 10; "Dignity."

160) Title 1 Article 2 § 10. Legislative intent; "The Mission."

161) Title 1 Article 2 § 12. Discrimination [and harassment] prohibited.

162) Title 1 Article 2 § 13. Policies and guidelines.

163) Title 8 Sub Art. 3 - Professional misconduct.

164) Executive Law Sec. 296; Unlawful discriminatory practices.

165) An Invasion of privacy, under 42 U.S. Code, Sec. 1983;

166) AND ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL (CFR's), AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "*Bench Pro-see bias*" action) LEGAL THEORY FOR A *Pro-See* LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (*permanent personal injuries, and others*), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action #2** (Recommenced with new developments):

Facts:

167) The statements in *Parr*. 3, 5, 9, and 48, through 52a, are adopted herein…

168) This COA was dismissed "with-out prejudice" by Judge Roman, (See Opinion, dated June 22, 2014. Doc.41, p 20), and now herein properly reinstated by plaintiff.

169) This COA refers to the illegal (age, sex [gender] discrimination) actions inflicted against plaintiff by defendant, **Purchase College;** Purchase College, University Chief of Police Mr. **Walter Butler,** and all other police offices *And all other similarly situated individuals*; in charge of enforcing an unwritten and illegal policy intended to discriminate against a certain racial, class, group of people (students) that "*did not get the student profile*", (*parr*. #98 is adopted).

170) This policy was intended to stop, without probable cause; specifically, elder males and African America.

171) During the school year of 2011 and 2013, Plaintiff in at least six occasions (incidents) was halted by the Purchase College, University Police officers (different officers for each function). On all occasions

Plaintiff was required for Driver License (not student ID).

Please short letter, even younger students asks for student ID, but driver license, and (parr. #98 is adopted).

172) In several of these incidents, plaintiff called for these officers why he was being stopped; in all of those occasions the officers said that because he (plaintiff) "did not fit the student profile", for some officers, it was the policy of the school, and for others they were mandated by the head of police Purchase College University Police Mr. Walter Butler (a Defendant in the associated case 13-CV-2586. Not a Defendant in this action".

173) During the summer session of 2012, plaintiff's complaint to chief officer Mr. **Walter Butler** (def. In the Amd. Assoc. Compl.) for the discriminatory policy; furthermore, plaintiff explained to Mr. Butler, that plaintiff was being oppressed and harassed by the Purchase College University Policy…. Mr. **Butler** recognized, there was such a policy…"*to stop and ask for ID to persons 'that do not fit the students profile'*". He further stated that "*he felt the policy was necessary as a precaution and the policy was here (at Purchase College) to stay."* Plaintiff further asked "*if there was any history of crimes committed at Purchase College by members of protected class (older students)?"* Mr. Butler, responded "*there was not that he knew*", (implying "*social paranoia*" brought from their pervert and bias personal (from their home) personalities. This an excuse to discriminate!). Plaintiff did notify Mr. **Butler,** that the/his policy (custom or conduct) was unconstitutional and discriminatory in nature, and he should stop implementing. He stated that, "*I (he) could not*".

Expert Opinion believes that, because Officer Mr. **Butler** was a defendant in the Assoc. Amd. Compl, aided in plaintiff's arrest without jurisdiction in Binghamton; See cause of action 11, 12, & 13).

Please note that more than one Purchase College, University Hispanic Police (not happy with the policy), commented to plaintiff that the "to stop and ask for ID to persons 'that do not fit the students profile'" was principally meant for older Hispanics and African Americans MALES, not females. This police officer (Hispanic) was in discontent with the policy, and stated to plaintiff that he "would never apply the insurance".

174) The plaintiff continues being stopped and asked for driver license, as subsequently shown in COA #9.

175) On or about October 2012, Plaintiff filed a charge with the school's affirmative action officer,

Mrs. **Michelle Baptiste** (Attorney, grievance and affirmative action officer and now resigned from the Purchase College position**)**, for proper investigation of age discrimination. Mrs. **Baptiste,** (as in COA #1) and upon several requests from Plaintiff, never provided with the results of the investigation. In addition...

176) The plaintiff had filed several violations of civil rights with the US dept. of Education civil rights unit (OCR), (see exhibit C), including this cause of action; were no findings, and ALL administrative actions has been fed up; furthermore, Please note that filling a complaint with Mrs. Michelle Baptiste (who's no longer employed by SUNY), the plaintiff may not file a charge with any state or federal agency. Therefore, ALL administrative remedies shall be deemed exhausted, at that stage.

177) Please note, the court MUST create an inference of a discriminatory conduct custom since... Plaintiff presented to Mr. **Walter Butler** and Mrs. **Michelle Baptiste** (affirmative action officer, now resigned from purchase College) the example of student **Robert Sterling,** Mr. Sterling is an African-American Student approximately 53 years of age... where the Purchase College library staff called plaintiff attention (since plaintiff always helping students been discriminated) that a student, (Mr. **Sterling**) was has been followed by a white officer, whom requested Mr. **Sterling** for his *"driver license"* (please note that *"do not fit the student profile"* policy, was to ask for DL and not for student ID). This incident took place in the library, with the school's staff present at the time. Mr. Sterling was seeking or pretending to go after his degree in "legal studies" (like plaintiff) and he has been attending to school for over three years. Several school library employees witnessed this incident, which was reported to the complainant.

178) Mr. **Sterling's** case was one of several student's violation of civil rights cases, which Plaintiff referred to the school's affirmative action officer, Mrs. Baptiste and the US Dept. of Education, for proper investigation of discrimination. Many students chose not to adopt a course of action, in concern of retaliation, which was customary from student affairs.

179) In addition, ALL events stated herein, this COA were presented to SUNY and Purchase College Attorney, Mrs. **Wendy Kowalski (now Ravitz).** However the policy of persecuting all male persons the *"do not fit the student profile"* did continue.

## Damages.

180) *Parr.* #2, & 4 through 11, are hereby adopted...

181) For the purpose of worsening of plaintiff's physical and mental health, the 'damages" part of COA #1 is hereby adopted.

182) As a result, of defendant, **Purchase College;** Purchase College, University Chief of Police Mr. **Walter Butler,** and all other university police officers' personal involvement (bias and paranoid, against a member of protected group [54 years old & disabled] due to their personal view). In summation...

183) Plaintiff was treated differently than other students situated in a similar situation (younger students). These **Purchase College** officials, acting under the color of the state law, in their individual capacity; knowingly in the practices, personal (personal involvement) discriminatory, policies; not the policies of SUNY.

184) Plaintiff due to the amount of times he was held back, since he "did not fit the student profile"... He was humiliated every time, he suffered and concurrent mental anguish, felt diminished and being crushed

185) Therefore, emotional pain, and stress leading to fear, emotional and physical paint (to his disabling spinal injuries).

186) Because of these accumulative actions, and under the advice of the Plaintiff's academic adviser, Mrs. **Kathleen Chang;** Plaintiff on the fall semester of 2014 (year 2013), solicited counseling for depression and PTSD, with the counseling center of Purchase College. This treatment was interrupted and terminated with the Plaintiff's illegal suspension in April 2013.

187) Furthermore, these personal and wrongful actions of persecution against plaintiff; defendant, **Purchase College, University;** Police Mr. **Walter Butler,** and all other university police officers who discriminated by persecuting plaintiff for "*not fitting the student profile*", have lead (in parts) to the result of Plaintiff's new permanent current personal injuries, (see exhibit A).

<u>Legal Theory.</u>

188) *Parr.* #48 through 52a, are hereby adopted.

189) Nondiscrimination Policy, *parr.* #84 is adopted.

190) After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby states, "by the fact that all administrative and time limitations have been ingested and/or no administrative remedies—in good faith and no findings... plaintiff asserts that defendant, Purchase College, University; Police Mr. Walter Butler, all other university police and all other individuals situated in the similar situation, violated plaintiff's civil rights out-side their stand of duty towards the student-plaintiff, as follow:

191)ALL applicable legal theories of COA #1, where are so similar in its rational to this COA, are hereby adopted, ONLY as applied to ALL defendants in this COA, in the application of a discriminatory policy of stopping and ask for Driver License to ALL students (mainly, older Hispanics and African American) the "*do not fit the student profile* "; with the exception of the legal theory stated in *Parr*. 98 through 106 & 132 through 137.

192)In addition to *parr* #187, Plaintiff also adds to this COA, violation of:

## Count I. (42 U.S.C. § 1983)
### (Fourth Amendment, Seizures)

193)Defendants, **Purchase College, University;** Police Mr. **Walter Butler** acting under the color of the law and in his supervisor capacity, in his individual capacity; in addition, but not limited to, all other university Purchase College University Police officers, and all other individuals situated in the similar situation, of supporting the said discriminatory policy…violated plaintiff's civil rights (Fourth Amendment, Seizures). Their wrongful and illegal actions, were out-side their "*stand of duty* "owed to the student, as a public official is required by law and with any probable cause. Additionally, this policy was executed without any governmental interest, since there is no statistical record that older student commit more crimes than younger students. Thus, the policy serves no function, but bully plaintiff and other, by racially and/or ethnic profiling: males, Hispanics and African Americans students. The Fourth Amendment provides that "*[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated,*" see **Terry v. Ohio, 392** U.S. 1 (1968).

194)The Supreme Court has explained that what "*a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection*"… but what he seeks to preserve as private, even in an area accessible to the public, (as school grown [as a registered student]) may be constitutionally protected (see **Katz v. United States,** 389 U.S. 347 [1967]).

195)Furthermore, stopping students (as plaintiff) just because he is Hispanic and/or he is elder than the general average age of other scholars, thus not, on its face, warrant such suspicion of misconduct.

196)Furthermore, the officer "must not be founded on the officer's 'inchoate and unparticularized suspicion or 'hunch,' but on the specific reasonable inferences based on facts and not in a discriminatory policy that does not determine the reasonableness of police investigatory stops."

