*classification and the governmental purpose which it purportedly serves*" to conducting a hearing, with no contest, these defendants entered into a new school <u>totalitarian</u> College social order. Outside any legal standard or purpose.

419) Where ALL state actors named herein, having special training (especially SUNY Attorney Wendy Ravitz), thus being above of what an ordinary person would reason; knowingly that plaintiff was a member of a protected class (age, and disabled), intentionally enacted the creation of any hostile environment, for plaintiff's protected class of students as policy, of personal interest; contributing immensely to the plaintiff's permanent personal injuries.

<u>Please note,</u> Expert Opinion has stated that "a discriminatory, retaliatory act always have a long-lasting or a permanent trauma". Which is consistent with plaintiff permanent-personal-injuries.

Count VII, (42 U.S. Code, Sec. 1983):

(Title IX of the Education Amendments of 1972)

(Fourteen Amendment "equal protection")

420) Count VI, is hereby incorporated.

421) Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000).

422) Defendants**; Purchase College** Mrs. **Qui-Qui Balascio** Ms. **Melissa Jones,** under the bias supervision of Mrs. **Wendy Kowalski** (now **Ravitz),** and all other individuals situated in the similar situation "*persons*", acting in their under the color of the law, in their individual capacity; conspires (and did) to deprived plaintiff of equal right to Higher Education Opportunity by violating The Higher Education Opportunity Act 2008 (Public Law 110-315) (HEOA), by placing plaintiff in probation.

423) The deprivation, took place by the direct action of SUNY Attorney, Mrs. **Wendy Kowalszki** (now **Ravitz),** misleading statement/deposition, filed with this court, see Assoc. Case, 13-CV-2586, Doc. 14.

<u>Please note,</u> that her declaration validates this COA as primary direct COA that led to plaintiff's suspension; that is, if this event (this COA) would not have happened, and or corrected, there would not have been a suspension, and subsequent harm.

<u>Please also note,</u> that when the facilitated the 30 pages plagiarizing charges was spread to those universities, ALL of these school official were named in a pending federal action, (See Amend. Compl).

<u>Count VIII, (42 U.S. Code, Sec. 1983)</u>:

<u>(The First Amendment to the US Constitution)</u>;

<u>(First Amendment, Prior Restraints--*speech*)</u>.

424) The plaintiff claims, that the so called "no contact order" of Purchase College is based on an unconstitutional (on-its-face ot as applied to plaintiff) prior restraint of speech arising out of an email communication with fellow student Ms. Galatro. Furthermore, Ms. Galatro never claimed a violation of the unconstitutional and/or as applied to plaintiff "no contact order", Defendants herein this COA had "*no standing over*" the matter to place plaintiff in probation. Probation that later was curtail instrument in plaintiff's suspension on April 2013.

425) The First Amendment to the U.S. Constitution provides that "*Congress shall make no law abridging the freedom of speech.*" That amendment "applies to the states via the *Due Process* Clause of the Fourteenth Amendment." *Hill v. Thomas*, 973 P.2d 1246, 1251 (Colo.1999), aff'd, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). See also *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940); *Sanderson v. People,* 12 P.3d 851, 853 (Colo.App.2000).

426) An email notification of disagreement and/or of official nature, (Signs) constitute speech protected by the First Amendment. *Veterans of Foreign Wars, Post 4264 v. City of Steamboat Springs,* 195 Colo. 44, 49, 575 P.2d 835, 839 (1978), (an legitimate communication via email [equal to an official letter]"by their very nature [are] a means of expression and communication within the meaning of the First Amendment").

427) A Purchase College policy of "*no contact*", is a prior restraint when it subjects constitutionally protected speech to school regulation prior to the time that such speech is to occur. 2354, *Inc. vs City of Dallas,* 896 P.2d at 279.

428) Where a prior restraint creates a risk of delay such that every application of the regulation creates an impermissible risk of suppression of ideas, facial challenges to the prior restraints are permissible and imperative (such plaintiff' email). See FW/PBS, *Inc. v. City of Dallas,* 493 U.S. 215, 223-24, 110 S.Ct. 596, 603-04, 107 L.Ed.2d 603 (1990).

429) Because governmental or school in this case, regulations establishing a system of prior restraint on constitutionally protected speech or communication are presumed to be invalid; where the review of Englewood's special review procedure and policy under a *strict scrutiny* standard of review. 2354, *Inc.*, 296 P.2d at 279.

430) In determine whether there is a compelling educational interest in establishing the permitting scheme and whether the criteria for issuing permits are sufficiently narrow, objective, and definite to prohibit the permitting plaintiff from exercising unfettered discretion. 2354, *Inc.*, 896 P.2d at 279-80.

431)Defendants herein this COA, may or may not lack concrete standards to guide discretion, in the application of the *"no contact order"* and may therefore unconstitutionally vest the decision-maker with unregulated discretion to deny due process and permit the application of such *"no contact order"* under no special review procedure, see ***City of Lakewood v. Plain Dealer*** Publ'g Co., 486 U.S. 750, 770, 108 S.Ct. 2138, 2151, 100 L.Ed.2d 771 (1988),

Count IX, (42 U.S. Code, Sec. 1983):

(Fourth Amendment, Seizure & Privacy).

432)A person has a very high expectation of privacy in their home.

433)Plaintiff while in the privacy of his home sent an email to Ms. **Galatro** private email. An unreasonable *"no contact order"*, for the purpose of personal communication (from home in private computer and from a private email account,) with the intention to take legal action against Ms. **Galatro**.

434)Plaintiff's email to Ms. **Galatro** was equal to a notice of claim letter, for the intention of plaintiff, thus defendant in this COA have violated the plaintiff Fourth Amendment by interfering in plaintiff right to be left alone at home. Hence, defendants herein, had not governmental interest in the email communication.

   a. Please note, that at the time plaintiff sent the notice of claim to Ms. **Galatro**, plaintiff did not know, Ms. Galatro was a student at Purchase College; evermore, plaintiff did even thought, Ms. Galatro was a student at/in the same class as plaintiff; however, Ms. Galatro knew.

   b. Please also note, school officials at the time and after the incident, notified plaintiff that Ms. Galatro was a kin to a Purchase College school official. Plaintiff cannot offer proof of this at this time.

435)Plaintiff, properly notified Mr. **John Delate,** (head of the on-campus housing) and SUNY Attorney, Mrs. **Wendy Kowalszki (now Ravitz),** prior to this incident that, plaintiff's on-campus housing was his permanent and only home or year around address; not as regular student that school address is a temporary address, where some waiving of fundamental rights can apply.

436)Furthermore, defendants, Defendants; **Purchase College** (provost office), Mrs. **Qui-Qui Balascio** Ms. **Melissa Jones,** under the bias supervision of Mrs. **Wendy Kowalski** (now **Ravitz**),

Count IX, (42 U.S. Code, Sec. 1983):

(Fourteen Amendment, and/or):

   (Retaliation):

437)Retaliation; the regulation implementing the Age Discrimination Act at 34 C.F.R. § 110.34, incorporates by reference 34 C.F.R. § 100.7(e) of the regulation implementing Title VI of the Civil Rights Act of 1964

(Title VI); authority at : Sec. 601, 602, Civil Rights Act of 1964; 78 Stat. 252; 42 U.S.C. 2000d, 2000d- which provides that:

> *"Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder."*

438)Elements of retaliation:

439)Plaintiff engaged in a protected activity; Plaintiff had a pending complaints with OCR in which these defendants were part of such complaints.

440)Hence, all *"persons'* named herein this COA, had documented knowledge (notification via email and certified mail, that they were named as defendants in "notice of claim", pursuant to 42 U.S.C. § 6104 (e) (1); new the plaintiff was part of *"protected activity"*, thus lie to OCR in their investigation.

441)Plaintiff suffered an adverse action caused by the retaliation; plaintiff was suspended, and suffered personal injuries (gross-negligence). See damage of this COA.

442)There is a causal link between the protected activity and the adverse action--*per-se. Parr,* # 402 is adopted.


Count X, (42 U.S. Code, Sec. 1983; Under Supplementary Jurisdiction):

(Violation of New York Constitution, Torts and State Law):

443)As applies to all state actors named here in this COA; *Parr.* #50, and all allegations in all Counts in this COA, are hereby adopted.

444)A civil wrong, which can be redressed by awarding damages. See, e.g., Smith *v. United States*, 507 U.S. 197 (1993).

445)Supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

446)*Parr*, #145 through 165, are hereby adopted.

447)AND ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES

AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "*Bench Pro-see bias*" action) LEGAL THEORY FOR A *Pro-See* LITIGANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (*permanent personal injuries, and others*), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action #5,**(New COA).

Facts:

448)The allegations and statements in Parr. 1 through 10, 15 and 28 are herein adopted…

449)This cause of action refers to an "Age & Sex (gender) Discrimination" (on-campus housing) complaint filed with the US Dept. Education-civil rights or (OCR) case #02-12-2192, where plaintiff prevailed on "allegation # 3 (See Exhibit H), which states as follows:

450)Please note; for purposes of the fall school semester 2013 at Purchase College, it means September, 2012.

451)On or about June of 2012, while plaintiff was attending summer classes Purchase College and residing on-campus, as his ONLY permanent address.

452)On or about the same time, Plaintiff requested Mr. **John Delete**, (on-campus housing manager at Purchase College), plaintiff's request on-campus housing for based on ADA accommodation due to his disability, (locomotive physical impairment); thus, to reduce traveling (Purchase, NY to Mt. Vernon, NY, then two miles of walking) hardship with heavy school utensils. Plaintiff requests the housing to be at the lowest price possible.

453)On or about the same time, Mr. **John Delete**, in an email sent to the plaintiff, Mr. **John Delete** assured to the plaintiff that his housing for the next semester (Fall 2013) would be at the lowest price available, of

$3,000, (he lowest price, at the time was $2,900). This was the only amount that could be afforded by the Plaintiff. Please note that the Plaintiff's only income is $849.00 per month from Social Security Disability, (See Doc. #3, Exhibit #11, and Assoc. Case #13-CV-2586).

454)On or about the same time, plaintiff received an email from Mr. **John Delete,** stating that the transition from the summer on-campus housing (*parr.*  Adopted), would be at school, hence, plaintiff would not

have to seek out of school housing.

455) On August 3, 2012 Plaintiff received a letter via email attachment From Mrs. **Wendy Ravitz-Kowalski**, (on notification by plaintiff of the agreement stated above and Attorney for SUNY, and defended in the Assoc. Case #13-CV-2586) requiring Plaintiff to vacate the on-campus housing by August 10, 2012. (See Doc. #3, Exhibit #14, and Assoc. Case #13-CV-2586).

456) As an explanation the on-campus housing assignment manager, (**Jane Doe**, a lady, who has been fired for making deals with in accommodating school officials needs first, and free housing) stated" *as policy of Purchase College, Mr. Morales has been classified as non-traditional student, thus he is only entitle to certain type of housing*"; at the time that type of housing cost over $6,000 per semester.

457) Purchase College under the supervision of Mr. **John Delete** Mrs. **Wendy Ravitz-Kowalski**, failed to provide proper school housing for the Fall semester of 2013, (year 2012) at an affordable price, as other students situated in a similar situation, in light of the discriminatory policy

458) Please note that at the age of 18, man, women are admissible to serve in the arm forces.

459) On Sept. 5, 2012, Plaintiff filed a complaint with the US Dept. of Education (OCR) case #02-12-2192 made during the summer of 2012, (See Exhibit H, herein attached &, Doc #3, exhibit #... of Assoc. Case, 13-CV-2586). OCR found an age discrimination issue (violation refereed this case/action/complaint to the Federal Mediation and Conciliation (FMCS), in the spring semester of 2014. The mediation never took place, since the plaintiff was suspended in April, 2014. "**Expert Opinion**", firmly believe, "that this may have been the real reason (to avoid mediation), the Plaintiff was suspended, in April 2014, since this was the third age discrimination violation issue found by OCR (US Dept. of Education. "

460) As a result, the Plaintiff had to move to a homeless shelter. Please note that Defendant, **Purchase College** and Mr. **John Delete** Mrs. **Wendy Ravitz-Kowalski** and **Jane Doe**, Plaintiff was treated differently than other students asking for the same housing; plaintiff was charged more, and not according as needed for his disability; which, by The State University of New York policies comes first; where a normal person can infer, such policies are in believe of personal involvement, or personal beliefs.

Damages:

461)( For the purpose of worsening of plaintiff's physical and mental health, *Parr*. 1...4 are adopted)

462) Parr. #2, & 4 through 11, are hereby adopted...

463)As a result, of Defendant, **Purchase College** and Mr. **John Delete** and under the biases supervision of SUNY Attorney, Mrs. **Wendy Ravitz-Kowalski** and all other individual situated in the same situation,...

464)Where their actions of personal involvement (out-side SUNY and State policies and anti-discriminatory laws, bias and paranoid, against a member of a protected group [54 years old & disabled] in distress and need for a basic of shelter, due to their personal view)...

465)Plaintiff was treated differently than other students situated in a similar situation.

466)Plaintiff was humiliated, displaced, diminished; furthermore, as a direct result of these state actors...

467)Plaintiff suffered added worsening, more severely frequent-concurrent more severe mental anguish, more frequent, severe feeling of worthlessness, more concurrent feelings of being persecuted (becoming more justifiably [with reason] paranoid); in addition...

468)Plaintiff had more sleeping problems (lack of sleep, nightmares and waking up night with fear and memories of the events), added emotional pain, and added concurrent stress leading to physical paint.

469)At this point plaintiff's spinal injuries were continue to worsening, as to have more frequent spasms, inflammation causing difficult walking and less use of his arms, thus hands.

470)Because of these accumulative actions, and under the advice of Plaintiff's academic adviser, Mrs. **Kathleen Ceng**; Plaintiff during the Fall semester of 2012, solicited counseling for depression and PTSD, with Purchase College counseling center of. This treatment was interrupted and ended with the Plaintiff's illegal suspension in April 2013. Furthermore, Defendant**, Purchase College**; and its school officials, **John Delate**, and **Wendy Ravitz** and all other individuals' actions, have led to Plaintiff's irreparable and concurrent medical condition and personal injuries (see exhibit A).

Legal Theory:

471)For non-defendants, parties herein, and where Def. **Purchase College** is incorporated... *Parr*. #50 is hereby adopted.

472)Non-discrimination Policy, *parr*. 84 is adopted.

473)For all purposes of this COA (and ALL other COA, in this complaint), defendants deprivations of rights against plaintiff, as stated herein; per-se, contributed to plaintiff permanent physical and mental injuries.

474)After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby

states, by the fact that all administrative and time limitations have been exhausted and/or no administrative remedies—in good faith and no findings…

475) Plaintiff asserts that Defendant, **Purchase College**; and its school officials, **John Delate**, under the bias supervision of Mrs. **Wendy Kowalscki** (now **Ravitz),** and all other individuals situated in the similar situation, and *"persons"*, acting in their under the color of the law,. in their individual and official capacity… conspired and did to deprived, but not limited to, plaintiff of his federally protected rights and privileges (activities)…

476) *Parr.* # 362 through 367, are hereby adopted.

## Count I, (42 U.S. Code, Sec. 1983):
### (General)

477) *Parr.* #50 & 459 are hereby adopted.

478) Where *personal and emotional involvement* against a student, member of a protected class (older male disabled student-persons) to accommodate personal belief against an older student, causing, in large part, plaintiff's permanent disabling injuries; in further and in direct violation of SUNY or the State of New York policies and federal and state laws…

479) Where Plaintiff asserts that Defendant, **Purchase College**; and its school officials, **John Delate**, under the express and biases supervision of Mrs. **Wendy Kowalski** (now Ravitz), personal involvement and knowledge and approval of the wrong doing stated herein this COA, thus, "respondent superior" is applicable. (See declaration of Mrs. Wendy Kowalski [now Ravitz], at Doc. #14, of the Assoc. Case, 13-CV2586). In addition…

480) These state actors have been deliberately indifferent to the pattern of severe and pervasive harassment suffered by Plaintiff.

## Count II, (42 U.S. Code, Sec. 1983):
### (Title 18, U.S.C., Section 242 [As applies to the *"Fourteen Amendment"* to the US Constitution; *"Equal Protection"* and the *"Due Process"* Clauses):

#### (Deprivation of Rights under the Color of Law).

481) As applies to all state actors, (two or more) named herein this COA; *Parr.* 48 through 52a, and all

allegations in all Counts in this COA, are hereby adopted.

482)*Parr*, #267 through 270, are hereby adopted.


Count III, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 241 [As applies to the *"Fourteen Amendment"* to the US Constitution; *"Equal Protection"* and the *"Due Process"* Clauses):

(Conspiracy against Right)

483)As applies to all state actors, (two or more) named herein this COA; *Parr.* 48 through 52a, and all allegations in all Counts in this COA, are hereby adopted.

484)*Parr*, #271 through 273, are hereby adopted.

Count IV, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 245[As applies to the *"Fourteen Amendment"* to the US Constitution; *"Equal Protection"* and the *"Due Process"* Clauses):

(Federally Protected Activities)

485)As applies to all state actors, (two or more) named herein this COA; *Parr.* 48 through 52a, and all allegations in all Counts in this COA, are hereby adopted.

486)*Parr*, #274 through 276, are hereby adopted.

Count V, (42 U.S. Code, Sec. 1983).

