*and future of a student you fall way short of being honest and professional. All of your employees will be summoned to testify...oh and the free housing!!!   You are way short of being professional...sorry for honest with yourself. That is the reason I am bound to continue litigation and include you and Kat. So one day some crazy student would do something stupid and have innocents pay for. You do not have a career yet Danielle. Please forgive my honesty, and accept this strong remarks from a secure and loyal friend you both once had."* (These last Parr. The plaintiff 'statement was intended to create consciousness of their wrong doing can lead to "school violence", as stated by St. Vincent Hospital medical staff.

Please note that, this email was written by the plaintiff in July, 2013; however, defendants have increased the *"Organized retaliation"* against the complainant. Experts have stated to plaintiff that..."it seems that they (defendants) are leading you (the complainant) to make out something stupid".

847) The protected email communication between the plaintiff and def. Mrs. **DaGosto**, was NOT *"a true threat"* (especially, when def. **DaGosto, personally** knew of the plaintiff non-violent nature) under whatever legal (constitutional) standard, thus the content of said email was a *"protected speech"* under the *"freedom of speech"* clause of the First Amendment to the US Constitution, a further discussed in the *"legal theory"* of this COA.

848) On or about July 18, 20133, Purchase College university police, and defendant, Mr. **Davis Mobley**, and his companion officer, Def. **John Doe**, drove, is 250 miles (500 round trip) away in Binghamton, NY without jurisdiction, (as discussed later) to arrest Plaintiff at the University in Binghamton.

    a. Please note, the first and most important rule in the SUNY University Police manual, is to know their jurisdiction, when action in their official capacity.

    b. SUNY University Police jurisdiction is clearly stated to the "school assigned and surrounding (with supervisor permission)," inferring never 250 miles away.

    c. That is, both defendant's officers, MUST they been mandated by high SUNY officials, as stated by officer **Mobley** when asked by the plaintiff.

        i. Please note that, at least defendant, Mrs. **Danielle DaGosto**, and def. Mr. **Davis Mobley**, were

removed or they removed themselves from their official's duties at SUNY Purchase; this happened in June, 2014; right after the dismissal of the Assoc. Compl.

d.   Please also note, that Plaintiff sustained an ongoing Federal Complaint (associated case #13-CV-2586) against several school officials at Purchase College, which included Purchase College University police chief of police Mr. Walter Butler (see COA #2). Furthermore...

e.   Plaintiff had a deadline to file his Assoc. Amend. Compl. That same week of his arrest in Binghamton. Furthering implying a set-up, (Expert Opinion). In addition...

f.   Since the arrest was conducted without jurisdiction, and the Purchase College, University Police, was a defendant in the Assoc. Compl. "Expert Opinion" believes this *false arrest* was at least to prevent Plaintiff to continue his associated case #13-CV-2586. Furthermore, Defendant, Mrs. **DaGosto** was to be a defendant in said the lawsuit, furthering, asserting Expert Opinion that, def. **DaGosto** wanted to retaliate, and basis of "emotional personal involvement". However...

849)Defendant Danielle DaGosto and Plaintiff had a more than good professional relation to the degree of almost two both have a friendly relationship. Therefore, there was never the reason for the animosity among them; moreover, her action lacked all rational, unless Mrs. DaGosto had out-side (inside SUNY) pressure and/or advised to persecute plaintiff. Expert Opinion. In addition...

a.   Please note that def. **Danielle DaGosto** was removed or resigned from Purchase College right after the Assoc. Compl. Was dismissed by Judge Roman, in May of 2014.

b.   Please also observe that, Defendant Mrs. **Danielle DaGosto** Plaintiff's adviser, Mrs. **Kathleen Ceng,** agreed (and were subpoenaed) to appear at the injunction hearing in April, 2013, avoid Plaintiff's suspension—they did not appear in Court; therefore, plaintiff was suspended. An inference of lack of "*standard of duty*" from the part of the def. **DaGosto** even before the def. **DaGosto** pressed criminal charges against plaintiff. Which in term makes her actions here in this COA "*gross-negligence*".

c.   Their excuse for not appearing in Court was... "They both were prevented to appear to say injunction hearing by representing NY Sate Assistant Attorney Gel. Mr. **Michael Klekman** and SUNY high official in Albany." In addition...

d.   Mrs. **DaGosto** and Mrs. **Kings** statements and/or just their appearance, were to be crucial to up hold Plaintiff asserting his claims of retaliatory actions, and that Plaintiff was scheduled to graduate in time to attend law school in September of the same year (See Mrs. **Ceng's** statement referring to such filed

with the injunction supporting documentation, (Doc # 3 attachments associated case 13-CV-2586). Mrs. **Ceng** statement, *"Plaintiff was schedule for graduation that summer 2013,"* directly contradicted the statement for defendant, Mrs. **Sheryl Secor**, (See cause of action #8, of this new recommended complete and Doc, # 12; Assoc. Complaint; 13-CV-2586); in addition…

e.  Mr. **Klekman** acknowledged, *"he prevented Def. Mrs. Danielle DaGosto Plaintiff's adviser, Mrs. Kathleen Ceng, from appearing at the hearing; "* however, he requested the appearance of defendants in the associated complaint; **Melissa Jones**, SUNY Attorney, **Wendy Kowalski** (now **Ravitz).** In addition…

f.  On the day of the hearing, neither of them were in Court; however, Def. **Melissa Jones**, SUNY Attorney, NY Sate Assistant Attorney Gel. Mr. **Michael Klekman** and NY Sate Assistant Attorney Gel. **Katherine Brady Dirks**;

   i.  <u>Please note</u>, that Def. **Melissa Jones,** (defendant in several COA herein, this Compl.) cried at all time at the hearing on the shoulder of **Wendy Kowalski (now Ravitz)**… crocodile tears! As the COA #13, will show.

g.  Mr. **Kleckman's** (possible witnesses tampering) action (move) was too realistic to *"undermined Plaintiff credibility (plausibility) at said hearing"* (Expert Opinion). However, the plaintiff believes Mr. Klekman may have been deliberately mislead by the defendants in the Assoc. Compl.

h.  Mr. **Klekman** excuse to his witness tampering action was, *"Plaintiff did not offer to pay for Mrs. DaGosto and Mrs. Ceng for expenses to appear in court."* Furthermore…

i.  As a consequence, at the said hearing, and yet with the predication of overwhelming supporting evidence for discrimination, retaliation, bullying, and permanent academic harm; Plaintiff could not convince Judge Ramos; he just NOT read the complaint. "Pro-see bench bias" (Expert Opinion).

850)<u>Going back to the false arrest of plaintiff Incident:</u>

851)<u>As said before In July, 2013,</u> Defendant*s*, **Purchase College, University** Police Officers Mr. **Davis Mobley**, filed charges (see above), on behalf of Def. **Danielle DaGosto** of sending "<u>several</u>" emails (please note there are only one email sent by plaintiff) to def. **DaGosto**, calling her and others an *"educated gang"* (a protected speech under the First Amendment), and as stated in the said letter, Attorney D A **Mr. Sergi** for the **Westchester County,** *Defendant* (Plaintiff herein), *"was charged with violating the NYPL 204.30 (1) for allegedly having sent <u>several</u> alarming emails to the S.U.N.Y. Executive Director of*

*Academic Programs, Mrs. **Danielle DaGosto**, threatening to take a machine gun, go to school, and shoot people"* (please See Exhibit J).

a. <u>Please note</u>, there was only one email sent, where Plaintiff, herein, Plaintiff never said such, as the email asserts as fact". (See Doc. #23 of Assoc. Action, 13-CV-2586 for Mr. Sergi's FALSE statement).

b. <u>Please also note that,</u> this clearly asserts as fact that there was a clear intent to imprison and to induce damage to the complainant. Entirely based on FALSE statements; in addition, as stated in the beginning, none of these defenses are employed by Purchase College ant more (hit and flip). In addition…

c. <u>Please also note that,</u> since these statements were NOT TRUE therefore an inference of a retaliatory action is appropriate. Furthermore…

852)By testing the said email Expert Opinion believes that def. Mrs. **DaGosto** acted based on personal emotion due to the letter compromise her four issues that. She was offering free on-campus housing, for exchange of summer-office-work, (as student witnesses shall testify). Furthermore, and that the University Police and SUNY took advantage to persecute plaintiff to obtain rid of his pending Federal Lawsuit. Furthermore…

853)Considering Judge Roman's implied statement in his judgment (see Assoc. Case Doc. 43); that these official actions (as stated in this COA) were a <u>mistake</u>, is insulting, and equal as saying… Plaintiff is expandable, disposable or NOT worthy of justice! Where the elements of faulty-staged set-up. To retaliate and jail the plaintiff, as the facts stated above…were/are imminent to the naked eye. In addition…

a. Mrs. **DaGosto** did provide aid to defame plaintiff record (email, order of protection, accusatory instrument and others) to at least eight SUNY universities, while the criminal process against plaintiff was pending; this hardly a mistake, (as implied by Judge Roman in his opinion dismissing plaintiff's Assoc. Compl.), but intentionally knowing, she was causing a irreparable academic, emotional and harm, facts, but hardly a mistake!....

b. Where a school official (as she) possessed the training to deal with these kind of events, where to prevent impairment to the pupil, must incessantly be the paramount idea for a non-vicious (always avoiding, even the penumbra of possible "school violence", Expert Opinion) out-come. All the same, these school officials have acted precisely in the opposite manner, (as if the <u>custom or conduct</u> of "abuse of power" and unpitiable-retaliation, was part of an addictive social rule). In addition…

   c.   As said earlier in this COA…"it seems every bit if these school's official's abuse of force has been acted out, as they were leading the plaintiff to make out something stupid". Expert view. In addition…

   d.   Def. Mrs. **DaGosto** also knowingly plaintiff's disability and that her irrational action of pressing charges just three weeks of plaintiff possible attendance to law school and the aggravation would have (and did) caused to plaintiff disabling injuries. Hardly a mistake!

854) <u>On July 18, 2013,</u> Defendants, Purchase College, University Police Officers Mr. Davis Mobley and Police Officer John Doe, drove, out-side their jurisdiction to arrest plaintiff at Binghamton, NY (250 miles from Defendants Purchase College and University Police place of occupation).

<u>Please note,</u> that **Purchase College, University** Police Chief Officers Mr. **Walter Butler** were a defendant in the Amend. Compl. Assoc. Case, for COA #2 herein. Furthermore, plaintiff's arrest would have severe implication, since plaintiff had until two weeks later from his arrest, to file the Amend. Compl. Ask. Case; Hence, if plaintiff would have been arraigned in **The Town of Harrison**, with high bail; plaintiff would not have had the possibility to bail out due to his low income; thus, his federal case would have been dismissed permanently (since it could not be adjourned), Expert Opinion.

855) During Plaintiff's detention in Binghamton, NY… Plaintiff asks asked both officers and defense. **Mobley** and **John Doe,** that the arrest was illegal, and without jurisdiction, outside their jurisdiction, of the immediate surroundings of Purchase College. Furthermore…

856) Plaintiff demanded to be released from the officer's illegal custody; however, Defendants, officers **Mobley and John Doe** that… officer **Mobley** responded: *"they have jurisdiction everywhere";…"they have jurisdiction to arrest anywhere for any reason.* "In addition…

857) SUNY Purchase College and its University Police, MUST secure authorization from the county where the arrest is to be executed, (in the plaintiff's case, it was Brome County, city of Binghamton, NY, in which the arrest is to be executed). Moreover….

858) Purchase College and its University Police had/have no such agreement with Brome County, and/or the City of Binghamton. Even if there was such an agreement, the arrest would have to be executed by the Brume County sheriff's officer accompany by Purchase College, University Police; then and only then, the University Police can take jurisdiction of plaintiff. Where neither of this happened.

859) <u>In the same arrest incident,</u> once plaintiff was arrested, he was bought back to Binghamton University

Police Dept. (where he was a student doing his last course before possibly going to law school), for processing of the warrant. However…

860) Binghamton University Police Dept. refused to process, Plaintiff, since "they were cognizant that the complaints may have been retaliation due to Plaintiff pending federal action against Purchase College and its officials". Plaintiff is gratefully for BU Police to help plaintiff. Furthermore…

Please note that, Binghamton University Police Dept. was aware that Plaintiff's warrant and advised the plaintiff via student email of such; however, they did not want to get involved, for reasons stated above. Their statement was plaintiff "was a student in good standing" and that they have no rationality to become involved.

861) After plaintiff was processed by Purchase College Police officers and def. **David Mobley**… officers of BU's Police dept. recommended Plaintiff to allow them "*to take him to the local court and recommend the court to release him on his own recognizance* (ROR)" This since, they believe, if plaintiff taken to **The Town of Harrison District Court** would had been issued a high bail, and thus preventing him to continue his federal pending case, (a set up). Thus…

862) Plaintiff agreed and he taken to the Town of Vestal, NY, where he was arraigned and subsequently released and brought back to Plaintiff on campus residence by BU police dept. in a police car.

863) Hence, Purchase College set-up based on FALSE statements was futile. (Please note that BU police never got involved in the arrest or processing of plaintiffs, however--in an act of good faith, BU police)

Please note that, Plaintiff one year later, won the criminal case representing himself, since the charges were unconstitutional.

864) Purchase College police officer defendants, **Mobley** and **John Doe** were sent back to Purchase NY (250 miles away, 500 miles r/t), without Plaintiff.

   a. Please note, ALL defendants in this COA: **Purchase College, University** Police Officers Mr. **Davis Mobley** hold a distinguished Purchase College degrees, furthering, and inference of "personal involvement" In addition…

   b. Please also note that, the only grounds for their actions was a mandated retaliatory action; as stated by BU University Police and even the Vestal Court. This is NOT an assumption, and even more; hardly "A MISTAKE". Furthermore…

c.  In a statement provide but Assistant Attorney Gel. Supervisor, Mrs. **Monica Connell**, to the plaintiff, Mrs. **Connell** stated, "She (Mrs. **DaGosto**) stated the Mrs. **DaGosto** was available to testify against plaintiff... Testify what? If plaintiff never had a violent, aggressive or disrespectful personality or history such at school or anywhere for that matter.

865) Plaintiff, and expert opinion, hereby reject, Judge Romans' opinion in p.15 (LexisNexis), First Amendment; as foreseeable errors, against plaintiff, for the following:

a.  The Judge does not address the plaintiff's complaint, but the state motion to dismiss.

b.  The Judge, only analyses the projectable NEGATIVE statements of the plaintiff on the said email, and inexplicable, fail to analyze the first and last paragraph of the plaintiff's email. In addition...

c.  This Judge inexplicable assumed that, these defendants (and any other) acted by "mistake"; that rational can only be accepted as "Pro-see bench bias," (Experts Opinion). Furthermore, the judge's analysis considers for the Jury, and not for the Judge, and only after analyzing ALL evidence. In addition...

d.  The Judge, accepts as true that the statement of State, Attorney that defendant did acted for personal reasons (referring to all causes of action). A ridiculous and utterly insulting statement, (See Judge Romans' opinion in p. 13 [LexisNexis] Assoc Compl. Doc 41); especially knowing of the *per-se* facts of *"organized retaliatory-bullying,"* and that the consequences of <u>bullying</u> almost always result in traumas, even violence, see St Vincent's statements in Exhibit A. The Judge with this statement, actually, allows, bullying has been part of "qualify immunity." In summation...

e.  The Judge knows that plaintiff is disabled, with a Social Security Disability income of just $867.00 per month and a recipient of "food stamps", with no available fund for litigation, precluded plaintiff from appealing by stating: "The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) *that any appeal from this Opinion and Order would not be taken in good faith and, therefore,* **in forma pauperis status** (court's fee are waived) *is denied for purpose of an appeal"*. Thus, plaintiff was denied *"due process"* and treated differently than others *"equal protection"*. In addition...

f.  The Judge's opinions (especially on First Amendment issues) were, in error; with the sole aim to finish this case at ALL cause, (Expert Opinion of Attorneys). The plaintiff is expendable as a human organism. In addition...

    g.  The Judge himself, stated in Oct. 2013…"who recognizes where this lawsuit will end" implying, consequences, which are per-se now, consider Exhibit A. Consequences that, even today, have not accrued, (the plaintiff's injuries are in negatively in advance). In addition…

    h.  Plaintiff contends…"the court CANNOT choose and find fault, who is entitled to due process of the jurisprudence. Furthermore…

    i.  Nevertheless, the plaintiff believes that the judge Roman MUST continue to preside this case, in light of plaintiff's injuries, new facts and the better plead complaint.

866) For the reason stated above… this court MUST allow plaintiff his equal right to *"due process"* of the law, including plaintiff's right to appeal; instead of inflicting more harm to an under powered plaintiff.

<u>Damages:</u>

867)*Parr.* #2, & 4 through 11, are hereby adopted…

868)For the purpose of worsening of plaintiff's physical and mental health, *Parr.* 1…10 are adopted.

869)As result of these municipalities and their officials, defendants: **Purchase College, University** Police Officers Mr**. Davis Mobley** and **Police** Officer **John Doe** and Mrs. **Danielle DaGosto**… and all other similarly situated individuals… for intentionally and in premeditation, conspired to deprive (but not limited) Plaintiff of his liberty, and pursuit of happiness by pressing an **<u>unconstitutional</u>** law, as policy (See ***People v Golb***, 2014 NY Slip Op 03426), criminal charge [NYPL 240.30 (1)].

870)Said defendants acting under the color of the state law, in their official and individual capacity *"persons"* and in/of abuse of power. Furthermore….

871)Defendants: **Purchase College, University** Police Officers Mr**. Davis Mobley** and **Police** Officer **John Doe** and Mrs. **Danielle DaGosto**… knowingly and intentionally misapplication (as policy) of NYS Rules of Criminal procedures, to cover their improper and illegal actions--normal, but illegal, when an encounter with a possible civil action. In addition…

872)All defendants named herein, this COA, intentionally inflict incredible suffering, in the form of an "organized retaliatory set-up" or "organized-crime'… hardly a mistake! Ina addition…

873)At the hand of these state actors; plaintiff has been tremendously humiliated; suffered <u>additional added worsening to the</u> more severely and more frequent (daily) severe mental anguish; more frequent (daily)

and severe feeling of worthlessness (diminished); more concurrent feelings of being persecuted (becoming more justifiably [with reason] paranoid); daily sleeping problems (lack of sleep, nightmares and waking up night with fear and memories of the events); added emotional pain; and unbearable permenent stress, leading to physical paint. Furthermore...