197)Furthermore, **United States v. Brignoni-Ponce 422 U.S. 873 (1975), addressed the issue of race as a**

*gene giving rise to reasonable suspicion of criminal activity...* "*In this case the officers relied on a single element to justify stopping respondent's car: the apparent Mexican ancestry of the occupants.*"...

198) Neither this single factor nor the police officer's opinion that the residents were illegal aliens satisfied the Constitutional minimum for an investigative stop. The Court reasoned "[t] he likelihood that any dedicated person of Mexican descent is an alien is high enough to make Mexican appearance a relevant factor." ***Id.*** at 886-87.

199) Hence, by itself, plaintiff, and all other students situated in a similar spot by "*not fitting the student profile*" does not support reasonable suspicion necessary for a rambling stop. Furthermore...

200) Plaintiff never in school, exhibited an erratic, abusive and/or violent conduct; or numbers of those under the observation of the university police officer, may bear the reasonable suspicion necessary for an investigative stop. Furthermore...

201) Def. SUNY **Purchase College** is NOT located anywhere near the Mexican border, that it may have some justification for such stop of "*students that do not fit the student profile*".


Count II. (42 U.S.C. § 1983)

(The Fourteenth Amendment):

(Equal Protection):

202) In addition to ALL rational bought-in from COA #1...

203) Plaintiff asserts as FACT that Defendants, **Purchase College, University;** Police Mr. **Walter Butler** acting under the color of the law and in his supervisor capacity, in his individual capacity. In addition, but not limited to, all other university Purchase College, University Police officers, and all other individuals situated in the similar situation, of supporting the said discriminatory policy,... violated plaintiff's civil rights under the Fourteenth Amendment. "*[n] o state shall... deny to any person within its jurisdiction the equal protection of the laws.*" In the wake of the when decision, racial profiling may be susceptible to two different kinds of equal protection challenges. *First,* claimant hereby asserts as fact, and with the witness's testimony, that the conduct of these officers [s], was racially motivated—that the officer [s] stopped the suspect (plaintiff) because of race, sex (gender) and age. Furthermore, the plaintiff asserts that "if law enforcement did adopted the custom "*stopping the person that does not fit the student profile*" as "*policy, employs as practice of conduct,*" or in a given situation these law enforcement (Purchase College

University Police officers) did knowingly and repeatedly, have taken steps to initiate an investigation of a citizen (or non-student) based solely upon that citizen's race, sex and age, without more; thus/then a violation of the Equal Protection Clause has occurred.

204) The so called *"they do not fit the student profile"* discriminatory policy of Purchase College, is on its face, direct evidence of defendants herein of *"discriminatory intent"* sufficient to award plaintiff a judgment on a Section 1983 claim of selective enforcement in the Tenth Circuit decision, see, ***Marshall v. Columbia Lea Regional Hospital,*** 345 F. 3d 1157 (10th Cir. 2003).

205) The plaintiff has, eloquently, been able to present evidence herein to sustain his claim of the officer's knowingly and intentional wrongdoing behavior during the events in question; as well as, his has stated as fact and with the case of another student (Mr. **Sterling** [an African America student]), which records of the racially selective stops as facts, in addition to in age and sex discrimination cases under similar circumstances.

206) Most compellingly, it was shown that the officers at Purchase College had special training to execute the discriminatory policy of stopping persons that *"they do not fit the student profile"*.

207) Furthermore, that the officers at **Purchase College** an extensive recorded history—or *"modus operandi,"* (a particular way or method of doing something, especially one that is characteristic or well-established) —of similar misconduct during and prior plaintiff's attendance, as student, at SUNY Purchase College.

Count III. (42 U.S.C. § 1983)

(Title VI of the 1964 Civil Rights Act).

208) Title VI prohibits discrimination because of race or ethnicity in all federally assisted programs or activities, see 42 U.S.C. §§2000d et seq…

209) Plaintiff asserts as FACT that Defendants, **Purchase College, University;** Police Mr. **Walter Butler** acting under the color of the law and in his supervisor capacity, in his individual capacity; in addition, but not limited to, all other university Purchase College University Police officers, and all other individuals situated in the similar situation, of supporting the said discriminatory policy, did adopt the conduct or custom of *"stopping the persons that does not fit the student profile"* as *"policy, employs as practice of conduct,"* Thus, these defendants and law enforcement University policy officers; that receive federal funds (SUNY University Police), did not comply with Title VI.

210)The courts have held that Title VI permits a private right of action for individuals to seeking injunctions against recipients of federal funding, including police, for a policy or practice that discriminates on account of race, sex (age); however, adding se, 1983, furthered liability rights to a plaintiff asserting personal injuries due to the deprivation; See, (implied) *Rodriguez v. California Highway Patrol,* 89 F. Supp.2d 1131, 1139 (N. D. Cal. 2000) (finding that plaintiffs adequately pled a Title VI claim by alleging that the police department receives federal funding and engages in *"racial discrimination by stopping, detaining, interrogating and searching motorists on the basis of race"*); Maryland State Conference of NAACP *Branches v. Maryland Dep't of State Police,* 72 F. Supp. 2d 560, 566-67 (D.Md. 1999) (finding that a private right of action exists under Title VI and that plaintiffs alleging a practice of racial profiling have adequately stated a claim).

211)Moreover, local police departments that receive DOJ assistance are subject to agency regulations providing that recipients may not "utilize criteria or methods of administration, which have the effect of subjecting individuals to discrimination... or have the effect of defeating or substantially impairing" program objectives because of race.

212)Furthermore, SUNY University Police Guidelines, prohibits the use of *"generalized stereotypes"* based on race or ethnicity, and allows officers to consider racial factors in *"traditional law enforcement"* activities only as part of a specific description or tip from an informant.

## Count X, (42 U.S. Code, Sec. 1983; Under Supplemental Jurisdiction):
### (Violation of New York Constitution, Torts and State Law):

213)As applies to all state actors named here in this COA; *Parr.* 48 through #50 and all allegations in all Counts in this COA, are hereby adopted.

214)Supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

215)A civil wrong, which can be redressed by awarding damages. See, e.g., *Smith v. United States,* 507 U.S. 197 (1993).

216)*Parr,* #145 through 165, are hereby adopted, as applied to defendants and non-defendants named herein this COA.

217)AND ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL (CFRs) AND NY STATE LAWS,

RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "Bench Pro-see bias" action) LEGAL THEORY FOR A Pro-See LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (permanent personal injuries, and others), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action #3**, (Recommenced).

Facts:

218)The statements in *Parr*. 3, 5, 9, 48, 51, 52 & 52a) are adopted herein...

219)Plaintiff hereby incorporates, additional facts to this COA, which were not available in the Assoc. Compl. Case # 13-CV-2586.

220)This COA refers to a FALSE plagiarizing charge brought against the plaintiff, and further manipulation of documentation to cover-up the real reason (*protected speech*), for which plaintiff was removed from the class. In addition, this COA, referring to the invasion of privacy against plaintiff, where his school, private email account was hacked by school officials.

221)This Cause of Action is directly related to Cause of Action #13; where FALSE statements [*incl. The false plagiarizing charges*] were made by Def. Ms. **Melissa Jones,** against plaintiff in 29 page fax sent to at least eight SUNY Universities.

222)On August of 2011.. Plaintiff registered for "*Translation Workshop-Spanish, SPA 3800*" class at **Purchase College.**

223)Please note: for all purposes in this COA and others, the plaintiff was banned in Santiago-Chile in 1959. Plaintiff attended *Barros Borgonyo* and *Escuela Industrial #1*, High Schools in Chile, and moved to the US, in1979, as the families' first immigrant. The plaintiff first language is Spanish, both written and reading.

224)On September of 2011, Professor Mr. **Mark Burdzinski** was assigned to teach the class. He holds PhD in linguistics.

225)During the first month of the class; plaintiff had complained to the professor of his "too strict and

offensive rules", e.g." "*no student was allowed to use the bathroom while in class*" thus, the student was to count "*absent*" for that class" or "*no student may speak in class (at all), if the student was late for the class*", regardless of the reason of the absence.

Please note: Two other older students (at least 45 years of age, both), withdrew from the class, since the professor would not allow them to speak with the class.   Plaintiff shall call these students to testify.

226) On or about the second week of September, 20133, issue a translation homework, for the students (incl. plaintiff).

227) This work consisted in the translation English to Spanish of many (at least 20) poems.

228) However, Plaintiff had problems understanding the meaning of the poems, or giving the poems a meaning.

229) Hence, a few days later Plaintiff requested the aid of Ms. Darcy Gervacio, (Reference & Instruction Librarian) at the college's library.

230) Ms. **Gervacio**, kindly and with enthusiasm, (and out-side her College duties) showed Plaintiff several techniques to understand the meaning of the poem[s], thus translation could be accomplished without any difficulty attributed to Plaintiff's first language was/is Spanish.

Please note that, Ms. **Darcy Gervacio** notified Mr. **Richard Nassisi** (then, plaintiff's academic adviser) that she instructed plaintiff how to understand the poems before translation could be done.

231) Plaintiff then proceeded to translate the poems. However, because plaintiff's disability, he could (to prevent inflammation to his neck injuries) not type, thus his cut-paste from the web (since the poems assignments, as given to the students, were not feasible for cut-paste).

232) Plaintiff found most of the poems on the web, cut-paste them, then he translated them, however, Professor Mr. **Mark Burdzinski,** found that one (just one) of the poems translation was too similar to a translation found on the web. This similarity to plaintiff's translation of just one poem, was four approx. four words out of approx. Forty that that sole poem had.

233) On September 30, 2011, Professor Mr. **Mark Burdzinski** Plaintiff accused Plaintiff "*academic dishonesty*" with plagiarizing.

234) On or about the same week, Plaintiff sends an email to Professor Mr. **Mark Burdzinski,** stating his

discontent for his discriminatory action, and his Real reason for plaintiff plagiarizing charges against him were because plaintiff was an elder male elder student (as a witness shall testify), and that his "*real problem was his personality*".