(Age, Sex [gender) Orientation Discrimination [As applies to the *"Fourteen Amendment"* to the US Constitution; *"Equal Protection"* and the *"Due Process"* Clauses ]):

487)As applies to all state actors, (two or more) named herein this COA; *Parr.* 48 through 52a, and all allegations in all Counts in this COA, are hereby adopted.

488)For the animosity demonstrated towards plaintiff by Defendant, **Purchase College**; and its school officials, **John Delate**, under the express and bias supervision of SUNY Attorney Mrs. **Wendy Kowalski** (now Ravitz), and all other individuals situated in the similar situation, and *"persons"*, acting in their under

the color of the law, in their individual and official capacity…these state actors, violated "Section 6102 of the Age Discrimination Act of 1975, which prohibits discrimination on the basis of age under any program or activity that receives federal financial assistance. 42 U.S.C. § 6102, pursuant to the regulation at 34 C.F.R. § 110.39; 34 C.F.R. Part 110; and 45 C.F.R. Part 90.1., and 45 CFR Part 617, and its implementing regulations (45 CFR Part 90) which applies to public and private institutions that receive federal funds.

489) Plaintiff asserts as fact that ALL defendants "*persons*" (more than two school officials) named herein, conspired to (and did) deprived plaintiffs of his right, privileges and but not limited to property, by treating plaintiff differently, solely because he "*does not fit the student profile*" (age and sex discrimination). ALL rational asserted in COA #1 & 2, are hereby adopted).

490) As witness shall testify, plaintiff was single-out because of the defendants personal views, of feeling uncomfortable with plaintiff, solely because of his age, sex (gender); precluding plaintiff-student from having an equal right to affordable on-campus housing, as others students has/had/have.

Please note, that Experts have stated that "Mr. Morales, (plaintiff) was a threat to these school official way of life," of cult or gang-like behavior; furthermore, the fact that plaintiff devoted most (except for travelling and sleeping time) of his time at school, including summers… plaintiff was seen as a significant obstacle to these school officials discriminatory actions; behavior which was brought from "their own living room" (home), implying "personal involvement". This also MAY explains the custom or conduct of Purchase College and BU (continuing education bias); which it has been redirected to Westchester Community College. It seems that these School officials have really made their home a tax payer's property… with the sole purpose of enforcing their own personal (discriminatory) views, based in "social paranoia" that serve no governmental purpose.

## Count VI, (42 U.S. Code, Sec. 1983):

### (Fourteenth Amendment)

#### (Equal Protection)

491) As applies to all state actors named here in this COA; *Parr.* 48 through 52a, and all allegations in all Counts in this COA, are hereby adopted.

492) For the purpose of this count; plaintiff was, and still is, a member of a protected class, with the severe limitations of age and disability, in severe need of on-campus housing to avoid traveling time and physical-mental stress.

493) The Fourteenth Amendment is violated when state officials acting in the power of the state law and act contrary to such anti-discriminatory policies and laws.

494) Defendant, **Purchase College**; and its school officials, **John Delate**, under the express and biases supervision of Mrs. **Wendy Kowalski** (now Ravitz), and all other individuals situated in the similar situation, and "*persons*", acting in their under the color of the law, in their individual capacity…conspired to/and deprived plaintiff of his Fourteenth Amendment to the U.S. Constitution, adopted in 1868, declares that: "*no state may deny any person the 'equal protection' of the laws*," where…

495) Plaintiff was <u>treated differently</u>, (differential treatment) left aside—off—from proper and reasonable affordable on-campus housing for reasons (see facts) that serve no "*appropriate governmental interest, which furthered suitably by the differential treatment*," and "*when an important personal right - such as equal rights to public higher-education, property, dignity are affected… the government entity must show not only that there is an but also that there is* " which is "*a real and substantial relationship between the classification and the governmental purpose which it purportedly serves*."

496) Clearly, when there are facts asserting that there was no real need to discriminate, against a disabled student in real need of close proximity to the classroom due to his spinal injuries; by depriving plaintiff, (member of a protected class of students) of "equal rights" to on-campus housing …action against plaintiff, thus the inference of wrongdoing was as a way of an unreasonable discriminatory personal belief, as policy; such as the age and sex based discriminatory actions against plaintiff, MUST be observed.

497) Furthermore, an ordinary, common, uneducated person, would know that placing a member of protected class (disabled person, which is in constant paint) in such unnecessary stress of traveling to school with all heavy school utensils, was utterly irrational; furthermore, out-side the real mission of the school. In addition to the lack of excellence in the customer service that a paying student-client deserve.

498) *Parr*. #111 through 118, are hereby adopted.

499) Plaintiff has demonstrated (by facts, inferences and shall demonstrate by witness testimony) that the Defendant, **Purchase College**; and its school officials, **John Delate**, under the express and biases supervision of Mrs. **Wendy Kowalski** (now Ravitz), and "*Persons*", have orchestrated campaign, conduct or custom as a permanent policy, purely motivated by sheer "*ill will*" of personal beliefs and social paranoia, (age and sex students are bad or less important) actions seemingly required under *Esmail*. Slip Op. at 2, (see *parr*. #116).

<u>Please note</u> that other students have reported such activity of housing discrimination to plaintiff and authorities. This is especially true for African Americans and disabled person-clients and students.

<u>Please note,</u> that for the period of three years that plaintiff attended Purchase College, seven days a week (including summers [thus, approx.. 90 credits in 2 just years, {in a hurry to graduate early duet to the imminent persecution perpetrated by the ALL defendants named herein this Compl.}]), plaintiff NEVER saw a student in a wheelchair, and plaintiff was the only full-time student, of over 50 years of age attending Purchase College. In addition...

500) Defendant, **Purchase College**; and its school officials, **John Delate**, under the express and biases supervision of Mrs. **Wendy Kowalski** (now Ravitz), and *"Persons"*, attached themselves to custom of <u>gross negligence</u>, against their dully owed *"standard of duty"* against a student-client member of a protected class; purely motivated by sheer personal beliefs (pervert minds) abuse of power and social paranoia, and overly extended egocentric behavior, seemingly required under ***Esmail***. Slip Op. at 2. (See *parr*. #116); as a major contribution causing to the plaintiff's injuries. In addition...

501) ALL state actors, acted out of *"sheer animosity"* and substantial *"ill will"* and towards/against plaintiff (*parr*, #94 is adopted), by denying, his right to be treated equally, that certainly led to the loss his investment to education. An action that, in part, led to the plaintiff's progressing and permanent injuries.

502) Finally, but most importantly the plaintiff request the court must first evaluate the material or significant part of a grievance or complaint and the plaintiff's injuries. Thus to assess the proper and fair construction of the constitutional claim—if and when needed.

(Due Process, Procedures)

503) As applies to all state actors named here in this COA; *Parr.* # 48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

504) Defendant, **Purchase College**; and its school officials, **John Delate**, under the express and biases supervision of Mrs. **Wendy Kowalski** (now Ravitz), and *"Persons"*, and all other individuals situated in the similar situation... *"Persons"*; have orchestrated campaign, policy or custom, purely motivated by sheer personal beliefs and social paranoia, conspire to (and did) deprived plaintiff of *"due process"* of the law, by disallowing plaintiff right to equal treatment with the sole intention to segregate, thus causing humiliation and harm, without any governmental interest, but ***personal involvement***"; in addition...

505) The plaintiff asserts a s fact; said state actors' wrongful actions were out-side any moral respect towards the student-client—especially, the plaintiff, a member of a protected class; furthermore, in disregard to the real mission of education of SUNY, and the State of NY public official policies and procedures of anti-discriminatory and dignity policies.

506) Plaintiff, by the actions of these defendants, and harm caused to plaintiff, as asserted herein in this COA…a deprivation of "*pursuit of happiness*" of life, (post deprivation of the life span, see damages) and the "*right to bodily integrity*" (by exposing plaintiff to undue stress of movement [traveling]and physical harm) have been taken place against plaintiff; furthermore, these discriminatory and bias wrongful actions were foreseeable to the state actors named herein, due to their "education"… and the plaintiff's right to "*private interest*"… All affected by the officials 'undue wrongful actions; with no fair or positive outcome to plaintiff.

507) Furthermore, an undue discriminatory and bias action, inflicted to a disabled person, as stated herein, is equal to inflict physical punishment that has caused severe mental anguish leading to PTSD injury. These foreseeable outcomes, certainly, was the lack of "*procedural safeguard*" from the part of the defendant, **Purchase College**; and its school officials, **John Delate**, under the express and biases supervision of Mrs. **Wendy Kowalski** (now Ravitz), both supervisor in their own dept. which was built into the process of conduct or custom and facial adequacy of the unofficial personal policy, that the student physical integrity is never placed before possible undue harm. Hence, making these negative inconsequential actions… gross-negligent that can, and has, caused plaintiff's permanent personal injuries.

508) Defendant, **Purchase College**; and its school officials, **John Delate**, under the express and biases supervision of Mrs. **Wendy Kowalski** (now Ravitz), by allowing themselves to get involved in his own personal bias views, against an older, disabled and a member of a protected class (plaintiff) student… in disregard of the student's "*liberty interest*" in their "*bodily integrity*" (health), is against deprivation of due process by the state, ***Ingraham v. Wright,*** 430 U.S. 651, 673–74 (1977). Furthermore…

509) These defendants have been "*deliberately indifferent*" to the disability accommodation needs of a protected class, by charging almost twice as much for on-campus rent; thus an inference of severe and pervasive—as custom and/or custom--discrimination suffered by Plaintiff. Additionally…

510) Plaintiff's injury—Post-Traumatic Stress Disorder or PTDS, and the irreparable worsening of his spinal injuries (adopted)…have resulted from the conduct or custom of a state employee's lack of "*duty to protect*" instead of discriminating against him, is equal to a sort of punishing (by indirectly inflicting undue pain);

where the personal welfare of the student as state official, even when acting as a private actor is paramount.

511) Furthermore, the discriminatory action suit in this COA, and intentionally executed as policy, was an "*arbitrary action*", by displacing plaintiff because of his age and sex, (*parr*. #94 is adopted).

512) Where ALL state actors named herein, having special training (especially SUNY Attorney **Wendy Ravitz**); hence, these school officials and being above of what an ordinary person would reason. In addition, they knowingly that plaintiff was a member of a protected class (age, and disability), intentionally enacted the creation of any "*hostile environment*", for plaintiff-students, contributing immensely to the plaintiff's permanent personal injuries.

Please note, Expert Opinion has stated that "*a discriminatory, retaliatory act always have a long-lasting or a permanent trauma*"; which is consistent with plaintiff permanent personal-injuries.

Count VII, (42 U.S. Code, Sec. 1983): [As applies to the *"Fourteen Amendment"* to the US Constitution; *"Equal Protection"* and the *"Due Process"* Clauses []:
(Title IX of the Education Amendments of 1972)

513) Count VI, is hereby incorporated.

514) Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000).

515) Defendant, **Purchase College**; and its school officials, **John Delate**, under the express and biases supervision of Mrs. **Wendy Kowalski** (now Ravitz)...In addition to all other individuals situated in the similar situation "*persons*". These state actors, acting in their under the color of the law, in their individual capacity, have conspired (and did) to deprived plaintiff of equal right to Higher Education Opportunity, by violating The Higher Education Opportunity Act 2008 (Public Law 110-315) (HEOA), by placing plaintiff in probation.

516) The deprivation, took place by dying equal rights and privileges to on-campus housing, solely because plaintiff's age and sex or gender (*parr* #94 is adopted) to a disabled person...therefore, these school officials have severely enhanced plaintiff disabling hardship. Hence, restricting the plaintiff to equal right to higher education.

Please note that, a 18 years old female has equal right to admission to the Arm Forces; however, plaintiff, because of his age and gender (*parr*. #94 is adopted) does not have equal rights to education, and facilities

that equal access that SUNY does claims, (see Parr, #84).

Count VIII, (42 U.S. Code, Sec. 1983):

(Housing Discrimination [As applies to the *"Fourteen Amendment"* to the US Constitution; *"Equal Protection"* and the *"Due Process"* Clauses []):

517)In addition to: Fair Housing Act Amendments of 1988, FHAA), 42 U.S.C. Sec.12132, 12182, 12203,

518)All *Parr*, in this COA are hereby incorporated for "Count VII."

Count IX, (42 U.S. Code, Sec. 1983):

(Violation of New York Constitution, Torts and State Law)

(Under Supplemental Jurisdiction):

519)As applies to all state actors named here in this COA; Parr. #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

520)A civil wrong, which can be redressed by awarding damages. See, e.g., ***Smith v. United States,*** 507 U.S. 197 (1993).

521)Supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

522)*Parr*, #145 through 165, are hereby adopted, as applied to this COA, its state actors, and its defendant [s].

523)AND ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "Bench Pro-see bias" action [respectfully]) LEGAL THEORY FOR A Pro-see LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (permanent personal injuries, and others), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action # 6** (New).

Facts:

524) The allegations and the statements in *Parr*. 3, 5, 9, and 48 to 52a) are adopted herein…

525) Different incident, but similar event and equal violations cause of action #5 &7; however, the inference of conduct, and/or custom—as a policy, of age, sex (gender) discrimination is/are *per-se*.

526) The on-campus housing request here in this cause of action was for the school spring semester of, 2013; where, again an "age & sex (gender) Discrimination" (on-campus housing) complaint filed with the US Dept. Education-civil rights or (OCR).

527) On or about October 2012, Plaintiff was offered to intervene on his behalf, to get affordable housing for the String semester 2013.

528) This offer was made by the Plaintiff's academic adviser; Mrs. **Kathleen Chang**, which Plaintiff accepted, in light of the discriminatory action, said in COA, (above).

529) On or about the same time, Plaintiff's adviser, **Mrs. Ceng,** communicated to Plaintiff that she requested the housing accommodation to Mr. **John Delate** (head of on-campus housing).

530) On or about the same time, Plaintiff notified Mr. **John Delate** to verify -to Mrs. **Ceng** that the on-campus housing was to be requested for "ADA Accommodation" due to his disability, locomotive physical impairment; thus, to reduce travel hardship with heavy school utensils. Purchase College failed to provide proper school housing for the spring semester of 2013, at a low affordable price, which was $2,900, as other students situated in a similar situation.

531) On or about November 2012, Plaintiff communicated in person with school official Defendant, Mr. **Kyle Saud**, in charge of on-campus assignments. Mr. **Saud** on or about December 23, 2012, issued a housing assignment to the Plaintiff at the most expensive school housing rate of approx. Over $6,000.00 per semester,

532) Hence, because Plaintiff "*did not fit the student profile*" due to his age, Plaintiff was discriminated, treated differently than other students situated in a similar situation.

Please note. For Mr. **Kyle Saud,** persecuted (follow) plaintiff to the point to file a complaint against him

as a witness that resulted in plaintiff suspension. Mr. **Kyle Saud** was a part of 30 Days' Notice of Claim, and a complaint filed with the Provost office for denying ADA accommodation. (See Cause of Action # 9 of the Assoc. Amd. Compl. Doc.); Just like Plaintiff's adviser**,** Mrs. **Chang** and Mrs. **DaGosto** recommended him to stay away from school since, student affairs were looking to suspend him. Mr. Saud works[ed] next to the office of Def. **Melissa Jones.**

533) On or about this time; plaintiff was being persecuted and single-out of suspension, just as a way of retaliation, as Mr. **John Taylor**, **Kathleen Ceng** and even def. Mrs. **DaGosto** have knowledge. Furthermore,. According to Purchase College library staff, officials, "*plaintiff permanency days at Purchase College were numbered.*"

Please note that, Mrs. **Wendy Kowalski (now Ravitz),** was properly notified of the discriminatory action inflicted to plaintiff, via email as they were occurring, however she did not stop and or offer any remedy to plaintiff.

## Damages:

534) For the purpose of worsening of plaintiff's physical and mental health, *Parr*. 1…5 are adopted.

535) Plaintiff hereby incorporates ALL damages statements asserted in COA #5; as applies to ALL state actors named here in this COA (#6).

## Legal Theory:

536) For non-defendants, parties herein, and where Def. Purchase College is incorporated… *Parr*. #48 to 52a are hereby adopted. In addition….

537) Plaintiff incorporates as he restates each of the legal theories set forth in case of actions #1 & 6;

538) Non-discrimination Policy, parr. 84 is adopted.

539) For all purposes of this COA (and ALL other COA, in this complaint), defendants deprivations of rights against plaintiff, as stated herein; per-se, contributed to plaintiff permanent physical and mental injuries.

540) After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby states, by the fact that all administrative and time limitations have been exhausted and/or no administrative remedies—in good faith and no findings…

541) Where defendants: **Purchase College, Mr. Kyle Saud,** school officials: **John Delate,** under the express

and biases supervision of Mrs. **Wendy Kowalski (now Ravitz),** and all other individuals situated in the similar situation "persons", acting in their under the color of the law, in their individual capacity; conspires (and did) to deprived plaintiff of his civil right and privilege guaranteed by the United State Constitution.

542)Parr, #362 through 367, are hereby adopted.