874) At this stage of plaintiff's suffering his spinal injuries were worsening, as to have more frequent spasms, inflammation, causing difficulty walking and less use of his arms and hands.

875) Because of these accumulative actions, as distinguished in all COA, defendants: **Purchase College,** University Police Officers Mr. **David Mobley,** Police Officer **John Doe** and Mrs. **Danielle DaGosto**..., at the hand of their irrational state actors; have led to Plaintiff's irreparable permanent academic harm. Furthermore, their ugly actions, per-se, have resulted in the Plaintiff's current medical condition and personal harm (see exhibit A).

Legal Theory:

876) As applies to all state actors, named herein this COA; *Parr.* #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

877) After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby states, by the fact that all administrative and time limitations have been consumed and/or no administrative remedies—in good faith and no findings...

878) *Parr.* #359 through 367; in addition, where the loss of rights and/or privileges against plaintiff, took place as false arrest, and retaliation based on unconstitutional charge, which resulted in permanent academic harm, most important permanent personal injuries.

Count I, (42 U.S. Code, Sec. 1983):

(General):

879) Plaintiff brings this action under 42 U.S. Code, Sec. 1983; where defendants: **Purchase College,** University Police Officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto,** ALL under the under the bias, incompetent supervision and advise of SUNY Attorney **Mrs. Wendy Ravitz (former Kowalscki),** *"persons"* acting in their under the color of the state law, in their individual capacity, have deprived plaintiff of his civil rights and privileges guaranteed by the US and NYS Constitution. In addition...

880) There is a sufficient causal connection between these defendants named here in this COA's wrong act and intentional lack of supervision, and proper training; with plaintiff's injuries (physical, mental and academic). In addition...

881) When personal involvement, and lack proper supervision of the wrongful acts, (knowledge and approval of wrong doing) as these well stablished facts stated in this COA, thus, "*respondent superior*" liability is applicable. In addition...

882) These defendants have supervisory duties; had personal knowledge and approval of the "gross-negligent" and retaliation action intentionally perpetrated against plaintiff. Where only the notion of wrongful acts being the consequences of "mistakes" of the defendants, is not acceptable; especially with fresh evidence of intentional injury and damages are evident.

883) Where personal and emotional involvement of an "*ill will*" against a non-student, member of a protected class (older male disabled student-persons) to accommodate personal belief of unjustifiable persecution and retaliation; that have caused, in large part, plaintiff's permanent disabling injuries; and further, in direct violation of SUNY, BU and/or the State of New York policies and federal and state laws. In addition...

884) Defendants have been "deliberately indifferent to the pattern of severe and pervasive persecution and harassment (bullying) suffered by Plaintiff; in addition, with disregard to the plaintiff's right to his "*bodily integrity,*" as disabled person". Furthermore...

885) And most importantly the court must first judge the material or significant portion of a grudge or complaint (the Injuries), to assess the proper and fair expression of the constitutional c

## Count II, (42 U.S. Code, Sec. 1983):

### (Title 18, U.S.C., Section 242)

886) (Deprivation of Rights under the Color of Law).

887) As applies to all state actors, (two or more) named herein this COA; *Parr*. #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

888) *Parr*, #267 through 270, are hereby adopted, and as apply to the state actors named herein.

## Count III, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 241)

    (Conspiracy against Right)

889) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

890) *Parr,* #271 through 273, are hereby adopted, and as apply to the state actors named herein.

Count IV, (42 U.S. Code, Sec. 1983):

    (Title 18, U.S.C., Section 245)

      (Federally Protected Activities)

891) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

892) *Parr,* #274 through 276, are hereby adopted, and as apply to the state actors named herein.

Count V, (42 U.S. Code, Sec. 1983):

    (Fourteenth Amendment).

      (Equal Protection)

893) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

894) For the purpose of this count; plaintiff was, and still is, a member of a protected class, with the grave limitations of age and disability…

895) The Fourteenth Amendment is violated when state officials acting in the power of the state law and act contrary to such laws.

896) Defendants: **Purchase College,** University Police Officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto;** ALL under the under the bias, incompetent supervision and advise of SUNY Attorney **Mrs. Wendy Ravitz (former Kowalscki),** acted in their under the color of the law, in their individual and official capacity… to conspire to/and deprived plaintiff of his Fourteenth Amendment to the U.S. Constitution, adopted in 1868, declares that: *"no state may deny any person the 'equal protection' of the laws,"* where…

897) Plaintiff was criminally charged with unconstitutional offense, and falsely arrested (without jurisdiction).

Moreover, with the exclusive purpose of retaliate and cause damage (see facts) that serve no "appropriate governmental interest (where, plaintiff never threatened anyone, and further, he was not a student of Purchase College). Suitably encouraged by the "differential treatment," (differently than other persons situated in a similar position), Hence, "when an important personal right - such permanently termination of plaintiff so wanted law degree, (property interest), liberty and plaintiff's pursuit of public higher education was permanently impressed…

898)The government entity Purchase College must demonstrate not only that there is, an but also that there was/is "a material and significant relationship between plaintiff none violent personality, the sorting and the governmental purpose, of traveling 500 miles with-out jurisdiction, and further dissemination of the unconstitutional charges to more than eight universities, (see COA#13) which it did not purportedly served." Furthermore…

899)When there are facts as evidently as stated in this COA; asserting that there was no need for the unconstitutional actions of defendants, against plaintiff (a student of another College); Defendants: **Purchase College,** University Police Officers Mr**. Davis Mobley, Police Officer John Doe** and Mrs. **Danielle DaGosto…** violated the plaintiff's First Amendment to US Constitution *"protected speech".* Which presented no *"immediate and percent danger"* (an imperative element for "true threat" unprotected speech) to any one person in Binghamton University nor 250 miles away in Purchase College. Therefore, the inference of wrongdoing as a means of "differential treatment" MUST be observed. Furthermore…

900)When an ordinary, common, uneducated person would know that placing a member of protected class in such unnecessary suffering (that he will never get to accomplish his dream of going to law school, and humiliation to the prosecutorial bias actions, se next COA) was utterly irrational. In addition…

901)The wrongful and illegal actions of these defendants, defeat SUNY's mission of educational intent, which in the end contributed to the plaintiff's injuries, and possible suicidal ideation-consequences, see,

Exhibit A.

Please note plaintiff is now partially physically disabled and mentally disabled as a result, but not restricted to, the wrongful and illegal activities of the defendants named herein conduct and customs.

902)*Parr*. #111 through 118, are hereby adopted.

903)Plaintiff has demonstrated by facts, inferences and shall demonstrate by witness testimony that the

Defendants: **Purchase College**, University Police Officers Mr. **Davis Mobley** and Police Officer **John Doe** and Mrs. **Danielle DaGosto;** have orchestrated campaign, policy conduct or custom, of persecution against a member of a protected class; which was purely motivated by sheer personal beliefs of immunity to abuse power and retaliatory-vindictive actions seemingly required under *Esmail*. Slip Op. At 2. In addition...

904)These state actors, knowingly that plaintiff was/is a member of a protected category (and Disabled); that such unnatural processes would cause permanent academic harm and injuries; that an ordinary common person would have understood inappropriate and retaliatory in nature (as Experts have guessed). In addition...

905)The defendants' actions were purely motivated by sheer personal beliefs abuse of power (plaintiff was a type of disposable organism, and they content immunity), and retaliation of overly extended egocentric behavior, seemingly required under *Esmail*. Slip Op. at 2. (See parr. 116); as a major contribution to plaintiff's injuries. In addition...

906)Defendants: **Purchase College**, University Police Officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto,** acted out of *"sheer animosity"* and *"substantial ill will*." and towards/against plaintiff, solely because the plaintiff had pending legal action against these and other state actors.

(Due Process, [Procedural & Substantive])

907)As applies to all state actors named here in this COA; Parr. #50, and all allegations in all Counts in this COA, are hereby adopted.

908)Defendants: **Purchase College**, University Police Officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto;** ALL under the under the bias, incompetent supervision and advise of SUNY Attorney **Mrs. Wendy Ravitz (former Kowalscki)**, acted in their under the color of the law, in their individual and official capacity... to conspire to/and deprived plaintiff of his Fourteen Amendment to the United State Constitution...By ordering and executing and unconstitutional false arrest with-out jurisdiction. In addition...

909)Defendants: **Purchase College**, University Police Officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto,** conspired to deprived plaintiff of *"due process"* of the law, by NOT allowing plaintiff's right to the *"pursuit of happiness"* of life, (post deprivation of the life span, see

damages) and the "*right to bodily integrity*"; which were foreseeable to the defendants… and the plaintiff's right to private interest… All affected by the official's undue actions. Furthermore…

910) These Defendants have intentionally inflicted undue punishment based in retaliatory-vindictive personalities. Acts that have caused the student-plaintiff injuries (See damages). In addition…

911) Sure, these illegal acts have been the effect of lack of "*procedural safeguard*"; which was ramped up into the process of conduct or custom and facial adequacy of the unofficial personal policy, custom or conduct (of abuse of power with the protection of immunity, and paid legal representation) that the student integrity is never placed before possible undue harm of a person; therefore, causing the negative inconsequential actions…"*gross-negligence.*" Furthermore…

912) Defendants: **Purchase College**, University Police Officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto**, conspired to deprive plaintiff of right and privileges, by allowing themselves to get involved in his own personal bias and customs of abuse of power and vindictive views. Views which were in direct disregard of the student's "*liberty interest*" , "*bodily integrity*" (defendants knew of plaintiff disability), and the right "*to be left alone*"… In addition, these wrongful actions were directed against the loss of "due process" by the state, ***Ingraham v. Wright,*** 430 U.S. 651, 673–74 (1977)."Internal quotation omitted. Furthermore…

913) These defendants (especially, Mrs. **DaGosto**, since she knew of the abuse that have been inflicted to plaintiff by her peer workers), have been "deliberately indifferent" to the pattern of severe and pervasive harm done to the complainant at the time of the she criminal charges against plaintiff. In addition…

914) Defendants: **Purchase College**, University Police Officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto**… Were their wrongful actions resulted from the conduct or custom of a state employee's lack of "*duty to protect*". Instead, these state actors, are responsible for the creation of falsely false statement and procedures; with the sole purpose of depicting the plaintiff as a violent person;. Hence, the academic and personal welfare of the student was infiltrated, with the sole purpose to cause harm to the plaintiff. Furthermore…

915) By falsely and unconstitutionally charging plaintiff with undue crime was, *per-se,* an "*arbitrary action,*" that caused plaintiff's permanent academic harm, *loss of property* and worst, permanent-personal injuries. In addition…

916) Plaintiff's injuries were foreseeable to these defendants' professional training and instruction. When, even

by the ordinary-common person with no training or training would have anticipated that their wrongful actions would have caused undue permanent academic and emotional harm, *Parr.* #913 is adopted. In addition to plaintiff' disabled injuries. Furthermore…

917) The said "*arbitrary action*", was a violation of "*substantive due process*"; a component of the Fourteenth Amendment that protects against such, See, ***County of Sacramento v. Lewis,*** 523 U.S. —, 118 S. CT. 1708, 1716 (1998); see also ***Collins v. City of Harker Heights,*** 503 U.S. 115, 130 (1992); internal quotation have been omitted. Furthermore…

918) These vindictive and deprivations of plaintiff's rights and privilege… were clearly a "*shock the conscience*"… With clear indifference to the person's disability, and academic personal integrity; that has led to plaintiff's permanent personal injuries…. Where, ALL defendants herein are intellectually above a reasonable person (above the education of the average citizen). In addition…

919) Where ALL state actors named herein, having special training (especially SUNY Attorney **Mrs. Wendy Ravitz (**former **Kowalscki)**), thus being above of what an ordinary person would reason; know that plaintiff was a member of a protected class (age, and disabled). Nevertheless, they intentionally enacted the creation of any "*hostile environment*".


Count VI, (42 U.S. Code, Sec. 1983):

(Title IX of the Education Amendments of 1972)

(Fourteen Amendment):

920) Title IX of the Education Amendments of 1972 prohibits discrimination and retaliation of any kind, in education and in higher educational programs and activities receiving federal funds.

921) Defendants: **Purchase College,** University Police Officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto**… ALL under the supervision and advise of SUNY Attorney **Mrs. Wendy Ravitz (**former **Kowalski)**…In addition to all other individuals situated in the similar situation "*persons*"…Acting in their under the color of the law, in their individual capacity; conspired to deprived plaintiff of equal right to Higher Education Opportunity, by arbitrarily disseminating the entire file of plaintiff criminal charges to at least eight SUNY Universities and others (See COA# 13). Where all universities denied admission. Furthermore, even though, the criminal charges against plaintiff have been dismissed as unconstitutional (See COA 12 & 13).

<u>Please notice that,</u> plaintiff has notified SUNY, and Purchase College that the criminal charges filed by def. Mrs. **Danielle DaGosto,** were found to be unconstitutional, dismissed (See COA #12). Nevertheless, neither, SUNY nor Purchase College, have not notified any of the, at least eight SUNY Colleges, of said findings; even though, plaintiff has requested.

Count VIII. (42 U.S. Code, Sec. 1983):

    (Fourteen Amendment):

      (Retaliation):

922) Defendants: **Purchase College,** University Police Officers **Mr. Davis Mobley** and Police Officer **John Doe** and Mrs. **Danielle DaGosto**, and all other individuals situated in the similar situation *"persons"*… While acting under the color of the law, in their individual capacity… In *"deliberately indifferently"* to plaintiff rights and privileges… Conspired in the construction of a pattern of conduct or custom of pervasive infliction of vindictive behavior, (as plaintiff has made evident in this COA). Behavior that "served no governmental function," but causing injuries to plaintiff. Only because their animosity towards plaintiff's pending (at the time) legal action against SUNY, as witnesses shall prove.

923) Retaliation; the regulation implementing the Age Discrimination Act at 34 C.F.R. § 110.34, incorporates by reference 34 C.F.R. § 100.7 (e) of the regulation implementing Title VI of the Civil Rights Act of 1964 (Title VI), which provides that

924) ***Intimidatory or retaliatory acts prohibited.*** No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder.

925) Authority: Sec. 601, 602, Civil Rights Act of 1964; 78 Stat. 252; 42 U.S.C. 2000d, 2000d-1…

926) Elements of this retaliation:

    a.  Plaintiff engaged in a protected activity; Plaintiff had a pending federal action against SUNY and several defendants. In addition…

    b.  All defendants herein and in the entire action knew about the plaintiff's protected activity;

c.  Plaintiff suffered an adverse action related to employment or education; *Per-se.*

d.  There is a causal link between the protected activity and the adverse action. *Per-se.*

Count X, (42 U.S. Code, Sec. 1983):

(Fourteen Amendment):

(Policies, Customs and Practices):

927) Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983; *"Failure to Implement Appropriate Policies, Customs and Practices."*

928) Defendants: **Purchase College,** University Police Officers **Mr. Davis Mobley** and Police Officer **John Doe** and Mrs. **Danielle DaGosto**; all acting under the supervision and advice of SUNY Attorney **Mrs. Wendy Ravitz** (former **Kowalski**)... While acting under the color of the law, in their individual capacity, failed to take necessary and adequate measures to train, retrain, supervise, monitor, and educate to ensure that its officers received the proper training. As to enable this state actors to render unbiased necessary respect and "standard of duty" students (plaintiff) deserve. Furthermore...

929) Where, ALL defendants, herein had/have supervisory responsibilities; where they were properly advised of the implementation of their "de facto" policies, practices and customs or conduct, violated plaintiffs' constitutional rights in permitting a pattern and practices within its school or department of allowing the wrongful, persecution, molestation and subsequent retaliatory actions; with no rightful and favorable out-come for plaintiffs, but causing plaintiff's injuries. Hence, these state actors are liable pursuant to 42 U.S. Code, Sec. 1983 under a theory of respondent superior (See *Monell v New York City Dept. of Social Servs.,* 436 US 658, 694 [1978], internal quotations omitted). Furthermore...

930) Defendant: Mrs. **Danielle DaGosto** was notified and acknowledged on many occasions (throughout the years) that plaintiffs was being singled out and retaliated; however, she neglected to report (which she was required by law) such behavior of Purchase College student affairs to government agencies. In addition...

931) Mrs. **Danielle DaGosto** in two occasions stated to plaintiffs, the *"Purchase College has an animosity towards the admission of adults for students".* Hence...

932) Def. Mrs. **Danielle DaGosto** and SUNY Attorney **Mrs. Wendy Ravitz** (former **Kowalski**), are responsible and liable under 42 USC § 1983, for the unconstitutional actions of its employees.

933) Where the plaintiff can prove by facts, inferences and testimony (1) an official policy or custom of cover-up, their peer wrongful actions—for many years [custom]; (2) causes the plaintiff to be subjected to undue

injuries (3) where a denial of a constitutional right, can be infer from the facts (See *Canton v Harris,* 489 US 378, 385 [1989]; *Monell v New York City Dept. of Social Servs.*; *Wilner v. Village of Roslyn,* 99 AD3d 702, 703-705 [2d Dept. 2012]). Internal quotation were omitted.

Count VII, (42 USC § 1983):

(Fourteen Amendment):

(Intentional: False, Misleading Statements and/or Accusations):

934)Defendants: **Purchase College,** University Police and officers Mr. **Davis Mobley, John Doe** and Mrs. **Danielle DaGosto...** ALL acts under the supervision and advice of SUNY Attorney, Mrs. **Wendy Ravitz** (former **Kowalski**)... Furthermore, ALL actting under the color of the law, in their individual capacity; conspired to deprive plaintiff of his right and privileges, guaranteed by the US Constitution, by...Taking an oath to the state (especially, SUNY Attorney Mrs. **Wendy Ravitz** [former **Kowalski**], to the New York state bar)... Fabricated, conspired to cover up by trick, and scheme to make a materially false, fictitious, or fraudulent statement, or representation conspire to make, or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement, or entry as follows:

*"Was charged with violating the NYPL, 204.30 (1) for allegedly having sent several alarming emails to the S.U.N.Y. Executive Director of Academic Programs, Mrs. Danielle DaGosto, threatening to take a machine gun, go to school, and shoot people"* (please See Exhibit J); in violation of 18 U.S. Code § 1001 (1), (2), (3) & 1621 (1).