Please note: That as a witness may testify; Professor Mr. **Mark Burdzinski,** has stated publicly, his animosity towards older persons in general; probably because of his gay orientation, respectfully.

Scholars have conducted many research concluding that many gay persons (especially male gay persons), Have been abused and/or discriminated for their sexual orientation; even, by their own kin (fathers mostly), Expert Opinion.

Thus, plaintiff asserts that the real reason he   was not given a fair hearing, was to protect the Professor's (PhD) integrity; rendering plaintiff expandable.

Furthermore, Plaintiff never confronted the Professor Mr. **Mark Burdzinski,** in any hostile manner; very gently with respect and always in PRIVATE. That is, the plaintiff never disrupted the course of the class, in any way. In addition, it is common in any language class that Professors teaching the languages (not being their own native language, as Professor Mr. **Mark Burdzinski,** herein), feel uncomfortable with students that are native in the language being taught--Spanish in this case.

235)The professor's accusation was based on that only one of the many poems translated from English to Spanish where plaintiff cut and paste the assignment, but no the translation. (Please note Plaintiff first, written and spoken language is Spanish).

236)Professor Burdzinski issued a 30 page report accusing plaintiff of plagiarizing. Said report was later sent via fax to more than eight universities by Defendant **Melissa Jones,** (See Exhibit C, & COA 13).

237)My hearing was scheduled for that week, however, the plaintiff notified Mr. **Richard Nassisi** via email, plaintiff was not available due to a medical procedure to plaintiff's spinal injuries was scheduled for the same time of the hearing. Plaintiff ask the hearing adjourned; Mr. **Nassisi's** response was "*it takes too much to gather a new committee for a new hearing*".

238)On or about the same week, a hearing was conducted with plaintiff in absent of plaintiff; where plaintiff was found guilty by his them adviser, Mr. **Richard Nassisi** and the committee. Members of said committee later express their concern that the plaintiff was not allowed for an adjournment; furthermore, he stated that the real reason for plaintiff's removal of the class was because Professor Mr. **Mark Burdzinski,** felt uncomfortable with plaintiff. Plaintiff shall call this witness to testify on the matter.

239)On October 04, 2011, Professor **Burdzinski** requested the Plaintiff's expulsion--with and "F"--of the class, to Mrs. **Louise Yelin** (dean), who without examining the accusations agreed to the Plaintiff's plagiarism charges. Plaintiff was asked to withdraw from the class.

240)The next week, Plaintiff did notify the office of the provost to complain and file an appeal, since plaintiff was hospitalized, and could not attend the hearing.

241)The following week, Plaintiff received an email from Mr. **Ricardo Espinales** (acting Affirmative Action Officer), scheduling an appointment on the matter, since obviously *"something was wrong"*, as he later personally Mr. Espinales expressed to plaintiff.

242)The week after that, plaintiff attended the meeting at the office of Mr. **Espinales**; plaintiff and he spoke Spanish at that meeting. Thus Mr. **Espinales** expressed his concern, since it was obvious that, plaintiff has no need to plagiarize in a translation English to Spanish.

243)At the same meeting, Mr. **Espinales,** decided to check my personal email account; plaintiff asked… how did get my password? He responded…"**Nassisi** (plaintiff's advisor) gave it to me."

244)Around two weeks later, Plaintiff received another email, this time from Mr. **Bill Baskin** (Vice President of Academic Affairs), and advising plaintiff from another hearing; this time it was an appeal hearing.

245)At that hearing, Plaintiff explained the issue of his disability and accommodation (he could not normally type, as other students). Plaintiff also explained to them that this type of false and discriminatory, plagiarizing charge could (and did) prevent[ed] plaintiff form qualify to any scholarship, and most important could have restricted plaintiff from admission to qualified Law School. (Loss of property). In addition, plaintiff explained his case, as stated above; however, plaintiff instead was confronted, by Mr. **Baskin** and Mr. **Espinales**, with animosity and almost in a violent manner, (using laud voices and threatening hand gestures) invoking plaintiff to confess to the plagiarizing charges . The plaintiff denied the charges, and threaten to take legal action; they both responded…*"you have the right to do so"*.

246)Approx. A week later, Plaintiff received a letter from Mr. **Bill Baskin** denying plaintiff's appeal, and plaintiff was assigned a permanent "F".

247)On September, 14, 2012,  after Dean, Mrs. **Louise Yelin** after realizing that professor **Mark Burdzinski** actions were not appropriate and discriminatory (Dean **Yelin** has stated that professor **Mark Burdzinski** personality problem, interfere with the requirements of his teaching duties, especially with older students**),**

sent an attachment letter via email to Plaintiff requesting plaintiff's opinion whether  professor **Mark Burdzinski's** contract to continue teaching should not be renewed, (See Exhibit E).

248)<u>On the same day,</u> plaintiff sent Exhibit E via email attachment to his adviser, **Kathleen Cheng** and def. **Danielle DaGosto;** they advised plaintiff not to respond to Dean **Louis Yelin's** request, since it was likely plaintiff's derogatory statement towards Professor **Mark Burdzinski**, would have had negative effects in his contract renewal.

249)<u>On January 09, 2014,</u> Professor **Mark Burdzinski**, under the supervision of Dean **Louis Yelin**, released the misleading plagiarizing document to at least eight universities, ALL denied admission. (See Exhibit C and COA #13).

<u>Please note,</u> during this three month time, plaintiff was submitted and exposed to several--at least five meeting and hearings. In addition, during the course of the investigation, defendants in the Assoc. Compl. **Richard Nassisi** (then, plaintiff's academic adviser [self-proclaimed]), and **Ricardo Espinales**, with the knowledge of Mr. **Bill Baskin,** hacked plaintiff's PERSONAL email account, (please see cause of action #4 at Docs. # 3 & 21, of Assoc. Compl, 13-CV-2586).

250)<u>On or about the first week of December, 2012,</u> Plaintiff filed a complaint with the school's affirmative action officer, Mrs. **Michelle Baptiste** (Attorney, grievance and Affirmative Action Officer) for proper investigation of age discrimination and invasion of privacy. Mrs. **Baptiste,** did find that Mr. **Richard Nassisi's** son was working at the CTS (communication Dept.) where access to ALL student passwords are stored; however; upon several requests from Plaintiff, never provided Plaintiff with the final results of the investigation, except3on the email hacking, where she found reasons to believe, invasion of privacy may have taken place.

<u>Please note that,</u> in addition to the policy of hacking students emails accounts; Purchase College officials also hack what students watch on TV and the internet; as witness from Purchase College CTS, shall testify

Damages:

251)*Parr.* #2, & 4 through 11, are hereby adopted…

252)For the purpose of worsening of plaintiff's permanent personal injuries, COA. 1 & 2 are adopted.

253)As a result, of defendant, **Purchase College, University;** Professor Mr. **Mark Burdzinski**, Dean, Mrs. **Louise Yelin, Richard Nassisi** and **Ricardo Espinales**, personal involvement (bias and paranoid, against

a member of a protected group [54 years old & disabled] due to their personal view), plaintiff was unreasonably exposed to a hostile environment, treated differently than other students situated in a similar situation. These **Purchase College** officials, acting under the color of the law, in their individual capacity; knowingly in the practices discriminatory, personnel policies; Plaintiff was humiliated, suffered <u>worsening</u> and   more concurrent more severe mental anguish, in addition, but not limited, feeling of worthlessness (diminished) and being persecuted (paranoid).

254)After the humiliations plaintiff was exposed herein, his emotional pain, and concurrent stress became an issue leading to more aggressive physical pain to his disabling spinal injuries.

255)Because of these accumulative actions ad prior COA, and under the advice of Plaintiff's academic adviser, Mrs. **Kathleen Ceng**; Plaintiff on the Fall semester of 2014 (2013) solicited counseling for depression and PTSD, and depression with the counseling center of Purchase College. This treatment was interrupted and ended with the Plaintiff's illegal suspension in April 2013.

256)Furthermore, these personal and wrongful actions of the defendant, **Purchase College, University;** Professor Mr. **Mark Burdzinski,** Dean, Mrs. **Louise Yelin, Richard Nassisi, Mr. William Baskin** and **Ricardo Espinales,** personal involvement, have lead and resulted in Plaintiff's current personal injuries. (See exhibit A).

257)Furthermore, plaintiff suffered permanent academic harm.


Legal Theory:

258)For non-defendants parties herein, and where Def. **Purchase College** is incorporated… *Parr.* #48 through 52a, are hereby adopted.

259)Non-discrimination Policy, *parr.* 80 is adopted.

260)For all purposes of this COA (and ALL other COA, in this complaint), defendants deprivations of rights against plaintiff, as stated herein; per-se, contributed to plaintiff permanent physical and mental injuries.

261)After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby states, by the fact that all administrative and time limitations have been exhausted and/or no administrative remedies—in good faith and no findings…

262)Plaintiff asserts that Defendant, **Purchase College,** Professor Mr. **Mark Burdzinski,** Dean, Mrs. **Louise**

**Yelin, Richard Nassisi, Mr. William Baskin** and **Ricardo Espinales**, furthermore, all under the bias supervision of Mrs. **Wendy Kowalscki** (now **Ravitz**), and all other individuals situated in the similar situation, and *"persons"*, acting in their under the color of the law, in their individual and official capacity...violated and deprived plaintiff of his civil rights, and...

263) Furthermore, ALL parties invoked here in this COA, state actors, acting out-side their stand of duty towards the student-plaintiff.

264) Where, ALL parties invoked here in this COA, and their illegal actions, plaintiff asserts, were out-side their fiduciary duties, and against SUNY or the State of New York law and their public officers policies.

265) Furthermore, ALL parties invoked here in this COA, and their illegal actions, plaintiff asserts, were in direct violation to their stand of duty owed to student-plaintiff, resulting in permanent-personal-dispelling injuries or *"gross-negligence"*... In the intentional creation of disparate treatment and a hostile environment, with no real government interest, with the sole purpose to discriminate against plaintiff...