543)Where Defendants: Ms. **Melissa Jones'** wrongful acts were exacted under the consent and supervision of (as witnesses [students working for the students affairs office] shall testify) Defendants: Assistant Dean Mrs. **Qui-Qui Balascio;** Vice President of Students Affairs, Mr. **Ernie Palmeiri**; and state actors: SUNY Attorney, Mrs. **Wendy Kowalski (now Ravitz);** Purchase College President **Thomas Schwarz;** Affirmative Action, Mrs. **Michele Baptiste;** Vice Chancellor and General Counsel, Mr. **William Howard**… and all other individuals situated in the similar situation, conspired to (and did) deprived plaintiff of his civil rights and privilege, guaranteed by the United State Constitution, as follows:

544)ALL COUNTS AND APPLICABLE RATIONAL ASSERTED BY PLAINTIFF IN COA #5, IS/ARE HEREBY INCORPORATED; ONLY AS PPLIES TO EACH AND ALL DEFENDANTS AND/OR STATE ACCTORS NAMED HEREIN THIS COA. IN ADDITION TO…

545)AND ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "Bench Pro-see bias" action) LEGAL THEORY FOR A Pro-See LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (permanent personal injuries, and others), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action # 7** (New COA).

Facts:

546)The allegations and the statements in *Parr*. 3, 5, 9, and 48 to 52a) are adopted herein…

547) This COA has its origin at the prior COA #6; where plaintiff was charged in a hearing (in addition to that charges imposed at that hearing) for speaking to another student.

548) This COA presents two incidents, which St. Vincent Hospital's doctors and other doctors and experts, unknown to each other, have further stated... in addition to other COA, (but not limited to COA #8 & 13) this event in this COA (#7), is that MOST reflecting the "*organized retaliatory-bullying,*" discrimination, persecution, and harassment---part of school officials personal involvement--against you (the plaintiff) by def. Purchase College school officials and SUNY officials.

Please note that, St Vincent Hospital, as said before, is and has treated students from Purchase College, in addition, good Purchase College officials WILL testify that the student affair dept. at said college, have a history of abusing behavior against students and even employees. In addition

Please note, that at the time these events of "*organized retaliatory-bullying*" asserted by plaintiff in this COA; plaintiff filed several (at least five independent events), of violations of civil rights with the US dept. of Education or OCR, against plaintiff. Furthermore...

549) The plaintiff had assisted other (at least five) students at Purchase College, in their own complaints of violations of civil rights with OCR. In addition...

550) At the time the events of the "*organized retaliatory-bullying*" asserted as facts by the plaintiff in this COA, plaintiff had pending mediation with/by the Federal Mediator, assigned by OCR, for establishing discriminatory actions against the plaintiff. Thus, any reasonable person, as stated in Expert Opinion, would have perceived, the "*organized retaliatory-bullying*" asserted as fact by the plaintiff herein, were imminent.

551) Please note that, most of the charges (accusations) against plaintiff, stated here, in this COA, were fabricated to appear to be "*serious misconduct*" by def. Ms. **Melissa Jones.**

552) Furthermore; def. Ms. **Melissa Jones** accusations against plaintiff herein, were falsely restated by her, and sent by her in a 29 page via fax and voice call, to at least eight SUNY Universities, (See Cause of Action #13, and Exhibit C)

Incident #1

553) On or about December, 2012, Plaintiff was assigned overly priced on-campus housing, approx... $6,500.

554) In January, 2013, plaintiff was contacted via email by the financial aid dept. at Purchase College, stating plaintiff did not have enough federal fund (incl. Federal loans), to afford the over $6.500, and if do not pay I would be prosecuted.

555) On or about the same time, Mr. **Kyle Saud**, (Purchase College student's affair's official) offered plaintiff to swap houses with another student, Mr. Correa, knowing that a severely problematic student, Mr. **DaRosa**, resided in that newly offered housing.

556) Mr. **Kyle Saud,** intentionally decided not notify Plaintiff of said severely problematic student, Mr. **DaRosa**. Where, under SUNY rules and policies, Mr. **Kyle Saud** MUST have to disclose such.

Please note, Mr. **Kyle Saud,** has/had close, personal involvement with Def. **Melissa Jones**. Furthermore, this Court can infer, that the insulting events described in this COA, may have been staged, to intentionally cause plaintiff hardship, that lead to plaintiff's suspension.

557) On February 6th, 2013, plaintiff proceeded to swap the housing with another student, Mr. Correa, and moved into his new housing assignment.

558) On the day, Plaintiff moved in; however, he encounters several disturbing issues with the new housing, (See, Assoc. Org Compl. Doc #3, exhibit #20. Pp.2.),

559) These issues were: 1) a strong smell of marijuana, inside the apartment, 2) an extreme dirtiness and unhealthy atmosphere, 3) misplacement of state provide furniture, which may cause of fire hazards.

560) At that point Mr. **Correa,** AFTER, plaintiff moved into the new unit... explained to the plaintiff that Mr. **DaRosa** was a drug addict and that he smoke marijuana and use other illegal drugs in the apartment; also that "he could stand it anymore." He also confided that there was inappropriate gay sexual misconduct from the part of Mr. **DaRosa**, also in the apartment.

561) The same day, Plaintiff respectfully confronted Mr. **DaRosa**.

562) At that meeting, Plaintiff, kindly and respectfully, request Mr. **DaRosa** to refrain from doing illegal drugs inside the premises. Mr. **DaRosa** agreed.

563) The next day, in a clandestine, and to the astonishment of the plaintiff, Mr. **DaRosa** had moved from the apartment.

564) On Feb 6th, 2013, (the same day) Mr. **DaRosa** filed a complaint with the student affairs office. Accusing

plaintiff for braking $2.00 (two) cable connector.

Please note, Mr. **DaRosa,** never contacted plaintiff of such alleged braking of said connector. In addition…

565) Mr. **DaRosa,** in his one paragraph complaint, starts with the sentence: "*a 53 year old man was sitting in my craft*" (school sofa that is). Certainly a discriminatory remark that, any reasonable person would understand that this irrational student was NOT happy with his new roommate; furthermore, Mr. **DaRosa's** bias remark, should have been taken as discriminatory by the Purchase College and his complaint should have been dismissed. However, def. **Melissa Jones's** (in a conflict of interest); SUNY Attorney, Mrs. **Wendy Kowalski (now Ravitz);** Assistant Dean, **Def. Qui-Qui Balascio,** Vice President of Student Affairs, **Ernie Palmeiri;** decided to press charges against plaintiff. In addition…

a. Please note that Mr. **DaRosa** did not contacted plaintiff to advising of a possible "*broken item*"; thus furthering the inference that Mr. **DaRosa's** accusations were bias against an AGE group, and due to his drug addiction he need his space; thus he invented the accusations to acquire a new apartment. These issues and rational were communicated to def. **Melissa Jones's** (in a conflict of interest); SUNY Attorney, Mrs. **Wendy Kowalski (now Ravitz);** Assistant Dean, **Def. Qui-Qui Balascio,** Vice President of Student Affairs, **Ernie Palmeiri,** and the provost office. In addition…

b. Please note that def. **Melissa Jones,** was in conflict of interest, by conducting placing charges against plaintiff, since she was named in 30 days' notice of claim for her prior discriminatory retaliatory actions. Furthermore…

c. Please also note, Mr. **DaRosa** was on probation for using drugs on campus; he was also a dealer of such at school and well known for his homosexual public sex acts, as described by a University Police officer later. In addition…

d. Please note, that plaintiff's statement above, implies all due respect to the fine gay community of Purchase College.

566) For the next week, def. Ms. **Melisa Jones** (in a conflict of interest); pressed charges against Plaintiff.

567) About the same time, Plaintiff also notified: Def. **Melissa Jones;** SUNY Attorney, Mrs. **Wendy Kowalski (now Ravitz)** Assistant Dean for Student Affairs, and def. Mrs. **Qui-Qui Balascio;** Purchase College President **Thomas Schwarz;** Vice President of Student Affairs, **Ernie Palmeiri** (def. Herein); Affirmative Action, Mrs. **Michele Baptiste;** Vice Chancellor and General Counsel, Mr. **William**

**Howard;** Plaintiff adviser, Mrs. **Ceng** and her supervisor and def. Mrs. **Danielle DaGosto,** of the irrational actions of all defendants herein, this COA (especially, Ms. **Jones**); and the plaintiff's intention to take legal action for their violations and retaliation actions, (*Parr.* #569a is adopted). In addition…

568)Plaintiff stated to them that he was receiving treatment at the school counseling center for depression, and Post Traumatic Stress Disorder or PTSD, for the years of abuse, discrimination and retaliation; and further, plaintiff requested their intervention to stop this persecution against plaintiff.

569)<u>Charges related incident #1, February 7, 2013:</u>

D.3 Damages, defaces, destroys, or tampers with property owned by the college or in the possession of another person. Minimum: Reprimand Maximum: Expulsion.

F.6 Fails to respect the ongoing legitimate functions of classes, meetings, office procedures, study, sleep, or any authorized College activity. Minimum: Reprimand Maximum: Suspension

<u>Incident #2:</u>

570)<u>On February 9, 2013:</u> Plaintiff burns bread on the toaster while residing at his permanent address (not a school address, but only address; the fire alarm went off. Def. **Melissa Jones,** press the following charges against plaintiff.

571)The University Police came to the plaintiff's permanent home, in response to the fire alarm.

572)The officer knock the door, however, when the officer saw plaintiff… he asks for driver license (he explained, that since plaintiff *"did not get the student profile"* (See COA #2); Plaintiff MUST provide for driver licensing.

573)The police also, requested plaintiff to vacate the premises; plaintiff responded that that was not possible since he is disabled, and according to the Purchase College disability accommodation rules, plaintiff cannot evacuate by himself the premises; furthermore, it was just a case of burnt bread in the toaster. The officer agreed.

<u>Please note,</u> that plaintiff, by this time have filed several violations of civil rights against Purchase College, University Police and chief of police Mr. Walter Butler, for age discrimination.

574)<u>The next week,</u> def. Ms. **Melisa Jones** pressed charges against Plaintiff.

575) Charges related incident #2, February 9, 2013:

C.3 Threatens, harasses, or intimidates any person, and/or uses words, which reasonably tend to incite an immediate, violent reaction and are specifically directed toward another individual (See also the College's Affirmative Action and Sexual Harassment policies).

Minimum: Disciplinary Probation Maximum: Expulsion

C.6 Engages in any behavior against a person which significantly interrupts or prevents that person from carrying out duties and responsibilities associated with his/her role as faculty, staff, or student at the College. Minimum: Reprimand Maximum: Disciplinary Probation

E.5 Refuses to vacate buildings when any fire emergency warning system is an activated.

Minimum: Residence Probation Maximum: Suspension

F.1 Fails to respond to a reasonable request of College officials who are acting within their authority. College officials include faculty, staff, administrators, and students who are carrying out assigned work responsibilities. Minimum: Reprimand Maximum: Disciplinary Probation.

576) On or about the first week of February, Plaintiff filed a complaint with the school's affirmative action officer, Mrs. **Michelle Baptiste** (Attorney, Grievance and Affirmative Action Officer) for/to conduct a proper investigation of age discrimination; retaliation against def. **Melissa Jones'** conflict of interest.

577) During the same week, the plaintiff and Mrs. **Michelle Baptiste** met. At the meeting, Mrs. **Baptiste** confirms that def. **Melissa Jones** was in conflict of interest, since she was named in legal proceedings as defendant. However, Mrs. **Baptiste** could not do anything about it. Mrs. **Baptiste**, shortly after this incident resigned her position as, affirmative action officer.

578) Two weeks later, def. **Melissa Jones,** appointed three Judges, one of them was the son of **Richard Nassisi** (also named a defendant in an intention of legal action), to this COA 2 is adopted.

579) Another Judge was a female student that shall testify as to the retaliation in this COA. She stated, in the presence of plaintiff's adviser, Mrs. **Ceng** the *"they are looking to suspend you"* (them, implying, and Purchase College student affairs, via defendant **Melissa Jones** & Comp.).

580) On the day of the hearing, both incidents stated above were heard. The hearing, from the beginning to the end lasted three hours, plus the waiting time.

<u>Please note that</u>, the hearing was like "<u>macabre game</u>" (as some school officials stated) meant plaintiff and his academic adviser felt like the hearing was staged to cause embarrass to plaintiff, and laugh at him at the same time... Expert Opinion, states the charges filed against plaintiff (patient at the St. Vincent Hospital), as said here in this COA, were clear examples of "*Organized retaliatory-bullying*".

581) In a show of support to plaintiff was accompanied by his academic adviser, Mrs. **Kathleen Chang.** In addition...

    a.  <u>Please note</u>, one day after saying hearing, Mrs. **Kathleen Ceng** had to plaintiff that her office knew he (plaintiff) was being mistreated for some time already. However, she was not sure the real reasons, furthermore, she advised plaintiff that plaintiff..."*<u>you needed to stay away from school</u>* (Purchase College), *<u>and just come to class, but do not stay around the school around the school.</u>*" Since student affairs (Def. **Balascio,** Def. **Jones,** Def. **Palmeiri** and others) were looking to suspend Plaintiff. In addition...

    b.  The Mrs. Kathleen Ceng statement further confirms, the irrational actions of Def. **Melissa Jones,** were part of an <u>organized retaliatory bullying and persecution</u> on the making, (White Collar Crime) with the blessing of SUNY officials in Albany.

    c.  Furthermore, this abusive behavior from the part of these defendants, was well known throughout Purchase College, and at the St. Vincent Hospital, (which treats students from Purchase College)., staff has stated to plaintiff-patient.

582) <u>The same day,</u> Defendant Ms. **Melisa Jones** filed additional (in addition to the ones being heard at the hearing; See next COA) disciplinary charges once more against Plaintiff with a violation of *"no contact order"*, while speaking to the student **DaRosa** at this hearing (more inference of persecution). For this last charge, plaintiff was suspended

    a.  <u>Please note</u> that to bring such of made-up charges against plaintiff; Expert Opinion, have concluded that there must be a custom of malpractice, and <u>organize crime</u>. For Def. **Melissa Jones** be allowed to conduct herself in such deranged manner, which can lead to "**school violence**" giving another case with the same scenario.

    b.  Furthermore, Expert opinion, believe, these charges against plaintiff must them had the sole purpose of suspending plaintiff to avoid the upcoming mediation with the Federal Mediator, as a priory explained in this complaint; in addition to terminate plaintiff's on-campus treatment for Post-

Traumatic-Stress-Disorder or PTSD, and depression; thus avoiding ALL liabilities. This rational can be closely related to COA #11... where plaintiff was unconstitutionally charged with a crime by Purchase College, while plaintiff was not a student at said College (plaintiff won that case and the charges were dismissed, and part of this Compl, see COA #11 &12). In addition...

c. <u>Please also note that</u>, Expert Opinion as to this COA, have explicitly indicated to plaintiff that...The action of "retaliatory-bullying" are so evident in this cause of action because plaintiff was put upon tremendous humiliation without a severe immediate negative outcome, since plaintiff was not suspended, but his probation status prolonged" however, plaintiff states that the retaliatory-bullying, plaintiff was exposed as stated here in this COA, had the intention to suspend plaintiff, but the suspension was stayed but the provost office. For this reason Defendant, Ms. **Melissa Jones** as directed by other school officials, charged plaintiff with another violation within the same COA, (See, and COA #8) that actually led to plaintiff suspension punishment.

## Damages:

583)*Parr.* #2, & 4 through 11, are hereby adopted...

584)For the purpose of worsening of plaintiff's physical and mental health, *Parr.* 1...6 are adopted.

585)The irrational actions of Def. **Melissa Jones** and as a direct result of Def. Mrs. **Qui-Qui Balascio** and Def. Mr. **Ernie Palmeiri** instructions... All under the biases supervision of SUNY Attorney, Mrs. **Wendy Ravitz (**now **Kowalski);** have intentional acted under their personal involvement; based in hate, bias, retaliatory "*ill will*", against a member of a "protected class" [documented 54 years old & disabled person] in distress and personal view of abuse of power. Hence...

586)Plaintiff was treated differently than other students situated in a similar situation, "*differential treatment*".

587)This officials, (this COA) acting under the color of the State Law, in their individual capacity... knowingly, their practices were outside their official duties; letting personal emotion (personal involvement) to distort public policies in view of personal preferences emotions... and "conduct or customs". For their retaliatory actions...

588)Plaintiff was humiliated; suffered added and more severely mental anguish; added more frequent and severe feeling of worthlessness (diminished); added hourly feelings of being persecuted (becoming more justifiably paranoid), developing into sleeping problems (lack of sleep, nightmares and waking up night

with fear and memories of the events); also, developing in concurrent stress leading to physical spinal pain. In addition…

589) At this point plaintiff's spinal injury were worsening, as to have more frequent spasms, inflammation causing difficulty walking and less use of his arms, thus hands. Because of these accumulative actions, and under the advice of the Plaintiff's academic adviser, Mrs. **Kathleen Ceng**; Plaintiff during the fall semester of 2012, solicited counseling for depression and PTSD, with the Purchase College counseling center of. This treatment was interrupted and ended with the Plaintiff's illegal suspension in April 2013.

590) Furthermore, Def. **Melissa Jones** and as a direct result of Def. Mrs**. Qui-Qui Balascio** and Def. Mr. **Ernie Palmeiri** actions… All under the biases supervision of SUNY Attorney, Mrs. **Wendy Ravitz (now Kowalski),** have led to Plaintiff's irreparable permanent academic harm.

591) Furthermore, their actions have resulted in Plaintiff's current medical condition and personal injuries (see exhibit A).

Legal Theory:

592) *Parr*. 48 through 52a, and all allegations in all Counts in this COA, are hereby adopted.