Please note that, this false statement was deliberately fabricated by Purchase College university police and def. officers Mr. **Davis Mobley,** signed by on the accusatory document by def. **DaGosto,;** evermore, reported to the presiding judge in this court, Judge Roman; however, Judge Roman, implied that these state actors acted by *"mistake"*...Inexplicable!

Count VI, (42 USC § 1983):

(First Amendment, (Speech).

935)Defendants: **Purchase College,** University Police and officers Mr. **Davis Mobley, John Doe** and Mrs. **Danielle DaGosto...** ALL acts under the supervision and advice of SUNY Attorney, Mrs. **Wendy Ravitz** (former **Kowalski**)... Furthermore, ALL these sate actors, acting under the color of the law, in their individual capacity...Conspired to deprive plaintiff of his "First amendment", *"freedom of speech"* right and privileges, guaranteed by the US Constitution. By...

936)Pressing criminal charges against plaintiff for his protected *"freedom of speech"* right; by reason, of

plaintiff naming these state actors' wrongful acts, and the cover-up of such… an *"educated gang"* (referring to all defendants named in the Assoc. Compl.). In addition, and as stated in the said letter, Attorney D A **Mr. Sergi** for the **Westchester County,** Defendant (Plaintiff herein)…where he   implied that officers Mr. **Davis Mobley** and Mrs. **Danielle DaGosto,** have stated that…*"was charged with violating the NYPL 204.30 (1) for allegedly having sent several alarming emails to the S.U.N.Y. Executive Director of Academic Programs, Mrs. **Danielle DaGosto**, threatening to take a machine gun, go to school, and shoot people",* (See Doc. #23 of Assoc. Action, 13-CV-2586 for Mr. Sergi's FALSE statement).

Please also note, there was only one email *sent, by the* Plaintiff where, herein, Mr. Morales never sent such. In addition…

937) The statement made by the plaintiff in the accusatory instrument and the said email were constitutionally protected; including the *"educated gang"* statement that was not part of the stamen made by plaintiff in the said email sent to def. **DaGosto.**

Please note that, plaintiff was not a student to Purchase College any longer. Thus, NOT a school related issue—essential element for the constitution of a *"clear and present danger"*, (a MUST for the constitution of a *"true threat"*. Thus, "organized retaliation", must be observed.

938) For a complete rational of plaintiff First Amendment Claim; plaintiff hereby incorporates his ALL statements in his "MEMORANDUM OF LAW IN OPOSITION TO DEFENDANTS MOTION TO DISMISS AMENDED COMPLAINT," (See Doc #37, Assoc. Case 13-CV-2586; *parr*. #60 through 168). Too many pages to include herein; however, ALL rational stated in the said document, is hereby incorporated for this COA. To plaintiff best knowledge… Defendants, officers Mr. Davis Mobley and Mrs. Danielle DaGosto, were transferred from SUNY Purchase and relocated to other schools… HARDLY A MISSTAKE! And more like a cover-up.

a.  Please note that, the rational used by the New York State Court of Appeals, to declare "unconstitutional" the *"Aggravated Harassment"* NYPL 204.30 (1) *"causing an alarm"*… was equal in the matter of law and case-law, as the plaintiff stated in his "MEMORANDUM OF LAW IN OPOSITION TO DEFENDANTS MOTION TO DISMISS AMENDED COMPLAINT, filed two months before said ruling," (See Doc #37, Assoc. Case 13-CV-2586; *parr*. #60 through 168). In addition…

b.  Please also note that, where the NYPL, 204.30 (1) was/is unconstitutional, and the criminal charges

against plaintiff were withdrawn and dismissed by the **Town of Harrison District Court...** The best assumption is that plaintiff's email statement was <u>not</u> considered a "*true threat*"... Having said that, the plaintiff email statements were not a cause for alarm, (under any constitutional standard) but the cause for retaliation and persecution. Hence, plaintiff's email statements were a part of a "*protected speech*" by "*freedom of speech*"; THEREFORE, Defendants: **Purchase College,** University Police and officers Mr. **Davis Mobley, John Doe** and Mrs. **Danielle DaGosto,** DID VIOLATED PLAINITFF FIRST AMENDMENT. Hence, Judge Roman's opinion-order, that the defendants did not violated the plaintiff First Amendment, is in "*error*". (Respectfully).

<u>(First Amendment, Prior Restraints to Speech):</u>

939) All prior statements are hereby incorporated.

940) Plaintiff brings a violation of "*prior restraint*" to speech based on the opinion of Judge Roman (See Assoc. Case; Doc. 41) where the Judge stated "*plaintiffs' First Amendment was not violated*", thus implying that "*prior restraint*" to a protected speech was acceptable for a school to press criminal charges against a non-student receding 250 miles away. In addition...

941) The plaintiff claims, that the so called "*causing an alarm*" criminal charge against plaintiff, *per-se*, was based on an unconstitutional law (on-its-face or as applied to plaintiff); thus "*prior restraint*" of speech is an applicant as a type of prevention. In addition, plaintiff's speech was not the king of a" *clear and present danger*" Hence...

942) Plaintiff asserts that, Defendants: **Purchase College,** University Police and officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto,** violated the plaintiff First Amendment, by applying an undue "*prior restraint*" to the plaintiff's protected statement.

<u>Please note</u> that the New York State Court of Appeals, to declare unconstitutional the "*Aggravated Harassment*" NYPL 204.30 (1) "*causing an alarm*", cited several case-law asserting that the law was unconstitutional years back. In addition, the charges against plaintiff were in a retaliatory basis; based on false and misleading statements; thus, they would be argued, that these official were not aware of the law being unconstitutional would be just academic. In addition...

It is well established among Police and law enforcement agencies that the law as unconstitutional.

Furthermore, the inference of such, is that neither, the Harrison Police dept. nor the Binghamton Police or BU Police, did not conduct the arrest… this and the fact that the Purchase College, University Police drove 500 miles to conduct the FALSE arrest… add more plausibility to the inference of an "*organized retaliatory action*".

943) The First Amendment to the U.S. Constitution provides that "*Congress shall make no law abridging the freedom of speech.*" *That amendment "applies to the states via the Due Process Clause of the Fourteenth Amendment.*" **Hill v. Thomas,** 973 P.2d 1246, 1251 (Colo.1999), aff'd, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). See also **Cantwell v. Connecticut,** 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940); **Sanderson v. People,** 12 P.3d 851, 853 (Colo.App.2000). Hence, this Court should imply that a "*protected speech*" (the email) that <u>does not</u> create a "*clear and present danger*", is subject to the filing of charges against plaintiff. In addition…

944) This Court cannot proscribes (as Judge Roman did in his opinion, see Assoc. Case. Doc. #43) a non-student (plaintiff) "*protected speech*", as way of a prevention to a possible "*true threat*"… Thus allowing a school official to "*abridging the freedom of speech*". Subsequently criminally charge a *non- students*, for a personal email sent to the worker of a school. This, in addition, that plaintiff has demonstrated by the facts and inferences that these defendant actions were falsely manipulated documentation to produce a false arrest. Hardly a mistake! In addition, what has SUNY done to prevent plaintiff's injuries to plaintiff throughout his three years?

945) An electronic mail notice of disagreement and/or discontent adding an example to the statement in question, and of a non-official nature; constitute "*speech protected*" by the First Amendment. **Veterans of Foreign Wars, Post 4264 v. City of Steamboat Springs,** 195 Colo. 44, 49, 575 P.2d 835, 839 (1978), (a legitimate communication via email [equal to an official letter] "*by their very nature [are] a means of expression and communication within the meaning of the First Amendment*").

946) A Purchase College policy of "*causing an alarm*", is a "*prior restraint*" when it subjects constitutionally "*protected speech*" to school regulation prior to the time that such threat has to occur. 2354, **Inc. vs City of Dallas, 896** P.2d at 279; internal quotation omitted. Therefore…

947) The statement of Judge Roman, that the school has right to prevent, is in fact a form "*prior restraint*" to avoid a tragedy; thus rendering tragedy to plaintiff injuries (See injuries exhibit A)are expendable, not worthy of "*due process*" of the law. In addition…

948)Applying the judge rational… what has SUNY done to prevent plaintiff's injuries and even possible loss of life? Since now plaintiff has been enduring two disabling injuries (permanent mental and physical pain). Furthermore…

949)The plaintiff asks… just how long a human can last with such a suffering. (A physical and painful injury, and now a mental disabling injury, as it is Post-Traumatic-Stress-Disorder or PTSD, and depression). In addition to the loss of his Social Security Disability Income… What has this Court has done to prevent the student-plaintiff's injuries, or SUNY for that matter? Would this not be a tragedy? Then would this Court be willing to prevent plaintiff tragedy? Or continue to support school officials' crimes? Another words… school official can have immunity by causing this kind of harm? That would be incited to *"school violence"* giving another scenario, as stated by the St Vincent Hospital. In addition…

950)Applying the Judge same rational, as stated above… then, ALL *"organized retaliatory-bullying"* actions committed throughout this complaint, MUST be subject to "prior restraint" too. Additionally…

951)It is a well-established fact that *organized retaliatory plus bullying*, most of the time have lead "school violence" (as stated by St Vincent medical staff…"9 out of 10, the case of the plaintiff would have ended in '*school violence*"… being plaintiff the "1" that has ended in such violence). Hence, this Court MUST stop this conduct or custom of student being abused, instead of continuing an outdated tradition of protecting school official, that pretend to be exemplary citizens, but all they do is bring their personal views from their private egocentric lives; to make them into a second home at school. The Court's "duty to protect", MUST be exemplar towards the students, and NOT toward school officials 'Cult-like behavior of organized-crime; however, all parties (but the plaintiff) have aided in the opposite…inciting a more tragic ending to the plaintiff's suffering, (Expert Opinion). Furthermore…

952)Plaintiff's email was an interpretation of what could happen given the right conditions of so much abuse to a student by example; but and intentionally manipulated by the Defendants: **Purchase College,** University Police and officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto,** ALL under the under the supervision and advise of SUNY Attorney **Mrs. Wendy Ravitz** (former **Kowalski**) In addition…

953)Where a prior restraint creates a peril (of more harm, as it did) delay such that every application of the regulation makes an impermissible risk of suppression of ideas, facial challenges to the prior restraints are permissible and imperative (such plaintiff' email). See *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223-24, 110 S.Ct. 596, 603-04, 107 L.Ed.2d 603 (1990).

954)Because governmental or school in this case, the regulations establishing a system of prior restraint on constitutionally protected speech or communication are presumed to be invalid; where the review of Englewood's special review procedure and policy under a strict scrutiny standard of review. 2354, Inc., 296 P.2d at 279.

955)In deciding whether there is a compelling educational interest in setting up the permitting system, and whether the criteria for issuing permits are sufficiently narrow, target, and definite to prohibit the permitting plaintiff from exercising unconstrained discretion. 2354, **Inc.**, 896 P.2d at 279-80. Therefore, on that point is no educational interest in pressing charges against a non-student turned over all the facts of the pending case, only just to avenge. Def. **Danielle DaGosto,** just await for an alibi to bring back at plaintiff, only because the plaintiff uncovered her custom of providing free housing to students in exchanged of work. Additionally…

956)Defendants herein, this COA, may or may not lack concrete standards to guide discretion, in the application of the "*prior restraint to a speech*" and may therefore unconstitutionally vest the decision-maker with unregulated discretion to deny "*equal protection*" and/or "*due process*" of the law. Hence, permit the application of such "*causing an alarm*" under no special review procedure, See **City of Lakewood v. Plain Dealer Publ'g Co.,** 486 U.S. 750, 770, 108 S.Ct. 2138, 2151, 100 L.Ed.2d 771 (1988), such conducting an intelligent review or communication with plaintiff before causing the permanent harm and subsequent injuries.

Count IX, (42 U.S. Code, Sec. 1983):
(Fourth Amendment, Seizure & Privacy).
957)All prior statements are hereby incorporated.

958)A person has a very high expectation of privacy in their home.

959)Plaintiff while in the privacy of his home sent an email to Def. **Danielle DaGosto,** (a private email, since plaintiff was not a student at Purchase College). An unreasonable criminal charge for the purpose of personal communication (from home with private computer and from a private email account,) with the intention to communicate a thought of protest by giving a strong example; Defendants: **Purchase College,** University Police and officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto,** ALL under the under the supervision and advice of SUNY Attorney **Mrs. Wendy Ravitz** (former **Kowalski**)…

960)Have violated the plaintiff Fourth Amendment by interfering in plaintiff's right to be left alone at home.

Hence, defendants herein, had not governmental interest in the email communication, from a non-student; furthermore, the Purchase College University has no jurisdiction over it; a FALSE ARREST.

961) Standard for an arrest, the court or official body must have jurisdiction (Defendants: **Purchase College,** University Police and officers **Mr. Davis Mobley** and Police Officer **John Doe** did not) and the authority to arrest the person targeted by the warrant. Furthermore…

962) The arresting officer is required to know these elements for a valid warrant -- defendants: **Purchase College,** University Police and officers **Mr. Davis Mobley** and Police Officer **John Doe** intentionally knew they did not have jurisdiction and further lie, by stating to plaintiff, "*they did*". In addition…

963) Since the warrant for plaintiff's arrest did not fulfill any of them, these officers are being liable for false arrest despite the fact that he or she did not prepare the warrant. Furthermore…

964) Since these officers took it upon themselves to execute the warrant, they acted on behalf of **The Town of Harrison** ("*persons*" under 42 U.S. Code, Sec. 1983); therefore, they became an arm of the **Town of Harrison** and "*persons*" liable under 42 U.S. Code, Sec. 1983. Additionally…

965) Defendants: **Purchase College,** University Police and officers **Mr. Davis Mobley** and Police Officer **John Doe** intentionally perform false arrest since the arresting officer recklessly left his jurisdiction, (500 miles out of his jurisdiction) to procure the retaliatory arrest, and "*unlawfulness detention or restraint*", "See *Serra v. Lappin,* 600 F.3d 1191 (9th Cir. Cal. 2010), "*where the court stated that "false (arrest) is the non-consensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.*" Additionally…

966) It was found in *United States v. McMiller,* 2010 U.S. App. LEXIS 8093 (3d Cir. Pa. Apr. 19, 2010), that false imprisonment under Georgia law is a crime of violence since false arrest involves conduct that presents a serious potential risk of physical injury to another and therefore a Grade A violation under 18 USCS Appx § 7B1.1 of the United States Sentencing Guidelines. This, further, justifies the plaintiff's claim of injury causation, by the lawless actions of the defendants: **Purchase College,** University Police and officers **Mr. Davis Mobley** and Police Officer **John Doe.** Furthermore…

967) The fact that the defendants: **Purchase College,** University Police and officers **Mr. Davis Mobley** and Police Officer **John Doe** did state that they were only acting under the direction of their supervisor, does not emulate an action under the instruction of a superior officer: This is no defense to an action for false arrest that the defendant who made the arrest was acting under the directions of a superior officer. However, the plaintiff asserts that the fact that an officer made arrests plaintiff under the direction of a superior officer is competent to be shown as affecting punitive or exemplary damages. *Christ v. McDonald,* 152 Ore. 494, 501-502 (Or. 1935).

Please note that, plaintiff expects these officers to testify that their action were mandated in premeditated harmful action, As BU police official stated to plaintiff. Especially officers **Mr. Davis Mobley,** that he is no longer employed by Purchase College.

Count XI. (42 USC § 1983):

(Violation of the New York State Constitution and Laws: Tort Law):

968) As applies to all state actors named here in this COA; Parr. #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

969) Where supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

970) Defendants: **Purchase College,** University Police and officers **Mr. Davis Mobley** and **Police Officer John Doe** and Mrs. **Danielle DaGosto...** ALL acts under the supervision and advice of SUNY Attorney **Mrs. Wendy Ravitz** (former **Kowalski**)... Have intentionally acted against their oath as a NY State Official. These *"persons"*... That they fail to exercise a strict *"standard of duty"* owed to the students (plaintiff). By conducting an illegal arrest, based on FALSE and retaliatory statements; with the sole purpose of causing the plaintiff... undue physical, mental and academic hardship—GROSS NEGLIGIANCE, *per-se*). Leading to plaintiff's permanent personal injuries as described in "Exhibit A."

971) Where a civil wrong, which can be redressed by awarding damages. See, e.g., *Smith v. United States,* 507 U.S. 197 (1993).

972) *Parr*, #145 through 165, are hereby adopted.

973) ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "Bench Pro-see bias" action) LEGAL THEORY FOR A Pro-See LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (permanent personal injuries, and others), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

**Cause of Action # 12** (New COA).

Facts:

974)The statements in *Parr.* 3, 5, 9, and 48 to 52a are adopted herein…

975)This COA is directly related and follows, COA #11, & COA # 13.

976)All three COA #11, 12 & 13, are connected to their FALSE (per-se) statements made by the defendants named therein.

977)This COA refers to the unconstitutional criminal charges brought against the plaintiff by defendants, **Westchester County, Westchester County DA's Office**, and **The Town of Harrison District Court**, (See COA #11).

978)This COA is brought against defendants, **The Westchester County** and/or **The Westchester County DA's Office**, and **The Town of Harrison District Court**, on/for the [their] intentional application (as a custom and policy) of the unconstitutional charges brought against Plaintiff, [as stated in cause of action #11 *"aggravated harassment"* NYPL 204.30 (1)]….Where [as a result] plaintiff suffered permanent [irreparable] academic harm and subsequent permanent personal injuries, (See Exhibit A). Furthermore…

979)Defendants knowingly that the charges against plaintiff [NYPL 204.30 (1)], were unconstitutional; the defendants additionally, issued an *"order of protection"* against plaintiff. Furthermore, these defendants continue to prosecute plaintiff for close to one year, causing severe injuries to the plaintiff, as discussed further later. Additionally…

980)The plaintiff's hardship, humiliation, defamation (see COA #13), and [but not limited] to severe, undue, infliction of emotional pain; which led to the plaintiff's injuries.