266) Furthermore, ALL parties invoked here in this COA, have knowledge, plaintiff was/is part of a *"protected class "*receiving disability accommodation; plaintiff was treated differently that other students, and furthermore...

267) Plaintiff asserts, that ALL parties invoked here in this COA, have a higher than the ordinary general person's education, thus, a higher intellectual rational and a heightened (easy) valuation of wrongdoing is expected...where, they knowingly depriving the plaintiff of civil rights and privilege, causing several mental anguish, humiliation and emotional pain. That in term added to his already health problems.

268) Furthermore, plaintiff was treated differently, harshly (retaliatory bullying) than other students situated in the same situation, as to age, gender, sex, and sexual orientation concerns.

Count I, (42 U.S. Code, Sec. 1983):

(General)

269) Plaintiff brings this action under 42 U.S. Code, Sec. 1983; where defendants, **Purchase College, University;** Professor Mr. **Mark Burdzinski,** Dean, Mrs. **Louise Yelin, Richard Nassisi, Mr. William Baskin** and **Ricardo Espinales,** and all other individuals situated in the similar situation *"persons"*, acting in their under the color of the law, in their individual and official capacity, conspired and did [too] deprived plaintiff of his federally protected rights and privileges (activities).

270) Where *personal and emotional involvement* against a student, member of a protected class (older male disabled student-persons) to accommodate personal belief of unjustifiable persecution., and in direct violation of SUNY or the State of New York policies and federal and state laws...

Count II, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 242)

(Deprivation of Rights Under the Color of Law).

271) As applies to all state actors, (two or more) named herein this COA; *Parr*. #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

272) Plaintiff asserts that either by regulation, or custom the *"persons"* named herein in this COA, willfully deprive or cause to be deprived plaintiff of his rights and/or privileges, secured or protected by the Constitution and laws of the U.S.

273) Furthermore, plaintiff contends as facts that, either by regulation, conduct or custom the *"persons"* named herein in this COA, willfully subjected or cause to be subjected plaintiff to different punishments, pains, or penalties.

274) The *"persons"*, (two or more) named herein in this COA, acting under *"color of any law"* acted NOT within the bounds or limits of their lawful authority, but also acted, done without and beyond the bounds of their lawful authority; where the invidious and unlawful acts were committed while these offices were purporting or pretending to act in the performance of their official duties; where these "persons" who are bound by laws, oath, statutes ordinances, and/or customs.

Count III, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 241)

(Conspiracy Against Right)

275) As applies to all state actors, (two or more) named herein this COA; *Parr*. #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

276) Plaintiff asserts that ALL (more than two school officials) defendants (and none def.) named herein, conspired to deprive plaintiffs of his right, privilege, and, but not limited to: of property, in violation of Title 18, U.S.C., Sec. 241.

277) The *"persons"* (two or more), named herein in this COA, acting under "color of any law" conspired to injure (making ill), persecute, plaintiff in the State of New York in plaintiff's free exercise or enjoyment of his right (all Counts herein, is adopted) or privilege secured to the plaintiff, by the Constitution or the laws of the United States, (or because of his/her having exercised the same).

## Count IV, (42 U.S. Code, Sec. 1983):

### (Title 18, U.S.C., Section 245)

#### (Federally Protected Activities)

278) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

279) Plaintiff asserts as fact that ALL (more than two school officials) defendants (and none def.) named herein, conspired to deprive plaintiffs of his right, privilege, and, but not limited to: of property, in violation of Title 18, U.S.C., Sec. 245.

280) The state actors named here in this COA, have a willful caused and injury to plaintiff or interfere or attempt to do so; where plaintiff an applicant for admission to Purchase College—a public school and public college, and participant in a program and/or activity receiving Federal financial assistance.

## Count V, (42 U.S. Code, Sec. 1983):

### (The Fourteen Amendment): and/or:

#### (Age, Sex [gender) and Sexual Orientation Discrimination)

281) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

For the animosity shown by Professor Mr. Mark Burdzinski, and/ with the support of Dean, Mrs. Louise Yelin, Richard Nassisi and Ricardo Espinales; these state actors, playing under the color of the state law, violated "Section 6102 of the Age Discrimination Act of 1975, which prohibits discrimination on the ground of historic period under any plan or action that receives federal financial aid. 42 U.S.C. § 6102, pursuant to the regulation at 34 C.F.R. § 110.39; 34 C.F.R. Part 110; and 45 C.F.R. Part 90.1., and 45 CFR Part 617, and its implementing regulations (45 CFR Part 90) which applies to public and private institutions that receive federal funds.

282) Plaintiff asserts that ALL *"persons"* (more than two school officials) defendants (and none def. parr, #50,

is swept up) named herein, conspired to (and did) deprived plaintiffs of his right, privilege, and, but not limited to: "property interest", by precluding plaintiff-student to cease his "contracted" class, because the professor felt uncomfortable with plaintiff, age, sex (gender), sexual orientation and plaintiff's "speech"; in disregard of their measure of duty owed to the pupil and to the contracted service of instruction by the complainant.

Count VI, (42 U.S. Code, Sec. 1983):
  (Fourteenth Amendment).
    (Equal Protection)

283) As applies to all state actors, (two or more) named herein this COA; *Parr*. #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

284) For the purpose of this count; plaintiff was, and still is, a member of a protected class, with the grave limitations of age and disability...

285) The Fourteenth Amendment is violated when state officials acting in the power of the state law and deed contrary to such laws. *Parr*. #113, is hereby adopted, as applies to ALL defendant (and none def. *parr*. #50 is adopted) in this COA.

286) Defendants; Purchase College, for the activities of Professor Mr. Mark Burdzinski, Dean, Mrs. Louise Yelin, Richard Nassisi and Ricardo Espinales, and all other individuals situated in the similar situation "persons", acting in their under the color of the law, in their single capability, (parr. #50 is hereby adopted), conspired (and did) deprived plaintiff of his Fourteenth Amendment to the U.S. Constitution, adopted in 1868, which declares that 'no state may deny any person the "*equal protection*" and/or "*due process* "of the laws.'

287) In addition, said Defendants; conspire to/and deprived plaintiff of his Fourteenth Amendment to the U.S. Constitution, adopted in 1868, which also declares that: "*no state may deny any person the 'equal protection' of the laws, where: these state actors have no appropriate governmental interest suitably furthered by the/a differential treatment,*" and "*when an important personal right - such as public education - is affected, the government entity must show not only that there is an but also that there is "a real and substantial relationship between the classification and the governmental purpose which it purportedly serves.*"

288) Furthermore, the Fourteenth Amendment is violated when state officials acting in the power of the state

law and act in contrary to such laws. Hence…

289) *Parr.* #111 through 118, are hereby adopted.

290) Plaintiff has demonstrated, by facts, inferences and shall demonstrate further by witness testimony…

291) That the Defendants; **Purchase College,** for the actions of **Richard Nassisi** and **Ricardo Espinales,** and "*Persons*", have orchestrated campaign, policy or custom (hacking students emails accounts); attached to a custom of invasion of privacy; purely motivated by sheer personal beliefs and social paranoia, seemingly required under ***Esmail***. Slip Op. at 2.

Please short letter that other scholars have reported such activity to plaintiff and authorities; including, but limited the hacking of internet and television usage at the College. In addition…

292) Defendants; **Purchase College,** for the actions of Professor Mr. **Mark Burdzinski**, Dean, Mrs. **Louise Yelin,** attached to a conductor custom of gross negligence, against their standard of duty against a student member of a protected class; purely motivated by "*sheer animosity*" of personal beliefs abuse of power and social paranoia, and an overly extended egocentric behavior, seemingly required under ***Esmail***. Slip Op. at 2. As a major contribution causing to the plaintiff's injuries.

293) In accession, said ALL state actors, acted out of pure "*sheer animosity*" and "*substantial ill will*" and towards a protected category, age and sex (parr, #98 is adopted), by denying, his right to property (contracted by paying class), or investment in education; based on ill-dislike the position from the professor to the student-plaintiff.

294) Lastly, but most significantly the court must first judge the material or significant portion of a grudge or complaint (the Injuries), and the letter sent to plaintiff by Dean Yelin (requesting plaintiffs advise in renewing Professors' Burdzinski's contract) to assess the proper and reasonable construction of a constitutional claim.

(Due Process, [Procedural & Substantive])

295) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 through 50, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

296) Defendants; **Purchase College, University;** for the actions of **Richard Nassisi, Mr. William Baskin** and **Ricardo Espinales,** and all other individuals situated in the similar situation… "*Persons*", acting in their

under the color of the law, in their individual capacity, conspire to deprive plaintiff of "*due process*" of the law, by not allowing plaintiff a hearing, with the sole intention to protect Professor Mr. **Mark Burdzinski,** emotional and academic bias actions; while plaintiff was medically disabled to appear in a hearing.

Please note that excused NOT to provide a new hearing was: "*it takes too long to gather several school officials to do so*" (**Richard Nassisi** statement).

297) Plaintiff, by the actions of these defendants, herein in this COA, asserts as fact deprivation, but not limited to/of "*pursuit of happiness*" of life, (post deprivation of the life span, see damages) and the "*right to bodily integrity*", (as stated in the damages section of this COA) which were foreseeable to the defendants (these are above the ordinary common persons' rational)... and the plaintiff's right to private interest... All affected by the wrongful actions of these school officials.

Please note that the deprivation of interest in property (an investment in paid education) occurred when Dean **Yelin** allowed the professor to remove plaintiff of his class because the proven (by witness) professor's animosity against older males (age, sex, gender discrimination), and for "*protected speech*" made by plaintiff. This discriminatory and bias "*ill will*" actions of the professor and by Dean **Yelin**, was made evident in later investigation by the Dean's department and other complaints of older students that have to withdraw from the professors classes, in the past. Furthermore, in the letter sent to plaintiff by Dean **Yelin**, requesting plaintiffs advise in renewing Professors' **Burdzinski's** contract. In addition, that the FALSE plagiarizing accusations were sent via fax to more than eight SUNY Colleges, (see COA #13). These was with the authorization of Defendants; **Purchase College,** Dean, Mrs. **Louise Yelin;** an evident intentional and retaliatory harm; which makes it "*shock the conscience",* causing permanent academic harm.