593) Non-discrimination Policy, *Parr*. 84 is adopted.

594) For all purposes of this COA (and ALL other COA, in this complaint), defendants deprivations of rights against plaintiff, as stated herein as facts, have (and continue) contributed to plaintiff permanent physical and mental injuries.

595) After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby state, where all administrative and time limitations have been exhausted with no administrative remedies—in good faith and no findings…

596) Thus, plaintiff asserts that defendants, Mrs. **Qui-Qui Balascio,** Ms. **Melissa Jones**, **Ernie Palmeiri** and all other individuals situated in the similar situation… All under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz (now Kowalski**); Purchase College President **Thomas Schwarz**; Affirmative Action, Mrs. **Michele Baptiste**; Vice Chancellor and General Counsel, Mr. **William Howard**…

Please note, that Affirmative Action officer Mrs. **Michele Baptiste,** (now the same at CUNY City College) is and shall not be a party of these complaints, with the prospect of her possible participation

as a spectator. The plaintiff, at this time, has not indication of her involvement in any wrongdoing.

597) Where, their illegal actions of these sate actors were out-side their fiduciary duties and in direct violation to their "*standard of duty*" (gross-negligence, *Parr*. #599 is adopted) owed to student-plaintiff. In addition…

598) The illegal activities of these sate actors were the intentional creation of a "*hostile environment*," with no real "*government interest*," with the only intent to retaliate, bully and punish (not discipline), the plaintiff. In addition…

599) Where, all these people conspired to deprive plaintiff of his civil right and privileges secured by the United State Constitution. Furthermore…

600) These defendants and state actors conspired in the foundation of false statement, by "denying plaintiff was involved in protected activity" (plaintiff had prior filing of OCR complaints, and intention of legal action against same individuals); where they did have knowledge of such, (personal involvement and conflict of interest).

601) *Parr,* #362 through 367, are hereby adopted.

602) Where Defendants: Ms**. Melissa Jones'** wrongful acts were applied under the consent and supervision (as witnesses [students working for the students affairs office] shall testify) of Defendants: Assistant Dean Mrs**. Qui-Qui Balascio;** Vice President of Students Affairs, Mr**. Ernie Palmeiri**; and state actors: SUNY Attorney, Mrs**. Wendy Kowalski (now Ravitz);** Purchase College President **Thomas Schwarz**; Affirmative Action, Mrs**. Michele Baptiste;** Vice Chancellor and General Counsel, Mr**. William Howard**… And all other individuals situated in the similar situation, conspired to (and did) deprived plaintiff of his civil rights and privilege, guaranteed by the United State Constitution, as follows:

603) Please note that, ALL these state actors named in the above Parr. Were properly notified of def. Melissa Jones irrational actions (as said in this COA). This asserting, expert opinion that, "Organized retaliatory-bullying" was apparent.

604) ALL COUNTS (# I through X, asserted in COA #4) AND APPLICABLE RATIONAL ASSERTED BY PLAINTFF THEREIN, IS/ARE HEREBY INCORPORATED; ONLY AS APPLIES TO EACH AND ALL DEFENDANTS AND/OR STATE ACCTORS NAMED HEREIN THIS COA.

a.   Please notice that plaintiff applied deprivation of civil rights under 42 U.S. Code, Sec. 1983, which

states as follows...

b.  *"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity,"*

c.  <u>Please also note that,</u> since the actions of, especially def. **Melissa Jones**, and other school official defendants herein, and ANY OTHER CAUSE OF ACTION related to/where a "judicial act' may have been executed, as an excuse to punish plaintiff, therefore, plaintiff invokes "judge's administrative decisions are sometimes not seen as judicial acts", See ***Forrester* v. *White*,** 484 U.S. 219, 228 (1988); furthermore...

605) Plaintiff has determined that the wrongful acts inflicted against plaintiff, especially by defendant, **Melissa Jones**... plaintiff has applied the on authority standards of ***Cleavenger* v. *Saxner*,** 474 U.S. 193, 202 (1985) (quoting ***Butz* v. *Economou*,** 438 U.S. 478, 511 (1978)); which, in failure, as applies to this COMPLAIN in its entirely, states that:

a)  *The need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.*

b)  <u>Please note,</u> for the purpose of this Parr, the court <u>MUST</u> have a clear understanding of the FALSE statements sent to more than eight SUNY and other universities, (See COA #13), by Defendants: Ms. **Melissa Jones**, **Sandee Maung**; where her FALSE and wrongful acts were executed under the consent and supervision of Defendants: Assistant Dean Mrs. **Qui-Qui Balascio;** Vice President of Students Affairs, Mr. **Ernie Palmeiri;** and state actors: SUNY Attorney, Mrs. **Wendy Kowalski** (now **Ravitz**);

606) IN ADDITION TO ALL FEDERAL AND STATE ANTI-BULLYING LAWS. Plaintiff makes especial mention to the Expert Opinion of Medical staff at the St. Vincent Hospital, that the actions (especially this COA) were part of "*<u>organized retaliatory-bullying</u>*". Furthermore and MOST important...

607) Medical staff at the St. Vincent Hospital, have asserted as facts and experience (beyond reasonable doubt)

that, "*organized retaliatory-bullying*" as stated herein by the plaintiff, SOULD most of the times, lead to "*school violence*", giving another student scenario.

608) ANY OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "Bench Pro-see bias" action) LEGAL THEORY FOR A *Pro-See* LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (permanent personal injuries, and others), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action # 8** (Recommenced and New):

Facts:

609) The statements in *Parr*. 3, 5, 9, and 48 to 52a), are adopted herein…

610) The negative events suffered by the plaintiff, as stated herein, are the direct consequences of the last COA #7.

611) This COA is based on retaliatory charges brought against plaintiff, again by Def. **Melissa Jones**, that led to the actual suspension of plaintiff, in April 2013; just two weeks from plaintiff final on-campus semester.

612) This COA has two incidents, as in COA #7. Both incidents, the plaintiff were found responsible with-out a hearing, (*Due Process*) which led to the plaintiff suspension, but not the final execution of harm against plaintiff, (see COA # 9 to 13); suspension so wanted by the student affairs Dept. at Def. **Purchase College** ("*organized retaliatory-bullying*").

613) COA #7 (above), is hereby adopted…

Incident 1:

614) This incident took place, on or About the Second Week of February 2013, while attending the disciplinary hearing as stated in COA#7.

615) In a show of support to plaintiff was being kept company at said hearing, by his academic adviser, Mrs. Kathleen Ceng.

616) At said hearing (COA#7), plaintiff in front of his adviser, Mrs. **Ceng**, plaintiff, kindly said to Mr.

**DaRosa**—because he was awaiting a long time before the plaintiff's interview—"that it should take not too long (for him) to come inward to his interview"

617) The following day, Defendant Ms. **Melisa Jones** filed additional (in summation to the ones being heard at the hearing, COA #7) disciplinary charges, once more against Plaintiff.

618) This time the complaints were for addressing (see parr. Above #616) to Mr. **DaRosa;** a violation of *"no contact order".*

619) Defendant Ms. **Melisa Jones,** notified plaintiff of the charges and schedule another hearing against plaintiff.

Plaintiff note that, plaintiff was being treated by the counseling center at Purchase College for Post-Traumatic-Stress-Disorder or PTSD, and depression, at the same College's counseling center.

620) During the next week, Plaintiff notified again, def. **Melissa Jones,** which *"she was in a conflict of interest",* since she was named as a defendant in a notice of claim and several complaints with The US Dept. of Education (OCR); in addition…

621) At the same time, once again Plaintiff also notified (as done in COA #7)**:** SUNY Attorney, Mrs. **Wendy Kowalski (now Ravitz)** Assistant Dean for Student Affairs, and def. Mrs. **Qui-Qui Balascio;** Purchase College President **Thomas Schwarz;** Vice President of Student Affairs, **Ernie Palmeiri** (def. Herein); Affirmative Action, Mrs**. Michele Baptiste;** Vice Chancellor and General Counsel, Mr**. William Howard;** Plaintiff adviser, **Mrs. Ceng** and her supervisor and def. Mrs. **Danielle DaGosto,** of the irrational actions of this woman (Jones). In addition to the prior notification to these school officials in COA #7.

   a.  Please note, that no single person identified above did anything to avoid the retaliatory-bulling actions of def. **Melissa Jones,** to further confirm, GOOD school official statements that the "retaliatory action against plaintiff were "ORGANIZED", and "deliberate indifference" to the pervasive actions and harm being caused by the def. **Melissa Jones** and Comp. In addition…

622) The plaintiff notified these state actors (*parr*. #620, above adopted) that and further, notified them of the plaintiff could not attend the said new hearing, since he has been subpoenaed, (See Exhibit Z) to testify in The City of Mt Vernon, NY in a criminal case; where plaintiff was invoked as witness. In addition…

623) These school officials were also made aware that Plaintiff was having treatment at the school counseling center for depression, and PTSD for the years of abuse, discrimination and retaliation; and their action of abuse were causing him more hardship. Furthermore…

Please note that, plaintiff attached the subpoena to all persons identified above. Said subpoena was also tied to the original charge, and provided to the Court, in the Injunction Hearing of Judge Ramos; (See the Assoc. Case 13-CV-2586, Doc. #3).

Incident 2:

624) On or About the First Week of April, 2013; plaintiff (as he has been doing it for almost three years) took the school bus to Purchase College, from the train sta. In White Plains, NY.

625) Unusually, the bus was full of employees and few students.

Please note, that the Purchase College bus, is a private bus, paid solely bus the students, and for the students use only.

626) Plaintiff as always, he was having pain on his spine, due to his spinal injuries, and that for reasons of COA #7, plaintiff was not residing on-campus; therefore, his commute causes him stress to his spinal injuries.

Please note that, the decision of plaintiff to move-out from on-campus housing came from the advice of the counselling center at the College and, as in an implied statement, of plaintiff's academic an advisor, Mrs. **Kathleen Ceng**.

627) Once the bus entered the campus at Purchase College; the bus did not stop at the stop where it usually stops; when plaintiff asked the bus driver, to stop …he stated that the 9AM bus was stopping at any stop but the students' affair, and provost office building—implying the said bus was intended for employees only. In addition…

628) Plaintiff asks the driver to stop by the stop closest to his class building, since he was in pain and partially disabled; the driver stated *"he could not, because the bus schedule to stop only at said building, since it was scheduled for the employees only."* The driver also stated that if Plaintiff should go to the transportation office and explain to them plaintiff problem, or *"arbitrary action"*.

629) Plaintiff was allowed off the bus about 1/8 of a mile away from the regular bus stop, closest to his classroom.

630)On the bus was Mr. **Kyle Saud** (def. In the Assoc. Compl.).

Please note that, Mr. **Saud** was also named in a notice of claim (along with def. **Melissa Jones**).

631)Plaintiff, got off the bus, on the way to his class building. Then stopped at the transportation office; directed to the lady in charge to complaint about the improper use of the student bus in addition to his disability. Since, that plaintiff were no longer residing on-campus…Plaintiff told the lady in charge that he was in pain due to the carrying of all school material; plaintiff uses a strong, but respectful tone of voice.

Please note, that plaintiff while residing on-campus, one part of his disability-locomotion. One of his Section 504 accommodations, was that he could leave most of his school utensils at the library; thus he did not have carry, 20 or 30 pounds of those. Plaintiff had been always in 20 to 24 credits per semester, to avoid a long stay at school and the abuse of the school officials.

632)Mr. **Kyle Saud** follows plaintiff, as he served on other occasions… created an incident of the nature of client's complaints about improper use of students-only privileges (the school bus transportation, not school official transportation) into a conflict, by contacting Def. **Melissa Jones**, (they work together, in the same office, see COA #7), who press additional charges against plaintiff.

Please note, that the plaintiff never had the chance to examine these last charges.

633)The same day of incident #2 took place, the plaintiff notified: SUNY Attorney, Mrs. **Wendy Kowalski (now Ravitz)** Assistant Dean for Student Affairs, and def. Mrs. **Qui-Qui Balascio;** Purchase College President and Law degree, **Thomas Schwarz;** Vice President of Student Affairs, **Ernie Palmeiri** (def. Herein); Affirmative Action, Mrs. **Michele Baptiste;** Vice Chancellor and General Counsel, and Law degree, Mr. **William Howard;** Plaintiff adviser, **Mrs. Ceng** and her supervisor and def. Mrs. **Danielle DaGosto,** of the irrational actions of Def. **Melissa Jones.**

634)In summation, these school officials were also made aware, once more, that Plaintiff was becoming really sick and his continuing receiving treatment at the school counseling center for Post-Traumatic-Stress-Disorder or PTSD, and depression; this for the years of abuse, discrimination and retaliation; and their action of abuse were causing him more hardship.

Please note, the plaintiff again requested to help, to stop these persecutions and correct the charges against the plaintiff to the Purchase College counseling center, however, the therapist, stated "he could

not get involved". In addition the therapist, did say that the plaintiff "must not register for on-campus summer classes, since you being persecuted," St. Vincent Hospital has stated to plaintiff that the action of the action this therapist was negligent. In addition, the Hospital has also stated that, plaintiff's academic adviser, Mrs. **Kathleen Ceng,** should have never referred plaintiff to the College counselling center, but an out-side clinic or hospital (this last statement applies to all COA damages). In addition, the St. Vincent Hospital has stated to the plaintiff that, the counselling center at the College was probably working with SUNY officials towards a total removal of the student from the College to avoid liability.

635) On the day of the hearing, def. **Melissa Jones,** conducted the hearing without plaintiff; knowing that the complainant had been subpoenaed to appear in Court, to attest, and found plaintiff responsible of both incidents herein stated.

636) At or close to the second week of April, 2013; Plaintiff was suspended.

637) Plaintiffs appeal the suspension; however, it was denied.

Please note that, the appeal documents included the plaintiff subpoena to testify at the City of Mt. Vernon Court... which the same day of the hearing; Plaintiff also notified: SUNY Attorney, Mrs. **Wendy Kowalski (now Ravitz)** Assistant Dean for Student Affairs, and def. Mrs. **Qui-Qui Balascio;** Purchase College President **Thomas Schwarz;** Vice President of Student Affairs, **Ernie Palmeiri** (def. Herein); Affirmative Action, Mrs. **Michele Baptiste;** Vice Chancellor and General Counsel, Mr. **William Howard;** Plaintiff adviser, **Mrs. Ceng** and her supervisor def. Mrs. **Danielle DaGosto,** and the **US Dept. of Education (OCR).** None of these state workers did anything to prevent plaintiff suspension.

Please note that, the action of NOT doing anything to avoid the plaintiff's suspention, further infers the fact that the plaintiff was to be remove from the school to avoid liability among other motives, such as, "*Organized retaliatory-bullying*".

638) Expert Opinion, have stated also that, the plaintiff's suspension was also perpetrated to avoid the mediation with the federal mediation unit.

639) As stated in other COA, plaintiff was notified by a good school official, who supporting plaintiff's endeavor against all discrimination against any students, that "*he was going to be suspended at any time, and that the order came from* Albany, NY" (Library staff, Financial Aid Staff, Students working in Students Affairs and Registrar and Financial Aid Office staff)

640) For these two incidents, plaintiff was suspended, and the injunction hearing of April 2013, (See Doc 15 of the Assoc. Case, 13-CV-2586), where, Judge Ramos, having ALL documentation available to infer the retaliatory actions of Purchase College school officials, and help plaintiff; but upheld the suspension against t plaintiff. Obviously the Judge may have never read the action and its 30 exhibits supporting documentation; including the said *"subpoena"*--bench *Pro-see* bias, (Expert Opinion).

Please note, one day after the prior hearing (see COA #7, above); Mrs. Kathleen Ceng made a statement to the plaintiff that her office knew he (plaintiff) was being mistreated in retaliation for a sometime already; furthermore, she advised plaintiff that he (plaintiff) needed to stay away from school (Purchase College), and just come to class, but wasn't about school. Since student affairs (implying, Def. **Qui-Qui Balascio, Ernie Palmeiri** and **Melissa Jones** and others) were "looking to suspend" Plaintiff.

641) This last further confirm, the irrational actions of Def. **Melissa Jones** were part of an organized retaliatory action, (White Collar Crime) with the blessing of SUNY officials in Albany.

642) This abusive behavior from the part of these defendants, was well known throughout Purchase College, and at the St. Vincent Hospital, (which treats students from Purchase College)., as some of the Hospital staff has stated to plaintiff. As stated in COA #9.

Damages:

643) *Parr.* #2, & 4 through 11, are hereby adopted...

644) For the purpose of worsening of plaintiff's physical and mental health, COA. #1 through 7 are adopted.

645) As result of Defendants: Ms. **Melissa Jones,** and   **Mr. Kyler Saud,** wrongful acts were exacted under the consent and supervision of Defendants: Assistant Dean Mrs. **Qui-Qui Balascio;** Vice President of Students Affairs, Mr. **Ernie Palmeiri;** and state actors: SUNY Attorney, Mrs. **Wendy Kowalski (now Ravitz);** Purchase College President **Thomas Schwarz;** Affirmative Action, Mrs. **Michele Baptiste;** Vice Chancellor and General Counsel, Mr. **William Howard**... and all other individuals situated in the similar situation, acting under the color of the state law, in their individual capacity; furthermore, knowingly in the practices acting outside her official duties, letting personal emotion (personal involvement) to distort public (SUNY) policies...Plaintiff was treated differently than other students situated in a similar position.