Please note that, the plaintiff, for the most part of these unconstitutional criminal proceedings, was being treated for depression and Post Traumatic Stress Disorder or PTSD.

981)On or about July 2013, Plaintiff was charged with the NYPL, 240.30 (1), *"aggravating harassment"* by *"causing an alarm"*, for sending a *"Constitutionally Protected Speech* "email to def. **Danielle DaGosto,** (See COA #11).

982)On July 12, 2013, *Defendants*: **Westchester County, Westchester County DA's Office,** representing the People of the state of New York, and the **County of Westchester,** filed criminal charges against plaintiff,

with the **Town of Harrison District Court**, on behalf of def. **Danielle DaGosto,** (See Exhibit).

983)**The Town of Harrison District Court,** publicly elected Judge**,** issue a warrant for the arrest of plaintiff.

984)On July 18th, 2013, plaintiff was illegal, (no jurisdiction), executed by Defendants **Purchase college University** Police officers and defendants, Mr. **Davis Mobley** and Police Officer and def. **John Doe**, at Binghamton, NY (250 miles from Defendants Purchase College and University Police place of business), (See COA #11).

985)On the same day, plaintiff was arranged in the town of Vestal (Binghamton), NY, and released on his own recognition, and taken back to his on-campus housing, at Binghamton University by the same BU police. (See COA #11).

986)On July 30, 2014, Plaintiff was re-arraigned on the said charges in the Defendant, **The Town of Harrison** district court as per request of the defendant, **Westchester County D A's** office acting on behalf of defendant **"Westchester County"**.

987)In said re-arraignment appearance, the plaintiff was told by **The Town of Harrison's** presiding Judge, Judge J. Lust that the charges were for plaintiff's criminal action of "*causing an alarm*".

988)Along the day, of his second arraignment, at the Town of Harrison District Court, Plaintiff stated to the Court that he was possibly scheduled to attend law school in just a few weeks, in Arizona. Furthermore...

989)Complainant stated that the supposed re-arraignment, that the unconstitutional criminal charges would also forbid him from doing so; moreover, would prevent from ever going to any school.

990)Upon the request of the defendants (herein): **Westchester County, Westchester County DA's Office,** representing the *People* of the state of New York, and the **County of Westchester**... Plaintiff was issued a restraining order, GRANTING an order of protection. Said restraining order prevented Plaintiff to approaching defendant's **Purchase College's** grounds... unrealistic action, since plaintiff was residing at Binghamton, NY.

Please note that ALL documentation related to the criminal charges against plaintiff, including, the order of protection, or restraining order and other FALSE, *per-se*, documentation was sent to at least eight SUNY Universities, by defendants; **Melissa Jones** and **Ernie Palmeiri,** and under the supervision of Def. **Qui-Qui Balascio** and UNY Attorney Mrs. **Wendy Ravitz** (former Kowalszki in the Assoc. Compl.), (See COA #13, and Exhibit C). Plaintiff is possession of emails communication of these individuals'

participation implicating ALL of these individuals in the dissemination of the documentation that had no government interest to be faxed to all of these universities, but to cause harm to the plaintiff.

991)Plaintiff plead NOT guilty to the charges.

992)At the same rearrangement hearing, plaintiff stated to the Court and **Judge Lust**, that he was a partial permanent disabled person.

993)About the same time, defendants; **Melissa Jones** and **Ernie Palmeiri,** Purchase College, issue a letter of *"persona no grata"* to Plaintiff, via email and regular mail. Again, Plaintiff was not a student of SUNY Purchase anymore.

994)Subsequently, Plaintiff was ordered to appear at **The Town of Harrison District Court** approx. nine times, during the period of one year.

995)During this period, plaintiff restated his treatment for depression and severe PTSD, due to the *"organized retaliatory-bullying"* and persecution of Purchase College and SUNY officials in Albany.

996)During these Court appearances, at **The Town of Harrison District Court**... the Plaintiff declined to be represented by a Public Defender; however. The court has appointed a public defender; who later, upon my request, withdrew from his representation; hence proceeded to act as his own Attorney or *pro-see* the defendant.

997)During the following several months, Plaintiff rejected defendant's Westchester County D A's Office plea bargain offers in several occasions. Since the plaintiff knew the accusations were unconstitutional and in retaliation; with the solitary intention of preventing the plaintiff to follow up on his pending claim in Federal Court (See Assoc. Amend. Case, 13-CV-2586, filed in the Federal Court, Second District, on August 26, 2013).

998)On August 29, 2013, Plaintiff's request for a pre-motion conference, to US Federal Court, Second District, to remove the case from The Town of Harrison District Court light that the charges [NYPL 240.30 (1), "having an alarm"], asserting the criminal charges against Plaintiff were "unconstitutional on its typeface and as applied" to Plaintiff. (Motion withdraws by plaintiff as indicated [Not an advised] by Judge, Ronan; See Doc. #27, of Assoc. Action, 13-CV-2586)

999)**Procedural History** [*People vs. Edward Morales* Case# 13-070584; Presided by Judge J. Lust].

1000)On July 18, 2013, *Defendant* (Plaintiff herein), was first arraigned at the Vestal Town Court—

Binghamton, NY (as stated by the plaintiff herein above) by preceding **Judge, Meager.**

1001)The City of Vestal, NY… **Judge Meager,** never issued any "*order of protection*", THE RECORD WILL SHOW… in contrast to the statement made by def. **Westchester County D A's Office,** DA, Ms. **Michael Calvi** (DA Office in Purchase, NY), additionally…

Please note, in DA, Ms. **Michael Calvi's** "AFFIRMATION IN OPPOSITION TO THE MOTION TO DISMISS ACCUSATORY INSTRUMENT", she falsely stated… "*A temporary order of protection was issued to defendant*" [Plaintiff herein this Complaint]. This is another misleading statement from the part of the defendant, here in **Westchester County D A's Office.**

1002)On July 30, 2013, Defendant (Plaintiff herein), appeared at **The Town of Harrison District Court,** for the second arraignment. THE RECORD WILL SHOW… in contrast to the statement made by DA Mrs. **Michael Calvi;** where**,** in her "AFFIRMATION IN OPPOSITION TO THE MOTION TO DISMISS ACCUSATORY INSTRUMENT"…" *Defendant* (Plaintiff herein), *subsequently requested an adjournment*" Defendant (Plaintiff herein)… never, during of the proceedings asked for any adjournments; however, later defendant (Plaintiff herein) did bring issues of violation of Fifth Amendment "*speedy trial*", in his motion to dismiss, (See Exhibit O). This is *another* misleading statement from the part of the defendant, **Westchester County D A's Office to imply** defendant (Plaintiff herein) was the cause of the violation of the "*speedy trial*" constitutional right. DA Mrs. **Michael Calvi,** provably falsely stated that plaintiff requested an adjournment to justify the time frame for a speedy trial was overdue, Expert Opinion.

1003)On Sept. 06, 2013, Attorney Mr. **A Sergi** acting on behalf of the **Westchester County** D A's office in White Plains, NY, issued a response letter, in opposition to plaintiff's (herein) request to remove said case to the US Second District Federal Court (see *parr*. Below) on behalf of the State and the County.

1004)In said letter, Attorney D A Mr. **Sergi** falsely stated: Defendant (Plaintiff herein): "*was charged with violating the NYPL, 204.30 (1) for allegedly having sent several alarming emails to the S.U.N.Y. Executive Director of Academic Programs, Mrs. **Danielle DaGosto,** threatening to take a machine gun, go to school, and shoot people*" (please See Exhibit J).

Please also note, there was only one email sent, where Plaintiff, herein, never said such". (See COA #11 and Doc. #23 of Assoc. Action, 13-CV-2586 for Mr. Sergi's FALSE statement).

1005)On September 10, 2013, Defendant (Plaintiff herein), appear in **The Town of Harrison District Court;** Defendant (Plaintiff herein), requested to be represented by himself as *pro-see*.

1006)At said hearing, Defendant (Plaintiff herein, this complaint), never requested a "trial date." As THE RECORD WILL SHOW… in contrast to the assertion made by DA Mrs. Michael Calvi in her "AFFIRMATION IN OPPOSITION TO THE MOTION TO DISMISS ACCUSATORY INSTRUMENT"…" Defendant (Plaintiff herein this complaint), requested a trial date".

Please note that, this is another misleading statement from DA Mrs. Michael Calvi herein; Defendant (Plaintiff herein), Mr. Morales, never during of the criminal proceedings at the Harrison District Court asked for a trial date; as the record will read.

1007)On or about October 5, 2013, Plaintiff requested to register a "Motion to Dismiss", with The Town of Harrison District Court, (See Exhibit O). However… defendant (plaintiff herein) was asked by Judge Lark, "*what was the basis for his motion to dismiss*"… defendant (plaintiff herein), responded…"*First Amendment issues*".

1008)With said "motion to dismiss", plaintiff also filed, as supporting evidence, of retaliation, the Amended Federal Action, See Amd. Comp. Doc. #21 of the Assoc. Amed. Comp. 13-CV-2586). In addition…

1009)Plaintiff introduced in his "motion to dismiss" the letter, Attorney, DA Mr. **Sergi** for the **Westchester County,** sent to the US Second District; where his letter clearly asserted false statements to base the criminal charges against the Defendant (Plaintiff herein).

Please note, that this evidence of FALSE statements (*parr*, #989 adopted), should have been enough for the Harrison District Court to infer wrongdoing from the part of the DA's office, Purchase College and def. Purchase College, University police officer, **David Mobley** and Def. **Danielle DaGosto's** accusations against plaintiff, were misleading and in retaliation, (*parr* # 982 is adopted). However, **the Town of Harrison District Court**, denied defendant (plaintiff herein) his "*motion to dismiss*" based on excuses.

1010)On said "motion to dismiss", (See Exhibit O) defendant (Plaintiff herein), sought to dismiss the charges against him based on "First Amendment" grounds, see *Parr*. # 993. However…

1011)In contrast to the statement made by DA Mrs. **Michael Calvi**; where in her "AFFIRMATION IN OPPOSITION TO THE MOTION TO DISMISS ACCUSATORY INSTRUMENT, where she falsely stated that defendant (plaintiff herein) sough to dismiss his criminal charges "*on grounds of that the accusatory instrument was facially insufficient*"; as THE RECORD WILL SHOW stated (See Exhibit R; October 9, 2013, Pp. 34 of the affirmation). In addition,

a. <u>Please note that,</u> this is *another* misleading statement from the part of the defendant, **Westchester County D A's Office.** Her false statement was to state validity to the People's claim, to permit them to go forward with the unconstitutional charges against plaintiff based on non-constitutional matters. This, further, infers that the DA's office DID know at the time that the charges were unconstitutional, (Expert Opinion).

b. <u>Please also note that,</u> in Plaintiff "Motion to Dismiss", he cited ***People v Dietze*** (75 NY2d 47 [1989]); ***People v Dupont,*** 107 AD2d 247, 253 [1st Dept. 1985]; ***Vives v the City of New York,*** 305 F Supp 2d 289, 299 [SD NY 2003, Scheindlin, J.]. The same case law cited by **People v Golb**, 2014 NY Slip Op 03426, (final ruling by NY State Court of Appeals on the NYPL, 240.30 (1) *"causing an alarm"*, "UNCONSTITUTIONAL").

1012) <u>In January, 2014.</u> Defendant (Plaintiff herein) appeared in **The Town of Harrison District Court**; however, no proceeding were held that day, in light that Judge Lark stated…*"there was no ruling on Plaintiff herein Motion to Dismiss".* However, plaintiff asserted he was in treatment for Post-Traumatic-Stress-Disorder or PTSD, and depression.

1013) <u>In February, 2014.</u> Defendant (Plaintiff herein), again appears in **The Town of Harrison District Court**; and again, no proceeding were held that day, in light that…*"there was no ruling on Plaintiff herein Motion to Dismiss".*

1014) <u>On March 12, 2014,</u> Defendant (Plaintiff herein), appeared in **The Town of Harrison District Court**, the Judge issued a ruling DENYING the defendant (Plaintiff herein) "motion to dismiss".

<u>Please note that,</u> in the Judge's ruling he made no mention of the Defendant's (Plaintiff herein), "First Amendment" basis to ignore the criminal complaints against him…"clearly a negative-bias ruling towards a pro-see litigant. This is normally done BY SOME COURTS, to pursue a plea deal and thus, avoid liability in legal action," (EXPERT OPINION).

1015) <u>On May 13, 2014,</u> defendant, **Westchester County D A's Office (Purchase),** filed a letter with def. **The Town of Harrison District Court,** notifying the Court, "the People cannot continue with a prosecution of Penal Law 204.30 (1) and charges must be ushered out", on the ground of "First Amendment" issues. Another word the statements prepared by the defendant's (plaintiff herein), email sent to def. **Danielle DaGosto** were *"protected speech"* under the First Amendment to US Constitution.

1016) <u>On June 10, 2014,</u> Defendant (Plaintiff herein) appear in **The Town of Harrison District Court**. On

this date, the charges of "*aggravating harassment*" charges; NYPL 240.30 (1), for "*causing an alarm*" against Defendant (Plaintiff herein) were dismissed.

1017)<u>On July 03, 2014,</u> a certificate of disposition was issued to Plaintiff herein, stating plaintiff's dismissal of his criminal charges.

1018)<u>Please short letter</u>, plaintiff endured almost one year of bias prosecution and pro-see bench bias actions, humiliation, permanent defamation and [but not limited] severe, permanent academic harm and   undue several infliction of emotional pain, (in addition to all the harm done to the plaintiff, as said in the prior COA) causing permanent personal injuries.

1019)<u>Please also note,</u> that even if plaintiff was healthy enough to pursue his dream [and of his family] of going to law school; he could NOT, since the record of these false and retaliatory actions MUST be disclosed [even if they are expunged] to any law school plaintiff wanted to attend, (Expert Opinion).

<u>Damages:</u>

1020)For the purpose of worsening of plaintiff's physical and mental health, *Parr*. 1…11are adopted.

1021)As a result of these municipalities and their officials, defendants, **The Town of Harrison**, **Westchester County D A's Office (Purchase) Westchester County,** and all other similarly situated individuals… plaintiff suffered tremendously. In addition…

1022)Plaintiff was humiliated; suffered additional added worsening to his already evident injuries. In addition…

1023)Plaintiff suffered more severely; more frequent (daily,) and more severe mental anguish. The Plaintiff suffered more frequent (daily,) and more severe feeling of worthlessness (diminished); In addition to, more concurrent feelings of being persecuted (these feelings of being persecuted have become permanent, as part of PTSD), additionally…

1024)Daily is experiencing more sleeping problems (lack of sleep, nightmares and waking up night with fear and memories of the events); in addition to, added (in summation to the prior harm) emotional pain; and unbearable concurrent stress, leading to physical pain.

1025)At this stage of plaintiff's suffering his spinal injuries were/are several y worsened (to chronic state)… as to have more frequent spasms, inflammation, causing difficult walking and less use of his legs, arms and hands.

1026)Because of these accumulations of the injuries inflicted upon the plaintiff, as described in all COA, Defendants, **The Town of Harrison**, **Westchester County D A's Office** and **Westchester County**, at the hand of their valiant state actors; have led to Plaintiff's irreparable permanent academic harm. Furthermore, their despicable actions, *per-se*, have resulted in the Plaintiff's current medical condition and permanent personal injury (see exhibit A).

Legal Theory:

1027)As applies to all state actors, named herein this COA; *Parr*. #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

1028)ALL LEGAL THEORIES IN COA #11, ARE HEREBY INCORPORATED AS APPLIED to the defendants named herein...

1029)Plaintiff, *pro-see*, brings this cause of action against defendants **The Town of Harrison**, **Westchester County D A's Office (Purchase)** and **Westchester County**, and their state actors, acting in the color of the state law, in their individual capacity, asserting violations of/in the intentional and knowingly exercise of an unconstitutional NYS Statue as policy.

1030)Plaintiff shall construct his Sec. 1983 legal theory in this COA based ONLY and the Court's rationale in the decision of the Court of Appeals of *New York, People v Golb,* 2014 NY Slip Op 03426; decided May 13, 2014.