298) Furthermore, a discriminatory act, that has caused mental anguish leading to PTSD, certainly, was the lack of "*procedural safeguard*" and foreseeable by Defendants; **Purchase College,** Dean, Mrs. **Louise Yelin** and **William Baskin,** which was built into the process of conduct or custom and facial adequacy of the unofficial personal policy, (personal conduct or custom) that the student integrity is never placed after the professor's; even if the action of the professor was gross-negligent (discriminatory animus); that foreseeably did cause plaintiff's injuries.

299)Defendants; **Purchase College,** Dean, Mrs. **Louise Yelin** and **William Baskin; by** allowing a an emotionally disturbed state actor (the Professor), involving his own personal bias views, against an older, disabled and member of a protected class (plaintiff) student; furthermore, was in disregard of the student's *"liberty interest"* jeopardizing the student (plaintiff) *"bodily integrity"*(health), leading to his injuries. These wrongful actions constituted a deprivation of *"due process"* by the state actors, ***Ingraham v. Wright,*** 430 U.S. 651, 673–74 (1977)."Hence…

300)Plaintiff's injury—PTDS (adopted) —resulted from the conduct or custom of a state employee's lack of *"duty to protect"* the academic and personal welfare of the student (as supposed to the age of a PhD Professor) as state official, even when acting as a private actor.

301)Furthermore, the *"arbitrary action"* of not providing a proper hearing was a violation of *"substantive due process"*; a component of the Fourteenth Amendment which require all governmental intrusions into fundamental rights and liberties be fair and reasonable and in furtherance of a legitimate governmental interest; See, ***County of Sacramento v. Lewis,*** 523 U.S. —, 118 S. CT. 1708, 1716 (1998); see also ***Collins v. City of Harker Heights,*** 503 U.S. 115, 130 (1992).

302)The action of age and gender (males only, *Parr,* #98 is adopted, as applies to this COA) discriminatory action to be arbitrary which *"shock the conscience"*… with *"clear indifference"* to the person's disability.

Please note that, any reasonable person would know that an emotional hardship (such discrimination, retaliation) CAN cause severe and irreparable suffering to a disabled person; moreover than a non-disabled person. This applies to ALL causes of action in this new recommenced complaint; since ALL defendants herein is intellectually above a reasonable person (above the education of the average citizen). Expert Opinion.

303)Where all evidence of wrongdoing from the part of professor's Mr. **Mark Burdzinski,** emotional actions, was proposed to Mr. **William Baskin,** this Purchase College official, by his individual and collected actions of the other school officials named herein; have no *"appropriate governmental interest suitably furthered by the differential treatment,"* and *"when an important personal right - such as public education -is affected, the government entity must show not only that there is an but also that there is "a real and substantial relationship between the classification and the governmental purpose which it purportedly serves"* to deny plaintiff his right to a hearing; even when plaintiff showed evidence of hospitalization due to his disability; Mr. **Basking** denial of the plaintiff's appeal, was just/but just protect the professor from his emotional error die to his illness illness. However, causing the stress plaintiff was put upon served

none of the above, but causing added to plaintiff's injuries, of prior hardship at the school.

304) Where ALL state actors named herein, having special training (most hold PhD's), thus being above of what an ordinary person would reason; knowingly that plaintiff was a member of a protected class (age, and disabled), intentionally enacted the "*creation of an hostile environment*", for plaintiff's protected class of students as policy, of personal interest; contributing immensely to the plaintiff's permanent personal injuries.

Please note, Expert Opinion has stated that "*a discriminatory act is equivalent to day raping of the soul*"; thus having a long-lasting or a permanent trauma".

Count VII, (42 U.S. Code, Sec. 1983):
(Title IX of the Education Amendments of 1972)

305) Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000).

306) Defendants; **Purchase College, University;** for the actions of Professor Mr. **Mark Burdzinski,** Dean, Mrs. **Louise Yelin, Richard Nassisi** and **Ricardo Espinales,** and all other individuals situated in the similar situation "*persons*", acting under the color of the law, in their individual capacity; conspires (and did) to deprived plaintiff of equal right and/or privileges to Higher Education Opportunity by violating The Higher Education Opportunity Act 2008 (Public Law 110-315) (HEOA).

307) The deprivation, as policy, (a PhD professor, is above the student, thus, never wrong), for false reasons, bias action and discrimination. Furthermore, with disregard to the investment of property of the plaintiff in his education.

308) The deprivation existed by the defamatory act that "plaintiff plagiarized", placing plaintiff with a permanent "F" for the class in question, and jeopardizing plaintiff future and health; in addition, but not limited to, *parr*. #297 is adopted.

309) Defendants; **Purchase College, University;** for the actions of Professor Mr. **Mark Burdzinski,** Dean, Mrs. **Louise Yelin,** knowingly the deprivation was scheme to protect a person (the professor's) of his illness, facilitated the 29 page plagiarizing charges to be disseminated to more than eight SUNY and others universities, (See COA #13); with the sole purpose of cause harm to plaintiff.

Please note, that when the facilitated the 29 page plagiarizing charges was spread to those universities,

ALL of these Defendants; **Purchase College, University;** for the actions of Professor Mr. **Mark Burdzinski,** Dean, Mrs. **Louise Yelin, Richard Nassisi** and **Ricardo Espinales** school official were named in a pending federal action, (See Amend. Compl).Which is an inference of retaliation.

310)In addition, Plaintiff asks the Court to construct a legal theory pertaining to this COA, that most suits this rational, in light plaintiff is representing himself (*Pro-See*).

Count VIII, (42 U.S. Code, Sec. 1983):

(The First Amendment to the US Constitution):

311)Plaintiff asserts that, defendants, **Purchase College,** and Mrs. **Louis Yelin,** employees, **Richard Nassisi, Ricardo Espinales** and professor, **Mark Burdzinski,** by removing plaintiff from the class for his PROTECTED statement, *"real problem was his personality"*. Has invidiously deprived plaintiff of his First Amendment *"rights, to speech"*, action that took place out-side the class room, thus, it did not interfere with the class itself, is/was certainly guaranteed by the United State Constitution, thus…

312)Depriving plaintiff of his *"freedom of speech"* and subsequent *"right to property"* (investment in education), were the result of professor's **Mark Burdzinski,** gay bias personal views against a age, sex (gender) and a member of a protected class, with *"no governmental interest"*--as stated above.

313)Plaintiff asserts the state actors named herein, unconstitutional acts of forcing plaintiff of his rightfully paid class, and further defamatory statements (as stated above, in *parr*, #309); which can only be understood to promote a bias homosexual conduct or custom, against aged, sex (gender males only) members of a protected class; which is well documented in many scholarly studies. Expert Opinion.

314)These deprivations significantly impair plaintiff's First Amendment "rights, to *"freedom of speech"* and further, it is inconsistent with *"the share value of civilized social order"* (See, ***Hazelwood School District v. Kuhlmeir,*** 484 U.S. 260 (1988).

315)Plaintiff contends that the governmental (school official) action in question *"freedom of speech"* was unfair and discriminatory; severally, decrementing the real mission of contracted education, protected by the United State Constitution, and further, by applying bias-devious imaginary formulas of conduct or custom, to accomplish the act.

316)Furthermore, plaintiff contends the these state actors, have resentfully denied plaintiff's legitimate claim to entitlement to a protected property and liberty interest of *"freedom of speech"*, without proper *"due*

*process"; that/with,* the sole purpose to ensure the speech of the professor, and not of the plaintiff's.

317)Finally, plaintiff affirms that the wrongful actions of these state actors, had the sole purpose to punish plaintiff, for a protected kind of speech, and not to discipline plaintiff for a false academic dishonesty accusation that, *per-se,* did not exist.

## Count IX, (42 U.S. Code, Sec. 1983):
### (Policies, Customs and Practices):

318)Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983; Failure to Implement Appropriate Policies, Customs and Practices.

319)In addition, Plaintiff asserts that, defendants, **Purchase College,** and Mrs. **Louis Yelin,** and employees, **Richard Nassisi, Ricardo Espinales, William (bill) Baskin,** and professor, **Mark Burdzinski;** "failed to take necessary and adequate measures to train, retrain, supervise, monitor, educate to ensure that its officers received the proper training so as to enable them to render unbiased necessary respect and standard of duty students deserve. Furthermore…

320)Defendant: defendants, **Purchase College,** and Mrs. **Louis Yelin,** and employees, **Richard Nassisi, Ricardo Espinales, William (bill) Baskin,** had "*de facto*" policies, practices and customs that were a direct and proximate cause of the unconstitutional conduct committed herein in that her subordinates school officers were not properly trained and/or retrained. The impediment that led/causing the plaintiff's injuries. In addition…

321)Defendant: defendants, **Purchase College,** and Mrs. **Louis Yelin,** and employees, **Richard Nassisi, Ricardo Espinales, William (bill) Baskin,,** further violated plaintiffs' constitutional rights in permitting a pattern and practice within its school or department of allowing the wrongful, discriminatory (disability accommodation), retaliatory without probable cause.

322)Plaintiff can establish that a defendants, **Purchase College,** and Mrs. **Louis Yelin,** and employees, **Richard Nassisi, Ricardo Espinales, William (bill) Baskin,** are liable pursuant to 42 U.S. Code, Sec. 1983 under a theory of respondent superior (see ***Monell v New York City*** Dept. of Social Servs., 436 US 658, 694 [1978]), since these state actors, acting in their individual capacity, were properly notified of the deprivation of plaintiff's right and privileges.

323)Furthermore, defendants, **Purchase College,** and Mrs. **Louis Yelin,** and employees, **Richard Nassisi, Ricardo Espinales, William (bill) Baskin, are** responsible and liable under 42 USC § 1983 for the

unconstitutional actions of its employees; where plaintiff can prove (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right (see *Canton v Harris,* 489 US 378, 385 [1989]; *Monell v New York City Dept. of Social Servs.; Wilner v*{**39 Misc 3d at 564} *Village of Roslyn,* 99 AD3d 702, 703-705 [2d Dept 2012]).