646) These "persons", operating under their personal involvement (bias by implementing personal belief, against a member of protected group [a 54 year old & disabled student] in distress and personal perspective of abuse of power and acting out-side SUNY and the NY State laws. In addition...

647) ALL stated damages in prior causes of actions are adopted, thus plaintiff's injuries were getting worse as...

648) Plaintiff was further humiliated, suffered additional worsening; additional more severe, frequent-concurrent mental anguish; additional more frequent and severe feeling of worthlessness (diminished); additional more concurrent feelings of being persecuted (becoming more justifiably paranoid); additional sleeping problems (lack of sleep, nightmares and waking up night with fear and memories of the events); added emotional pain; and added concurrent stress leading to physical pain to his concurrent spinal injuries...

649) At this point plaintiff's spinal injury were worsening, as to have more frequent spasms, inflammation (or vice-versa) causing difficulty walking and less use of his arms, thus hands. Furthermore...

650) Defendants: **Ms. Melissa Jones,** and   Mr. **Kyler Saud,** wrongful acts were committed under the consent and supervision of Defendants: Assistant Dean Mrs. **Qui-Qui Balascio;** Vice President of Students Affairs, Mr. Ernie Palmeiri; SUNY Attorney, Mrs. **Wendy Kowalski (now Ravitz);** Purchase College President **Thomas Schwarz;** Affirmative Action, Mrs. **Michele Baptiste;** SUNY Vice Chancellor and General Counsel, Mr. **William Howard.** None of them did anything to prevent plaintiff's injuries; therefore, they intentionally contributed to plaintiff's irreparable permanent academic harm and permanent wounds, (See exhibit A).

Please note that, Affirmative Action, Mrs. **Michele Baptiste,** shall not be a party of this action, since she may have resigned from Purchase College for the same reasons of wrong doing; that she may not want to be a part of them.

Legal Theory:

651) To avoid excessive repetitive readings of same legal theory and rational exercise in different COA; hence, the plaintiff incorporates ALL legal theory applied in COA #7; as applies to Defendants: Ms. **Melissa Jones,** and **Mr. Kyler Saud,** (not a def. In this comp.) wrongful acts were committed under the consent and supervision of Defendants: Assistant Dean Mrs. **Qui-Qui Balascio**, and Defendant, Vice President of Students Affairs, Mr. **Ernie Palmeiri;** and state actors: SUNY Attorney, Mrs. **Wendy Kowalski** (now Ravitz); Purchase College President **Thomas Schwarz;** Vice Chancellor and General Counsel, Mr. **William Howard.**

**Cause of Action #9** (New):

Facts:

652) *Parr.* 3, 5, 9, and 48 to 52a) are adopted herein…

653) This COA refers to the FALSE, misleading and qualify (outside fiduciary duties) statements provided by Mrs. **Sheryl Secor,** in her deposition in support of defendants' *"organized retaliatory-bullying"*, (as stated in COA #8, above) suspension, (See Assoc. Case, 13-CV-2586, Doc.12).

654) On or about April 2013, Plaintiff filed an "injunction for relief" (see, Assoc. Compl. Doc. 2 &3), with this Court, to prevent Purchase College from suspending plaintiff, who was only two weeks from finishing his on-campus class towards his Legal Studies degree.

655) Plaintiff at the time of his suspension in April of 2013, was expected to pass with high grade, all three courses (12 credits) for the spring semester of 2013; in addition at the time of his suspension, he was already registered for three on-line classes (12 credits) for the next summer session, that would graduate him; to subsequently, attend law school in Sept. 2013 (same year).

Please note, that plaintiff following the advice of his academic advisor, Mrs. **Ceng** and the advice of the counselling center (where he was receiving therapy), decided to stay away from campus, to avoid more persecution, (as stated in COA #8, above); therefore, the plaintiff registered for on-line class for the summer to graduate in time to attend law school in September of the same year—that WILL never happen, for the his personal injuries, See Exhibit A.

656) At the same time, the Defendant, Mrs. **Sheryl Secor** (Director at the registered office at Purchase College), was called upon the request of the State Attorneys, Mr. **Michael Klekman**.

657) On, about the same time, Defendant, Mrs. **Sheryl Secor** issue affidavit in support, (See Assoc. Case, 13-CV-2586, Doc.12).

658) In her deposition she stated, *"Plaintiff could not graduate in time (summer of 2013) for graduation and go to law school."*

659) Mrs. **Sheryl Secor, FALSE**—since outside her duties—and misleading deposition, was intentional, for personal reason, in support of her peer employees, as stated by other school officials. In addition…

660) In her deposition in support of the plaintiff's suspension, she acknowledged that Plaintiff, could get 12

credits of Spanish on CLEP (The College Level Examination Program; which is a group of standardized examinations that assess college-level cognition in various subject fields that are dealt out at more than 1,700 colleges and universities across the United States), and 12 credits during the summertime.

Please note, Plaintiff, by his suspension, lost the passing 12 credits of the spring semester 2013, just two weeks from the end of said semester, since plaintiff grades in those grades, could have been omitted from the final testing, in all three categories.

661)Most important, Defendant, Mrs. **Sheryl Secor's** contradictions in her deposition, that plaintiff could get 12 credits during the summer of 2013.

662)Plaintiff at the time had 110 completed credits from Purchase College, plus 8 credits from the BU summer session, plus additional 4 credits from CLEP--Business law. This earns 122 credits, (two more than needed) NOT counting the 8 false plagiarizing credits (see COA #3 & 10) and the 12 credits lost in the spring semester of 2013 due to his break. All adding to approx. 142 credits of class—four credits short of getting a MS degree in any law degree.

663)Def. Mrs. **Secor's** deposition was determined at the said injunction hearing for Plaintiff suspension. In her deposition she stated that, *"it was impossible that Plaintiff could graduate during the summer of 2013."* Thus adding more credibility to plaintiff's assertion that Mrs. Secor acted with the sole purpose of to harm the plaintiff and aid her peer workers.

Please note that, any reasonable person would have concluded that, Mrs. **Secor** could have made a mistake; however, here, producing a contradicting declaration, that was out-side her duties, in addition to her close ties to the defendant… this Court must conclude… her actions were of, *"personal involvement,"* *"ill will"*, *"gross-negligence"*, *"differential treatment"*, *"standard of duty"*, and, but not limited to, an action that *"shock the conscience"*.

664)In April, 2013. Plaintiff's academic adviser, Mrs. **Kathleen Ceng** and in her proper capacity (she is the person in fiduciary capacity to assert plaintiff's academic status, or credits and time to graduate) asserted in a document-statement to the Court (Judge ROMAN presiding Judge at the injunction hearing), advising the judge that plaintiff was schedule for graduation during the summer of 2013, with possibilities to attend law school in the September 2013; implying an impending academic harm, (please See Assoc. Compl. Docs. # 3, "exhibits").

    a.  Please note, that Mrs. **Kathleen Ceng,** was the fiduciary party to report these academic facts to the

court NOT defendant; **Sheryl Secor,** who had no other reason but personal liaisons (personal involvement) with most of the defendants, to protect them; a lack of her (Mrs. Secor) *"standard of duty"* to the student. In addition...

b. It is imperative to note, that Plaintiff's academic adviser, Mrs. **Kathleen Ceng,** and def. Mrs. **Danielle DaGosto** were subpoena (by this Court's clerk) to appear on the injunction hearing to assert academic harm; however, they were both prevented from appearing in court by **Mr. Michael Klekman,** (Assistant Attorney General) as he personally stated at the injunctive hearing, (witness tampering), Mr. **Klekman** is also responsible for other unprofessional action as this recompensed complaint so state later. Mr. Klekman was later substituted by his supervisor, Mrs. **Monica Connell.** Their wrongful action constitutes, lack of *"standard of duty"* owed to her student-plaintiff—*"negligence"*. Furthermore, this *"negligence"* Mrs. **Danielle DaGosto,** converts into *"gross-negligence"* adding to her wrongful actions asserted as facts in COA #11.

c. Finally... when a member of the school is required or on her own conscience, asserters in a sworn statement, misleading (contradicting) information. Furthermore, NOT acting in her fiduciary capacity (bias, or peer pressure [personal involvement]); knowing that her wrongful action could cause irreparable harm...is *Pre-se,* negligence. Even so, and additionally, when knowing that the student was a member of a protected class (53 yrs. of age and disabled), is "GROSS NEGLIGIENCE". Since the harm she caused was severe emotional injuries. As defendant; **Sheryl Secor** did know.

Damages.

665)*Parr.* #2 & 4 through 11, are hereby adopted...

666)For the purpose of worsening of plaintiff's physical and mental health, *Parr.* 1 through 8, are adopted.

667)In addition to the accumulated injuries as stated prior COA, def. **Sheryl Secor** unprofessional action, aggravated the plaintiff's injuries.

668)For these, and the injuries inflicted to plaintiff (as stated in prior COA)... In the fall semester of 2014 (2013), Plaintiff's academic adviser, Mrs. **Kathleen Ceng** advised the plaintiff to solicited counseling for Post-Traumatic-Stress-Disorder or PTSD, and depression. Nevertheless, this treatment was interrupted and terminated with the Plaintiff's illegal suspension in April 2013. In addition...

669)Due to Def. Mrs. **Sheryl Secor** direct personal involvement, plaintiff suffered permanent academic harm,

in addition, Plaintiff' suffered serious aggravation of his said personal injuries, (See Exhibit A).

Legal Theory:

670)For non-defendants, parties herein, and where Def. **Purchase College** is incorporated… *Parr.* #48 to 52a are hereby adopted.

671)Non-discrimination Policy, Parr. #84 is hereby adopted.

672)For all purposes of this COA (and ALL other COA, in this complaint), defendant deprivations of rights against plaintiff, as stated herein; *per-se,* contributed to plaintiff permanent physical and mental injuries.

673)After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby states, by the fact that all administrative and time limitations have been consumed and/or no administrative remedies—in good faith and no findings…

674)Complainant avers that Defendants; Purchase College, and Sheryl Secor, under the bias supervision of Mrs. Wendy Kowalscki (now Ravitz), and all other individuals situated in the similar place, and *"persons"*, acting in their under the color of the law, in their individual and official capacity… violated and deprived plaintiff of his civil rights, and privileges.

675)Where, plaintiff asserts as fact… Defendant, Mrs. **Sheryl Secor's** wrongful actions were out-side her fiduciary duties; furthermore, against SUNY or the State of New York law and their public officers policies. Furthermore…

676)Defendants, **Sheryl Secor**, under the bias supervision of Mrs. **Wendy Kowalscki** (now **Ravitz**), and their illegal actions, plaintiff asserts, were in direct infringement to their *"standard of duty"* owed to student-plaintiff, and member of a "protected class"… resulting in permanent personal injuries or "gross-negligence". In addition…

677)Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki (now Ravitz),** enacted an intentional creation of *"disparate treatment"* and a *"hostile environment"*, with no real government interest; with the sole purpose to support of a conduct or custom *"organize-retaliatory and bullying"* against plaintiff. Furthermore…

678)Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki (now Ravitz),** had personal knowledge that plaintiff was/is part of a *"protected class"*, receiving disability accommodation. Hence, plaintiff was treated differently that other students, situated in a similar situation, and

furthermore…

679)Plaintiff asserts, that Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki (now Ravitz),** have especial training in education procedures, and higher than the ordinary general person's education; hence, a higher intellectual, rational was expected from them at the time of their wrongdoing. Thus, an inference that these state workers should give birth experienced an easier valuation of wrongdoing, and the harm inflicted to plaintiff, was expected… Hence, an inference that they knowingly deprived the plaintiff of his civil rights and privileges causing several mental anguish, humiliation and personal injuries, must be respected.

680)Furthermore, plaintiff was treated differently, harshly (retaliatory bullying) than other students situated in the same situation, as to age, gender, sex, and sexual orientation concerns.

Count I, (42 U.S. Code, Sec. 1983):

(General)

681)Plaintiff brings this action under 42 U.S. Code, Sec. 1983; where Defendants; Purchase College, and Sheryl Secor, under the supervision of Mrs. Wendy Kowalscki (now Ravitz) and all other individuals situated in the similar place, as "persons". Were their wrongful actions were during the course of acting in their under the color of the law, in their individuality. Where these state actors conspired to deprive, but not restricted to, plaintiff of his federally and constitutionally protected rights and privileges (activities), undertaken by the United States Constitution…

682)Where their personal emotional, recklessness involvement on an unjustifiable persecution against plaintiff have led to plaintiff's injuries. In addition…

683)Where Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki (now Ravitz),** wrongful actions, was the result of personal liaisons with other school officials named here in this complaint. In pursue of the conduct of "*Organized retaliatory-bullying*" against plaintiff--a student-client, which was member of a protected class. In addition…

684)Where ample communication with the supervisory staff of SUNY and Purchase College took place…"*respondent superior*", liability is applicable for Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki (now Ravitz),** wrongful actions. (See declaration of Mrs. **Wendy Kowalski [now Ravitz],** at Doc. #14, of the Assoc. Case, 13-CV2586. In addition to def., Secor declaration, see Doc. #12, of the Assoc. Case, 13-CV2586). Furthermore…

685)Defendants; **Purchase College,** and **Sheryl Secor,** under the bias supervision of SUNY Attorney, Mrs. **Wendy Kowalscki (now Ravitz),** have been *"deliberately indifferent"* to the pattern of severe and pervasive harassment (bullying), suffered by Plaintiff. (Especial mention herein for the personal and incompetent involvement of SUNY Attorney, Mrs. **Wendy Kowalscki** (now **Ravitz).**

Count II, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 242)

(Deprivation of Rights under the Color of Law).

686)As applies to all state actors, (two or more) named herein this COA; *Parr. #48 through 52a,* and all allegations in all Counts in this COA, are hereby adopted.

687)*Parr,* #267 through 270, are hereby adopted.

Count III, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 241)

(Conspiracy Against Right)

688)*Parr,* #686, 271 through 273, are hereby adopted.

Count IV, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 245)

(Federally Protected Activities)

689)*Parr,* #686, 274 through 276, are hereby adopted.

Count V, (42 U.S. Code, Sec. 1983):

(Fourteenth Amendment)

(Equal Protection)

690)As applies to all state actors named here in this COA; *Parr. #48 through 52a,* and all allegations in all Counts in this COA, are hereby adopted.

691)For the purpose of this count; plaintiff was, and still is, a member of a protected class, with the severe limitations of age and disability…

692) The Fourteenth Amendment is violated when state officials acting in the power of the state law and act contrary to such laws.

693) Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki (now Ravitz),** wrongful actions and all other individuals situated in the similar situation, and "*persons*", acting in their under the color of the law, in their individual and official capacity… conspire to/and deprived plaintiff of his Fourteenth Amendment to the U.S. Constitution, adopted in 1868, declares that: "no state may deny any person the 'equal protection' of the laws, where…

694) Plaintiffs was suspended for reasons (see facts) that serve no "*appropriate governmental interest* " (where a classroom disturbance or violent disturbance may had been warrant for the plaintiff's punishment). In addition…

695) When plaintiff having only two weeks of on-campus classes (plus 12 credits on-line summer classes, [already registered at the times]) suitably furthered by the "*differential treatment,*" of sheer "*organized retaliatory-bullying*" against plaintiff. Furthermore, these state actors have personal knowledge that plaintiff was being treated at the College counselling center for Post-Traumatic-Stress-Disorder or PTSD, and depression, the reckless suspension was "*shocking to the conscience*". Furthermore…

696) When and "*when an important personal right*" - such as public higher education (interest in property) – had been deprived, Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki (now Ravitz),** did not show that there was "*a real and substantial relationship between the classification and the governmental purpose which it purportedly serves.*"

697) Distinctly, when there are facts asserting that there was no need for disciplinary (punishment) of a suspension, action, unless to cause injury, against plaintiff; thus the inference of wrongdoing as a direction of an "organized retaliatory-bullying", based against plaintiff, MUST be preserved. Furthermore…

698) When an ordinary, common, uneducated person, would recognize that placing a member of a protected class (disabled person) in such unnecessary humiliation, irritation and mental distress… certainly would cause serious physical and mental harm led to plaintiff's injuries (this in addition of the pro-see bias actions of the legal system), is utterly irrational. In addition…

699) Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki (now Ravitz),** wrongful actions of, "*organize retaliatory-bullying*" were, *per-se*, out-side the real mission of the SUNY schools and any public schools. *Parr. 84* is adopted.

700)*Parr.* #111 through 118, and *parr.* #387 through 390 are hereby adopted; as applied to   Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki (now Ravitz),**

(Due Process, [Procedural & Substantive])

701)*Parr.* #391 through 403, (adapting the facts plaintiff's suspension as supposed to probation) are hereby adopted; as applied to Defendant, Mrs. **Sheryl Secor,** under the supervision of Mrs. **Wendy Kowalscki** (now **Ravitz),**

Count VII, (42 U.S. Code, Sec. 1983):

(Fourteen Amendment "*equal protection*")

(Title IX of the Education Amendments of 1972)

702)Count VI of this COA and *parr.* 405 through 407 are adopted; where the deprivation of rights and/or privileges against plaintiff, took place as suspension, on the basis of retaliation. Hence, plaintiff's hereby incorporated, as given to the defendants herein, and every bit the plaintiff legal rational is a similar as in Count VI. In addition...