1031)In *People v Golb*, 2014 NY Slip Op 03426; decided May 13, 2014. The New York, Court of Appeals stated that:

" *Penal Law § 240.30 (1) (a) provides that "[a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she. . . Communicates with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm." We agree with defendant that this statute is unconstitutionally vague and overbroad, and that his conviction of three counts of aggravated harassment related to his conduct toward Schiffman, Goranson and Cargill must be vacated.*
*In **People v Dietze** (75 NY2d 47 [1989]), this Court struck down a similar harassment statute, former Penal Law § 240.25, which prohibited the use of abusive or obscene language with the intent to harass, annoy or alarm another person. We determined that the statute was unconstitutional under both the State and Federal Constitutions, noting that "any proscription of pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence" (id. at 52).*

*The reasoning applied in Dietze applies equally to our analysis of Penal Law § 240.30(1)(a). The statute criminalizes, in broad strokes, any communication that has the intent to annoy. Like the harassment statute at issue in Dietze, "no fair reading" of this statute's "unqualified terms supports or even suggests the constitutionally necessary limitations on its scope" (id. at 52; see also* **People v Dupont,** *107 AD2d 247, 253 [1st Dept 1985] [observing that the statute's vagueness is apparent because "[i]t is not clear what is meant by communication `in a manner likely to cause annoyance or alarm' to another person"]). And, as in Dietze, "we decline to incorporate such limitations into the statute by judicial construction" because that would be "tantamount to wholesale revision of the Legislature's enactment, rather than prudent judicial construction" (id. at 53).*

*Three federal judges have already found this statute unconstitutional (see* **Vives v the City of New York,** *305 F Supp 2d 289, 299 [SD NY 2003, Scheindlin, J.], revd on other grounds 405 F3d 115 [2d Cir 2004] ["where speech is regulated or proscribed based on its content, the scope of the effected speech must be clearly defined"]; see also Vives 405 F3d 115, 123-124 [2d Cir 2004, Cardamone, J., dissenting in part, concurring in part] [Penal Law § 240.30(1) unconstitutional on its face and as applied];* **Schlager v Phillips,** *985 F Supp 419, 421 [SD NY 1987, Brieant, J.], revd on other grounds, 166 F3d 439 [2d Cir 1999] [statute is "utterly repugnant to the First Amendment of the United States Constitution and also unconstitutional for vagueness"]).*

*<u>Accordingly,</u>* **we conclude that Penal Law § 240.30(1) is unconstitutional under both the State and Federal Constitutions, and we vacate defendants' convictions on these counts.** " Hence…

1032) Because of the said ruling…Plaintiff hereby incorporated to this Complaint; ALL **favorable** legal theories, ruling and/or opinions, applied to/in: **People v Dietze** (75 NY2d 47 [1989]); *People v* **Dupont,** 107 AD2d 247, 253 [1st Dept. 1985]; **Vives v the City of New York**, 305 F Supp 2d 289, 299 [SD NY 2003, Scheindlin, J.], *revd. on other grounds* 405 F3d 115 [2d Cir 2004]; and,   **Schlager v Phillips,** 985 F Supp 419, 421 [SD NY 1987, Brieant, J.], *revd on other grounds,* 166 F3d 439 [2d Cir 1999] .NOT written herein due to its length. Thus…

Count I, (42 U.S. Code, Sec. 1983):

(General):

States:

*"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…" HENCE…*

1033)Plaintiff asserts as facts, that his defendants **The Town of Harrison**, **Westchester County D A's Office (Purchase)** and **Westchester County**, ARE local government entities, hence, "*persons*" as/under 42 U.S. Code, Sec. 1983, thus as hereby applied to these defendants and all other individual situated in a/the similar situation, the Eleven Amendment "sovereignty immunity" is prohibited.

1034)Plaintiff brings this action under 42 U.S. Code, Sec. 1983; defendants **The Town of Harrison**, **Westchester County D A's Office (Purchase)** and **Westchester County**, and their state actors, acting in the color of the state law, in their individual. Additionally…

1035)Plaintiff asserts as facts, violations of/in the intentional and knowingly exercise of an unconstitutional NYS Statue as Custom Usage or Policy, See, *Monell*, 436 U.S. at 691. See also *Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991)… Where the courts stated that liability is applicable when "conduct, customs executes or implements a formally adopted policy". In addition… Plaintiff asserts that, when that conduct reflects "*practices of state officials so permanent and well settled as to constitute a 'custom or usage' with the force of law*." "*Persons*"; have deprived plaintiff of his civil rights and privileges, (internal quotations omitted). Furthermore…

1036)Plaintiff asserts as facts that defendants **The Town of Harrison**, **Westchester County D A's Office (Purchase)** and The **Westchester County**, (defendants in COA # 11 are hereby incorporated)…Unconstitutionally (*per-se*) criminally charged plaintiff, and ordered a false arrest, (COA #11 is hereby adopted) pursuant to section NYPL 240.30(1), for the writing a constitutionally protected speech, via an electronic communication or email, (See COA#11). Thus…

1037)Violating plaintiff's First and Fourth Amendment rights, through and the Fourteen amendment to The United State Constitution, as well as parallel rights guaranteed by Article I, sections 8 and 12 of the New York Constitution and New York common law. In addition…

1038)The plaintiff specifically, asserts as fact that section 240.30 (1) was unconstitutionally at the time of plaintiff charges were filed; See, cited *People v Dietze* (75 NY2d 47 [1989]); *People v Dupont*, 107 AD2d 247, 253 [1st Dept. 1985]; *Vives v the City of New York*, 305 F Supp 2d 289, 299 [SD NY 2003, Scheindlin, J.]. The same case law cited by **People** *v Golb*, 2014 NY Slip Op 03426.Hence, making these defendant's illegal actions a part of a "*custom, conduct of policy*". In addition…

1039)The proscribed, (by the defendants herein), but protected electronic communication or email speech, for which plaintiff was arrested…was in plaintiff's right in exercising to engage in "*freedom of speech*".

In addition...

1040) Where the violations, guaranteed by the United States and NYS Constitution; resulted directly of their (defs.) intentional personal involvement (political ambitions). Furthermore...

1041) Thither is MORE than sufficient causal link between these "persons" mentioned here in this COA's wrong act (defendant herein and defendants named in CIOA #11) have personal knowledge of the potential harm to plaintiff, in time to avoid said Harm. Additionally...

1042) The intentional lack of supervision, from the part of the def. **Westchester County**, DA's office, to proper training and supervise its employees, NOT TO emit FALSE statements, was "*shocking to the conscience*" of the plaintiff. Furthermore...

1043) Where def. **Westchester County**, DA's office, was current, at the time of the criminal charges were filed against plaintiff, we're aware that such/said NYPL 204.30 (1), was or has been deemed unconstitutional, See, See, cited ***People v Dietze*** (75 NY2d 47 [1989]); ***People v Dupont,*** 107 AD2d 247, 253 [1st Dept. 1985]; ***Vives v the City of New York,*** 305 F Supp 2d 289, 299 [SD NY 2003, Scheindlin, J.]. The same case law cited by **People v Golb,** 2014 NY Slip Op 03426. Hence...

1044) Plaintiff's permanent injuries (physical, mental and academic), were foreseeable by the defendants herein, as the record shows.

1045) When personal involvement of/to continue a prosecution-case; knowingly is unconstitutional and knowingly that the plaintiff herein (defendant in the criminal case) was being discriminated, retaliated, and bullying for several years at the SUNY schools named here in this Compl... These defendants; **The Town of Harrison, Westchester County D A's Office (Purchase)** and The **Westchester County,** (defendants in COA # 11 are hereby incorporated)... continue to prosecute the plaintiff herein. Just to protect a/she/their political status, ambitions, and protect the defendants' treasury (regardless of the harm to be caused to the plaintiff), is also ""*shocking to the conscience*". In addition...

1046) Where the lack of supervision of these wrongful acts, and covering up with FALSE statements, as plaintiff has set forth with facts in this COA, thus, "respondent superior" liabilities are applicable. As the defendants herein has ample notice, thus personal knowledge of such wrong doing and approval of these wrongful acts, would/has had injuries to plaintiff... "Gross negligence" is per-se. In addition...

1047) When personal involvement of/to continue an unconstitutional prosecution-case, just to protect

a/sh/their political position and ambitions... And/or to protect a treasury, regardless of the damage to be caused to the complainant.... The oversight of the wrongful acts, and covering up such by producing FALSE statements... these actions put forward in this COA, served no "government's purposes," but cause harmful injuries to plaintiff. Furthermore...

1048) When personal involvement of/to continue a prosecution-case, recognizing it was unconstitutional, suitably furthered by a "differential treatment," perpetrated against plaintiff. In addition...

1049) When an important personal right - such as a constitutional right of *"freedom of speech"* and public education - is affected... the defendants **The Town of Harrison, Westchester County D A's Office (Purchase)** and **Westchester County** did not show only that there was... *"a real and substantial relationship between the classification and the governmental purpose which it purportedly served."* But instead these defendants, under supervision, acted out of *"sheer ego"*, of wining the case regardless of the harm they were causing to plaintiff.

Count II, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 242)

(Deprivation of Rights under the Color of Law).

1050) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

1051) *Parr,* #267 through 270, are hereby adopted.

Count III, (42 U.S. Code, Sec. 1983):

(Title 18, U.S.C., Section 241)

(Conspiracy against Right)

1052) As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

1053) *Parr,* #271 through 273, are hereby adopted.

Count IV, (42 U.S. Code, Sec. 1983):

(Violation of the New York State Constitution and Laws: Tort Law):

1054) As applies to all state actors named here in this COA; *Parr.* #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

1055) Where supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

1056) **The Town of Harrison**, **Westchester County D A's Office (Purchase)** and The **Westchester County**, (defendants in COA # 11 are hereby incorporated); and its state actors, have intentionally acted against their oath as a NY State Official. These "*persons*", fail to exercise a strict "*standard of duty*" owed to a New York State Citizen (plaintiff); by intentionally accusing plaintiff of an unconstitutional crime, which caused injuries is —GROSS NEGLIGIANCE. In addition…

1057) By causing Plaintiff permanent academic harm and, in large part, plaintiff's permanent personal injuries as described in "Exhibit A."

1058) Where a civil wrong, which can be redressed by awarding damages. See, e.g., ***Smith v. United States,*** 507 U.S. 197 (1993).

1059) *Parr,* #145 through 165, are hereby adopted.

1060) ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "Bench Pro-see bias" action) LEGAL THEORY FOR A Pro-See LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (permanent personal injuries, and others), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF.

## Cause of Action # 13, (New COA).

Facts:

1061) The statements in *Parr.* #3, 5, 9, and #48 to 52a are adopted herein…

1062) This COA is directly related to COA #11, and 12.

1063) ALL other COA MUST have relevance to/where defendant, Mrs. **Melissa Jones'** and her supervisory

team involvements is/are implied or directly related to the plaintiff's injuries.

1064)This cause of action refers FALSE (made-up) written statements (29 page fax) to at least eight SUNY and other Universities, by the defendants, Mrs. **Melissa Jones, Mrs. Sandee Maung;** with the aid of defendants; Mrs. **Danielle DaGosto,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio;** and Purchase College officials; Professor **Mark Burdzinski,** def. **Dean Louis Yelin**…All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski]…**In addition, to several telephone conversations made by some of these defendants with these Universities. Additionally…

1065)These phone conversations [s] and a 29 page fax sent to these SUNY Universities were made in January 2014, with the sole intent to make injury to plaintiff… as a strain of "organized retaliatory-bullying," (See Exhibit C). In addition…

1066)ALL these school officials were named as defendants in the Assoc. Case 10-CV-2586, filed in August, 26, 2013. Thus, at the time the 29 page fax and telephone calls were sent, their federal case was pending. In addition…

1067)Because of these defendants had knowledge of the COA asserted in the Assoc. Case. It is possible to infer that the false statements were made or fabricated <u>intentionally</u> by the defendants named herein. This inference is in addition to the indisputable evidences presented by plaintiff, herein and by Exhibits. Additionally…

1068)ALL eight Universities denied admission, suggesting permanent academic harm; although, ALL universities were provided by the plaintiff, with the Amed. Compl. Doc. 21, Case # 13-CV-2586; they still denied admission. ALL for different reasons. Hence…

1069)On January 09, 2014, the 29 pages faxed and verbal communication was part of the plaintiff's disciplinary record, (See Exhibit C).

Please also note, that these statements in the said 29 pages fax, has been analyzed by EXPERT a Psychologist, Psychiatrist, Medical Doctor and others unknown to each other; ALL these professionals have concluded that; "*the false statements were carefully fabricated go hand to hand with plaintiff criminal charges, to further and intentionally depict (implicitly) Plaintiff as a violent person*".

1070)Defendant; **Melissa Jones's** 29 pages, fax sent to at least eight SUNY Universities, are/were as in a summary of the events, (Exhibit C-1, 2), she states as follows:

1071)In Exhibit C-1. Defendant **Mrs. Melissa Jones,** stated: "Mr. *Morales (plaintiff) was found responsible for F6 (failing to respect the ongoing legitimate functions of classes, meetings, office, study, sleep, or any authorized activity)*", Plaintiff adopts COA # 5.

1072)These charges were filed by defendant Mrs. **Sandee Maung,** as stated in COA #5.

1073)As stated in COA #5, Plaintiff filed a complaint with the provost office of Purchase College, and with defendant supervisor def. Mrs. **Qui-Qui Balascio**… This complaint was complaining—in part--that "def. **Sandee Maung** did not aid (allowing plaintiff to use the office phone) plaintiff in a medical emergency; plaintiff was having severe spasms due to his disability,

1074)After her investigation, def. Mrs. **Qui-Qui Balascio**, issue an email to plaintiff (See Exhibit F), stating that: *"Nowhere in the ADA (American with Disability Act) does specify that someone who states that are disabled has the right to interrupt meetings to demand the use of the phone. "*

1075)Mrs. **Qui-Qui Balascio's** statement contradicts the false statement in Exhibit C-4, 5 & 6; where defendants, Mrs. **Melissa Jones** and **Sandee Maung** statements (as referring to the COA #5 incident) *"that plaintiff requested the phone to send a fax from a cell phone,* (a technological impossibility)", were false.

1076)The plaintiff requested the use of phone for medical reasons due to his disability, as asserted by Mrs. **Balascio** in her email, see *parr*. #1058. Additionally…

1077)Defendants: **Mrs. Melissa Jones** stated in her report that, she there at the incident of COA #5. The fact is that, she was never at that meeting. That is the reason she invented the use of the cell phone to send a fax… is that she did not know the real facts of the incident; which was the request of plaintiffs to use the phone for medical emergency, and/or she did not know about the investigation of def. **Qui-Qui Balascio,** and the email sent to the plaintiff. See *parr*, #1058 or Exhibit F.

1078)This court and any US Citizen over the age 12, can conclude that…"no school official can perpetrate so much harm, (see all COA where def. Melissa Jones is a party) against a student of a protected class, if her actions were not underlined organized, supported, validated and cursed by others… In all cases, these officials (but not limited) were/are Defendants: **Ernie Palmeiri** and Mrs. **Qui-Qui Balascio,** and acting under the supervision and authorization of SUNY Attorney, Mrs. **Wendy Ravitz** (former **Kowalszki**). ALL of these *"persons"* were defendants in the Assoc. Comp.

Please note that plaintiff did notify the provost's office at Purchase College and SUNY officials in Albany, via email in more than 50 occasions, of these organized retaliatory-bullying actions perpetrated against plaintiff. These notifications were sent for more than two years; however, these officials never did anything to stop the harm being done to the plaintiff; in the contrary, these illegal and wrongful acts of "*Organized retaliatory-bullying*" and persecution of plaintiff, were under the supervision. Furthermore…

1079) THE ONLY TWO STUDENT PRESENT AT THE INCIDENT; *Victoria Stern* and *Alejandro Cellos*, SHALL TESTIFY THAT DEFENDANT DEF. **MELISSA JONES WAS NEVER AT THE MEETING, THUS defendants, Jones and Maung, signed FALSE statement, with the sole intent to harm the plaintiff.**

1080) Def. **Sandee Maung** shortly after that left Purchase College. She is employed now by SUNY Stony Brook.

1081) On the first week July, Plaintiff also sent an email to def. **Sandee Maung**, asking for her involvement in the matter (COA #5); however, she has not replied.

1082) The following is a detailed analysis of the 29 page fax sent at least eight universities. In addition, plaintiff demonstrates below, additional false statements made by def. **Melissa Jones**--other than COA #5. In addition…

1083) Def. **Melissa Jones** has falsified, and intentionally twisted MOST of the facts and events of plaintiff disciplinary record. Plaintiff now analyzes the facts of her false and misleading statements of the 29 page fax-documents, as follows:

1084) In Exhibit C-1. Defendant **Mrs. Melissa Jones,** stated…

"*Mr. Morales* (plaintiff) was *found responsible for plagiarism on October 26, 2011 and assigned a permanent F for the course "SPA 3800: Translation Workshop Spanish." Please reference the report entitled "Academic Integrity Notification Form" for additional information.*"

1085) Defendant Mrs. **Melissa Jones's** statement, refers to COA #4 of the Original and Amended Complaints, (See Exhibit X & Doc. #3, 21 of the Assoc. Compl. Case #13-CV-2586) and COA #3, here, in this new complaint.. Where plaintiff took a translation class, Spanish; where Professor Mark Burdzinski accused plagiarizing. Nevertheless, in Defendant Mrs. **Melissa Jones's** statements, she did not include that plaintiff's first language was/is Spanish, (plaintiff did his High School in Santiago-Chile, bet. 1974-78 [4

years in Chile]). Furthermore, Defendant Mrs. **Melissa Jones's** statements, fail to add that, when/since Professor **Mark Burdzinski** contract with Purchase College was up for renewal, Dean **Louis Yelin**, (Chair, School of Humanities) sent in a letter via email attachment to the plaintiff, (See Exhibit E) asking for a plaintiff's opinion in renewing the Professor's contract.

    a.  <u>Please note that,</u> the plaintiff has been told by school officials that Professor's contract has or will not be renewed by Purchase College, for the sole reason of his bias actions against plaintiff.

    b.  <u>Please also note that,</u> plaintiff forwarded said email, where def. **Louise Yelin** asked the plaintiff for his advice, with the said letter attachment to plaintiff academic advisor, Mrs. **Kathleen Ceng**, (please must read Exhibit X), Mrs. **Ceng** requested Plaintiff not to get involved.

1086)<u>In Exhibit C-1.</u> Defendant Mrs. **Melissa Jones,** stated:

*"Mr. Morales was found responsible for D.3 (damages, defaces, destroy, or tampers with property owned by the college or in possession of another person), C.3 (threatens, harasses, or intimidates), F.1 (fail to respond to the reasonable request of college officials who are acting within their authority) on March 20, 2012 and sanctioned to disciplinary probation through July 24, 2014. Please reference Student Affairs Incident #1749 and University Police Report #590-13 for additional information."*

1087)Defendant Mrs. **Melissa Jones,** again, is providing FALSE information. At a preliminary hearing, where the plaintiff's academic advisor, Mrs. **Ceng** attended; def. **Melissa Jones,** herself, dismissed: *"C.3 (threatens, harasses, or intimidates), F.1 (fails to respond to the reasonable request of college officials who are acting within their authority)".* However, she reported these charges plaintiffs were *"responsible" (against the plaintiff)* in she is 29 pages fax sent to at least eight SUNY Universities.

1088)<u>In addition, in Exhibit C-1.</u> Defendant Mrs. **Melissa Jones,** stated:

*"Mr. Morales* (plaintiff) *was found responsible for F.3 (violates a no contact order issued by the college) on July 24, 2012 and sanctioned to disciplinary probation through July 24, 2013. Please reference Student Affairs Incident #1132 for additional information."* <u>Please refer</u> to COA #4, the garden incident.