Count VII, (42 USC § 1983):

(The Fourteen Amendment): and/or:

(Intentional: False, Misleading Statements and/ot Accusations):

324)Plaintiff asserts as fact that the defendants, Purchase College, and Mrs. Louis Yelin, and employees, professor, Mark Burdzinski; Richard Nassisi, Ricardo Espinales, William (bill) Baskin; are taking an oath, fabricated, and offer up by any trick, a strategy to make a materially false, assumed, or fraudulent dissemination (parr. #309 is adopted) statements and/or representation conspire makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry as *"plaintiff is dishonest, a cheater, he plagiarized",* in violation of 18 U.S. Code § 1001 (1), (2), (3) & 1621 (1).

Count VIII. (42 U.S. Code, Sec. 1983):

(The Fourteen Amendment): and/or:

(Retaliation):

325)Plaintiff asserts as fact, as evidence will show, that defendants; **Purchase College,** and Mrs. **Louis Yelin,** and· employees**, professor, Mark Burdzinski;** under the supervision and advise of SUNY Attorney Mrs. **Wendy Ravitz** (former **Kowalszki**), and acting under the color of the law, in their individual capacity… knowingly**,** (where these school officials are above the rational of an ordinary common person) facilitated the 29 page FALSE plagiarizing charges to be disseminated to more than eight SUNY and others universities, (See COA #13); which served no School and governmental interest, and with the sole purpose of cause harm to plaintiff. Hence, these school officials, (along with the defendants named in COA #13) conspired to treat plaintiff differently, with the sole purpose to retaliate against plaintiff solely because plaintiff filed legal action, were these state actors were named defendants, (See Amend. Assoc. Compl.).

326)Retaliation; the regulation implementing the Age Discrimination Act at 34 C.F.R. § 110.34, incorporates by reference 34 C.F.R. § 100.7 (e) of the regulation implementing Title VI of the Civil Rights Act of 1964 (Title VI), which provides that:

327)Intimidatory or retaliatory acts prohibited. *"no recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured*

*by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part"…*

(Authority: Sec. 601, 602, Civil Rights Act of 1964; 78 Stat. 252; 42 U.S.C. 2000d, 2000d-1)

328)Plaintiff asserts as fact, as the evidence will show, that defendants; Purchase College, and Mrs. Louis Yelin, and employees, professor, Mark Burdzinski; under the supervision and advice of SUNY Attorney Mrs. Wendy Ravitz (former Kowalszki); 1) knew there was plaintiff had called for this Court's intervention, and they these, individually, knew they were named as defendant [s] in a lawsuit, See Amend. Assoc. Compl. ; 2) they also knew plaintiff was a member of a protected activity, knew plaintiff was a member of a protected class and a recipient of disability accommodation; and 3) they knew that plaintiff was punished (not disciplined) suspended causing permanent harm and personal injuries (See damages

Count XII, (42 U.S. Code, Sec. 1983; Under Supplementary Jurisdiction):

(Violation of New York Constitution, Torts and State Law):

329)Supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are then linked to Federal claims in the action that they form part of the same event or argument under Article III of the Constitution of the United States of America.

330)As applies to all state actors named here in this COA; *Parr*. #48 through 52a, and all allegations in all Counts in this COA, are hereby adopted, and as apply, but not limited to, "gross negligence" of these state actors, that have contributed to plaintiff's permanent academic harm and personal injuries. Where a civil wrong, which can be redressed by awarding damages. See, e.g., Smith ***v. United States***, 507 U.S. 197 (1993).

331)*Parr*, #145 through 165, are hereby adopted.

332)AND ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any *"Bench Pro-see bias"* action) LEGAL THEORY FOR A *Pro-See* LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES *(permanent personal injuries, and others)*, OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action # 4** (recommenced with new developments).

Facts:

333)The statements in *Parr*. 3, 5, 9, and 48 through 52a) are adopted herein…

334)This COA refers to an incident, where plaintiff was accused of vandalizing, violation of def. **Purchase College** unconstitutional and/or as applied *"no contact order'* policy."

335)On or about July 2012, Plaintiff was put on probation for alleged violating a *"no contact order"*, where there was no controversy, and further, *"no standing"* on the matter.

336)On or about June of 2012, while plaintiff was attending summer classes Purchase College and residing on-campus, as his ONLY permanent address.

337)Around the same time, the plaintiff and his mother (82 years of age) visit the "student garden at Purchase College" and notice that said the garden was well-abandoned, where weed was predominant.

338)The same week plaintiff notified Mr. **John Delate** (on-campus manager), of his interest in becoming involved in the garden.

339)On or around the same time, plaintiff while residing on-campus and his mother  visit the said garden again and resolved to get involved and clearing just about weed from SO the abandoned "student garden".

Please note that plaintiff's mother not Plaintiff, (since his spinal disability preventing to do any gardening) proceeded to take out some of the weeds; in addition plaintiff's mother planted some tomatoes. In addition, plaintiff left his name and phone # for the person in charge of the garden, so plaintiff can be contacted for further voluntary work, where plaintiff's disability allows him to do, but not removing weeds.

340)About a week later, a student with possible kinship ties to the Purchase College staff, Ms. Tori Galatro called the university police claiming plaintiff vandalized the garden; where a university police proposed a *"no contact order"*, against plaintiff without knowing plaintiff. Plaintiff also noted that Ms. **Galatro** removed all traces of plaintiff's mother seeded tomatoes.

341)The same day of the irrational action of Ms. Galatro, Plaintiff contacted Ms. Galatro via personal (google email from his family), to Ms. Galatro's personal email, also at Google email account, expressing that she demands to retract of the libelous statement that plaintiff "vandalized the garden", that plaintiff was to engage legal action for the suffering of his mother", there were several emails exchanged between plaintiff

and Ms. Galatro. For this "protected communication" plaintiff was charged of violation of a "*no contact order*"; a clear infringement of "due process", which plaintiff is entitle to a fault.

342) The so called "*no-contact*" order was issued by Defendant Ms. **Melisa Jones**.

343) Right afterwards, the plaintiff was charged of violation of a "*no contact order.*" Thereafter…

344) About a week later, Plaintiff attended a preliminary hearing, with Defendant Ms. **Melisa Jones.**

345) At said preliminary hearing, plaintiff expresses his discontent for her (Ms. **Jones)** action. Plaintiff further, stated that the email communication to/with Ms. Galatro was "*protected communication*" a clear infringement of "*freedom of expression.* "In addition, Plaintiff also stated to def. **Melissa Jones,** that he was a member of a protected activity, (plaintiff had OCR pending complaints against some these defendants herein) partially disabled and 52 years of age. In addition, plaintiff stated that by attending Purchase College and even when residing on-campus—his only and permanent address-- he would and will not relinquish any of his constitutional civil rights for attending that preliminary hearing or another. Further, plaintiff, stated to Ms. **Jones** (via email too) that by attending any preliminary or hearing, he will preserve his right to litigation against all parties in any court. Plaintiff, in addition, rehearsed def. **Melissa Jones** that her actions were in violation of his civil rights.

346) The same said statements, were also notified via email to the provost office at **Purchase College, John Delate (**director of on-campus housing at said school), and Mrs. **Wendy Kowalski** (now **Ravitz**), [attorney for SUNY].

347) Furthermore, this "*no contact order*" was prejudice to Plaintiff since Ms. **Galatro** was unknown to Plaintiff; however, Ms. **Galatro** did know plaintiff. Also a violation of "*due process*".

348) At the time of the incident, Ms. **Galatro** was attending at the same class of Plaintiff, but she was unknown to plaintiff. It is unclear, at the time, how Ms. **Galatro** knew of plaintiff.

349) Plaintiff first physically knew/met Ms. **Galatro** when the professor indicated to Plaintiff her appearance.

350) About two weeks after, Defendant, Ms. **Qui-Qui Balascio**, and former defendant in the Assoc. Compl., conducted hearing "MOOT and/or NO CONTEST" where none of the parties in controversy, were present. Please note, the incident later was concluded by the parties it was a misunderstanding/mistake form Ms. Galatro (on the record that Ms. **Galatro** later retracted from her charges and admitting her mistake).

351) Plaintiff and Ms. **Galatro** did notify defendants, **Melissa Jones** and her supervisor, Mrs. **Qui-Qui Balascio,** there was not contested in the incident, and that both would NOT be in attendance for her hearing.

352) All administrative rules and policies MUST be ruled and according to the law, Mrs. **Balascio** had not jurisdiction over the matter, but to cause harm, (her action later led to plaintiff suspension) since Ms. **Galatro** had dropped the charges against Plaintiff placed Plaintiff on probation for a violation of violating *"no contact order."*

353) About a week later Mrs. **Balascio's** conducted a hearing in the absence of both persons. In her report, she stated that plaintiff sent an email to Ms. **Galatro** by mistake, (for her action, COA #1 & 5, as relates to Mrs. **Balascio**); however, she placed plaintiff on probation, limiting plaintiff's activities at Purchase College.

354) Witnesses for Plaintiff will prove to this court, Mrs. **Qui-Qui Balascio**, actions were premeditated retaliatory, due to complaints against her abusive practices and behavior; furthermore, her actions were intentional to harass the plaintiff due to his prior complaint to the provost office, (See cause of action # 1& 5).

Please note, that time of the incident, other school officials reported to plaintiff that Mrs. **Balascio** is/was also well known to have an abusive and vindictive behavior with students.

355) Later on this incident, Plaintiff decided to file his first 30-day notice pursuant to 42 U.S.C. § 6104 (e) (1) of Intention of legal action, where Mrs. **Qui-Qui Balascio** and **Melissa Jones** were named as Defendants. It is the Plaintiff's belief and other Purchase College officials that the filing of the notice, encouraged defendant, Purchase College's students' affairs department, including, but not restricted to, Mrs. Balascio and Ms. Melissa Jones, Wendy Kowalski (now Ravitz) to escalate the persecution, find motives outside their school assigned duties to strike back against the Plaintiff.