703)Title IX of the Education Amendments of 1972 prohibits gender discrimination (*parr.* #98, is adopted as inference) in education and in higher educational programs and activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000).

Please note... This Court must understand that if the plaintiff was of the female gender, these actions would never take place..."Expert Opinion"., See, *parr.* #98 which is integrated.

704)Defendant, Mrs. Sheryl Secor, under the supervision of Mrs. Wendy Kowalscki (now Ravitz); in summation to all other individuals situated in the similar situation, "persons". Playing in their under the color of the law, in their private capacity... conspired to deprive plaintiff of equal right and privilege to Higher Education Opportunity (property interest) by violating The Higher Education Opportunity Act 2008 (Public Law 110-315) (HEOA).

705)This called for effect by suspending, in retaliation, plaintiff from classes, but two weeks from his last on-campus semester before graduating. Furthermore, just for speaking to another student, (See COA #9) "serving no governmental purpose "other than cause undue damage to plaintiff. Hardly a mistake.

"*It is irrational, that the presiding judge, at the injunction hearing and   having before him ALL proper supporting evidence (over 30 exhibits) of harm and wrong doing (against a disabled 54 years old student),*

*did allow this to happen.... "* (Expert Opinion).

706) The deprivation, took place under the direct supervision of SUNY Attorney, Mrs. **Wendy Kowalszki (now Ravitz);** who, further, issued a misleading statement/deposition, filed with this court, see Assoc. Case, 13-CV-2586, Doc. 14.

## Count VIII,(42 U.S. Code, Sec. 1983):
### (Actionable alone or through the Fourteen Amendment *"equal protection"*).
#### (Organized Retaliation & Bullying):

707) Plaintiff hereby incorporates, as enforced to the defendants and state actors named herein, and every bit the plaintiff legal rational is so similar, Parr. 391 through 404; where the deprivation of rights and/or privilege against plaintiff, took place as suspension, on the <u>basis of retaliation and vindictive bullying, as a witness shall testify</u>. In addition, to avoid liabilities, since plaintiff was already being treated by the counseling center at Purchase College; furthermore, plaintiff had pending mediation for discrimination by Purchase College officials. Furthermore...

708) Defendants; **Sheryl Secor,** under the bias and incompetent supervision of Mrs. **Wendy Kowalscki** (now **Ravitz**), and all other individuals situated in the similar situation "persons", acting in their under the color of the law, in their private capacity; conspired (and managed) to retaliate and further to bully plaintiff as way of conduct and customary incompetent irrational behavior. Furthermore...

709) Because of the many complaints with OCR and plaintiffs endeavor to help others students situated in a similar situation, implementing the Age Discrimination Act at 34 C.F.R. § 110.34, incorporates by reference 34 C.F.R. § 100.7 (e) of the regulation implementing Title VI of the Civil Rights Act of 1964 (Title VI); authority of: Sec. 601, 602, Civil Rights Act of 1964; 78 Stat. 252; 42 U.S.C. 2000d, 2000d- which provides that:

*"Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder."*

710) Elements of retaliation:

711) Complainant engaged in a protected activity; Plaintiff had a pending complaint with OCR in which these defendants were part of such charges, and *per-se* the Assoc. Compl.

712) Hence, all "persons' named here in this COA, had documented knowledge (notification via electronic mail and certified mail, that they were named as defendants in "notice of title", pursuant to 42 U.S.C. § 6104 (e) (1); new the plaintiff was part of *"protected activity"*, thus lie to OCR in their investigation. In addition, that plaintiff was a member of a protected class of persons.

713) Plaintiff suffered an adverse action; permanent academic harm, by a suspension and personal injuries.

Please note that plaintiff was at the time being seen by at Purchase College counseling center for Post-Traumatic-Stress-Disorder or PTSD, and depression, which they knew about it; all caused by an *"ill will"* of *"organized retaliatory bullying"*; plaintiff was suspended, and suffered the said permanent injuries (*gross-negligence*). See damage of this COA.

714) There was a direct-causal link between the protected activity and the adverse action--*per-se.*

## Count X, (42 U.S. Code, Sec. 1983; Under Supplemental Jurisdiction):

### (Fourteen Amendment):

#### (Violation of New York Constitution, Torts and State Law):

715) As applies to all state actors named here in this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

716) A civil wrong, which can be redressed by awarding damages. See, e.g., Smith *v. United States*, 507 U.S. 197 (1993).

717) Supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

718) *Parr*, #145 through 165, are hereby adopted.

719) ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "Bench Pro-see bias" action) LEGAL THEORY FOR A Pro-See LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS

HEREIN, AND MOST IMPORTANT, THE DAMAGES (permanent personal injuries, and others), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action # 10,** (Recommenced and New COA):

Facts:

720) *Parr.* 3, 5, 9, and 48 to 52a, are adopted herein.

721) Plaintiff brings this cause of action against defendants: **State of New York, State University of New York** and Mrs. **Anne MacCall;** for the actions of Mrs. **Celia Klin,** Mr. **Daniel Pearson** and Mrs. **Kathleen Brunt.** For not providing disability accommodation and falsified, in retaliation, accusing plaintiff of "cheating", which is an action that "impacts the moral sense" of any US citizen over the age of 12.

722) Please note plaintiff must (respectfully) reject Judge Roman's opinion related to this COA, issued in May 22, 2014, for the following reasons:

a. Plaintiff requested a jury trial, thus the judge rendering a judgment-opinion, erred for the following reasons:

b. In addition the plaintiff, on his midterm exam, where plaintiff was accused of "CUT and PASTING"; NOT of "not citing"… where cut and paste can never be a subject for plagiarizing…

c. The Judge, in error, by comparing "cut-paste" with "typing"; rendering both, as the same physiological mechanical effort…

d. Where the plaintiff-student in a said midterm exam was supposed to write around 3 to 4 pages (approx.. 400 words per page, (using the reasonable norm of four characters per word) or a norm of 1600 keyboard stroke for page… which equals to approx. 6.400 keyboard strokes for the midterm in question, in one hour (which was not a component of the course of study), versus, approx. 20 keyboards-hold strokes to edit and glue the same text file.

e. The judge stated (See Opinion of May 22, 203; Assoc. Case 13-CV-2586, Doc. 41 pp 10 [LexisNexis]): *"Plaintiff's claim that copying and pasting accommodates his disability, whereas typing would aggravate his disability is nonsensical on its face".*

f.  The judge statement, implied that cut and paste (20 keyboard-hold strokes) was of equal effort than typing or striking the cyborg 6500. Is utterly insulting, in disregards for the plaintiff's disability and equal access to education.

g.  For purposes of this COA, the judge unintentionally made a medical "expert opinion" judgment, that is utterly wrong and bias, (wrongful citation of case-law) for reasons stated above.

h.  Expert Opinion asserts…"how could a judge imply that, for a student with a certifiable disability (on file with this court In April of 2013 and with all Purchase College and Binghamton University; thus not to be "assumed" as the Judge offense). With several herniated cervical disks would NOT have a serious inflammatory episode with over 6,000 keyboard strokes… utterly outlandish and out context opinion?"

i.  Plaintiff also objects to the reference of the Judge's case-law, as being utterly off-level, overboard & over bread; as it pertains to this COA in the Assoc. Amed. Compl. His opinion, did lack fundamental principles of "equality" and 'due process" of the Fourteen Amendment. "School officials" more than any other state official must be accountable to their illegal acts"… there are several landmark cases asserting this rational. Allowing school officials to have more credibility than students, is equal to allowing the promotion of illegal acts; school official is in charge of forging the future of this Country, thus, their actions MUST be implacable.

723) Plaintiff is a qualified *"partially-permanent disabled"* person, under the Social Security Disability Administration or SSDA, as defined by 42 U.S.C. § 12131 (2), and Section 504 of the Rehabilitation Act of 1973 29 USC Sec. (701-796), and under New York State workers' compensation law, (See Exhibit B).

724) Hence, for the purpose of Plaintiff receiving *"equal rights to education"*… Binghamton University (BU) received the proper documentation sought to grant an ADA disability accommodation, (See Exhibit K). *"Disability Accommodations"*

725) This accommodation consisted in the use voice recognition and more time for testing—ALL other related accommodations were to be implied; e.g. leaving school related utensil at the library, *etc.*);

726) These *"Disability Accommodations"*, were approved by the BU office of students with disabilities dept.. This bureau is the office that enforcement of all handicapped students with accommodation; including, but not restricted to, the notification of such disability and required accommodation to all professors, including Professor Daniel Pearson, (this is standard operation for ALL SUNY Colleges; moreover, it is

strictly required by The State University of New York).

727)Facts, during the course of the summer 2013, Plaintiff, was registered as a visiting student in class and finish his degree in legal studies, at BU.

728)One of classes Plaintiff registered, was an online class; *HIST 380D*, taught by Professor, **Daniel Pearson**.

729)This class was paid only by federal student loans. They said the class was an upper level (a MUST for graduation).

730)This course was the Plaintiff's LAST REQUIRED upper level course for the completion of his LEGAL STUDY Major, (this was notified to ALL parties in this COA).

731)The *HIST 380D* course was an online class. A class that may be attended from anywhere where the technology is available.   Online grades, most of the time, do not offer and/or require special accommodation disabled student.

732)During the mid-semester exam, plaintiff was forced to assist/perform an exam without the disability accommodations, which Plaintiff was entire, (extended time for testing, use VOICE RECOGNITION equipment (software). Regardless of Plaintiff not which stated as follows, *misspellings included.* (Also See Exhibit M):

733)Sine said accommodation was GRANTED, plaintiff wrote in color red, the following statement in on the first page of the test (misspellings included):

"DISCLAIMER;

PLEASE NOTE  I  AM   DISABLED PERSON WITH LIMITED USE OF MY HANDS,DTHUS TYPING IS VERY DIFICULT. SINCE THE TEST IS TIMED,SOME OF THIS TEXT WAS PREPARE IN ADVANCE; A DOCUMENT OF 24 PAGES. TAYPING IS DIFFICULT AND DANGEROUS FOR MY NECK INJUREIS. ACCOMODATION   IS JUST IN LAST WEEK. FROM ADA SCHOOL DEPT."

734)The next week, Professor **Daniel Pearson** accused plaintiff of plagiarizing by *"cut and pasting"*.

735)However; Professor **Daniel Pearson** did, requested plaintiff's proof of the disability and accommodation requirements.

736)The same day he received an email from Professor, **Daniel Pearson** confirming Plaintiff's accommodations. Ironically, Professor applied such accommodation (time and the use of particular equipment) to the remaining testing of the course, (including the final exam). Nevertheless, Plaintiff was still accused of "cheating" and was ranged with a permanent "F".

737)On or about the first week, month of July, 2013 Plaintiff was called for a meeting with Mrs. **Kathleen Brunt** in a meeting with Mrs. **Jean Fabiani**.

738)At said meeting Mrs. Kathleen Brunt, stated that indeed, the test requires extensive typing for the quantity of time left in a specific quantity of time and "cut and paste was not a portion of the disability accommodations". Plaintiff had to *"cut and paste"*. Plaintiff was accused of *"academic dishonesty"*,

739)At the same meeting, Plaintiff explained to Mrs. **Kathleen Brunt** and Mrs. **Jean Fabiani** of Plaintiff's disability and inability to type for that extent of time. Furthermore, Plaintiff explained the implication of a DANGER inflammatory reaction to the stress of typing and/or handwriting.

Please note, that Mrs. **Kathleen Brunt** statement is in direct contrast with the statement of Judge Roman's opinion of May 30, 2014, who stated Plaintiff was accused of "not mentioning". Mrs. **Kathleen Brunt,** in charge of the investigation and subsequent suspension, was NOTIFIED of her duty to uphold the accommodations and repeat the test, with proper accommodations and the possibility of her action was illegal and inappropriate as charged. Furthermore…

740)Mrs. **Kathleen Brunt,** was notified in person at the said meeting and in several emails, that a possible suspension was illegal and against SUNY's policies. Even so…

741)Mrs. Kathleen Brunt, did suspended Plaintiff for one yr (one semester break; however, SUNY students have to wait another REGULAR semester [not including winter or summer sessions] to register to another division).

742)The suspension was also upheld by def. And on appeal by def. Mrs. **Anne MacCall** (who so eloquently stated, *"you (plaintiff) cheated"* (See Exhibit L); even though, plaintiff provided def. Mrs. **Anne MacCall** via email ALL documentation stated in this COA; in addition…

743)ALL parties in this cause of action had been notified ad documented of rules, laws and policies they were violating, and impending harm they intentionally caused the plaintiff.

744)During the same week plaintiff filed a complaint, via electronic mail, to the Provost office, at the Binghamton, University of the wrongful actions of Defendant: Mrs. **Anne MacCall;** Binghamton

University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani a**nd Mrs. **Kathleen Brunt** under the supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett,** of their violation of Plaintiff's ADA Accommodations and others, summoning the respective violations of Federal and State Laws.

745)When over 180 days have passed; no answer from such complaint was received by the plaintiff, "no findings".

746)On or about August of 2013, BU officials have notified an untold number schools of Plaintiff's academic dishonesty, without Plaintiff's written consent.

Please note that, BU did know about the Assoc. Case against SUNY, at the time of these discriminatory and retaliatory actions took place against plaintiff; as stated herein this COA.

747)In addition, plaintiff communicated in many occasions, during this period of time said above, with SUNY Attorney, Mrs. **Barbara Westbrook Scarlet**; to see a resolution to the problem, yet, she actually turns away to release documentation to plaintiff and moreover, she misled other BU officials to write misleading statements; such the notification of plaintiff disability accommodation to professor Pearson. Said notification was first issued by the disability dept. at BU when plaintiff was accused of plagiarizing; (this first letter was filed with this court); however, Mrs. **Scarlet**, redirected the disability dept. at BU to rewrite a second letter and change the statements, using the date of the events took place, and not the date the latter was rewritten; thus it may look as plaintiff rejected the accommodation. In any event, at that place is no surprise about SUNY Attorney misconduct, as this entire complaint asset. The original and correct letter sent to Prof. Pearson is on file with this Court; asserting, intentional emission of false statements, *per-se.*

Please note that, professor **Pearson** contended that "he was not required to provide accommodation to plaintiff," if he was not notified in time, by BU disability Dept. However, SUNY rules of accommodation; states that the Dept. of disability, upon documented knowledge of student disability, the said department MUST notify immediately, as it was done at purchase College all of the time. SUNY Attorney, Mrs. **Barbara Westbrook Scarlet**, di try to mislead the issues to divert responsibility to plaintiff, when the ethical responsibility for her… would have been to notify these Defendant: Mrs. **Anne MacCall;** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt,** to redo the test with accommodation, however, she was too lazy to do it.

Please also note that, that ALL of these state actors, had personal knowledge (notification) of the plaintiff

current (at the time) of plaintiff pending litigation against SUNY Purchase. For this reason the complainant was treated different than other student situated in similar situation. No disabled-student in the world, can get one year suspension for doing a test with-out accommodation. Hence, these school officials did know of plaintiff hardship, thus, the inference that Defendant: Mrs. **Anne MacCall** undue suspension of plaintiff for one year, had the primary purpose to disallow plaintiff enrollment into the school, MUST be observed.

Damages:

748) For the purpose of worsening of plaintiff's physical and mental health, *Parr.* 1…9 are adopted.

749) *Parr.* #2, & 4 through 11, are hereby adopted…

750) As a result of Defendant: Mrs. **Anne MacCall;** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the supervision and advise of SUNY Attorney Mrs. **Barbara Scarlett,** wrongful action…

751) Plaintiff was further humiliated, suffered additional worsening; additional more severe, frequent-concurrent mental anguish; additional more frequent and severe feeling of worthlessness (diminished); additional more concurrent feelings of being persecuted (becoming more justifiably paranoid); additional sleeping problems (lack of sleep, nightmares and waking up night with fear and memories of the events); added emotional pain; and added concurrent stress leading to physical pain to his concurrent spinal injuries…

752) At this point plaintiff's spinal injury were worsening, as to have more frequent spasms, inflammation (or vice-versa) causing difficulty walking and less use of his arms, thus hands.

753) Because of these accumulative actions, and under the advice of Plaintiff's personal Doctor, Mrs. **Asma Naeem;** Plaintiff solicited counseling for depression and PTSD at St. Vincent Hospital at the end of the year 2013. Furthermore…

754) Defendant: Mrs. **Anne MacCall;** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the incompetent supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett's** wrongful actions, have led to Plaintiff's irreparable permanent academic harm. Furthermore…

755) Their actions have resulted in Plaintiff's current medical condition and personal injuries, (including his severe and irreparable aggravation of his disabling spinal injuries), (see exhibit A).

Legal Theory:

756) For this COA...for defendants and non-defendants parties named herein, plaintiff's incorporates... *Parr.* #48 to 52a are hereby adopted.

757) For all purposes of this COA (and ALL other COA, in this complaint), defendants deprivations of rights and privileges against plaintiff, as stated herein; these *per-se*, contributed to plaintiff permanent physical and mental injuries.

758) After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby state, where all administrative and time limitations have been exhausted and no administrative remedies—in good faith and no findings...

759) Plaintiff asserts that Defendant: Mrs. **Anne MacCall;** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the supervision and advise of SUNY Attorney Mrs. **Barbara Scarlett,** and all other individuals situated in the similar situation have NOT admitted nor offered plaintiff a solution for the harm caused by these BU school officials deprivation of rights and privilege against plaintiff.