1089)<u>In Exhibit C-2.</u> Defendant **Mrs. Melissa Jones,** stated:

*"Mr. Morales was found responsible for F.3 (violates a no contact order issued by the college), C.3 (threatens, harasses, or intimidates), and F.6 (failing to respect the ongoing legitimate functions of classes, meetings, office procedures, study, sleep, or any authorized*

*activity) on April 3, 2013 and sanctioned to the suspension effective April 8, 2013 at 1 pm through August 1,2013. Please reference Student Affairs Incident #2090 and University P o l i c e Report #1559- 13 for additional information.*

<u>Please note that,</u> the charges of new charges presented against plaintiff *for F.3 (violates a no contact order issued by the college),* where the sole action of def. Melissa Jones, and of Mr. **DaRosa**, (no contest, equal to COA #4, the garden incident). Another vindictive action of def. **Melisa Jones**; based in an *"organized retaliatory bullying"* against plaintiff, with the sole purpose to cause harm to him.

1090)Here the Plaintiff was charged with speaking Mr. **DaRosa**, in hearing COA #7 & 8

1091)Please note how overbroad and overbreadth is the *"F.6 (failing to respect the ongoing legitimate functions of classes, meetings, office procedures, study, sleep, or any authorized activity);* this unconstitutional policy of Purchase College, virtually allows the *"organized retaliatory bullying"* to be apply in any form, occasion and for any accusation. This policy provides the tools for these school officials to promote the *"organized retaliatory bullying",* and stay within the policy; in addition, this policy has *"no governmental purpose"*, but negate the students of their civil rights.... I dictatorial and totalitarian regime, this at SUNY.

<u>Please also note,</u> Mr. **DaRosa** was omitted from in the Amed, Compl, by the plaintiff, since Mr. **DaRosa's** disturbing behavior, is/was due to his illness; thus Mr. **DaRosa** was not a defendant in the Assoc. Compl. (See, Doc. # 21 of the Assoc. Complaint, 13-CV-2586). <u>The same for Professor **Mark Burdzinski**,</u> he is not a defendant in this complaint.

1092)Plaintiff was suspended by def. **Melissa Jones,** without a hearing, (see COA #8).

1093)Finally, plaintiff requests the Court to apply the facts of intentional emission of false statements made by defendants: Mrs. **Melissa Jones** and Mrs. **Sandee Maung**, with the aid of def. Mrs. **Danielle DaGosto, (please see COA 11 for Ms. DaGosto),** Mr. **Ernie Palmeiri,** and Purchase College officials, Professor **Mark Burdzinski,** his supervisor, Dean **Louise Yelin...**All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former Kowalski] and Mrs. **Qui-Qui Balascio**... as the plaintiff's plausibility of wrong doing in ALL causes of action, where these state actors, (especially def. **Melissa Jones)** are actors. Ina addition...

1094)Where these plausibility, per-se, asserts as fact *"personal involvement"* of *"ill will"*, by an *"organized-retaliatory-bullying"* (statement of St. Vincent Hospital doctors, psychologist and social Workers'

professional opinions) have acted with the sole purpose to cause permanent academically harm, and plaintiff's permanent personal injuries and illness. (Also statement of St. Vincent Hospital doctors, psychologist and social Workers' professional opinions). In addition…

1095)These experts have stated that, ""*nine in ten times, these actions of "personal involvement" of "ill will"*, by an *"organized-retaliatory-bullying"*, would have led to "school violence". Asserting plaintiff as the one has not acted in retaliation; however, this court MUST take in consideration that the plaintiff is ill (suffering from physical and mental pain), and getting more ill, as no coping compensation is offered,   (St Vincent's Expert Opinion).""

Damages:

1096)For the purpose of worsening of plaintiff's physical and mental health, *Parr*. 1…12 are adopted.

1097)As a result of these school officials, defendants, Mrs. **Melissa Jones,** Mrs. **Sandee Maung,** with the aid of defendants; Mrs. **Danielle DaGosto,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio;** and Purchase College officials; Professor **Mark Burdzinski,** def. **Dean Louis Yelin**…All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz [**former **Kowalski]**…all other similarly situated individuals… Plaintiff has suffered…

1098)Plaintiff was humiliated and defamed. Furthermore, plaintiff suffered additional added worsening to his already evident injuries. In addition…

1099)Plaintiff suffered more severely; more frequent (daily) and more severe mental anguish; plaintiff states that, "there is not one hour that of the day or night, that he has to endure the paint inflicted upon him". In addition…

1100)The Plaintiff suffered more frequent (daily,) and more severe feeling of worthlessness (diminished); In addition to, more concurrent feelings of being persecuted, and followed (these feelings of being persecuted have become permanent, as part of PTSD). Additionally…

1101)Plaintiff is experiencing more sleeping problems (lack of sleep, nightmares and waking up night with fear and memories of the events); in addition to, added (in summation to the prior harm) emotional pain; and unbearable concurrent stress, leading to physical pain.

1102)At this stage of plaintiff's suffering his spinal injuries were/are severally worsened (to chronic state with the aid of a cane—as needed)… as to have more frequent spasms, inflammation, causing difficult walking and less use of his legs, arms and hands.

1103) Because of these accumulative *"Organized retaliatory-bullying"* actions, as described in all COA, All defendants and parties in this complaint, (especially COA #7, 8, 9, 10, 11, 12 & 13)... the plaintiff has suffered irreparable permanent academic harm. Moreover, the despicable actions of these state actors have resulted in the Plaintiff's current medical condition---personal injuries (see exhibit A). These injuries are: 1) Post-Traumatic-Stress-Disorder or PTSD, and depression, 2) the irreversible aggravation to his disabling spinal injuries; to add worsening pain, more frequent spasms, inflammation, causing difficulty walking and less use of his arms and hands. Plaintiff now has to, occasionally, seek the aid of a cane.

1104) Expert Opinion. *"This false statements, herein are per-se, the main example of an intentional malicious act, with the sole purpose to cause physical (knowing plaintiff's disability), emotional and economic harm to plaintiff, and the smoking gun." Furthermore, "ALL causes actions and actions where these defendants, **Melissa Jones, Danielle DaGosto** and **Ernie Palmeiri**, had or have direct or indirect participation, their statements MUST be disqualified, as inadmissible, prejudiced and bias against plaintiff." "There cannot be any affirmative defense for the illegal actions for these defendants".*

Legal Theory:

1105) The statements in *Parr*. 3, 5, 9, and #48 to 52a are adopted herein...

1106) For all purposes of this COA (and ALL other COA, in this complaint), defendants deprivations of rights against plaintiff, as stated herein of "FALSE" statements, *per-se*, contributed to the MOST part of plaintiff's permanent academic harm; furthermore, in MAJOR part, to the plaintiff's physical and mental disabling injuries.

1107) After 180 days have passed, Plaintiff in accordance and pursuant to 42 U.S.C. § 6104 (e) (1), hereby states, by the fact that all administrative and time limitations have been exhausted and/or no administrative remedies—in good faith and no findings... Plaintiff asserts that. In addition...

1108) Where the deprivation of rights and/or privileges against plaintiff, took place as suspension, permanent academic harm, most important personal injuries... on the basis of retaliation. Hence, plaintiff's hereby incorporated, as applied to the defendants herein, and as the plaintiff legal rational is as similar as in this COA.

Count I, (42 U.S. Code, Sec. 1983):

(General):

1109) Plaintiff brings this action under 42 U.S. Code, Sec. 1983; where ALL defendants: Mrs. **Melissa Jones,** Mrs. **Sandee Maung,** with the aid of defendants; Mrs. **Danielle DaGosto,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio;** and Purchase College officials; Professor **Mark Burdzinski,** def. Dean **Louis Yelin...**All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...All acting under the color of the law, in their individual and official capacity... INTENTIONALY conspired to deprive plaintiff of his civil rights, and privileges guaranteed by the United State Constitution. Furthermore...

1110) There is a sufficient causal connection between these officials named here in this COA's wrong acts, and intentional "*lack of supervision*", and lack of proper training, (for notification of such, *Parr.* # 1078 is adopted). In addition...

1111) These state actors, named herein, have INTENTIONALY caused plaintiff's injuries; by the intentional creation of FALSE written statements, and the further dissemination of them. In addition...

1112) These state actors, named herein, "*personal involvement,*" of an "*ill will*", (as the false statements fabricated and spread to at least eight SUNY Colleges, are indisputable facts). This is in addition to improper and biases supervision of the defendants have also caused plaintiff's injuries. Hence, these state actors named herein, are liable for "gross-negligence"; every bit part of a conduct and/or usage of "organized-retaliatory-bullying". In addition...

1113) Where, their looked-over supervision of the wrongful acts, (knowledge and approval of wrong-doing)..."*respondent superior*" liability is applicable; as supervisors had personal knowledge and notice of the wrongdoing, (*Parr*, #1078 is adopted).

1114) Where personal and emotional involvement or/as "*ill will* "against a student, member of a protected class (older male disabled student-persons) to accommodate personal belief of unjustifiable persecution and "organized-retaliatory-bullying", causing, plaintiff's permanent disabling injuries; in further and in direct violation of SUNY, BU and/or the State of New York policies and federal and state laws. Furthermore...

1115) Plaintiff brings this action under 42 U.S. Code, Sec. 1983, and other violation of the law; where ALL

Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin...**All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...All acting under the color of the law, in their individual and official capacity... Have been deliberately pervasive, and indifferent to the pattern of severe and *"organized-retaliatory-bullying,"* suffered by Plaintiff.

## Count II, (42 U.S. Code, Sec. 1983):

### (Title 18, U.S.C., Section 242)

#### (Deprivation of Rights under the Color of Law).

1116)As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, are hereby adopted.

1117)*Parr,* #267 through 270, are hereby adopted, and as apply to the state actors named herein.

## Count III, (42 U.S. Code, Sec. 1983):

### (Title 18, U.S.C., Section 241)

#### (Conspiracy against Right)

1118)As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, are hereby adopted.

1119)*Parr,* #271 through 273, are hereby adopted, and as apply to the state actors named herein.

## Count IV, (42 U.S. Code, Sec. 1983):

### (Title 18, U.S.C., Section 245)

#### (Federally Protected Activities)

1120)As applies to all state actors, (two or more) named herein this COA; *Parr.* #48 to 52a, are hereby adopted.

1121)*Parr,* #274 through 276, are hereby adopted, and as apply to the state actors named herein.

## Count V, (42 U.S. Code, Sec. 1983):

### (Fourteenth Amendment).

#### (Equal Protection)

1122)As applies to all state actors, named herein this COA; *Parr.* #48 through 52a, are hereby adopted; in addition to all allegations in all Counts in this COA, are hereby adopted.

1123) For the purpose of this count; plaintiff was, and still is, a member of a protected class, with the severe limitations of age and disability…

1124) The Fourteenth Amendment is violated when state officials acting in the power of the state law and act contrary to such laws.

1125) ALL defendants: Mrs. **Melissa Jones**, Mrs. **Sandee Maung**, Mr. **Ernie Palmeiri;** with the aid of def. Mrs. **Danielle DaGosto;** and Purchase College officials, Professor **Mark Burdzinski;** Dean **Louis Yelin;** all under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former Kowalski] a def. Mrs. **Qui-Qui Balascio…** in addition, to all other individuals situated in the similar situation, "*persons*", conspired to/and deprived plaintiff of his Fourteenth Amendment to the U.S. Constitution, adopted in 1868, which declares that: "*no state may deny any person the 'equal protection' of the laws,*" where…

1126) Plaintiff was treated differently, he subject of "*differential treatment*", than other students situated in the/a similar situation. These, with the sole purpose to cause harm (see facts); in addition, these false statements fabricated by these defendants were vindictive in nature, served no "*appropriate governmental interest*", (a classroom disturbance or violent disturbance may have been warranted for the plaintiff's punishment, in addition that plaintiff was attending any school). Furthermore…

1127) The government entity Purchase College and SUNY allowed such criminal activity to harm the plaintiff… did not show, not only that there was, "a real and substantial relationship between plaintiff none violent personality, (as depicted in the 29 page fax) the classification and the governmental had no purpose for the emission of false statements to more than eight universities. Sending a 29 page fax, while plaintiff was not attending classes at said College, or any college and further with so many FALSE statements, is "*shocking to the conscience.*" Additionally…

1128) Clearly, when there are indisputable facts, on intentional harm, as stated this COA; asserting that there was no need for the intentional harm of these state actors against plaintiff. Hence…

1129) ALL defendants: Mrs. **Melissa Jones**, Mrs. **Sandee Maung;** with the aid of def. Mrs. **Danielle DaGosto;** def. Mr. **Ernie Palmeiri;** and Purchase College officials, Professor **Mark Burdzinski;** Dean **Louis Yelin;** all under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former Kowalski] a def. Mrs. **Qui-Qui Balascio's** actions against a member of a protected class… hence, the wrongdoing of these state actors, "*organized-retaliatory-bullying,*" action against plaintiff, MUST be observed. Hence "gross negligence" that has caused plaintiff's injuries. Furthermore…

1130) Where an ordinary, common, uneducated person, would know that the creation of false statement and the further disseminating them, is WRONG; in addition to the pending criminal charge, that was later dismissed for being "unconstitutional" (See COA # 11)... Hence, placing a member of a protected class in such unnecessary permanent harm and suffering that he will never get to accomplish his dream, is "*sheer incompetence*" based on an "*ill will*". Furthermore.

1131) Their criminal actions and supervision of such were/are (these school officials still working with SUNY) the manner of a custom of organized criminal; activity; in addition...

1132) Their criminal actions were certainly out-side the SUNY and the State's mission of educational purpose, which ultimately led to plaintiff's mental illness (PTSD), and current suicidal ideation-consequences. Additionally...

1133) *Parr.* #111 through 118, are hereby adopted.

1134) Plaintiff has demonstrated (by facts, inferences and shall demonstrate by witness testimony) that the Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin...**All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...have orchestrated and organized a campaign, as *policy* or *custom*, of "*white collar crime*"; but not limited to, purely motivated by sheer personal beliefs of immunity to abuse of power, retaliatory-bullying and vindictive actions... Seemingly required under *Esmail.* Slip Op. At 2, (see parr. #116). In addition...

1135) These sate actors... "*Knowing that plaintiff was/is a member of a protected category (and Disabled). That such activity would cause permanent personal injuries. They, as persons with education and training in the "prevention of 'school violence', would have easily known to avoid and control their personal emotions, that in another case it would certainly led to a tragic ending," Expert Opinion.*

1136) Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin...**All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...Have acted out of "*sheer animosity*" and "substantial *ill will.*" towards/against plaintiff). Thus, intentionally denying, his right to property or investment in education; based on ill-dislike bullying attitude towards the plaintiff. Criminal actions... That, in MOST part, led to the plaintiff's injuries.

(Due Process, [Procedural & Substantive])

1137)As applies to all state actors named here in this COA; Parr. #48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

1138)Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin...**All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...did conspire to deprived plaintiff of *"due process"* of the law; by NOT allowing plaintiff's right to the *"pursuit of happiness"* , *"right to bodily integrity"* and *"right to private interest"*. Furthermore...

1139)Certainly, these acts have been the result of lack of *"procedural safeguard"*; which was built into the process of *"conduct or custom"* and *"facial adequacy,"* of these state actors unofficial and personal policies of abuse of power and immunity to justice, and paid legal representation...Where the student integrity is never placed before possible undue harm; thus, making these negative inconsequential actions..."*gross-negligence"*...That have caused plaintiff's permanent-personal-injuries.

1140)Where the despicable actions of these defendants and state actors named herein; are the result of organized white collar crimes; in addition, these white collar crimes are in direct disregard of the student's *"liberty interest"* and *"bodily integrity"* (health); furthermore, in directly a *"deprivation of due process"* by the state itself, see ***Ingraham v. Wright,*** 430 U.S. 651, 673–74 (1977);" internal quotation omitted. Furthermore...

1141)These defendants and state workers, have been deliberately indifferent to the pattern of severe and pervasive retaliation and bullying; by inventing a the false statement, (See COA # 11 for false statements made by Officer **David Mobley** to **Westchester County DA's office,** stating that Plaintiff "sent several emails threatening to get a machine gun and shoot people)... Which has been part of these 29 page fax sent to at least eight SUNY Universities. Where all of these false assertions are *"shocking to the moral sense (conscience)"* of any US citizen from the age of 12 and upwards. In addition...

1142)The despicable actions of these state actors, have resulted from the *conduct or custom* of a state employee's lack of *"duty to protect"* (standard of duty), but instead these school officials decided to retaliate and bully the plaintiff; by falsely creating a depicting plaintiff as a violent person, (whom he has never been); where the very personal academic integrity and personal welfare of the student were infiltrated, with the sole purpose to cause harm to the plaintiff. Furthermore...

1143)The falsely and unconstitutionally actions perpetrated against plaintiff, were "*arbitrary action,*" of "*white Collar Crime*". Furthermore, the "*arbitrary action*", was a violation of "*substantive due process*"; a component of the Fourteenth Amendment that protects against such, See, **County of Sacramento v. Lewis,** 523 U.S. —, 118 S. CT. 1708, 1716 (1998); see also Collins v. City of Harker Heights, 503 U.S. 115, 130 (1992); internal quotation has been omitted. In addition...

1144)These indisputable organize retaliatory and vindictive actions inflicted to the plaintiff (see Count on "retaliation"), were clearly of the "*shock the conscience*"... With clear indifference to the person's disability, academic and personal integrity; that has led to plaintiff's permanent personal injuries; since, where, ALL defendants herein are intellectually above a reasonable person (above the education of the average citizen). Additionally...

1145)ALL state actors named herein, having special supervisory training (especially SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]); thus being above of what an average person would reason; knowingly that plaintiff was a member of a protected category (age, and disabled), intentionally enacted the creation of any hostile environment, for the plaintiff, a member of a protected category.

## Count VI, (42 U.S. Code, Sec. 1983):
### (Title IX of the Education Amendments of 1972)
### (Fourteen Amendment "equal protection"):

1146)Title IX of the Education Amendments of 1972 prohibits discrimination and retaliation of any kind, in education and in higher educational programs and activities receiving federal funds.