356) Approximately 30 days later, Plaintiff file another complaint with, US Dept. of Education (OCR); case # 02-12-2158.

357) On January 30, 2013, OCR found, implying, that the student affairs in this incident had mislead them by saying they did not know plaintiff was a member of a protected activity (complainer in prior OCR complaints); furthermore, OCR, assumed that they did recognize it was a member of a protected action…

358) However, OCR was prevented from interviewing Ms. Galatro (as demanded by the complainant in his phone interview with OCR) OCR found, the disciplinary action was consistent with the policy, and the documentation presented by the school; consequently, they would need no farther activity…

359) Yet, in the start of February, 2013, in a telephone conversation with Mr. James Moser (OCR Attorney and case Manager, and Witness) did state that there was a cover up of facts in this incident found at interviewing school staff (def. **Melissa Jones,** def. **Qui-Qui Balascio** and others) recommending plaintiff to file an appeal with OCR; that shall issue not findings, thus plaintiff would be allowed to take legal action if later was necessary.

Please note that, by examining many of Purchase College student's complaints with OCR… plaintiff has found that the "student affairs office" at said College, there is a correlation of manipulation of documentation and a custom of misleading OCR's complaints. Plaintiff shall subpoena these students to testify as witness for the plaintiff.

360) In February, 2013, plaintiff filed an appeal with the US Dept. of Education (OCR); even so, no response was ever obtained. Please notice that plaintiff was suspended in April. Another reason Purchase College had to retaliate and suspend plaintiff, (Expert opinion).

Damages:

361) *Parr.* #2, & 4 through 11, are hereby adopted…

362) For the purpose the worsening of the plaintiff's physical and mental health, COA are 1…3 are adopted.

363) As a result, of defendant, **Purchase College**; and its employees, Def. Mrs. **Qui-Qui Balascio**, **Def. Melissa Jones,** (issuing a no contact order where one party does not know the other, being the "*no contact order*" **unconstitutional** *per-se*) actions of personal involvement (bias, retaliate against a member of a protected group [54 years old & disabled] in distress and due to their personal view and to cover-up their peer workers' same views of abuse of power). Therefore…

364) Plaintiff was humiliated, suffered an added worsening of his suffering of his already had suffered (see COA 1, 2&3); in addition…

365) Plaintiff suffered, additional and more severely, and more frequent mental anguish; in addition to what plaintiff had already suffered.

366) Furthermore, more frequent, and severe feeling of worthlessness or feeling diminished; to boot, more

concurrent feelings of being persecuted (becoming more paranoid); health problems that developed into sleeping problems (lack of sleep, nightmares and waking up night with fear and memories of the events); hence, adding more emotional pain and tension contributing to physical pain.

367) At this point plaintiff's spinal injury were worsening, as to have more frequent spasms, inflammation causing difficulty walking and less utilization of his weaponry, thus hands.

368) Because of these accumulative actions, and under the advice of the Plaintiff's academic adviser, Mrs. **Kathleen Ceng**; Plaintiff on the Fall semester of 2012 solicited counseling for depression and PTSD, with the Purchase College counseling center.

369) This treatment was cut off and ended with the Plaintiff's illegal suspension in April 2013. Furthermore, Mrs. **Qui-qui Balascio**, Defendant, **Melissa Jones**, actions, adding more intentional harm that in term has led to Plaintiff's irreparable permanent academic harm.

370) Furthermore, their activities have resulted in Plaintiff's current medical condition and personal harm (see exhibit A).

Legal Theory.

371) *Parr*. #48 through 52a are hereby adopted.

372) Non-discrimination Policy, *parr*. 84 is adopted.

373) For all purposes of this COA (and ALL other COA, in this complaint), defendants deprivations of rights against plaintiff, as stated herein, *per-se,* contributed to plaintiff permanent physical and mental injuries. Therefore…

374) After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby states, by the fact that all administrative and time limitations have been consumed and/or no administrative remedies—in good faith and no findings…

375) Plaintiff asserts as fact that Defendants; Purchase College, Mrs. **Qui-Qui Balascio** Ms. **Melissa Jones,** and furthermore, all below the bias supervision of Mrs. **Wendy Kowalscki** (now Ravitz), and all other individuals situated in the similar place, and "persons", acting in their under the color of the law, in their individual and official capacity… violated and deprived plaintiff of his civil rights and privileges; furthermore…

376) ALL parties invoked here in this COA, state workers, acted out-side their "*stand of duty*" towards the student-plaintiff, in addition, but not limited to, the humiliation and abuse of plaintiff's dignity. Causing plaintiff undue stress and emotional pain. In addition...

377) ALL parties invoked here in this COA, and their illegal actions, plaintiff asserts as fact that, these officials were out-side their fiduciary responsibilities, with no governmental involvement in the pedagogy; in addition against SUNY or the State of New York law and their public officer policies, of true infliction of emotional hurt. Furthermore...

378) ALL parties invoked here in this COA, and their illegal actions, plaintiff assert, as the fact that their undue wrongful actions, were in direct violation of respect and dignity owed to student-plaintiff, especially an older, disabled person, (a member of a protected class of students) resulting in permanent-personal injuries..."*gross-negligence*". In addition, these state actors have promoted the intentional creation of undue disparate treatment and a hostile environment, with no real government interest, but the sole purpose to bully the plaintiff.

Please short letter that, the "student affairs" (all state actors named herein) dept. at Purchase College, have a history of abuse toward the students, as stated by several school officials from SUNY Binghamton and SUNY Westchester Community College in addition to the good and fair school officials of Purchase College have said on many occasions to plaintiff. All of these, in accession to the statements St, Vincent staff, that have stayed the same. Additionally...plaintiff, with his life expiries, believes that "school violence" is overdue at this school, see COA #11; where plaintiff in an email sent to def. Danielle DaGosto, assert an incident where a student at said Purchase College, "wanted to get hold of a machine gun to school". Nevertheless, it was plaintiff that was charged with criminal violation... go figure! Furthermore...

379) ALL parties invoked here in this COA, have knowledge, plaintiff was/is part of a "*protected class* "receiving disability accommodation; plaintiff was treated differently that other students (severely harshly); furthermore...

380) Plaintiff asserts, fact that ALL parties invoked here in this COA, have a higher education (All with MS degrees) than the ordinary general person's education; thus, a higher intellectual and due rational is expected from them to avoid hardship and possible injuries. For this reason, a heightened (easy) valuation of wrongdoing was due and expected from these school officials (as in all other COA)... where, they knowingly deprived the plaintiff of his civil rights and privileges, (as plaintiff states below)... causing

severe mental torture, humiliation and emotional pain, warrant "gross negligence" actions of these school officials. Ina addition, these "gross negligent" actions have led to his injuries. Hence…

381) Plaintiff was treated differently, harshly, (as in an organized-retaliatory bullying) than other students situated in the same situation, as to age, gender, sex, and sexual orientation concerns.

## Count I, (42 U.S. Code, Sec. 1983):

### (General)

382) Plaintiff brings this action under 42 U.S. Code, Sec. 1983; where Defendants**; Purchase College, Mrs. Qui-Qui Balascio** Ms. **Melissa Jones,** all under the bias supervision of Mrs**. Wendy Kowalski (now Ravitz).** In addition to all other individuals situated in the similar situation, as "*persons*", acting in their under the color of the law, in their individual and official capacity… conspired (and did) to deprive, but not limited to, plaintiff of his federally protected rights and privileges (activities)….

383) Where personal and emotional involvement (undue "*sheer animosity*" and "*ill will*") against a scholarly person, (plaintiff) member of a protected category (an older, disabled student-persons) to accommodate personal belief of vindictive and unjustifiable persecution, leading to organized-retaliatory bullying; causing, in great part, plaintiff's permanent and irreparable disabling injuries; and further, in direct violation of SUNY or the State of New York policies and federal and commonwealth laws. Additionally…

384) Where, def. Mrs. **Qui-Qui Balascio** under the express and biases supervision of SUNY Attorney, Mrs. **Wendy Kowalski** (now Ravitz), personal involvement and knowledge and approval of the wrong doing stated herein this COA, thus, "*respondent superior*" is applicable. Where extensive notification of the deprivation was submitted to them by plaintiff. (See declaration of Mrs. **Wendy Kowalski** [now Ravitz], at Doc. #14, of the Assoc. Case, 13-CV2586); where she intentionally misleads, causing undue harm, outside her fiduciary duties, and with no governmental purpose in education, but harassment, plaintiff based on irrational social paranoia. In addition…

385) Def. Mrs. **Qui-Qui Balascio** under the express and biases supervision of SUNY Attorney, Mrs. **Wendy Kowalski** (now Ravitz), personal involvement and knowledge and approval of the wrong doing stated herein, this COA,   have been "*deliberately indifferent*" to the pattern of severe and pervasive harassment and bullying against and suffered by Plaintiff.

## Count II, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 242)

(Deprivation of Rights Under the Color of Law).

386) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

387) *Parr,* #267 through 270, are hereby adopted.

Count III, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 241)

(Conspiracy Against Right)

388) *Parr,* #271 through 273, are hereby adopted.

Count IV, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 245)

(Federally Protected Activities)

389) *Parr,* #274 through 276, are hereby adopted.

Count V, (42 U.S. Code, Sec. 1983):

(The Fourteen Amendment, and/or):

(Age, Sex [gender] and Sexual Orientation Discrimination):

390) COA #1, MUST is incorporated for this count for Defendants; Mrs. Qui-Qui Balascio, in the practice of her routines and customs of persecuting member of a protected class-- age related students.