760) Binghamton University Nondiscrimination Notice...

*"Pursuant to Binghamton University policy, the University is committed to fostering a diverse community of outstanding faculty, staff, and students, as well as ensuring equal educational opportunity, employment, and access to services, programs, and activities, without regard to an individual's race, color, national origin, religion, creed, age, disability, sex, gender identity, sexual orientation, familial status, pregnancy, predisposing genetic characteristics, military status, domestic violence victim status, or criminal conviction. Employees, students, applicants or other members of the University community (including but not limited to vendors, visitors, and guests) may not be subjected to harassment that is prohibited by law, or treated adversely or retaliated against based upon a protected characteristic. Binghamton University's policy is in accordance with federal and state laws and regulations prohibiting discrimination and harassment. These laws include the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973, Title IX of the Education Amendments of 1972, Title VII of the Civil Rights Act of 1964 as Amended by the Equal Employment Opportunity Act of 1972, and the New York State Human Rights Law. These laws prohibit discrimination and harassment, including sexual harassment and sexual violence. Inquiries regarding the application of Title IX and other laws, regulations and policies prohibiting discrimination may be directed to the:*

*Who is covered by Title IX?*

*Binghamton University receives federal financial assistance in many forms, including grants from federal agencies for faculty research. Failing to comply with Title IX or other federal civil rights requirements may result in the termination of all or part of a university's federal funding, including awards for faculty research.*

*Educational institutions are required to provide women and men in all disciplines, including science, technology, engineering and mathematics, comparable resources, support and promotional opportunities.*

*Title IX's protection is not limited to women, but protects the rights of both women and men. Title IX requires that males and females receive fair and equal treatment in all areas of education, including athletics."*

761) *Parr.* #359 through 367; in addition, where the deprivation of rights and/or privileges against plaintiff, took place as suspension, for one year (implying one semester that plaintiff cannot apply to another school, since there is a one regular academic semester (not summer and/or winter's sessions) waiting period); which an irrational undue permanent academic harm, but most important plaintiff's personal injuries… on the basis of retaliation. Hence, plaintiff's hereby incorporates, as applied to the defendants herein, and as the plaintiff legal rational is as similar as in this COA, and as this Court suits appreciate to the "*injured party*".

## Count I, (42 U.S. Code, Sec. 1983):

(General):

762) All Defendants & Non-defendants, "*Persons",* In This COA).

763) Plaintiff brings this action under 42 U.S. Code, Sec. 1983; where Defendant: Mrs. Anne MacCall; Binghamton University (BU) Officials: Mrs. Celia Klin, Mr. Daniel Pearson, Mrs. Jean Fabiani and Mrs. Kathleen Brunt; under the supervision and advice of SUNY Attorney Mrs. Barbara Scarlett, are/were "persons"… Acting under the color of the state law, in their single capability, have deprived plaintiff of his civil rights and privileges guaranteed by the US and NYS Constitution. Furthermore...

764) As a direct consequence of their intentional personal and emotional involvement have caused permanent academic harm, and plaintiff's personal-permanent injuries, (physical, mental) inflicted against plaintiff; with NOT a governmental purpose whatsoever. Furthermore…

765) There is a sufficient causal connection between these officials named here in this COA's wrong act and intentional lack of supervision, and proper training; with plaintiff's injuries (physical, mental and academic). Hence…

766) When personal involvement, oversight of the wrongful acts, and covering up (knowledge and approval

of wrong doing) these actions put forward in this COA, thus, "respondent superior" is applicable as supervisors had personal knowledge and approval of negligence-retaliation action against plaintiff; as witness shall testify.

767) Where *personal and emotional involvement* against a student, member of a protected class (older male disabled student-persons) to accommodate personal belief of unjustifiable retaliatory causing, in large part, plaintiff's permanent disabling injuries; in direct violation of SUNY, BU and/or the State of New York policies and federal and state laws. Additionally…

768) Where, Defendant: Mrs. **Anne MacCall;** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett, Scarlett;** in their personal involvement and knowledge and approval of the wrong doing stated herein this COA, thus, "respondent superior" liability is applicable. In addition…

769) Defendant: Mrs. **Anne MacCall;** by her wrongful action, have been deliberately indifferent to the pattern of severe and pervasive humiliation suffered by Plaintiff.


## Count II, (42 U.S. Code, Sec. 1983):

### (Title 18, U.S.C., Section 242)

#### (Deprivation of Rights under the Color of Law).

770) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

771) *Parr,* #267 through 270, are hereby adopted, and as apply to the state actors named herein.

## Count III, (42 U.S. Code, Sec. 1983):

### (Title 18, U.S.C., Section 241)

#### (Conspiracy Against Right)

772) As applies to all state actors, named herein this COA; *Parr.* #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

773) *Parr,* #271 through 273, are hereby adopted, and as apply to the state actors named herein.

Count IV, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 245)

(Federally Protected Activities)

774)As applies to all state actors, named herein this COA; *Parr.* #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

775)*Parr,* #274 through 276, are hereby adopted, and as apply to the state actors named herein.

Count V, (42 U.S. Code, Sec. 1983):

(Fourteenth Amendment)

(Equal Protection)

776)As applies to all state actors named here in this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

777)For the purpose of this count; plaintiff was, and still is, a member of a protected class, with the severe limitations of age and disability, where…

778)The Fourteenth Amendment is violated when state officials acting in the power of the state law and act contrary to such laws.

779)Defendant: Mrs. **Anne MacCall;** and Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the supervision and advise of SUNY Attorney Mrs. **Barbara Scarlett;** acting in their under the color of the law, in their individual and official capacity… conspired to/and deprived plaintiff of his Fourteenth Amendment to the U.S. Constitution, adopted in 1868, declares that: "*no state may deny any person the 'equal protection' of the laws,* where…

780)Plaintiff was suspended for one year (including the one regular semester waiting period [not applicable to this SUNY rule are summer and winter sessions]); for reasons that serve no "*appropriate governmental interest*"; in addition to the "*by the differential treatment,"* (differently than other students situated in a similar situation, [regular matriculated students] harshly, that can only infer, "in retaliation"). Furthermore…

781)"*When an important personal right - such as public higher education is affected*", in addition…"t*he government entity (BU) must show not only that there is, a but also that there is a real and substantial*

*relationship between the classification and the governmental purpose which it purportedly serves."* Clearly, when there are facts asserting that there was a certifiable disabled student--member of a protected class… Thus, there was NO need for disciplinary (punishment) action against a (plaintiff). Hence, the inference of wrongdoing as a way of a retaliatory basis action against plaintiff, MUST be observed. Furthermore…

782) An average, common, uneducated person, would recognize that placing a member of a protected class in such unnecessary discrimination, humiliation and hardship… was utterly irrational, and against the SUNY mission of educational purpose, (which, and at this time of this complaint is in doubt! ) Would have caused severe health problems to plaintiff; thence, and obviously, these school officials named herein, did know plaintiff was disabled person, and that adding undue emotional distress to a disabled student was irrational and based solely in an "ill will" of personal bias beliefs. In addition…

783) The lack of excellence in the customer service that a paying student-client deserve, must also be observed.

784) *Parr.* #111 through 118, are hereby adopted.

785) Plaintiff has demonstrated by facts, inferences and shall demonstrate by witness testimony, that the Defendant: Mrs. **Anne MacCall; and** Binghamton University (BU) Officials: Mrs. **Celia Klin**, Mr. **Daniel Pearson**, Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the supervision and advise of SUNY Attorney Mrs. **Barbara Scarlett**; have deliberate orchestrated campaign, policy of conduct and/or custom; which are purely motivated by "*sheer personal beliefs*" and "*abuse of power*"; In addition to, a retaliatory-vindictive actions seemingly required under *Esmail*. Slip Op. At 2, (see *parr.* #116).

a. Please note that visiting students have reported such activity has been experienced, harshly and with excessive disciplinary action (almost as punishment), then registered students at BU, the same at Purchase College), suggesting a SUNY wide conduct. This inference takes more value adding the eight SUNY Universities that denied transfer to the plaintiff, even though all of these Universities were provided with the Assoc. Compl. As an affirmative defense for his admission.

b. Please also note that, plaintiff received the harshest disciplinary-punishment for another FALSE academic dishonesty, that there is at BU. The lightest is a reprimand. In addition…

786) Defendant: Mrs. **Anne MacCall; and** Binghamton University (BU) Officials: Mrs. **Celia Klin**, Mr. **Daniel Pearson**, Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** and Mrs. **Barbara Scarlett**; in addition, attached themselves to a conduct and a custom of *gross negligence*, in violation of their professional

conduct (none) and "*standard of duty*" that by law is owed to a student-client member of a protected class, that caused foreseeable harm to plaintiff. In addition...

(Due Process, [Procedural & Substantive])

787) As applies to all state actors named here in this COA; Parr. #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted. Furthermore...

788) Defendant: Mrs. **Anne MacCall; and** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the incompetent supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett,** "*Persons*", and all other individuals situated in the similar situation... conspire to (and did) deprived plaintiff of "*due process*" of the law, by NOT allowing plaintiff's accommodation with no contest of such. For this reason alone... this court MUST infer that the exclusive intention of these souls was to cause humiliation and harm; with-out any "governmental interest," but punish; which certainly was out-side any moral respect for a member of a protected class; furthermore in violation of the real mission of education of SUNY, (if any) and the State of NY public official policies and procedures, see the Torts section below.

Please note that plaintiff pay out-of-pocket, ALL expenses at BU (including tuition, on-campus housing and other), with federal student loans, which are garnish-able to Social Security Disability. In addition...

789) Plaintiff, by the actions of Defendant: Mrs. **Anne MacCall;** and Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett,** "*Persons*"...Asserts a deprivation of "*pursuit of happiness*" of life, and the "*right to bodily integrity*"...Harms which were foreseeable to the defendants... and the plaintiff's right to private interest... All affected by the officials 'undue actions; Ina addition...

790) To the infamous statement of Defendant: Mrs. **Anne MacCall,** calling plaintiff a "*cheated*" Furthermore...

791) Defendant: Mrs. **Anne MacCall; and** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the incompetent supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett,** "*Persons*", inflicted undue punishment (not disciplinary action) and based in a discriminatory act, in violation of the Sec. 504 Rehabilitation Act. (Accommodation), which states that;

*"Section 504 protects qualified individuals with disabilities. Under this law, individuals with disabilities are defined as persons with a physical or mental impairment which substantially limits one or more major life activities. People who have a history of, or who are regarded as having a physical or mental impairment that substantially limits one or more major life activities, are also covered. Major life activities include caring for one's self, walking, seeing, hearing, speaking, breathing, working, performing manual tasks, and learning. Some examples of impairments which may substantially limit major life activities, even with the help of medication or aids/devices, are: AIDS, alcoholism, blindness or visual impairment, cancer, deafness or hearing impairment, diabetes, drug addiction, heart disease, and mental illness. In addition to meeting the above definition, for purposes of receiving services, education or training, qualified individuals with disabilities are persons who meet normal and essential eligibility requirements. For purposes of employment, qualified individuals with disabilities are persons who, with reasonable accommodation,* **(accommodation that was on file at the BU disability office at the time of the violation)** *can perform the essential functions of the job for which they have applied or have been hired to perform. (Complaints alleging employment discrimination on the basis of disability against a single individual will be referred to the U. S. Equal Employment Opportunity Commission for processing. Reasonable accommodation means an employer* (or school) *is required to take reasonable steps to accommodate your disability unless it would cause the employer undue hardship." Plaintiff asks...*Was a hardship for the school (BU) to accommodate the student? However, it was certainly easer for these state actors to make up ridiculous reason not; furthermore to suspend the disabled person and calling him "a cheater". For this plaintiff incorporates. In addition...

792) Def. Mrs. **Anne MacCall;** have certainly, by "*sheer incompetence*", have provoked the student-plaintiff injuries (See damages). In addition...

793) Certainly, def. Mrs. **Anne McCall's** "sheer incompetent" action, has been the effect of lack of "*procedural safeguard*"; which was ramped up into the process of conduct or custom and facial adequacy of the unofficial personal policy, (more severe penalty for visiting students) that the student integrity is never placed before possible undue harm; therefore, causing the negative inconsequential actions..."gross-negligent"; that did aid in plaintiff's permanent-personal-injuries. Additionally...

794) Defendant: Mrs. **Anne MacCall; and** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the incompetent supervision and advise of SUNY Attorney Mrs. **Barbara Scarlett,** "*Persons*"...by allowing themselves to get involved in his own personal bias views, against an older, disabled and a member of a protected class (plaintiff) student;

disregarded that plaintiff's *"liberty interest"* in their *"bodily integrity"* (health); which is against deprivation of *"due process"* by the state, ***Ingraham v. Wright,*** 430 U.S. 651, 673–74 (1977)," internal quotation omitted. Furthermore…

795) Defendant: Mrs. **Anne MacCall** and the other individuals action's result solely from their conduct or custom of a state employee's lack of *"duty to protect"* the academic and personal welfare of the disabled student as state official, even when acting as a private actor, causing injuries to plaintiff. Furthermore…

796) By intentionally and falsely calling plaintiff *"a cheated"*, and the subsequent undue suspension (punishment) action of the Defendant: Mrs. **Anne MacCall** against the plaintiff, was, *per-se,* an *"arbitrary action."* Furthermore…

797) The *"arbitrary action"* of this lady, was a violation of *"substantive due process"*; a component of the Fourteenth Amendment that protects against such, *"differential treatment"*, See, ***County of Sacramento v. Lewis***, 523 U.S. —, 118 S. CT. 1708, 1716 (1998); see also ***Collins v. City of Harker Heights,*** 503 U.S. 115, 130 (1992). In addition…

798) Defendant: Mrs. **Anne MacCall;** and Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the incompetent supervision and advise of SUNY Attorney Mrs. **Barbara Scarlett,** *"Persons"*, by a written statement… stating "that plaintiff did not communicated in time for the accommodation or that the plaintiff did not wanted accommodation, and further granting accommodation for plaintiff's final, and further giving plaintiff was/is *"shock the conscience"* and a sheer *"bullying"* action. Which is a clear indifference to the person's intelligence, and lack of respect to a 54 years old disabled person. This Court can never allow this lady get away from her crime as person. Allowing it with excuses, would bullying ALL disable persons and rendering all disabilities laws and regulation a laughing matter. In addition…

799) Where ALL state actors named herein, having special training (especially SUNY Attorney Mrs. **Barbara Scarlett**), thus being above of what an ordinary person would reason; knowingly that plaintiff was a member of a protected class (age, and disabled), intentionally enacted the creation of any *"hostile environment,"* for plaintiff.

<u>Please note</u>, Expert Opinion has stated that *"a discriminatory, retaliatory act always have a long-lasting or a permanent trauma"*. Which is consistent with plaintiff permanent-personal-injuries.

<u>Count VI, (42 U.S. Code, Sec. 1983):</u>

(Fourteen Amendment):

   (Title IX of the Education Amendments of 1972):

800)Count V, is hereby incorporated.

801)As applies to all state actors named here in this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

802)Title IX of the Education Amendments of 1972 prohibits gender discrimination in education and in higher educational programs and activities receiving federal funds. 20 U.S.C. §§ 1681-1688 (2000).

803)Defendant: Mrs. **Anne MacCall**; Binghamton University (BU) Officials: Mrs. **Celia Klin**, Mr. **Daniel** Pearson, Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett**, "persons"… Acting in their under the color of the law, in their private capacity, conspires to deprive plaintiff of equal right to Higher Education Opportunity. By violating The Higher Education Opportunity by arbitrarily suspending plaintiff from any participation of higher instruction for one year (six months suspension plus the one semester wait period).

Please short letter that no institution of higher education, shall accept transfer—admission, to a suspended student; especially in his last semester of classes; with pending litigation against SUNY.

Count VII, (42 U.S. Code, Sec. 1983):

(Fourteen Amendment "equal protection)

   (Section 504 of the Rehabilitation Act of 1973 Accommodation):

804)Parr #787 is adopted…

805)As applies to all state actors named here in this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

806)On September 23, 1973, Congress passed the Rehabilitation Act in response to federal lawsuits safeguarding the educational rights of children with disabilities (one of which was ***Mills v. Board*** 348 F. Supp. 866 (D.D.C. 1972). (Education of the District of Columbia, 1972). This Act was the first federal civil rights law protecting the rights of the disabled.

807)Plaintiff asserts, Defendant: Mrs. **Anne MacCall; and** Binghamton University (BU) Officials: Mrs. **Celia Klin**, Mr. **Daniel Pearson**, Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the incompetent

supervision and advise of SUNY Attorney Mrs. **Barbara Scarlett,** *"persons"* acting in their under the color of the state law, in their individual capacity; fail to provide plaintiff with reasonable accommodations, as such was on file with BU. Furthermoe…

808) Where plaintiff accommodation on file with BU specifically stated: 1)*"use of speech recognition"* and 2) *"extra time for testing"*, was not an *"undue burden means significant difficulty or expense"* to the disabled in disadvantage student; where no significant structural alterations obviously was not required to accommodate plaintiff for his midterm exam.