1147)Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin**...All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...and all other individuals situated in the similar situation "*persons*", acting in their under the color of the law, in their individual capacity; conspired (and did) to deprived plaintiff of equal right or privileges to "Higher Education Opportunity" by violating "The Higher Education Opportunity (as applies to the Fourteen Amendment "*equal protection*" of the law, against a member of a protected class) by arbitrarily disseminating the entire file of plaintiff's criminal charges and false documents, to at least eight SUNY Universities and others (See COA# 13), where all universities have denied admission.

Count VII. (42 U.S. Code, Sec. 1983):

(Retaliation):

1148)Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin...**All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...and all other individuals situated in the similar situation "*persons*",...All acting under the color of the law, in their individual capacity; conspired (and did)..."deliberately and indifferently to construct a pattern of conduct and pervasive infliction of organized retaliatory-bullying, against the plaintiff.

Please note that the St. Vincent Hospital has experiences attending students from Purchase College, thus, with plaintiff's case, the Hospital has sent reports to: The US Dept. of Education, The US Dept. of Justice and other government agencies. In addition...

The Hospital's report (see exhibit A) has been issued in light that, medical staff at said Hospital, is concerned of the possibility that these illegal actions may lead to "*school violence*"... giving another scenario (usually a younger student reluctant to seek treatment for the abuse). In addition, the Hospital asserts that these tragedies "can be avoided," if immediate and proper measures are taken to correct the retaliatory-bullying actions of these official, that form part of years of abuse. In addition, this court must come to notice that some students of Purchase College have been sons and daughters of St Vincent's staff, which have added testimony to the years of school officials' color of the law abuse, MOSTLY perpetrated by the "student affairs dept." of said College; hence, adding permanent plausibility to the patient-plaintiff accusation of abuse from the part of these school officials named throughout this complaint.

1149)Retaliation; the regulation implementing the Age Discrimination Act at 34 C.F.R. § 110.34, incorporates by reference 34 C.F.R. § 100.7 (e) of the regulation implementing Title VI of the Civil Rights Act of 1964 (Title VI), which provides that

1150)***Intimidatory or retaliatory acts prohibited.*** No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be held confidential except to the extent necessary to sway out the purposes of this section, including the behavior of any investigation, hearing, or judicial proceeding arising thereunder.

(Authority: Sec. 601, 602, Civil Rights Act of 1964; 78 Stat. 252; 42 U.S.C. 2000d, 2000d-1)

1151)Elements of retaliation:

   a. Plaintiff engaged in a protected activity; Plaintiff had a pending federal action against SUNY and Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mr. **Ernie Palmeiri,** Professor **Mark Burdzinski,** Dean **Louis Yelin,** SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski in the Assoc. Case**] and Mrs. **Qui-Qui Balascio**), at the time of the issuing of the 29 page fax; in addition…

   b. All state actors named above, knew the plaintiff's protected activity, since he had a pending legal action against them, (See, Assoc. Case). Furthermore…

   c. Plaintiff suffered an adverse action related to employment or education, *Per-se,* thus…

   d. There is a causal link between the protected activity and the adverse action; that is…

1152)Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin…** All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]… did know that plaintiff was never accused or demonstrated a violent behavior during his stay at purchase College. In addition, plaintiff was never accused of any violent behavior, and/or any behavior of disrespect against any female staff and female student. The decision of creating and disseminating false, statements, was for the sole purpose of depicting the plaintiff as a violent person. Thus, inflicting permanent academic harm; moreover, causing permanent physical and mental injuries, to the plaintiff.

Please note that plaintiff was very popular at Purchase College and BU, always with conserving the proper distance (not going beyond student-body relation, especially with younger "girls"). As supporting account: plaintiff twice withdrew from course of instructions, losing the credits, because too-much younger females (although of adult age), pulled in several advances that plaintiff considered inappropriate for his and their age, and reputation. Good school officials at Purchase College, and BU officials that knew about these cases, depicted the Plaintiff's actions of avoidance…"very honorable action". Please also notice that plaintiff was exposed to be a "gifted painter" in his very first peak (some said a master work), a "new type of painting and design"; this made plaintiff even more popular with students at Purchase College and BU; been Purchase College a mainly ART school. Nevertheless, the plaintiff always kept his distance with inappropriate male-female extracurricular relations.

Count VIII, (42 U.S. Code, Sec. 1983):

(Fourteen Amendment "equal protection"):

(Policies, Customs and Practices):

1153) Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983 (Failure to Implement Appropriate Policies, Customs and Practices.

1154) Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin...**All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...all with supervisory responsibilities..."failed to take necessary and adequate measures to train, retrain, supervise, monitor, educate to ensure that its officers received the proper training so as to enable them to render unbiased necessary respect and standard of duty students deserve". Furthermore...

1155) Plaintiff can establish that these state actors, acting under the color of the law, in their individual capacity... Where, ALL was properly notified, of the implementation of their "*de facto policies, practices and customs*", and violations of plaintiffs' constitutional rights and privileges; see *Parr.* #1078. Hence...

1156) These state actors, in "permitting a pattern of illegal practices, (as stated throughout this complaint) conduct, custom and personal involvement must be observed. In addition, these school officials and their departments allowed the wrongful, discriminatory, retaliatory-bullying and harassment, as a way of personal policies; with no rightful and favorable out-come for the plaintiffs, but injuries that would have avoided plaintiff's suffering and injuries. Thus, these state actors are liable pursuant to 42 U.S. Code, Sec. 1983 under a theory of "*respondent superior*" is appropriate, to assert as fact their wrongful actions as..."gross-negligence"; (See *Monell v New York City Dept. of Social Servs.,* 436 US 658, 694 [1978], internal quotations omitted). Furthermore...

1157) Defendant: Mrs. **Danielle DaGosto** was notified and recognized in many occasions (throughout the years), that plaintiffs was being discriminated and retaliated; however, she failed to report (which she was required by law) such behavior of Purchase College student affairs. In addition...

1158) Mrs. **Danielle DaGosto** in two occasions stated to plaintiffs, the "*Purchase College has an animosity towards the admission of adults for students*".

Please note that def. Mrs. **Danielle DaGosto** and Plaintiff's academic adviser, Mrs. **Kathleen Ceng** changed their positive view of Plaintiff when plaintiff accused, by facts that Mr. **Richard Nassisi** and his

son of hacking his email personally (student-client) account. Mr. **Richard Nassisi** and his son, have personal liaisons to def. Mrs. **Danielle DaGosto.** This is an inference for peer personal involvement....

1159) Hence def. Mrs. **Danielle DaGosto** is responsible of violating their "*standard of duty*" by not reporting to authorities (as required by law) of such "*retaliatory-bullying*" actions perpetrated by the student   affairs office of Purchase College, that may have avoided plaintiff now permanent injuries; instead she decided to press criminal charges against plaintiff (see COA #11). Hence, these state actors, named herein (especially, def. Mrs. **Danielle DaGosto**), are, *per-se,* liable under 42 USC § 1983 for the unconstitutional actions of their employees; where the plaintiff can prove (1) an official policy or custom of cover-up, that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right (See ***Canton v Harris,*** 489 US 378, 385 [1989]; ***Monell v New York City Dept. of Social Servs.***; ***Wilner v. Village of Roslyn,*** 99 AD3d 702, 703-705 [2d Dept. 2012]). Internal citations omitted.


## Count IX, (42 USC § 1983):
### (Fourteen Amendment):
#### (Intentional: False, Misleading Statements and/or Accusations):

1160) Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin**...All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...ALL acting under the color of the law, in their individual capacity; conspired to deprive plaintiff of his right and privileges, guaranteed by the US Constitution, by...

1161) Having ALL taking oath to the state of New York, as public officials (especially SUNY Attorney Mrs. **Wendy Ravitz** [former **Kowalski**], to the New York state bar)... have conspired to fabricate, and cover up by "*trick*", and "*scheme*" to make a materially false, fictitious, or fraudulent statement or representation; And/or to makes or uses any "*false writing*", or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in violation of 18 U.S. Code § 1001 (1), (2), (3) & 1621 (1).


## Count X, (42 USC § 1983):
### (Violation of the New York State Constitution and Laws: Tort Law):

1162) As applies to all state actors named here in this COA; Parr.48 to 52a, and all allegations in all Counts in this COA, are hereby adopted.

1163)Where supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. §1367 over the State law claims which are so related to Federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

1164)Defendants: Mrs. **Melissa Jones,** with the aid of def. Mrs. **Danielle DaGosto,** Mrs. **Sandee Maung,** Mr. **Ernie Palmeiri,** Mrs. **Qui-Qui Balascio** and Purchase College officials; Professor **Mark Burdzinski,** Dean **Louis Yelin**...All acting under the supervision of SUNY Attorney, Mrs. **Wendy Ravitz** [former **Kowalski**]...have intentionally acted against their oath as a NY State Official. These "*persons*", MUST fail to exercise a strict "*standard of duty*" owed to the plaintiff; causing plaintiff undue physical, mental and academic hardship, that eventually led plaintiff's injuries. —gross negligent acts, *per-se.*

1165)Where a civil wrong, which can be redressed by awarding damages. See, e.g., ***Smith v. United States,*** 507 U.S. 197 (1993).

1166)*Parr*, #145 through 165, are hereby adopted.

1167)ALL OTHER VIOLATIONS OF CIVIL RIGHTS; FEDERAL AND NY STATE LAWS, RULES AND REGULATIONSTHIS COURT MAY CONSIDER APPROPIATE AND APPLICABLE TO CONSTRUCT A FAVORABLE, (and out-side any "Bench Pro-see bias" action) LEGAL THEORY FOR A Pro-See LITIGIANT; BASED ON THE ON THE MERITS OF ALL CAUSES OF ACTIONS HEREIN, AND MOST IMPORTANT, THE DAMAGES (permanent personal injuries, and others), OF GROSS-NEGLIGIENCE CAUSED TO PLAINTIFF A *PRO-SEE* LITIGIANT.

1168)It is clear that the false statements, (see, COA #11, 12 & especially **13)** assert as facts, the elements of organized retaliation and bullying. Elements as facts that, this Court MUST apply, without bench Pro-see bias views, to ALL of the plaintiff's claims.

1169)It is irrational to assert that these defendants did not act for "personal reasons (personal involvement)." When, undue harm is inflicted in the form of the dissemination of false documentation.

1170)If this Court continue to assert "no personal involvement"... then the law was made to the approval of "organized retaliatory bullying", which then can be inflicted at the pleasure of the school officials. This shall be with disregard of medical expert opinion, rendering the plaintiff an expendable human being... With no access to the "equal protection" and "due process of the law... Thus, departing from any principle of justice. In addition, protecting these school officials' illegal activities that have caused the injuries of the plaintiff... the Court will be supporting "school violence", as implied by St. Vincent Hospital, Exhibit A. Which a form of students is taking the law in their own hand.

SUMARY...

1171)THIS PLAINITFF IS SERIOUSLY CONCERN WITH THE WELFAIR OF HIS PEER STUDENTS. HENCE, PRO-SEE BENCH BIAS, SHALL NOT BE AN EXCUSE ANY MORE, IN PROTECTING A TRADITION OF COVERUP OF A CLASS OF DISCRMINATORY INDIVIDUAL (school officials)... THAT DISGUISE THEM SELVES BEHIND IMMUNITY, NONE ECONOMIC LIABILITY AND FREE LEGAL REPRESENTATION, ALL SPONSORED AND SUPORED BY THE STATE.

1172)THESE CORRUPTED (personal gain), AND ORGANIZED, CULT AND GANG-LIKE BEHAVIOR; ARE A FORM OF CUSTOM OR CONDUCT OF PERSONAL VIEWS... THAT ALWAYS COULD HAVE TRAGIC CONCEQUENCES. THESE ACTIONS OF 'ORGANIZED RETALIATORY BULLYING", MUST STOP! SEE EXHIBIT A.

1173)WITH THE PRODUCTION OF THIS COMPLAINIT, PLAINITFF MEDICAL SUPPORT HAVE INCREASED HIS MADICATION AND TREATMENT 100%. HENCE, AN INFERENCE, THAT PLAINITFF INJURIES ARE WORSEN, IN ACCEPTEBLE... HENCE,

1174)PLAINITFF RESPECTFULLY REQUEST THIS COURT TO ABIDE BY THE RECOMMENDATION OF ST VINCENT HOSPITAL, SINCE THEY HAVE BEING TREATING THE PLAINITFF FOR ALMOST A YEAR TO DATE.

1175)FOR THESE REASON, PLAITIFF DEMANDS A JURY TRIAL, REQUESTING THE FOLLOWING COMPENSATORY DAMAGES...


### VI-Demand for Compensatory Relief Case Law

1176)Plaintiff shall request the/a jury to award either general damages and/or special damages for, but not restricted to: permanent-personal injuries (irreparable aggravation of disabling spinal injuries and permanent-mental illness Post-Traumatic-Stress-Disorder or PTSD, and chronic depression]). In addition to... the physical and emotional, emotional distress and suffering, inconvenience, mental anguish, loss of enjoyment of life, defamation of character for the last three years, and permanent loss of income, and

further, punitive damages....

1177) Where, compensatory damages "are meant to redress the concrete loss that the complainant has sustained by reason of the defendant's wrongful conduct," See; State Farm Mutual Automobile Insurance Company v. *Campbell,* 538 U.S. 408, 416 (2003) (citing Restatement [Second] of Torts § 903 [1979]); in addition...

1178) Plaintiff MUST be compensated for intangible, psychological injuries as well as financial, property, or physical harms proximately caused by the wrongful conduct, See; *Memphis Community School District v. Stachura,* 477 U.S. 299, 307 (1986); *Akouri v. Florida Department of Transportation,* 408 F.3d 1338, 1345 (11th Cir. 2005); *Randall v. Prince George's County*, 302 F.3d 188, 208 (4th Cir. 2002); *Coleman v. Rahija,* 114 F.3d 778, 786 (8th Cir. 1997); in addition...

1179) Plaintiff is requesting as *per-se*, "general damages", which are those elements plaintiffs of injuries that were the proximate and foreseeable consequence of the ALL defendant's conduct, as stated, but not limited, to others; See, 5A **Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure** § 1310 (3d Ed. 2008) (citing *Roberts v. Graham*, 73 U.S. 578, 791 (1867)). In addition...

1180) Plaintiff is requesting as per-se, "special damages", where the elements of damages that plaintiff have suffered (and keep on suffering as a lasting and irreparable illness and traumas), are the result of the defendant's behavior and typically stem from upon the exceptional circumstances of this case has dictated as indisputable facts; See, Id. In addition...

1181) Where, "general" and "special, " damages may have different meanings in this case; according to the context and the cause of action in which they are alleged. See, *Compare Burlington Transportation Company v. Josephson,* 153 F.2d 372, 377 (8th Cir. 1946) (noting in false arrest case that general damages are natural and necessary result of such injuries as are alleged, while special damages are those that are natural but not necessary consequence of the act complained of) *with Federal Aviation Administration v. Cooper,* 132 S. Ct. 1441, 1451 (2012) (observing that under the remedial scheme for common law torts of libel and defamation, "special damages" are set to actual pecuniary loss, which must be specially pleaded and proved, while "general damages," on the other hand, cover "loss of reputation, shame, humiliation, hurt to the tactile sensations and the like and need not be alleged in detail and require no proof"). In addition...

1182) Where, General damages, as opposed to special damages, need not be alleged or proven with a high

degree of specificity. See, ***Akouri***, 408 F.3d at 1345; ***Ferrill v. Parker Group, Incorporated***, 168 F.3d 468, 476 (11th Cir. 1999). In addition…

1183) Where, general compensatory damages (plaintiff's injuries), "*may be inferred from the circumstances as well as proved by the testimony.*" See, ***Gore v. Turner***, 563 F.2d 159, 164 (5th Cir. 1977). In addition…

1184) Complainant in accordance with Federal Rule of Civil Procedure 9 (g), "[I] if an detail of particular damage is taken, it must be specifically stated," which have been. Thus, plaintiff has informed defending parties as to the nature of the damages claimed in order to avoid surprises; in addition, plaintiff has herein informed the court of the substance of the complaint," See, *Great American Indemnity Company v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962). In addition…

1185) A complaint that "set [s] out various items of damage and various elements of damage" complies with the **Federal Rule of Civil Procedure 9 (g).**

1186) Plaintiff shall also request the/a jury to award "nominal damages", trying to vindicate deprivations of certain "absolute" rights that are not proven to have caused actual harm:

*All defendants by causing the deprivation of such rights actionable for nominal damages without proof of actual injury, at the [time of the deprivation]; the law recognize the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.* See, ***Cummings v. Connell,*** 402 F.3d 936, 942-43 (9th Cir. 2005). Internal citations omitted.

1187) In addition, The U.S. Supreme Court established the law governing the recovery of compensatory damages under 42 U.S.C. § 1983 in   *Carey v. Piphus,* 435 U.S. 247 (1978*); and **Memphis Community School District v. Stachura,*** 477 U.S. 299 (1986).

1188) In addition, In ***Goss v. Lopez,*** 419 U.S. 565 (1977), the Supreme Court established the general rule that students who are subject to a short-term suspension are entitled to due process protection. Furthermore…

1189) In ***Carey v. Piphus,*** 435 U.S. 247 (1978), and ***Carey,*** 435 U.S. at 264 n. 20;  a principal who observed students with marijuana, suspended the students for twenty days without a hearing, in violation of their right to procedural due process. The students sued for restitution, but provided no grounds (even so, plaintiff herein does offer irrefutable evidences) of emotional hurt or other harm resulting from the

reprieve that would have been averted had a hearing been granted before the break. Instead, making an analogy to defamation law, they indicated that they were entitled to substantial presumed general damages for the denial of their right to due process independent of any proved injury.