391) For the animosity demonstrated by Defendants; Mrs. **Qui-Qui Balascio** Ms. **Melissa Jones,** all under the bias supervision of **SUNY Attorney,** Mrs. **Wendy Kowalski** (now **Ravitz),** and all other individuals situated in the similar situation, and *"persons"*…acting in their under the color of the law, in their individual and official capacity…habve violated "Section 6102 of the Age Discrimination Act of 1975, which prohibits discrimination on the basis of age under any program or activity that receives federal financial assistance. 42 U.S.C. § 6102, pursuant to the regulation at 34 C.F.R. § 110.39; 34 C.F.R. Part 110; and 45 C.F.R. Part 90.1., and 45 CFR Part 617, and its implementing regulations (45 CFR Part 90)

which applies to public and private institutions that receive federal funds. In addition…

392) Plaintiff asserts that ALL "*persons*" (more than two school officials) defendants (and none def.) named herein, conspired to (and did) deprived plaintiffs of his right, privilege, and, but not limited to: of property, by treating plaintiff differently, solely because he "*does not fit the student profile*" ALL rational asserted in COA #2, is hereby adopted).

393) As witness shall testify, that Defendants; Mrs. **Qui-Qui Balascio** Ms. **Melissa Jones,** all under the bias supervision of **SUNY Attorney,** Mrs. **Wendy Kowalski** (now **Ravitz),** single-out plaintiff in this, but not limited, COA because of the defendant's personal views, of feeling uncomfortable with plaintiff, age, sex (gender) and/or sexual orientation, residing on-campus (irrational, undue social paranoia); precluding plaintiff-student from having an equal right to education, as others has/had/have.

## Count VI, (42 U.S. Code, Sec. 1983):

### (Fourteenth Amendment).

#### (Equal Protection)

394) As applies to all state actors named here in this COA; *Parr.* #48 through 52a, are hereby adopted.

395) For the purpose of this count; the state actors named herein had knowledge that plaintiff was/is, and still is, a <u>member of a protected class,</u> with limitations disability…

396) The Fourteenth Amendment is violated when state officials acting in the power of the state law and deed contrary to such laws. Hence..

397) Defendants; **Purchase College** Mrs. **Qui-Qui Balascio** Ms. **Melissa Jones,** under the bias supervision of Mrs. **Wendy Kowalski** (now **Ravitz),** and all other individuals situated in the similar situation, and "*persons*", acting in their under the color of the law, in their individual and official capacity… conspire to/and deprived plaintiff of his Fourteenth Amendment to the U.S. Constitution, adopted in 1868, declares that: "no state may deny any person the 'equal protection' of the laws, where…

398) Plaintiffs was put on probation that led to a suspension for reasons (see facts) that serve "*no appropriate governmental interest*" (a classroom disturbance or violent disturbance may had been warrant for the plaintiff's punishment). This suitably furthered by the "*differential treatment,*" and "when an important personal right - such as public education - is affected, the government entity must show not only that there is, but also that there is "*a real and substantial relationship between the classification and the governmental purpose which it purportedly serves.*" Clearly, when there are facts asserting that there was

<u>no need for disciplinary (punishment) action</u> against plaintiff, thus the inference of wrongdoing as a way of an "*organized retaliatory-bullying*" based action against plaintiff, MUST be observed. Furthermore…

399) An ordinary, common, uneducated person, would know that placing a member of protected class in such unnecessary hardship, is utterly irrational; furthermore…

400) Their illegal actions ARE out-side the real mission of the/any School. In addition to the lack of excellence in the customer service that a paying student-client deserve.

401) In summation to the lack of excellence in the customer service that a paying student-client deserve, is per-se, a violation of the contracted service of teaching by plaintiff.

402) *Parr.* #111 through 118, are hereby adopted.

403) Plaintiff has demonstrated (by facts, inferences and shall demonstrate by witness testimony) that the Defendants; **Purchase College** Mrs. **Qui-Qui Balascio** Ms. **Melissa Jones,** under the bias supervision of Mrs. **Wendy Kowalski** (now **Ravitz),** and "*Persons*", have orchestrated campaign, policy or custom, purely motivated by sheer personal beliefs and social paranoia, and retaliatory-vindictive (bullying) actions seemingly required under ***Esmail***. Slip Op. At 2, (see *parr.* #116).

<u>Please note</u> that other students have reported such activity to plaintiff and authorities.

In addition…

404) Defendants; Purchase College Mrs. Qui-Qui Balascio Ms. Melissa Jones, under the bias supervision of Mrs. Wendy Kowalski (now Ravitz), and "Persons", attached to the usage of "gross negligence", against their "standard of responsibility", duly swear-owe to the student-client (especially a member of a protected class). These despicable actions, were purely motivated by sheer personal beliefs that that, THEY are immune to the abuse of power shown by the plaintiff as per-se. In accession, their, home-custom of social paranoia, (*ill will*) and an overly extended egocentric behavior, obviously required under ***Esmail***. Slip Op. at 2. (See parr. 116); as a major contribution causing to plaintiff's injuries. In addition…

405) ALL state actors, acted out "*sheer animosity*" and "*substantial ill will,"* and towards/against plaintiff (parr, #94 is adopted), by denying, his right to property (an action that, in part, led to the temporary removal of plaintiff), or investment in education; based on ill-dislike bullying attitude towards the complainant.

406) Lastly, but most significantly the court must first judge the material or significant portion of a grudge or complaint (the Injuries), to assess the proper and fair expression of the organic claim.

(Due Process, [Procedural & Substantive])

407) As applies to all state actors named here in this COA; Parr. #50, and all allegations in all Counts in this COA, are hereby adopted.

408) Defendants; **Purchase College** Mrs. **Qui-Qui Balascio** Ms. **Melissa Jones,** under the bias supervision of Mrs. **Wendy Kowalski** (now **Ravitz),** and "*Persons*", and all other individuals situated in the similar situation… "*Persons*"… have orchestrated campaign, policy or custom, purely motivated by sheer personal beliefs and home-custom of social paranoia, converted into an organized retaliatory-vindictive (bullying) actions. Which in term they conspire to (and did) deprived plaintiff of "due process" of the law, by granting plaintiff a hearing "with no contest", with the sole purpose to cause humiliation and harm; in addition, actions that served no governmental involvement. Furthermore, their actions were out-side any moral respect to the real mission of SUNY education purpose, and the State of NY public official policies and routines. Additionally…

409) Plaintiff, by the activities of these defendants, identified herein in this COA, asserts a permanent deprivation of "*pursuit of felicity*" of life, (a person with a physical and mental chronic pain. can never pursue happiness). This in addition to his to "*right to bodily integrity*", which were foreseeable to the defendants… and the plaintiff's right to individual interest… All affected by the officials 'undue actions; with no fair outcome. Furthermore…

410) The vindictive infliction of an undue punishment and/or any discriminatory act, suffered by plaintiff; that leading to the plaintiff's severe Post Traumatic Stress Disorders (PTSD). This, certainly, was the lack of "*procedural safeguard*"; from the part of Defendants… **Purchase College** Mrs. **Qui-Qui Balascio** under the bias supervision of Mrs. **Wendy Kowalski** (now **Ravitz).** Lack of "Procedural safeguard" that was built into the process of conduct or custom and facial adequacy of the unofficial personal policy. A policy in which should have its basis…"the student integrity is never placed before possible undue harm", not the opposite.  A "*de facto*" policy, making the negative inconsequential actions… gross-negligent, that can, and have, cause [Ed] plaintiff's permanent-personal-injuries. In addition to the danger of "*school violence*" giving another so similar scenario. As plaintiff and expert opinion have stated "*school violence*" is overdue at Purchase College. All courtesy of the bias and incompetent supervision of Mrs. **Wendy Kowalski** (now **Ravitz).** Furthermore…

411) Defendants; **Purchase College** Mrs. **Qui-Qui Balascio** under the bias supervision of Mrs. **Wendy Kowalski (now Ravitz),** by allowing them-selves to get involving his own personal bias views, against

an older, disabled and member of a protected class (plaintiff) student; furthermore, in disregard of the student's liberty interest in their bodily integrity (health), is against deprivation of due process by the state, ***Ingraham v. Wright,*** 430 U.S. 651, 673–74 (1977)."Internal quotation omitted.

412)Furthermore, these defendants have been deliberately indifferent to the pattern of severe and pervasive harassment suffered by Plaintiff.

413)Therefore, plaintiff's injury—PTDS (adopted) —resulted from the conduct or custom of a state employee's lack of "duty to protect" instead for punish (not discipline) the academic and personal welfare of the student as state official, even when acting as a private actor.

Please note these probatorial punishment actions against plaintiff stated in this COA, were sent via fax to more than eight SUNY Colleges, (see COA #13).

414)Furthermore, the undue probatorial punishment actions against plaintiff, and conducting a hearing without contest (neither party was present at the hearing), was, *per-se*, an "arbitrary action."

415)Furthermore, the "arbitrary action", was a violation of "substantive due process"; a component of the Fourteenth Amendment that protects against such, See, ***County of Sacramento v. Lewis***, 523 U.S. —, 118 S. CT. 1708, 1716 (1998); see also ***Collins v. City of Harker Heights,*** 503 U.S. 115, 130 (1992).

416)These retaliatory action against plaintiff (see count on "retaliation"), which was clearly of the "shock the conscience"… with clear indifference to the person's disability, academic personal integrity.

417)Furthermore, any reasonable person would know that an emotional hardship, such discrimination, retaliation and especially BULLYING, CAN, and did, cause severe and irreparable suffering to a disabled person; moreover than a non-disabled person. Where, ALL defendants herein are intellectually above a reasonable person (above the education of the average citizen); thus, their actions were, *per-se*, gross-negligent and

418)Defendants; **Purchase College** Mrs. **Qui-Qui Balascio** Ms. **Melissa Jones,** under the bias supervision of Mrs. **Wendy Kowalski** (now **Ravitz),** and "*Persons*", and all other individuals situated in the similar situation… "*Persons*"; by their individual and collective actions, have no "*appropriate governmental interest suitably furthered by the differential treatment,*" and "*when an important personal right or privilege - such as public education, or the interruption of such -is affected, the government entity must show not only that there is an but also that there is "a real and substantial relationship between the*