809) Among its many provisions, Section 504 declares that *"No otherwise qualified individual with a disability in the United States… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance…. 29 U. S. C. § 794 (a.), 1998)."*

810) Plaintiff asserts as fact that Defendant: Mrs. **Anne MacCall;** and Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett;** did not allow plaintiff his right to testing accommodation; furthering calling plaintiff *"a cheated"*. Therefore, plaintiff was falsely accused with plagiarizing, when disability accommodation was due. Furthermore, issuing an undue suspension (punishment) for one year (six months suspension plus the one semester wait period). So…

811) Because plaintiff was incapable to successfully perform with equality on the test, as other students without disability could performed…plaintiff's disability was the impediment to be successfully in the test in question; therefore, These state officials DID NOT allowed plaintiff's success in a test because (solely) his disability. Thus…

812) To assert said rational, plaintiff was allowed the use of his accommodation for his final test, thus plaintiff did have success on the final test, but not in his mid-term, "solely because of his disability". Hence…

813) Defendant: Mrs. **Anne MacCall**; and Binghamton University (BU) Officials: Mrs**. Celia Klin,** Mr. **Daniel Pearson**, Mrs. Jean Fabiani and Mrs. **Kathleen Brunt** under the supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett,** discriminated against plaintiff--as supposed to students without disability—only because his disability, NOT the plagiarizing accusation. So even if the unjust plagiarizing accusation stands, then the "failure to accommodate" should also must also stand.

Please note that, Plaintiff was not afforded the chance to redo his midterm test, as a normal, average,

common person over the age of 12, would have contemplated. Thus, to create an equal access, and opportunity for the same education that other students with-out disabilities did get in the same class; thus, plaintiff was treated differently "*solely because his disability*". Furthermore...

814) By allowing plaintiff to bring his final exam WITH accommodation (use of voice recognition and more time), plaintiff was able to get "equal right and access to education" as other students with-out disabilities did. So how plaintiff could have cheated? If accommodation had been made available to him, as it was, legally entire to, would have had success in the midterm... Hence, plaintiff falsely called plaintiff "a cheated", charged with plagiarizing when disability accommodation was due; and further, issuing an undue suspension (punishment) for one year (six months suspension plus the one semester wait period)... Furthermore, plaintiff did disclosed on the front page of his midterm test that he was disabled, (See *Parr.* # 721).

815) Complainant because he is disabled, he could not complete his midterm test as another student without a handicap; therefore, plaintiff "on the basis of (being) handicap" was named a "cheater", thusly...

816) 34 C.F.R. Part 104; where defendant & non-defendants herein is state actors of a postsecondary education program, "*a recipient*". 34 C.F.R. Part 104.43 Treatment of students; general. (Defendant to equal education as other students with Mrs**. Anne MacCall); which states: "*A recipient to which this subpart applies that considers participation by students in education programs or activities not operated wholly by the recipient as part of, or equivalent to, and education program or activity operated by the recipient shall assure itself that the other education program or activity, as a whole, provides an equal opportunity for the participation of qualified handicapped persons. A recipient to which this subpart applies may not, on the basis of handicap, exclude any qualified handicapped student from any course, course of study, or other part of its education program or activity.*"

817) Defendant, Mrs**. Anne MacCall,** upon receiving a 30 pages appeal that she examined. This document was also submitted to the Court, see Assoc. Compl. In addition...

818) Said documentation that did provide ample information of plaintiff's disability and most applicable federal and state laws Defendant: Mrs. Anne Marcel was violated; furthermore, holding the plaintiff effectible demonstrated to the defendant, he was denied his registered accommodation; def. **Anne MacCall, c**alled plaintiff a "*cheater*"... Hence, Defendant: Mrs. Anne MacCall, intentionally, out of an "*ill will*" *and* "*incompetence*" *or* "*personal belief of involvement*" fail to provide an equal opportunity for the participation of qualified handicapped individuals. Furthermore, excluding the plaintiff of, "*a*

*course of study, or other portion of its teaching plan or activity."*

Count VIII. (42 U.S. Code, Sec. 1983):

(Fourteen Amendment "equal protection)

(Retaliation):

819) Defendant: Mrs. **Anne MacCall;** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt** under the supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett,** conspire to treat plaintiff differently, solely because he filed an intention of legal action and an injunction for relief against Mrs. **Celia Klin,** Mr. **Daniel Pearson...** "RETALIATION".

820) Retaliation; the regulation implementing the Age Discrimination Act at 34 C.F.R. § 110.34, incorporates by reference 34 C.F.R. § 100.7 (e) of the regulation implementing Title VI of the Civil Rights Act of 1964 (Title VI), which provides that:

*Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder.*

(Authority: Sec. 601, 602, Civil Rights Act of 1964; 78 Stat. 252; 42 U.S.C. 2000d, 2000d-1)

821) Defendant: Mrs. **Anne MacCall;** Binghamton University (BU) Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson;** Mrs. **Kathleen Brunt;** and Mrs. **Jean Fabiani;** 1) knew there was plaintiff had requested this Court's intervention; they also knew there was a pending legal action against SUNY...2) thus, they knew plaintiff was a member of a protected activity, and member of a protected class; furthermore they knew plaintiff was a recipient of disability accommodation, and 3) there was an adverse action; plaintiff was punished (not disciplined) suspended causing permanent harm and personal injuries, (See damages).

Count X, (42 U.S. Code, Sec. 1983):

(Fourteen Amendment "equal protection):

(Policies, Customs and Practices):

822)Please note that def. **Anne MacCall,** *person,* in her supervisory capacity; is interchangeable for the incompetent supervision and advice of SUNY Attorney Mrs. **Barbara Scarlett.**

823)Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983 (Failure to Implement Appropriate Policies, Customs and Practices. In addition...

824)Defendant: Mrs. **Anne MacCall,** Dean Of new Harpur College of Liberal Arts and Sciences; "failed to take necessary and adequate measures to train, retrain, supervise, monitor, to educate that its officers (Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson;** Mrs. **Kathleen Brunt)** received the proper training so as to enable them to render ensure and unbiased necessary respect and *"standard of duty"* students deserve, especially a disabled student. Furthermore...

825)Defendant: Mrs. **Anne MacCall,** had *"de facto"* policies, practices and customs that were a direct and proximate cause of the unconstitutional conduct committed herein in that her subordinate's school officers (Officials: Mrs. **Celia Klin,** Mr. **Daniel Pearson;** Mrs. **Kathleen Brunt)** were not properly trained and/or retrained. The impediment that led/causing the plaintiff's injuries. In addition...

826)Defendant: Mrs. **Anne MacCall,** further violated plaintiffs' constitutional rights in "permitting a pattern and practice within its school or department of allowing the wrongful, discriminatory (disability accommodation), retaliatory without probable cause.

827)Complainant can prove that a Defendant: Mrs. **Anne MacCall,** is liable pursuant to 42 U.S. Code, Sec. 1983 under a theory of *"respondent superior"* (*see* **Monell v New York City Dept. of Social Servs.,** 436 US 658, 694 [1978]), since she was properly notified of the deprivation of plaintiff's right to disability accommodation. Furthermore...

828)Defendant: Mrs. **Anne MacCall** is responsible and liable under 42 USC § 1983 for the unconstitutional actions of its employees; where plaintiff can prove (1) *an official policy or custom that* (2) *causes the plaintiff to be subjected to* (3) *a denial of a constitutional right* (*see Canton v Harris*, 489 US 378, 385 [1989]; **Monell v New York City Dept. of Social Servs.;** *Wilner v{**39 Misc 3d at 564}* **Village of Roslyn,** 99 AD3d 702, 703-705 [2d Dept. 2012]).

Count VII, (42 USC § 1983):

(Fourteen Amendment "equal protection):

(Intentional: False, Misleading Statements and/or Accusations):

829)Defendant: Mrs. **Anne MacCall**, and BU official, Mrs. **Jean Fabiani** under the supervision and advise of SUNY Attorney Mrs. **Barbara Scarlett…**Having taking an oath to the state of New York, as a "*public officers*"…fabricated, and over up by any trick, a scheme to make a materially false, fictitious, or fraudulent statement or representation…Conspire to makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry as "*plaintiff is dishonest, a cheater, he plagiarized*", in violation of 18 U.S. Code § 1001 (1), (2), (3) & 1621 (1).

Count XI. (42 USC § 1983):

(Violation of the New York State Constitution and Laws: Tort Law):

830)As applies to all state actors named here in this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

831)Where supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

832)Defendant: Mrs. **Anne MacCall;** and Binghamton University (BU) Officials**:** Mrs. **Celia Klin,** Mr. **Daniel Pearson,** Mrs. **Jean Fabiani** and Mrs. **Kathleen Brunt;** have intentionally acted against their oath as a NY State Official. These "persons" failed to exert a strict "standard of duty" owed to the students (plaintiff) by NOT providing reasonable accommodation to register qualified individuals with documented disabilities. Thus, causing Plaintiff permanent academic harm and, in great part, plaintiff's permanent personal injuries--GROSS NEGLIGIANCE.

833)Where a civil wrong, which can be redressed by awarding damages. See, e.g., ***Smith v. United States,*** 507 U.S. 197 (1993).

834)*Parr*, #145 through 165, are hereby adopted.

835)ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "Bench Pro-see bias" action) LEGAL THEORY FOR A Pro-See LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (permanent personal injuries, and others), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action # 11**, (recommenced with new developments)

Facts:

836) The statements in *Parr.* 3, 5, 9, and 48 to 52a, are adopted herein…

837) This COA is directly connected to COA 12 and 13, in addition to any other COA where the state actors named herein, and their action of "gross- negligence" applies.

838) Plaintiff restates this COA from the Amed. Compl. Assoc. Case 1-CV-2586.; in light of plaintiff is asserting new developments and/or facts, (personal injuries and personal interest of defendants herein) in support of the plaintiff's claim.

839) Plaintiff brings this cause of action against defendants: **Purchase College, University** Police Officers Mr. **Davis Mobley** and **Police** Officer **John Doe** and Mrs. **Danielle DaGosto,** ALL under the under the bias, incompetent supervision and advice of SUNY Attorney Mrs. **Wendy Ravitz (former Kowalscki,** in the Assoc. Compl.)… intentionally and in premeditation conspired to deprive Plaintiff of liberty, property and property interest; by pressing an unconstitutional criminal charge against him, that ultimately lead to plaintiff's arrest in Binghamton University, and subsequent "permanent academic harm" and "permanent personal injuries".

840) On or about July of 2013, plaintiff wrote an email def. Mrs. **Danielle DaGosto.**

Please note that, the said email was by all legal standards a part of "*protected speech*", guaranteed by the First Amendment to United State Constitution.

841) Although plaintiff agrees, the said email was inappropriate… due to the hardship as stated by plaintiff in all of the prior COA, however, and due to the "*gross- negligent*" actions of def. Mrs. **Danielle DaGosto,** plaintiff's discomfort was acceptable to write such inappropriate email. This capacity of said email is discussed late in this COA.

842) On July 2014, Plaintiff was charged "*Aggravated Harassment*" under the PL§ 240.30 (1) (a) for "*causing an alarm*" (please note that said Penal Law in May of 2013 was declared unconstitutional [see COA #12] by defendants: **Purchase College, University** Police Officers Mr. **Davis Mobley** and **Police** Officer **John Doe** and Mrs. **Danielle DaGosto,** ALL under the under the bias, incompetent supervision and advice of SUNY Attorney Mrs. **Wendy Ravitz (former Kowalscki,** in the Assoc. Compl.)… Accusing Plaintiff of sending her "*an alarming*" or threatening email to her. Furthermore…

843)As a result **The District Court of the Town of Harrison** issue such warrant for the plaintiff's arrest. In addition, Def. Mrs. **DaGosto** also requested an order of protection, which was granted, by banning plaintiff from Purchase College; Inappropriate, sine the plaintiff was not a student at said College, and he was a student at BU. 300 mils out.

844)<u>Please note that</u>, at the time Plaintiff was no longer a student of Purchase College. Complainant was a visiting student at SUNY Binghamton University, in Binghamton, NY…

845)Said accusatory instrument was sent to def. Mrs. **Danielle DaGosto** from plaintiff's residence, in Binghamton, NY uses his personal email account, and NOT using Plaintiff's Purchase College email account, which was yet open; that is, the plaintiff was NOT a student at Purchase College. This lawsuit asserts that said communication was "not a school related issue" (Expert Opinion). In addition…

846)Here, the plaintiff produces an analysis of the email, where the textual part of said email appears *italicize* and <u>highlighted</u>, as follows:

*"DD* (Danielle DaGosto) *<u>the following is a strong constructive criticism that normally can be said at</u>* *<u>any company or institution…</u>* (Here Defendant is introducing the content of the email, where plaintiff criticizes the Def. DaGosto, but the criticism shall be taken as constructive standard procedure.) "*<u>There</u>* *<u>is no doubt that you are a great person and a woman.</u>*" (It is hard to believe that the plaintiff will praise Mrs. DaGosto as a person as the plaintiff asserts in the statement here, and the subsequently "*take a machine gun to shoot people at school*", as falsely stated by the prosecution (see statement filed with request for reconsideration)). The criticism…".*<u>When you say that you never done anything in your</u>* *<u>career (whatever that is), yes but you have done plenty of others that should have not done".</u> (In the Fed. Action. Plaintiff subpoena def. Mrs. DaGosto to testify in an Injunction hearing, who on the advice --for obvious reasons of High SUNY officials, she did not.) "<u>Experience is what you need Danielle. I had</u>* *<u>seen how soft with employees and how they controlled you. Furthermore, how intertwined you are with</u>* *<u>your peer workers and staff.   It's hard to believe that you have some authority in the school. I always</u>* *<u>had a tremendous regard for you,</u>"( another statement of plaintiff conveying respect)* " *<u>I do not think</u>*

*you have what is needed for that position you are holding, and you are damaging the school and the students with it.* (At this point and on, Mrs. **DaGosto** decided—for whatever reason-- to depart from the real essence of the content of the email) *I have five times the life experience that you in many fields than you, and you have no initiative to take strong decision that can make a difference. Your poor judgment has caused a lot of suffering not only on me but on other students."* (Herein the last sentence, plaintiff criticizes def., Mrs. **DaGosto** for not standing by the students who had--and still—suffer discriminatory actions at SUNY Purchase, e.g. plaintiff, that she knew they were happening and causing lots of suffering who she did nothing to prevent them to happened—her standard of duty-- Suffering that is per-se now in Defendant) *"Furthermore, you are too mature (not to say, you too old)"* (here again, plaintiff is trying NOT to offend def. Mrs. DaGosto) *"to suffer from peer pressure."* ( def. Mrs. **DaGosto** has unusual tied with Fed. Case defendant Richard Nassisi; see COA #3). The constructive criticism continue...."*You are not an independent creative person, and that is a must (to) lead others. You value your coworkers before you job and worst, your students"*; (def. Mrs. **DaGosto** has have continuing knowledge of discrimination and discriminatory policies to minorities, but not limited to, including aged and disabled students and in their admitting process to the school, especially of the Defendant herein), The following statements ARE where Defendant Morales gets to the point of the unprofessional actions and inappropriate housing dealings of the accuseer...."*analogy...it is like a nurse not taking care of her patient but giving a ride to a co-worker when she is on duty. You failed with my Law and ethic class, just to keep your status with the professor; so was with Naamm (gay gender discrimination) me. You failed to notify SUNY and the Dept. Of Education when you suspected abuse of one of your students and then you hide behind a legal shield that will disappear at any minute just to cover your WCC actions. There are students that have worked for you that have made derogatory statements against your department, and all other departments of the school for that matter different students have done the same. When I created the term "an educated gang";* (based in ALL the discriminatory and retaliatory actions and

subsequent silence of ALL other school official, in a form of coverup of the harm done to defendant, the

expression "an educated gang" is appropriate and protected by the First Amendment; furthermore, the

term is a discussion theme in the White Collar Crime or WCC, though at the same college) I did not

mean to offend anybody; word for word, that is what peer pressure is or becomes if not stop in time.

(The following statement is the statement in in question; a set of sentences intended to create a sense of

awareness do to the extensive history of animosity between students and school officials. Student that

had thought to come to school to commit an atrocity to vengeance school official discriminatory and

authoritarian actions. *"What if I was some nuts-crazy ( which I am not*), " (the defendant just laid out the

fact that the following content is NOT him and/or MUST be considered his words [LSAT 101]) *"and*

*being pushed to the end , and   the I take a machine gun ( which I will not)"* (reinforcing the first

sentence that defendant is NOT that pearson, therefore will NOT engage in such action) *"and because of*

*school "gang-like behavior "loses all opportunities to get to law school, then they garnish my SSD*

*check to pay the loans, so I have nothing to live for, thus, this crazy student (not me)goes out to the*

*school and start killing people. This sound like it has happened before. Wright? There is a student that*

*was having thoughts in doing just that* (and here is the proof, Defendant giving an example of could

happened with a student that was just going to commit an atrocity by taking a machine gun to school).

*"She was suspended for one year via Madame Jones. "*(def. Mrs. Melissa Jones; plainitff continues by

giving an example of what Mrs. Jones of her abuse and disparity policy against "protected class" of

person) *She* (referring to Johanna Miranda; a student from Purchase College) *was going too MD school,*

*so she desired to commit suicide--she could not because of her daughter. You people have the power to*

*destroy lives, but one day someone will act-out on his/her disturbing mind—or temporary insanity--and*

*commit a crime   in revenge, and I will be there to testify against you all.   And you talk about career*

*and experience, you do not know what you are talking about. Like some of your students have told me*

*she is always into meeting, conferences or too busy; but when it comes to doing what is right for the life*