1190) In addition, in *Carey*, the Court also indicated that the plaintiffs would be entitled to fees under 42 U.S.C. § 1988. It pointed to the defendant's liability for fees as a "by no means inconsequential" deterrent to unconstitutional conduct. *Carey*, 435 U.S. at 257, n.11. However, in *Farrar v. Hobby*, 506 U.S. 103 (1992), the Court, while holding that a nominal damage award made the plaintiff a "prevailing party" for purposes of attorney fees, nonetheless allowed fees to be denied on the basis of limited success. *See* Chapter 9.4 of this MANUAL for a further discussion of the *Farrar* decision. In addition…

1191) In *Carey* the Court rejected this statement and allowed the plaintiffs to recover actual damages only if they brought forth evidence of trauma, (per-se, in plaintiff, Mr. Morales' case herein). Reasoning that the students would have been suspended even after a *Goss v. Lopez* hearing, the Court held that proof that the suspension was justified  (not present in the plaintiff's case, since ALL plaintiff's suspension, were outside governmental purposes, and retaliatory-bullion related). Hence defendants cannot defeat recovery of damages for loss of educational services. See, in contrast and according with *Goss v. Lopez*, 419 U.S. 565 (1977)…where the Supreme Court established the general rule that students who are subject to a short-term suspension are entitled to due process protection, see *Carrey*; however, even if the suspensions against plaintiff were somewhat within the school policies; because the right to due process is independent of the merits of the suspension, this Court MUST allow the students-plaintiff to recover "nominal damages" even if the suspension were justified. *Carrey, Id.*

1192) Although the Court rejected presumed general damages (not applicable in the plaintiff's case, since damages are *per-se*) in *Carey*, it also held that mental and emotional distress were compensable injuries under **Section 1983**. *Carey* simply established that a plaintiff seeking recovery for mental and emotional distress must offer proof of those injuries; which are indisputable in this case. The Court noted that, "Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others. Juries must be guided by appropriate instructions, and an award of damages must be supported by competent evidence concerning the injury," (See Exhibit A).

1193) In *Memphis Community School District v. Stachura*, a teacher who was suspended with pay for showing seventh grade students pictures of his pregnant wife and two films concerning human growth and sexuality sued for damages under **Section 1983**. He claimed that his suspension denied him both liberty

and property without due process of law and violated his First Amendment right to academic freedom. The district court instructed that, if the jury found for the teacher, the jury should consider any lost earnings, loss of earning capacity, out-of-pocket expenses, and any mental anguish or emotional distress that the plaintiff might have suffered as a result of the conduct by the defendants depriving him of his civil rights. <u>Plaintiff applies this rational to ALL COA, since ALL COA, including where plaintiff was suspended, and especially where plaintiff asserts as facts (supporting evidence) violation of his First Amendment right to academic freedom, without any governmental interest as a way of, but not limited to, organized retaliatory-bullying actions; as stated by the St Vincent Hospital.</u>

1194) In addition, plaintiff hereby shall request the Court to instructed the jury to award damages based on the value or importance of the constitutional rights that were violated and to consider that the "*precise value you place upon any constitutional right which you find was denied to plaintiff is within your discretion*" and the "*importance of the right in our system of Government, (none in ALL COA in this case) the role which this right has played in the history of our Republic and the significance of the right in the context of the activities which the plaintiff was engaged in.*" Plaintiff herein, does not add anything to this case, since it is on point; See *Id. at 303*.

1195) In *Id.* at 305-06; The Court reiterated that **Section 1983** created a "*species of tort liability.*" **Section 1983** authorizes compensatory damages not only for "*out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . personal humiliation, and mental anguish and suffering.*" *Id.* at 307 (citations omitted). However the case of plaintiff (Mr. Morales), shall be not the "*value of rights*" instruction where it may erroneously cause the jury to focus "not on compensation for provable injury, but on the jury's subjective perception of the importance of constitutional rights as an abstract matter." See, *Id.* at 308. *See also Makin v. Colorado Dep't of Corr.*, 183 F.3d 1205, 1214-15 (10th Cir. 1999) (reversing First Amendment damage award which was "based ... on the abstract value of the constitutional right); *Silor v. Romero*, 868 F.2d 1419 (5th Cir. 1989) (holding that the giving of a similar instruction was plain error, entitling the defendant to a new trial even if no objection was made below).

1196) Therefore, proof of damages (as irrefutable evidence in support of plaintiff herein clams) in **Section 1983** litigation is equivalent to proof of damages in a common-law tort action. Therefore, it is to be compensated plaintiffs must prove out-of-pocket expenses, such ~~as loss of wages~~ or future earning capacity, medical expenses, and property damages. Compensable damages may also include distress, humiliation, personal indignity as well as loss of reputation or status, provided that evidence is offered to establish the extent and duration of these injuries. *See Horina v. City of Granite City*, 538 F.3d 624, 637

(7th Cir. 2008) (difficulty in proving abstract damages does not preclude their award, but the plaintiff must show that he actually suffered such injuries). The testimony of the plaintiff alone can support the award of such damages. *Harper v. City of Los Angeles*, 533 U.S 1010, 1029 (9th Cir. 2008).; however, plaintiff herein, Mr. Morales, is eloquently heightened his claims to allow this Court conclude the award of damages MUST be imminent.

1197)Although plaintiff herein, Mr. Morales, is eloquently heightened his claims with irrefutable evidences (not only in this comp, but also in his Assoc. Compl.); Neither *Carey* nor *Stachura* flatly ruled out presumed general damages in **Section 1983** litigation. In both cases, however, the Supreme Court stated that presumed damages (there is no presume damages herein, indisputable damages) would be proper only when the nature of the right was such that proof of injury resulting from its deprivation would be unusually difficult to provide, Sea *Stachura*, 477 U.S. at 311 n. 14; *Carey*, 435 U.S. at 265 n.22.

1198)Plaintiff herein is asserting as fact a second disability (mental illness, PTSD; as a disabling illness for Social Security Disability) and aggravation of his spinal injuries due the stress plaintiff was put upon for four years; furthermore, plaintiff's injuries, the emotional distress, for years, are sufficient damages to obtaining the requested compensation for the plaintiff. Emotional distress and injury damages are available under many federal civil rights statutes. For example, emotional distress damages are allowed under Section 1983, *Hafer v. Melo*, 502 U.S. 21, 31 (1991), the Americans with Disabilities Act, 42 U.S.C. § 12117(a), and the Fair Housing Act. *Hamilton v. Svatik*, 779 F.2d 383 (7th Cir. 1985); *Marable v. Walker*, 704 F.2d 1219 (11th Cir. 1983). They are not allowed under the Age Discrimination in Employment Act. *Commissioner v. Schleier*, 515 U.S. 323 (1995). In addition, physical injury." 42 U.S.C. § 1997e(e); *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002). *See assails v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001); *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998). Where, pricing or prisoner is omitted.

1199)Although plaintiff has stablished personal-permanent injuries, the "*plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation*". However, the testimony shall establish that the plaintiff suffered demonstrable emotional distress, which is evident with his injuries…Which are sufficiently articulate; See, *Akouri*, 408 F.3d at 1345; *Williams v. Trans World Airlines, Incorporated*, 660 F.2d 1267 (8th Cir. 1981) (noting that medical testimony, although relevant, is not necessary). *See also Tucker v. Housing Authority of the Birmingham District*, 229 F. App'x 820 (11th Cir. 2007) (upholding $100,000 damage award for emotional distress based solely on plaintiff's own testimony).

1200)The common-law doctrine of avoidance, cannot be apply to plaintiff case, since injuries did not accrued until this year. Furthermore, defendants have especial knowledge of plaintiff economic hardship, thus they could infer that his status of student could not have been avoided without negative consequences for his academic future. In addition, plaintiff did try to leave Purchase College, but even then, he was persecuted as stated in the facts section of most COA. Furthermore, the injuries inflicted to plaintiff were systematically inflicted as on organized retaliatory-bullying actions, carefully premeditated.

1201)The intent of punitive damages is deterrence and retribution; they punish a defendants' unlawful conduct and deter its repetition. See, *State Farm Mutual Automobile Insurance Company*, 538 U.S. at 416. In this case punitive damages MUST particularly high. Where, organized retaliatory-bullying, FALSE statements and persecution that pre-set, can lead to "school violence", as stated by the St. Vincent Hospital, defendants organized crimes, MUST be a void for future students. Experts at St Vincent Hospital have expressed that the complainant has been handled at the Hospital since December 2013, 11 months now. Earlier he was processed for three (3) months by the Purchase College counseling center, for depression and PTSD, due to the discrimination and organized retaliatory-bullying, and persecution that pre-set, can lead to "school violence." In addition, St Vincent Hospital has stated to plaintiff that in 10 cases of retaliatory-bullying—like the Mr. Morales heroine has, and continue, suffering—nine would have ended in school violence, (Expert Opinion of St Vincent Hospital).

1202)The Supreme Court declared that Section 1983 authorizes the award of punitive damages against state or local officials in their private mental ability. See, *Smith v. Wade*, 461 U.S. 30 (1983); furthermore…

1203)The Court suggested that punitive damages may be awarded when an official's conduct is malicious, intentional, or reckless or callously indifferent to protected rights; *Id.* at 36 n.5; *Newport v. Fact Concerts*, 453 U.S. 247, 269-70 (1981) (holding that punitive damages under **Section 1983** are not available against a governmental entity but only against the responsible officials sued in their individual capacity). *See also Kolstad v. American Dental Association*, 527 U.S. 526, 535-36 (1999).

1204)This test focuses on the state of mind of the defendant. See *Kolstad*, 527 U.S. at 535-39. While outrageous or egregious conduct, as so evident is in Mr. Morales 'case, does provide evidence of the requisite state of mind, the conduct need not just be egregious or outrageous to justify an award of punitive damages., *Id.* at 538.

1205)The determination of whether to award punitive damages once a showing of malice or recklessly indifferent conduct is made rests within the discretion of the jury or the judge (in a jury-waived case), and

NOT the Court. See, *Fairley v. Jones*, **824 F.2d 440** (5th Cir. 1987).

1206)The Courts repeatedly have upheld punitive damage awards against public officials for discriminatory practices. See, *Romano v. U-Haul International*, 233 F.3d 655 (1st Cir. 2000), (sex discrimination); *Rodriguez-Torres v. Caribbean Forms Manufacturer, Incorporated*, 399 F.3d 52 (1st Cir. 2005), (age and gender discrimination). Unlawful searches and seizures. See, *Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) (unlawful seizure); *Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008) (unlawful seizure); *Rogers v. City of Kennewick*, 304 Fed. Appx. 599 (9th Cir. 2008) (unlawful seizure); *Morgan v. Woessner*, 997 F.2d 1244 (9th Cir. 1993) (unlawful service); *Creamer v. Porter*, 754 F.2d 1311 (5th Cir. 1985) (unlawful search); *Clark v. Beville*, 730 F.2d 739 (11th Cir. 1984) (arrest without probable cause); *Smith v. Heath*, 691 F.2d 220 (6th Cir. 1982) (unlawful arrest). In addition...

1207)The Courts have also upheld awards, including deliberate indifference to medical needs. See, *Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008); *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987). For violations of the right to procedural due process; *See, e.g., White v. McKinley*, 605 F.3d 525 (8th Cir. 2010); *Washington v. Kirksey*, 811 F.2d 561 (11th Cir. 1987); *Busche v. Burkee*, 649 F.2d 509 (7th Cir. 1981); *Hardeman v. City of Albuquerque*, 377 F.3d 1106 (10th Cir. 2004); and violations of First Amendment rights. *See* cases compiled in *Jones v. City of Key West*, 679 F. Supp. 1547 (S.D. Fla. 1988).

1208)Punitive damages may be awarded even when the plaintiff suffers only nominal damages from a deprivation of federal rights. See, *Romanski v. Detroit Entertainment, L.L.C.*, 428 F.3d 629, 645-50 (6th Cir. 2005) (approving punitive damages of $600,000 where only $279.05 in compensatory damages were awarded); *Williams v. Kaufman County*, 352 F.3d 994, 1016 (5th Cir. 2003) (approving $15,000 in punitive damages on a nominal damages award of $100); *Cush-Crawford v. Adchem Corporation*, 271 F.3d 352, 359 (2d Cir. 2001) (Title VII); *Alexander v. Riga*, 208 F.3d 419, 430-31 (3d Cir. 2000) (Fair Housing Act); *Green v. McKaskle*, 788 F.2d 1116, 1124 (5th Cir. 1986).

1209)In addition, awarding a high punitive damage award against ALL defendants were made in this complaint can never be "grossly excessive", since the relationship between the act perpetuated against the plaintiff and the history of abused form these school officials, is/are so legitimate in the interest in punishing and deterring unlawful conduct, such as organized-retaliatory-bullying is. These life threatening acts of these school officials (as precedent in case law, but not in reality) acts and high punitive damages DOES NOT run afoul of substantive due process thus they not subject to be cut back or overturned on

appeal. In contrast with, *Philip Morris USA v. Williams,* 549 U.S. 346, 353-54 (2007) (punitive damages based in part on harm to non-parties are takings without due process s [there are non-parties plaintiffs, Mr. Morsales' here in this Compl.]); *BMW of North America, Incorporated v. Gore,* 517 U.S. 559 (1986); *Honda Motor Company v. Oberg,* 512 U.S. 415, 430-32 (1994). In *State Farm Mutual v. Campbell,* 538 U.S. 408, 425 (2003), the Court suggested that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." However, the Court did, however, recognize that where the compensatory damages were very small, a higher ratio might be necessary. *See, e.g., Romanski,* 426 F.3d at 645-50; *Williams,* 352 F.3d at 1016.

1210)Plaintiff prays for this court to award Punitive Damages under the Federal Civil Rights Statue under the 1991 Civil Rights Act, 42 U. S. C'1981; whereas the Defendants intentionally engaged in a discriminatory proactive retaliatory or   discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. At 42 U. S. C.'1981A (b) (1). As in punitive damages, liability under 42 U. S. C."1981 and1983. See *Smith v. Wade,* 461 U.S. 30, 56 (1983). See also, Fourth Circuit Law: In *Cooper v. Dyke,* 814 F.2d 941 (4th Cir. 1987), the court upheld a punitive damage award where the official showed "*deliberate indifference*" to an arrestee's serious medical needs.

1211)In addition, Supreme Court Law: In a significant recent decision, the Supreme Court has limited the scope of punitive damage awards generally. *State Farm Mut. Auto Ins. v. Campbell,* No. 01-1289, 2003 U.S. LEXIS 2713, 71 U.S.L.W. 4282 (April 7, 2003).  The Court addressed in depth the due process limitations on punitive damages awards. Significantly, the State Farm decision held that few punitive damages awards that are more than nine times the amount awarded in compensatory damages will be considered constitutional. *Id.* (For further discussion of *Campbell, see* Part V, *infra.*).

1212)In addition, Defendants at least discriminated against Plaintiff in the face of a perceived risk that its actions will violate federal law. See, *Kolstad v. American Dental Assoc.,* 527 U.S. 526 (1999), See also *Rowe v. Hussmann Corp.,* 381 F. 3d 775, 782 (8thCir. 2004), *Williams v. ConAgra Poultry* Co., 378 F. 3d 790, 796-97 (8thCir. 2004), *Baker v. John Morrell* & Co., 382 F. 3d 816, 832 (8th Cir. 2004), *Kim v. Nash Finc* (N.D. Iowa, Judge Melloy, 1994); *Duncan v. GM* (E.D. Mo., Judge Carol Jackson, 199); *EEOC, et al. v. Beverly Enterprises, et al* (E.D. Mo., Judge Rodney Sippel, 2001). For ALL of this reason, as stated by the plaintiff in ALL cases of actions…

1213)Plaintiff respectfully shall ask the court to set precedent and an example by awarding damages for plaintiff, and or refer this case settlement mediation, or…

1214)Plaintiff shall ask the jury for damages I in excess of $180,000,000 (Million), as to reflect…

    a.  In the amount of $5,000,000 for permanent loss of income, as an Attorney plaintiff would have earned in his own bilingual practice, for a period of 15 years, as plaintiff has demonstrated his legal abilities as facts.

    b.  In the amount of $25,000,000 for personal-permanent injuries, which including, but not limited to, intentional infliction of emotional and physical pain.

    c.  In the amount or in excess of $180,000,000 in punitive damages. However, punitive damages CAN raised to: compensatory damages X 9= $270 Million…on the basis of deterrent to school official's abuse of power; thus invoking the prevention of "*school violence*". See *Parr*. #1211, or ***State Farm Mut. Auto Ins. v. Campbell***, No. 01-1289, 2003 U.S. LEXIS 2713, 71 U.S.L.W. 4282 (April 7, 2003).

1215)These amounts of relief shall be divided for payment of such, as the jury decides among all defendants appropriately

## **X-Certification**

I Hereby, Edward Morales (Plaintiff), certifies that he has written, in small part, but in full part in the creation of this Complaint. In addition, plaintiff has reviewed the allegations as FACTS made in the petition/complaint, and—but not limited--to those facts of which I (Plaintiff) have personal knowledge, of who plaintiff asserts them as facts truthfully. As to those allegations of which plaintiff does not have personal knowledge, of facts yet; plaintiff relies on documents, to be requested in the form of subpoenas in discovery, and, but not limited to, the testimony of witnesses that plaintiff will asserts also as facts and truthfully.

**Respectfully,**

**Edward A. Morales**

**Plaintiff**

October 14st, 2014.

202

CC   Attorney General of the United States;

     US. Department of Justice

     950 Pennsylvania Avenue, NW

     Washington, DC 20530-0001

CC   Secretary of Health and Human Services;

     The US. Department of Health and Human Services

     200 Independence Avenue, S.W.

     Washington, D.C. 20201

CC   Secretary of Education;
     490 L'Enfant Plaza, SW, Room 2100A
     Washington, DC 2020

CC   Secretary of Housing and Urban Development;

     U.S. Department of Housing and Urban Development

     451 7th Street S.W., Washington, DC 20410

CC   State of New York;

     Office of the Attorney General

     The Capitol

     Albany, NY 12224-0341

CC   State University of New York;

     Board of Trustees

     State University Plaza

     353 Broadway

     Albany, New York 12246

CC      Purchase College;

        735 Anderson Hill Rd Purchase, NY 10577

        (914) 251-6000

CC      And ALL defendants named herein this Complaint.